**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER BRUNNER<br>23259 HARTLEY ROAD<br>COLUMBIANA COUNTY, OHIO<br>ALLIANCE, OHIO 44601[1] | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiff | )<br>) |
| v. | )<br>) |
| THE HONORABLE FRANK LAROSE<br>OHIO SECRETARY OF STATE<br>22 N. 4TH STREET<br>COLUMBUS, OHIO 43215 | )<br>)<br>)<br>)<br>) |
| AND | )<br>) |
| OFFICE OF DISCIPLINARY COUNSEL<br>65 SOUTH FRONT STREET<br>COLUMBUS OHIO 43215 | )<br>)<br>)<br>) |
| AND | )<br>) |
| BOARD OF PROFESSIONAL<br>CONDUCT<br>65 SOUTH FRONT STREET<br>COLUMBUS, OHIO 43215 | )<br>)<br>)<br>)<br>) |
| AND | )<br>) |
| THE HONORABLE DAVID YOST<br>OHIO ATTORNEY GENERAL<br>RHODES STATE OFFICE TOWER<br>30 EAST BROAD STREET<br>14TH FLOOR<br>COLUMBUS, OHIO 43215 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Case Number:

Judge:

---

[1] Plaintiff resides and votes in Columbiana County, Ohio but the US Postal Service utilizes and Alliance, Ohio address for this location.

**COMPLAINT**

Now comes the Plaintiff and for her Complaint states as follows:

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, in that it arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution; pursuant to 28 U.S.C. § 1343(a)(3) because it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; and under 28 U.S.C. § 1343(a)(4) because it seeks to secure equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983 that provides a cause of action for the protection of civil and constitutional rights.

2. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) in that the Defendants are situated within this judicial district and division.

3. Plaintiff is a citizen of the United States.

4. Plaintiff resides and votes in Columbiana County, Ohio.

5. Plaintiff is currently a justice of the Supreme Court of Ohio, having been duly elected to that position November 3, 2020.

6. Plaintiff has conducted many of her activities in campaigning for the office of justice and chief justice of the Supreme Court of Ohio in the years 2019 through 2022 from her residence at 23259 Hartley Road, Alliance, Ohio 44601, which is situated in Columbiana County, Ohio.

7. On June 9, 2021, Plaintiff, then a sitting justice of the Supreme Court of Ohio, publicly announced she would seek the office of chief justice of the Supreme Court of Ohio at the election to be held on November 8, 2022.

8. On February 1, 2022, Plaintiff filed a declaration of candidacy for the office of chief justice of the Supreme Court of Ohio for the general election to be held November 8, 2022,  with the office of Defendant Ohio Secretary of State, Frank LaRose, who is named in his official capacity and whose duties include issuing instructions by directives and advisories to members of boards of elections in Ohio as to the proper methods for conducting elections, preparing rules and instructions for the conduct of elections, determining and prescribing the forms of ballots as required by law, compelling the observance by election officers of Ohio's counties the requirements of the election laws, and perform other duties prescribed by law, including instructing boards of elections on ballot preparation, pursuant to R.C. 3501.05 (B),(C),(G), (M) and (EE) and R.C. 3501.03, respectively.  A sample copy of Plaintiff's declaration of candidacy, a form prescribed by Defendant LaRose in his official capacity, is attached hereto and incorporated in as **Exhibit 1**.

9. Plaintiff is subject to the Ohio Code of Judicial Conduct as both a judicial officer and as a judicial candidate, which Code includes Canon 4 and which states that, "A judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary," and in Comment 8 of Rule 4.1 of the Code of Judicial Conduct the following:

> Campaigns for judicial office must be conducted differently from campaigns for other offices so as to foster and enhance respect and confidence for the judiciary. Judicial candidates have a special obligation to ensure the judicial system is viewed as fair, impartial, and free from partisanship.  To that end, judicial candidates are urged to conduct their campaigns in such a way that will allow them, if elected, to maintain an open mind and uncommitted spirit with respect to cases or controversies coming before them.  The narrowly drafted restrictions upon political and campaign activities of judicial candidates provided in Canon 4 allow candidates to conduct campaigns that provide voters with sufficient information to permit them to distinguish between candidates and make informed electoral choices.

10. Canon 4 of the Code of Judicial Conduct prescribes in great detail rules of conduct, including significant prohibitions of certain conduct, during campaigns for judicial office; these rules require attendance at specialized training concerning these campaign rules, which in some instances include complying with campaign rules set forth in Title 35 of the Ohio Revised Code, but in many instances differ significantly from those rules.

11. Plaintiff is also subject to disciplinary processes if she is found to have violated any of the rules contained in Canon 4 of the Code of Judicial Conduct as a judicial candidate; under the Rules for the Government of the Judiciary, Article II and Rules for the Government of the Bar, Article V, these rules are prosecuted, and also interpreted for advisory opinions and adjudicated for violations, by Defendant Office of Disciplinary Counsel and Defendant Board of Professional Conduct, respectively, with the latter empowered to certify local bar association grievance committees to file and prosecute complaints. When violations of the Code of Judicial Conduct are found, they may carry consequences ranging from public reprimand, suspension or even disbarment from the practice of law, which licensure is a requirement for serving as a judge or as a Justice of the Supreme Court of Ohio.

12. Defendants Office of Disciplinary Counsel and Board of Professional Conduct are named in their official capacities.

13. After Plaintiff filed her declaration of candidacy for the office of chief justice on February 1, 2022, House Bill 141 was introduced on February 23, 2021 in the Ohio House of Representatives, and a similar, "companion bill," Senate Bill 80, was introduced in the Ohio Senate the same day.  S.B. 80 was the legislation that ultimately passed; it was signed by Ohio's Governor July 1, 2021, and it became effective September 30, 2021, after the fund raising period for judicial candidates began for the 2022 judicial election season.

14. Senate Bill 80 amended R.C. 3501.01, 3505.03, 3505.04, and 3513.257 to eliminate only candidates for justice of the Supreme Court of Ohio, including the office of chief justice, and candidates for judge of Ohio's 12 district courts of appeals from the definition of nonpartisan candidates; the new law also modified their statutory placement on the general election ballot so that the statewide judicial offices appear on the ballot immediately after candidates for statewide office and before candidates for federal office, including the office of U.S. Senator, and appellate district judicial candidates appear after the offices of state senator and state representative, the latter of which appear just following the listing of federal offices.  S.B. 80 specifically leaves the offices of judge of municipal court, county court and common pleas court as nonpartisan, relegating their ballot placement to beneath state board of education candidates and not sequentially grouped with any other judicial candidates.

15. H.B. 149 had been reported out of the House committee to which it had been assigned the day after plaintiff announced her candidacy for Chief Justice, and it was passed by the entire House 13 days later, on June 23, 2021, and thereafter referred to the Ohio Senate. Meanwhile, S.B. 80, the companion bill, had been reported out of Senate Committee on April 21, 2021 and passed by the Senate the same day.  The Ohio House had already reported the Senate bill out of committee less than a week before it passed the House version of the bill, and on June 25, 2021, 16 days after plaintiff had announced her candidacy and 2 days after it passed H.B. 149, the House passed S.B. 80.

16. As of September 30, 2021, the resulting change to the law adopted by the Ohio General Assembly and signed by the Governor is that trial court judicial candidates in Ohio are nonpartisan candidates, while candidates like Plaintiff for justice or chief justice, along

with candidates for district appellate judge, all of whom who will hear and decide appeals of the state's nonpartisan trial judges' decisions, are now elected as partisan candidates.

17. As a further result of this change to the law, judicial candidates such as Plaintiff, who are seeking office to hear and decide appeals of nonpartisan trial judges' decisions or appeals of those decisions, must continue to campaign according to the same rules as the nonpartisan trial judges, which are strict rules that could affect their continuing ability to practice law if they are found to have violated them, even though these appellate level judicial candidates are now considered partisan candidates and appear on the ballot similarly to candidates for governor, attorney general or county prosecutor or even a candidate for member of the Ohio General Assembly, none of whom are similarly restricted in their campaign conduct.

18. Attached hereto as **Exhibits 2 and 3**, respectively, are the current Ohio Code of Judicial Conduct and an illustrative chart of significant differences between the requirements for and restrictions upon candidates for all judicial offices in the State of Ohio versus candidates for any other office in the State of Ohio who are partisan candidates and not designated by statute as nonpartisan (e.g. school board and certain municipal offices).

19. The 2022 general election, held November 8, 2022, was the first time S.B. 80 was administered in a judicial election, requiring political party affiliation to appear on the ballot next to the names of candidates for justice, chief justice and judge of the court of appeals.

20. Plaintiff's current term as a justice of the Supreme Court of Ohio ends January 1, 2027, in just over three years, with activities to run for reelection needing to begin in mid- to late-

2025, about a year-and-a half from the commencement of this action, Plaintiff must decide whether to run for reelection, which she is eligible to do, or to run for a nonjudicial office.

21. If Plaintiff decides to run for a nonjudicial office, Rule 4.5 of the Code of Judicial Conduct requires that she resign her position from the Supreme Court of Ohio, as Plaintiff did in 2005 in order to run for Ohio Secretary of State when serving as a judge of the Franklin County Court of Common Pleas from 2000 to 2005, since the rule requires a sitting judicial officer to resign "[u]pon becoming a candidate in a primary or general election for a nonjudicial elective office."

22. Official Comment 1, published with Rule 4.5 of the Code of Judicial Conduct, explains,

> In campaigns for nonjudicial elective public office, candidates may make pledges, promises, or commitments related to positions they would take and ways they would act if elected to office. Although appropriate in nonjudicial campaigns, this manner of campaigning is inconsistent with the role of a judge, who must remain fair and impartial to all who come before him or her. The potential for misuse of the judicial office, and the political promises that the judge would be compelled to make in the course of campaigning for nonjudicial elective office, together dictate that a judge who wishes to run for such an office must resign upon becoming a candidate. Comment 1, Rule 4.5, Ohio Code of Judicial Conduct.

23. Absent relief from this court, Plaintiff will continue to have, as she did in 2021 and 2022 in her campaign for chief justice, all the restrictions of the Code of Judicial Conduct that are not placed on other partisan candidates who are not running for judicial office.

24. Absent relief from this court, Plaintiff will continue to have, as she did in 2021 and 2022 in her campaign for chief justice, all the restrictions that are set forth in the Code of Judicial Conduct, even though other candidates for judge, to wit, candidates for the courts of common pleas and their divisions in the various counties of the state, county court judicial candidates and municipal candidates will not have party affiliation next to their names.

25. Plaintiff, while having to campaign for reelection, beginning in 2025, with the specter of a party designation on the general election ballot next to her name in the 2026 general election, will not be able to engage in all of the types of activities that other partisan candidates who are non-judicial candidates are permitted to engage in.

26. And if Plaintiff decides to campaign for a non-judicial office in 2026 and not resign as justice of the Supreme Court of Ohio, even though she would have a party affiliation designation next to her name if she ran for reelection, pursuant to Rule 4.5 of the Code of Judicial Conduct she must resign when she would become a candidate for a non-judicial office that also bears a party affiliation next to her name on such a ballot.

27. Nearly 50 years ago, the United States Supreme Court decided *Buckley v. Valeo,* 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976), holding that the limiting of money spent by candidates in a campaign was a limit on freedom of expression in that campaign—speech— and struck down expenditure limitations in campaigns as a violation of the First Amendment of the United States Constitution.  With the application of S.B. 80, candidates for the Supreme Court of Ohio and for judge of the courts of appeals, now designated on general election ballots as partisan candidates, are subject to a limited time period for raising funds that other candidates having party designations are not subject to, in effect, limiting their campaign expenditures as compared to non-judicial partisan candidates. Candidates for these judicial offices are barred from contributing their own funds to their campaign (or spending their funds as an in-kind contribution to their campaigns) more than ninety days before the judicial fundraising period begins, or ninety days after the judicial fund raising period ends, and the rule only mentions using the judicial candidate's own funds to satisfy debts.

28. Judicial candidates such as the Plaintiff are also subject to an age limitation as contained in Article IV, § 6(C) of the Ohio Constitution, which does not apply to other partisan candidates for public office.  By way of example, at the general election on November 8 2022, the candidate for Governor of the State of Ohio was 75 years of age and took office at the age of 76.  On November 8, 2022, the President of the United States was 12 days short of 80 years old.

29. Plaintiff, as a citizen of the United States, is guaranteed the exercise of free speech under the First Amendment of the United States Constitution in connection with her partisan candidacy for reelection to judicial office, or if she does not seek reelection, her partisan candidacy for a nonjudicial office in 2026.

30. Plaintiff, as a citizen of the United States, is guaranteed procedural and substantive due process of law under the Fifth and Fourteenth Amendments of the United States Constitution in connection with her partisan candidacy for reelection to judicial office, or if she does not seek reelection, her partisan candidacy for a nonjudicial office in 2026.

31. Plaintiff, as a citizen of the United States, is guaranteed equal protection under the law under the Fifth Amendment of the United States Constitution in connection with her partisan candidacy for reelection to judicial office, or if she does not seek reelection, her partisan candidacy for a nonjudicial office in 2026.

32. Plaintiff has taken an oath to promote public trust in the judiciary and is dedicated to that ideal; she seeks relief from this court, because her experience as a trial judge, a district appellate judge, an Supreme Court of Ohio justice and even as a former Ohio Secretary of State, has caused her to believe that S.B. 80 has placed the appellate level judges and the justices of Ohio in positions to be viewed by the public as partisan, and by the schema of

S.B. 80 as part of the state's election laws, to be seen as an Ohio judicial system that imposes a partisan check on the decisions of non-partisan trial judges.

33. The State of Ohio, in requiring the Plaintiff to run with a political party designation that is not applied to all judicial candidates but with the regulation of and restrictions on the speech-related and other campaign activities for judicial candidates set forth by way of example in Exhibit 3, has denied Plaintiff the right of free speech under the First Amendment of the United States Constitution, has denied procedural and substantive rights of due process under the Fifth and Fourteenth Amendments of the United States Constitution, and has denied equal protection under the law under the Fifth Amendment of the United States Constitution, to wit, by placing restrictions on her as a partisan judicial candidate that other partisan nonjudicial candidates do not face, by requiring her to resign her partisan judicial office to run for another partisan office that is not a judicial office and by requiring that as a partisan judicial candidate she abide by rules to run for reelection of nonpartisan judicial candidates.

34. Plaintiff has maintained her membership in the same political party for all of her campaigns for election to public office.

35. In 2006, Plaintiff was a successful candidate for Ohio Secretary of State as a nonjudicial partisan candidate with her political party designation next to her name on the general election ballot, and in doing so, she was not subject to the restrictions on candidates for judicial offices as set forth in Exhibit 2.

36. In that same 2006 general election for Ohio Secretary of State, Plaintiff carried a majority of the votes in Columbiana County, with her political party designation after her name on the general election ballot.

37. In the 2020 general election for her current seat on the Supreme Court of Ohio, Plaintiff won her election in Columbiana County, without a political party designation after her name on the general election ballot, despite the Columbiana County electorate and most of the state voting for the former President, who is a member of a different political party than Plaintiff.

38. In 2020, which was a presidential election year and in which a majority of Ohio's voters voted for a Presidential candidate not of the same political party as Plaintiff, Plaintiff appeared on the ballot as a statewide nonpartisan candidate for justice of the Supreme Court of Ohio and received more votes than the Presidential candidate of her own party and won her election to the Supreme Court of Ohio by a greater percentage statewide than the former President in the State of Ohio, Plaintiff having received a majority of votes in 40 counties as set forth in **Exhibit 4.**

39. With the enactment of S.B. 80 and its requirement that Ohio appellate judicial candidates such as Plaintiff be identified on the ballot by political party affiliation and mandating a change in the ballot order of candidate offices throughout the state, combined with the already existing restrictions set forth in Exhibit 2 and others contained in the law and rules of conduct for Ohio's judicial candidates, Plaintiff lost the election for the office of chief justice in Columbiana County by a ratio significantly different from the ratio she had won it in 2020 just two years earlier; overall, Plaintiff won only 18 counties in Ohio in 2022, despite having prevailed in 40 counties just 2 years previously as a nonpartisan candidate not having a political party designation next to her name on the general election ballot.

40. Plaintiff seeks the relief of this court relative to her candidacy in the 2026 election, whether she becomes a candidate for reelection or becomes a candidate for a partisan, non-judicial office.

### Count One: *42 U.S.C. § 1983*

41. Paragraphs 1-40 are re-alleged and incorporated herein as if fully rewritten herein.

42. The actions of the Defendants as set forth herein are under color of law, and are in violation of Plaintiff's rights under the First, Fifth, and/or Fourteenth Amendments to the United States Constitution.

### Count Two: *Declaratory Judgment*

43. Paragraphs 1-42 are re-alleged and incorporated herein as if fully rewritten herein.

44. The averments of this Count One constitute a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq.*,  and Fed. R. Civ. P. 57.

45. There is a dispute and controversy between Plaintiffs and Defendants as to the rights, status, and other relationships between them, including, but not limited to, Plaintiff's rights under the First, Fifth and Fourteenth Amendments of the United States Constitution.

46. Plaintiff prays for declaratory judgment as follows:

46.1    That the Defendants named herein have interest in the outcome of this litigation that requires their joinder to this litigation pursuant to 28 U.S.C. §§ 22.02 and Fed.R.Civ.P. 19(a)(1)(A) and (B).

46.2    That certain restrictions on judicial candidates that conflict with permissible activities of partisan non-judicial candidates set forth in Exhibits 2 and 3 to the Plaintiff's Complaint as applied to candidates for appellate judicial office, such as the offices of judge of the courts of appeals, and justice or chief justice of the

Supreme Court of Ohio, who must bear political party designation next to their names on the general election ballot, constitute a deprivation of and/or an unreasonable restriction upon Plaintiff's freedom of speech guaranteed by the First Amendment to the United States Constitution, on their face, and as applied to Plaintiff, all in connection with campaigning for reelection to the Supreme Court of Ohio or to another partisan office that is not a judicial office in 2026;

46.3    That certain restrictions on judicial candidates that conflict with permissible activities of partisan non-judicial candidates set forth in Exhibits 2 and 3 to the Plaintiff's Complaint as applied to candidates for Ohio appellate judicial office, such as the offices of judge of the courts of appeals and justice or chief justice of the Supreme Court of Ohio, who must bear political party designation next to their names on the general election ballot, constitute a denial of procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution, on their face, and as applied to Plaintiff, all in connection with campaigning for reelection to the Supreme Court of Ohio or to another partisan office that is not a judicial office in 2026;

46.4    That, as a result of the violations of the United States Constitution, that this Court order the State of Ohio, including but not limited to the Defendants, to either not enforce the restrictions set forth in Exhibits 2 and 3 that conflict with permissible activities of partisan non-judicial candidates on candidates for offices of the state's courts of appeals and the Supreme Court of Ohio, like Plaintiff, or in the alternative, declare that the party designations required by S.B. 80 to be on the general election

13

ballot for such candidates are unconstitutional and may not be enforced by any of the Defendants;

46.5    That, while permitting candidates for other public offices, including, but not limited to, candidates for the office of Governor to run for and take office after the age of 70, but not judges, may be a vital state interest to protect the public confidence in the state's elected judges, S.B. 80's requiring appellate judicial candidates in Ohio to bear political party labels on the general election ballot next to their names denies them the equal protection of the law and can no longer withstand the requisite level of scrutiny, the rationale for the lines of the classification having been blurred by the enactment of S.B. 80; or, in the alternative

46.6    That this Court declare the respective rights and liabilities of the parties.

### Count Three: *Further Equitable Relief*

47. Paragraphs 1-46 are re-alleged and incorporated herein as if fully rewritten herein.

48. Plaintiff has no adequate remedy at law.

49. Plaintiff is entitled to temporary, preliminary, and permanent relief in equity to restrain violation of her rights and to carry out this Court's declarations sought above.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.  In regard to Count One, for declaratory and/or injunctive relief to remedy the violation of Plaintiff's rights, and pursuant to 48 U.S.C. § 1988, for an award of Plaintiff's reasonable attorney's fees and costs; and

B.  In regard to Count Two, for the declaratory judgments prayed for in paragraph 46 above, and pursuant to 28 U.S.C. § 2201 *et seq.*, for such further relief as it necessary or proper; and

C.  In regard to Count One, or Count Two, or Count Three, or any combination of them, relief including but not limited to, the following:

   (1) For an order restraining and enjoining the State of Ohio and the Defendants, from enforcing or ordering to be placed on the general election ballot in 2024 and thereafter the political party designations for judicial candidates for the offices of judge of the court of appeals of any district of this state and for candidates for justice and chief justice of the Supreme Court of Ohio, or alternatively,

   (2) For an order restraining and enjoining the State of Ohio and the Defendants from requiring compliance with certain restrictions on judicial candidates who must bear political party designation next to their names on the general election ballot, that conflict with permissible activities of partisan non-judicial candidates, which restrictions are set forth in Exhibit 2 to the Plaintiff's Complaint.

D.  For an award of costs, pre- and post-judgment interest, reasonable attorney fees, and expert witness fees; and

E.  Any and all such other relief as the Court may find just and proper.

Respectfully submitted,

/s/ Rick L. Brunner
Rick L. Brunner          (0012998)
E-Mail: rlb@brunnerlaw.com
Patrick M. Quinn          (0081692)
Email pmq@brunnerlaw.com

BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Telephone: (614) 241-5550
Facsimile: (614) 241-5551
*Attorneys for Plaintiff*

## **Declaration**

STATE OF OHIO                  :
                                         :
                                         :
COUNTY OF FRANKLIN        :            SS.

I, Jennifer Brunner, declare as follows:

I have read this Complaint and reviewed the Exhibits attached hereto, being labeled Exhibits 1 through 4, and I state as my own free act and deed and of my own accord that the Exhibits are true and correct copies of documents either prepared by me (Exhibits 1 and 3) or obtained by me (Exhibits 2 and 4) and that the matters averred herein are true and correct to the best of my knowledge, observation and understanding.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct. Executed on November 7, 2023

_____/s/ Jennifer Brunner_____
Jennifer Brunner