**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER BRUNNER,** | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | **Case No. 4:23-CV-2180** |
| **v.** | : | |
| | : | **JUDGE BENITA Y. PEARSON** |
| **FRANK LaROSE, et al.,** | : | |
| | : | |
| *Defendants,* | : | |

---

## MOTION TO DISMISS

---

Under Rule 12 of the Federal Rules of Civil Procedure, Defendants Ohio Secretary of State, Office of Disciplinary Counsel, and Board of Professional Conduct move this Court to dismiss Plaintiff Jennifer Brunner's complaint. The reasons for this motion are set forth in the attached memorandum.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*

ANN YACKSHAW (0090623)*
*Counsel of Record*
MICHAEL A. WALTON (0092201)
STEPHEN TABATOWSKI (0099175)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov

*Counsel for Defendants
Ohio Secretary of State, Office of Disciplinary
Counsel, and Board of Professional Conduct*

# TABLE OF CONTENTS

Table of Authorities .......................................................................................... iii

Memorandum in Support ..................................................................................... 1

Background and Statement of Issues .................................................................. 1

Law and Argument .............................................................................................. 3

    1.      This Court lacks subject-matter jurisdiction. ........................................... 3

    2.      Most of Justice Brunner's claims are barred by the Eleventh
            Amendment. ............................................................................................ 6

    3.      Justice Brunner's complaint fails to state a claim upon which relief
            can be granted. ....................................................................................... 11

          a.      Legal standard ............................................................................. 11

          b.      Justice Brunner's First Amendment claim fails as a matter
               of law because it is an unadorned, "the-defendant-
               unlawfully-harmed-me" accusation. ........................................... 11

          c.      Justice Brunner's procedural due process claim fails
               because she has established neither a protected property
               interest nor a deprivation of that interest. .................................. 14

          d.      Justice Brunner's substantive due process claim fails
               because she fails to identify any liberty interest. ....................... 15

          e.      Justice Brunner's equal protection claim fails because she
               does not challenge any disparate treatment. ............................... 17

          f.      The complaint's failure to set forth the statutes and rules
               challenged therein only compounds the other pleading
               errors. ......................................................................................... 18

          g.      Justice Brunner's claims for declaratory judgment and
               equitable relief fail for the same reasons as her substantive
               claims. ........................................................................................ 19

Conclusion .......................................................................................................... 20

Certificate Of Service ......................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 11, 14, 19

*Carey v. Wolnitzek*,
  614 F.3d 189 (6th Cir. 2010) ...................................................................... 14

*Carten v. Kent State Univ.*,
  282 F.3d 391 (6th Cir. 2002) ........................................................................ 7

*Courser v. Allard*,
  969 F.3d 604 (6th Cir. 2020) ...................................................................... 15

*Crosby v. Univ. of Ky.*,
  863 F.3d 545 (6th Cir. 2017) ...................................................................... 15

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ............................................................. 11, 17, 18

*D'Ambrosio v. Marino*,
  747 F.3d 378 (6th Cir. 2014) ...................................................................... 11

*Ohio ex rel. Desmond v. City of Lyndhurst*,
  No. 1:05-cv-1108, 2005 U.S. Dist. LEXIS 57319 (N.D. Ohio Jan. 6, 2006) .................... 20

*Doe v. Mich. Dep't of State Police*,
  490 F.3d 491 (6th Cir. 2007) ...................................................................... 16

*Doe v. Univ. of Mich.*,
  78 F.4th 929 (6th Cir. 2023) ........................................................................ 4

*Duncan v. Newby*,
  No. 5:17-cv-137, 2018 U.S. Dist. LEXIS 13869 (W.D. Ky. Jan. 29, 2018) ................... 16

*Freeman v. Vargas*,
  Case No. 5:11-cv-881, 2012 U.S. Dist. LEXIS 42973 (N.D. Ohio Mar. 28,
  2012) ................................................................................................ 13

*George-Khouri Family L.P. v. Ohio Dep't of Liquor Control*,
  No. 04-3782, 2005 U.S. App. LEXIS 9807 (6th Cir. 2005) ................................... 8

*Goryoka v. Quicken Loan, Inc.*,
  519 F. App'x 926 (6th Cir. 2013) ................................................................. 20

*Green Party of Tenn. v. Hargett*,
  767 F.3d 533 (6th Cir. 2014) ...................................................................... 12

**Cases**                                                                        **Page(s)**

*Green Party of Tenn. v. Hargett*,
    791 F.3d 684 (6th Cir. 2015) ........................................................................ 13

*Guertin v. Michigan*,
    912 F.3d 907 (6th Cir. 2019) ........................................................................ 16

*Herron v. FEC*,
    903 F. Supp. 2d 9 (D.D.C. 2012) .................................................................... 4

*Kanuszewski v. Mich. HHS*,
    927 F.3d 396 (6th Cir. 2019) .......................................................................... 8

*Kaplan v. Univ. of Louisville*,
    10 F.4th 569 (6th Cir. 2021) ........................................................................ 14

*Kolley v. Adult Protective Servs.*,
    786 F. Supp. 2d 1277 (E.D. Mich. 2011) ...................................................... 16

*Kowall v. Benson*,
    18 F.4th 542 (6th Cir. 2021) ........................................................................ 13

*Kreipke v. Wayne State Univ.*,
    807 F.3d 768 (6th Cir. 2015) ................................................................ 11, 14

*Law Offices of Christopher S. Lucas & Assocs. v. Disciplinary Bd. Of the*
    *Supreme Court*,
    320 F. Supp. 2d 291 (M.D. Pa. 2004) ............................................................ 6

*Libertarian Party of Ohio v. Husted*,
    751 F.3d 403 (6th Cir. 2014) ........................................................................ 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................... 4, 5, 6

*McConnell v. FEC*,
    540 U.S. 93 (2003) .......................................................................................... 4

*McCormick v. Miami Univ.*,
    693 F.3d 654 (6th Cir. 2012) .......................................................................... 6

*Miller v. City of Wickliffe*,
    852 F.3d 497 (6th Cir. 2017) .......................................................................... 4

**Cases**                                                                                    **Page(s)**

*Mills v. Barnard*,
    869 F.3d 473 (6th Cir. 2017) ........................................................................... 11

*Murray v. United States Dep't of Treasury*,
    681 F.3d 744 (6th Cir. 2012) ............................................................................. 3

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................... 4, 5

*Renne v. Geary*,
    501 U.S. 312 (1991) ......................................................................................... 4

*S&M Brands, Inc. v. Cooper*,
    527 F.3d 500 (6th Cir. 2008) ............................................................................. 6

*Saqr v. Univ. of Cincinnati*,
    No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394 (S.D. Ohio Sept. 8, 2020) ...................... 7

*Susan B. Anthony List v. Driehaus*,
    814 F.3d 466 (6th Cir. 2016) ......................................................................... 12, 13

*Top Flight Entm't, Ltd. v. Schuette*,
    729 F.3d 623 (6th Cir. 2013) ............................................................................. 7

*Wolfel v. Morris*,
    972 F.2d 712 (6th Cir. 1992) ............................................................................. 7

*Ex parte Young*,
    209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ...................................... *passim*

**Statutes**                                                                                 **Page(s)**

42 U.S.C. § 1983 ............................................................................................. 8

Ohio Rev. Code § 3501.01 ............................................................................... 13

Ohio Rev. Code §§ 3501.01, 3505.03, 3505.04, and 3513.257 ............................... 13

Ohio Rev. Code § 3501.01(J) .............................................................................. 1

Ohio Rev. Code § 3505.03(F) .............................................................................. 1

Ohio Rev. Code § 3505.04 .................................................................................. 1

**Other Authorities**                                                                        **Page(s)**

Gov. Jud. R.II(1) ................................................................................................ 9

**Other Authorities**                                                                              **Page(s)**

Gov. Jud. R.II(2) .......................................................................................................... 9

Gov. Jud. R. II(4)(B)(3) ............................................................................................... 10

Gov. Jud. R. II(6) ..................................................................................................... 9, 10

Jud. Cond. Rule 4 .......................................................................................................... 1

Jud. Cond. Rule 4.1-4.6 ................................................................................................ 2

Jud. Cond. Rule 4.5 ................................................................................................... 2, 5

## MEMORANDUM IN SUPPORT

## BACKGROUND AND STATEMENT OF ISSUES

Plaintiff Jennifer Brunner ran for justice of the Supreme Court of Ohio in 2020 and won. Compl. ¶¶ 37-38. In 2020, general elections for all judicial positions in Ohio were nonpartisan. That is, judicial candidates were listed on the general election ballot without party affiliation.

In 2021, the General Assembly enacted Senate Bill 80, which partially eliminated nonpartisan judicial general elections in Ohio. Specifically, the bill excluded from the definition of "nonpartisan candidates" the offices of chief justice of the Supreme Court of Ohio, justice of the Supreme Court of Ohio, and appellate court judge. Compl. ¶ 14; *see also* Ohio Rev. Code § 3501.01(J). Under S.B. 80, races for these positions are partisan and candidates' party affiliations are listed on the general election ballot. Ohio Rev. Code § 3505.03(F). Elections for common pleas court, municipal court, and county court remain nonpartisan. Ohio Rev. Code § 3505.04.

After S.B. 80's enactment, Justice Brunner ran for chief justice of the Supreme Court of Ohio in 2022 and lost. Justice Brunner appears to blame S.B. 80, at least in part, for her loss. By way of example, she notes that she received a majority of votes in Columbiana County in her nonpartisan election for supreme court justice in 2020 but failed to do so in 2022 as a partisan candidate. Compl. ¶¶ 37-39.

In her 2020 and 2022 campaigns, Justice Brunner, like all judicial candidates, had to comply with Ohio's Code of Judicial Conduct. Compl. ¶¶ 9-11, 23; Jud. Cond. Rule Application ("This code applies to all fulltime judges. . . . Canon 4 applies to judicial candidates."). The Code of Judicial Conduct establishes standards for the ethical conduct of judges and judicial candidates. Jud. Cond. Rule Preamble. Included among these standards is Canon 4, which prohibits a judge or judicial candidate from "engag[ing] in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary." Jud. Cond. Rule 4. Six subparts expand

1

upon this general rule, prohibiting certain types of campaigning, fundraising, and political speech in a judicial campaign. *See generally* Jud. Cond. Rule 4.1-4.6. Judges and judicial candidates are subject to discipline for violations of Canon 4. The Rules for the Government of the Judiciary set forth the relevant disciplinary procedures. *See generally* Gov. Jud. R. II, *available at* https://www.supremecourt.ohio.gov/docs/LegalResources/Rules/government/GOVJUD.pdf.

The Supreme Court of Ohio, which adopts rules for the conduct of attorneys and judges in Ohio, did not amend the Code of Judicial Conduct in response to S.B. 80's enactment. As a result, partisan candidates for chief justice of the Supreme Court of Ohio, justice of the Supreme Court of Ohio, and appellate judge must continue to comply with Canon 4 of the Code of Judicial Conduct, including its prohibitions on certain types of campaigning, fundraising, and political speech. And violations of Canon 4 continue to be subject to the disciplinary procedures set forth in Rule II of the Rules for the Government of the Judiciary.

Justice Brunner is currently mulling another campaign when her term as justice of the Supreme Court of Ohio expires on January 1, 2027. Compl. ¶ 20. She alleges that she may run for reelection or seek nonjudicial office. *Id*. ¶¶ 20-21. She has not yet decided which, if any, office she will seek in a future election. But should she choose to run for reelection, S.B. 80 will require her party affiliation to appear on the ballot, and she must continue to comply with the Code of Judicial Conduct's rules for judicial candidates. *Id*. ¶ 23. Should she choose to seek nonjudicial office, the Code of Judicial Conduct first requires her resignation from the Supreme Court of Ohio. *Id*. ¶ 22; Jud. Cond. Rule 4.5.

Looking ahead at her options for future campaigns, Justice Brunner sued, claiming that S.B. 80 and the Code of Judicial Conduct violate her constitutional rights. Her three-count complaint names Ohio Secretary of State Frank LaRose, the Office of Disciplinary Counsel, and

2

the Board of Professional Conduct as defendants. Count I alleges that Defendants "are in violation of Plaintiff's rights under the First, Fifth, and/or Fourteenth Amendments to the United States Constitution." Compl. ¶ 42. Count II seeks a declaratory judgment as to "Plaintiff's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution." Compl. ¶ 43. More specifically, Justice Brunner seeks a declaration that "certain restrictions on judicial candidates that conflict with permissible activities of partisan non-judicial candidates"[1] violate her First Amendment rights and deny her procedural and substantive due process. Compl. ¶¶ 46.2, 46.3. She also seeks a declaration that S.B. 80 denies her equal protection. Compl. ¶ 46.5. Count III seeks equitable relief. Compl. ¶ 49.

Defendants move to dismiss Justice Brunner's complaint. First, Justice Brunner lacks standing, and her claims are not ripe, depriving this Court of subject-matter jurisdiction. Second, all claims against the Office of Disciplinary Counsel and Board of Professional Conduct are barred by the Eleventh Amendment. And third, Justice Brunner's complaint fails to state any claim upon which relief can be granted.

## LAW AND ARGUMENT

### 1. This Court lacks subject-matter jurisdiction.

The jurisdiction of federal courts extends only to cases or controversies under Article III. And unless a plaintiff has standing to sue, no Article III case or controversy exists. *Murray v. United States Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989)). To satisfy Article III standing, a plaintiff must show a concrete and

---

[1] As explained more fully in Section 3.f *infra*, Justice Brunner does not specifically identify the portions of the Code of Judicial Conduct that she challenges in this action. Rather, she submits "an illustrative chart of significant differences between the requirements for and restrictions upon candidates for all judicial offices in the State of Ohio versus candidates for any other [partisan] office in the State of Ohio." Compl. ¶ 18.

particularized injury-in-fact that is fairly traceable to the defendant's actions and that is likely to be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. at 561 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

Article III's case-or-controversy requirement also demands a *live* dispute: "[j]usticiability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991). A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Doe v. Univ. of Mich.*, 78 F.4th 929, 942 (6th Cir. 2023). In pre-enforcement actions, the line between standing and ripeness is often no line at all. *Miller v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017). Both standing and ripeness center around whether the plaintiff suffered an injury-in-fact. *Doe*, 78 F.4th at 942. In order to supply standing, "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quoting *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969)).

Conditional allegations of uncertain future plans belong to the realm of conjecture and do not confer Article III standing. For example, in *McConnell v. FEC,* 540 U.S. 93 (2003), Senator McConnell brought a constitutional challenge to a portion of the Bipartisan Campaign Reform Act that would not affect his reelection campaign for several years. The Supreme Court found that "[t]his alleged injury in fact is too remote temporally to satisfy Article III standing." *Id*. at 226. In reaching this conclusion, the Court noted that "[a] threatened injury must be *certainly impending* to constitute injury in fact." *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149 (1990)) (emphasis *sic*.). Likewise, a candidate who merely *contemplated* a run for Congress had no standing to challenge FEC disclosure requirements. *Herron v. FEC,* 903 F. Supp. 2d 9, 14 (D.D.C. 2012).

4

Here, Justice Brunner asks this Court to either invalidate (1) the Code of Judicial Conduct's restrictions on the campaign activities of judicial candidates, or (2) the classification of Supreme Court justices as partisan candidates as required by S.B. 80. Compl. at Prayer for Relief. But Justice Brunner offers only uncertain allegations that these statutes and rules *might* apply to her in the future. Justice Brunner alleges that she "must decide whether to run for reelection … or to run for a nonjudicial office" by mid- to late-2025, when activities for reelection would begin. Compl. ¶ 20. Put simply, Justice Brunner alleges she has not yet decided whether to seek reelection or to seek election to a nonjudicial office. And if she seeks nonjudicial office, she must first resign as justice of the Supreme Court of Ohio. *Id.* ¶ 26; Jud. Cond. Rule 4.5. In other words, she may choose to run for an office subject to neither the Code of Judicial Conduct nor S.B. 80's party-designation requirement for appellate and Supreme Court candidates—the very provisions from which she seeks relief. Compl. ¶¶ 20, 26, 46. Whether she faces any injury resulting from the provisions she challenges depends upon whether she chooses to run for reelection to the Supreme Court of Ohio. Her own allegations make clear that whether she will do so remains up in the air. *See id*.

To be sure, it is generally true that if "the plaintiff is himself an object of the [government] action . . . at issue . . . there is ordinarily little question that the action . . . has caused him injury." *Lujan v. Defenders of Wildlife*, 119 L. Ed. 2d 351, 112 S. Ct. 2130, 2137 (1992). But, here, Justice Brunner has not even alleged that she will be an object of the provisions she challenges because she concedes she may not run for judicial office. Compl. ¶¶ 21, 26. In other words, Justice Brunner's conditional allegations regarding her next campaign make any purported injury-in-fact "conjectural and hypothetical" rather than "real and immediate." *O'Shea*, 414 U.S. at 494. Justice Brunner has not alleged an injury-in-fact that is either sufficient to confer standing or ripe for

review.[2] As a result, this Court lacks subject-matter jurisdiction over Justice Brunner's claims, and her Complaint should be dismissed.

### 2. Most of Justice Brunner's claims are barred by the Eleventh Amendment.

The Eleventh Amendment bars Justice Brunner's claims against the Office of Disciplinary Counsel and the Board of Professional Conduct. The Eleventh Amendment acts as a jurisdictional bar to "all suits, whether for injunctive, declaratory or monetary relief" brought by individuals against a state. *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quotations omitted). The Office of Disciplinary Counsel and the Board of Professional Conduct—as entities created under the Supreme Court of Ohio—are arms of the State for purposes of Eleventh Amendment immunity. *See Law Offices of Christopher S. Lucas & Assocs. v. Disciplinary Bd. Of the Supreme Court*, 320 F. Supp. 2d 291, 295 (M.D. Pa. 2004) ("[T]he Disciplinary Board, an agency of the Supreme Court of Pennsylvania . . . is an arm of the state which cannot be sued."). Accordingly, the Eleventh Amendment prohibits all claims brought against the Defendants in their official capacities unless one of the exceptions to immunity applies.

"There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), ¶14, applies; and (c) when Congress has properly abrogated a State's immunity." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). But the State of Ohio has not waived its Eleventh Amendment immunity, and Congress has not expressed its intent to

---

[2] Justice Brunner lacks standing to challenge Canon 4 of the Code of Judicial Conduct for another reason addressed in more detail in Section 2 *infra*: her purported injuries are not fairly traceable to any of the named Defendants as none of them have any role in the enforcement of those provisions. For the same reason, she also cannot establish that any injury-in-fact resulting from the Code of Judicial Conduct is likely to be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

abrogate it. *See Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992) ("Congress did not disturb the states' eleventh amendment immunity when it passed § 1983"). That leaves the *Ex parte Young* exception, which applies to "claims for injunctive relief against individual state officials in their official capacities." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002). "In order to qualify under *Ex parte Young*, such an action must seek prospective relief to end a continuing violation of federal law." *Id.* (citing *MacDonald v. Vill. Of Northport, Mich.*, 164 F.3d 964, 970-72 (6th Cir. 1999)).

Merely seeking injunctive relief does not suffice to claim the *Ex parte Young* exception. Rather, the plaintiff must plead facts showing that "the defendant-state officials [] have 'some connection' to that ongoing violation." *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2020 U.S. Dist. LEXIS 163394, at *20 (S.D. Ohio Sept. 8, 2020) (citing *Ex parte Young*, 209 U.S. at 157-59). In other words, "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (citing *Floyd v. County. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012)). Courts have found that this requirement is closely related to Article III standing requirements – injury-in-fact, causation, and redressability. *Saqr*, 2020 U.S. Dist. LEXIS 163394 at *22 (citing *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015), and *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004))). "Consistent with that notion, showing 'connection' under *Ex parte Young* requires plaintiffs to allege facts showing both (1) that the state official played some role in causing the ongoing harm of which plaintiff complains (or that there is a reasonable prospect that the official will cause imminent future harm to the plaintiff), and (2) that an injunction against that official will be likely to provide redress." *Id.*

Applying these principles here, Justice Brunner has not overcome the Eleventh Amendment immunity of Disciplinary Counsel and the Board for several reasons. As an initial matter, the *Ex parte Young* exception applies to state *officials*, not state *entities*. *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 416 (6th Cir. 2019). The Office of Disciplinary Counsel and Board of Professional Conduct, as state entities, are immune from suit for prospective injunctive relief under *Ex parte Young*. *Id.* [3]

But even if Justice Brunner had named state officials in the Office of Disciplinary Counsel or the Board of Professional Conduct as defendants, the *Ex parte Young* exception still would not apply. Justice Brunner alleges that Disciplinary Counsel and the Board prosecute and adjudicate violations of the Code of Judicial Conduct through the procedures set forth in the Rules for the Government of the Judiciary. Compl. ¶ 11. This is true, but incomplete. A complete reading of the judicial-conduct rules shows that neither Disciplinary Counsel nor the Board has any enforcement authority over the rules at issue in Justice Brunner's complaint.

Allegations of misconduct by judicial candidates are governed by Rule II of the Rules for the Government of the Judiciary of Ohio. Generally, the Board receives evidence, makes findings, and submits recommendations to the Supreme Court of Ohio "concerning complaints of

---

[3] Justice Brunner brings her First Amendment, due process, and equal protection claims under 42 U.S.C. § 1983. Compl. ¶ 42. To bring any 42 U.S.C. § 1983 claim, a plaintiff must sue a state official, rather than the state agency that the official represents. *See, e.g.*, *Kanuszewski*, 927 F.3d at 417, n.11 ("Another reason that claims against the state and its agencies cannot be maintained under § 1983 is that these entities are not suable 'persons' for purposes of § 1983."). Neither the Office of Disciplinary Counsel nor the Board of Professional Conduct is a state official. Even if Justice Brunner could overcome their Eleventh Amendment immunity, she cannot assert claims against them under § 1983. Nor can Justice Brunner circumvent Eleventh Amendment immunity by asserting a claim for declaratory judgment. *George-Khouri Family L.P. v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 U.S. App. LEXIS 9807, at *8 (6th Cir. 2005).

misconduct that are alleged to have been committed by a . . . candidate for judicial office." Ohio Gov. Jud. R.II(1). Similarly, Disciplinary Counsel has authority to investigate grievances and prosecute formal complaints before the Board when a grievance alleges "misconduct of a . . . candidate for judicial office." Ohio Gov. Jud. R.II(2). But these general rules are modified by Section 6, which applies to grievances alleging violations of Canon 4 of the Code of Judicial Conduct during a judicial campaign for the Supreme Court of Ohio. Ohio Gov. Jud. R. II(6) ("A grievance that alleges a violation by a judicial candidate for the Supreme Court of Canon 4 of the Code of Judicial Conduct during the course of a campaign for judicial office shall be brought, conducted, and disposed of in accordance with this section.").

Under the Section 6 process, grievances alleging Canon 4 violations "shall be filed with the director of the Board of Professional Conduct." Ohio Gov. Jud. R. II(6)(A)(1). The director "shall promptly forward the grievance . . . to the Chief Justice of the Court of Appeals." *Id.* The Chief Justice of the Court of Appeals reviews the grievance. From there, the grievance proceeds to a three-member review panel for a probable-cause determination, Ohio Gov. Jud. R. II(6)(A)(2), a hearing panel, Ohio Gov. Jud. R. II(6)(B), and finally, a five-judge commission to review the hearing panel's report and recommendation. Ohio Gov. Jud. R. II(6)(C). The review panel, hearing panel, and five-judge commission are all comprised of Ohio trial and appellate judges.

Neither Disciplinary Counsel nor the Board plays any role in the consideration, investigation, prosecution, or adjudication of a grievance or complaint involving a candidate for the Supreme Court. For example, the grievant plays the role of relator/prosecutor, which is usually Disciplinary Counsel in other disciplinary proceedings. And if the grievant fails to prosecute the complaint, the Chief Justice of the Court of Appeals appoints a "special disciplinary counsel" to serve as the relator. Ohio Gov. Jud. R. II(6)(E). A "special disciplinary counsel" "shall not be an

employee or appointee of the Supreme Court," which affirmatively excludes Disciplinary Counsel from participating in Section 6 grievances. Ohio Gov. Jud. R. II(4)(B)(3). Similarly, the Board, as an entity, is not involved at all in proceedings under Section 6. *See generally* Ohio Gov. Jud. R. II(6). Although the Board's Director possesses some clerical and ministerial duties, including receiving the grievance and forwarding it to the Chief Justice of the Court of Appeals, the Director was not named as a defendant in this case.

Justice Brunner's complaint appears to target *only* Canon 4 of the Code of Judicial Conduct. As set forth more fully in Section 3.f below, Justice Brunner does not specifically identify the portions of the Code of Judicial Conduct she challenges in this complaint. Rather, she supplies an exhibit purporting to detail the major differences between campaign rules for judicial and non-judicial candidates. *See* Compl. Ex. 3. All of the portions of the Code of Judicial Conduct included in Exhibit 3 fall under Canon 4 of the Code of Judicial Conduct. *See id*. So, if Justice Brunner were found to violate any of the judicial-conduct rules she included in Exhibit 3, the grievance action would proceed under Section 6. As set forth above, neither Disciplinary Counsel nor the Board have any connection to enforcement proceedings under Section 6. [4]

Disciplinary Counsel and the Board do not have any enforcement connection to the challenged provisions of the Code of Judicial Conduct. Nor do they have, and Justice Brunner has not alleged that they have, any enforcement authority over the elections provisions in S.B. 80. Simply put, they cannot enforce any of the challenged rules or statutes against her, so an injunction against Disciplinary Counsel and the Board would be meaningless. Because Justice Brunner has

---

[4] She also fails to allege an *Ex parte Young* claim against Secretary LaRose as it relates to the challenged provisions of the Code of Judicial Conduct because Secretary LaRose lacks any connection to or authority over the Code of Judicial Conduct. Accordingly, Secretary LaRose is entitled to immunity as to that claim for the same reasoning as applied to the other Defendants.

not sufficiently alleged *Ex parte Young* claims against them, Disciplinary Counsel and the Board are entitled to Eleventh Amendment immunity as to all claims brought against them.[5]

### 3. Justice Brunner's complaint fails to state a claim upon which relief can be granted.

#### a. Legal standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, "raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017). A plausible claim includes enough factual content such that the court may reasonably infer that the defendant is liable for the misconduct alleged. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

Relevant here, a complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015). Factual allegations must be accepted as true, but legal conclusions need not be. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

#### b. Justice Brunner's First Amendment claim fails as a matter of law because it is an unadorned, "the-defendant-unlawfully-harmed-me" accusation.

---

[5] Although Justice Brunner has sufficiently alleged the *Ex parte Young* exception against Secretary LaRose as to her challenge to specific provisions contained in S.B. 80, those claims fail on the merits as explained below.

Justice Brunner's complaint explains neither the factual nor legal basis for her First Amendment claim, and the claim therefore cannot survive a motion to dismiss. The First Amendment prohibits States from enforcing laws abridging the freedom of speech. This general prohibition has spawned many types of First Amendment claims, including overbreadth claims, retaliation claims, prior restraint, and more. Even in the narrow context of First Amendment challenges to election and campaign-finance laws, numerous legal theories and frameworks exist. For example, the First Amendment prohibits election laws that are overbroad. *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 413 (6th Cir. 2014) (addressing an overbreadth challenge to Ohio's paid-circulator statute). It invalidates laws that unconstitutionally burden access to the ballot. *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014) (noting that severe ballot-access burdens will fail constitutional review, but minimally burdensome regulations will pass constitutional muster if they further important regulatory interests). And the First Amendment disallows campaign laws that regulate speech by content, unless they are narrowly tailored. *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) ("Ohio's political false-statement laws only govern speech about political candidates during an election. Thus, they are content-based restrictions focused on a specific subject matter and are subject to strict scrutiny.").

Unsurprisingly, each of these First Amendment claims follows a specific legal framework with different elements for relief. For example, an overbreadth claim determines whether a statute's impermissible applications are substantial when compared against the statute's plainly legitimate sweep. *Libertarian Party of Ohio*, 751 F.3d at 413. A claim that a law unconstitutionally burdens a candidate's access to the ballot triggers the flexible *Anderson-Burdick* analysis, where the level of scrutiny depends on the burden the law imposes. *Green Party of Tenn.*, 767 F.3d at

12

546. And a content-based restriction on political speech survives review only if it is narrowly tailored to serve a compelling state interest. *Driehaus*, 814 F.3d at 473.

Because a First Amendment claim could proceed under several different legal frameworks, a plaintiff may not cite generally to the First Amendment and call it a day. *Freeman v. Vargas*, Case No. 5:11-cv-881, 2012 U.S. Dist. LEXIS 42973, at *12 (N.D. Ohio Mar. 28, 2012). A plaintiff's failure "to identify a particular legal theory in [the] complaint places an unfair burden on defendants to speculate about the potential claims that a plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action." *Id.* at *13. Dismissal is appropriate under such circumstances.

Here, Justice Brunner has done no more than generally refer to the First Amendment. She does not situate her complaint within a specific First Amendment legal framework, and worse, her complaint implicates and conflates aspects of several different First Amendment legal analyses. For example, Justice Brunner challenges the constitutionality of S.B. 80, which amended Ohio Rev. Code §§ 3501.01, 3505.03, 3505.04, and 3513.257. Compl. ¶ 14. Other than Ohio Rev. Code § 3501.01, which is a definitions statute, these statutes all regulate access to and the form of the ballot. Generally speaking, ballot-access and ballot-ordering cases proceed under the flexible *Anderson-Burdick* framework. *Kowall v. Benson*, 18 F.4th 542, 546 (6th Cir. 2021) (ballot access); *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015) (ballot ordering). But Justice Brunner's complaint says nothing at all about ballot access, *Anderson-Burdick*, or anything else that would put Defendants on notice that she is challenging S.B. 80 as an unconstitutional restriction on her ability to access the ballot.

Justice Brunner also notes that Canon 4 of the Code of Judicial Conduct prohibits certain kinds of campaigning when a candidate seeks judicial office. Compl. ¶ 10. Generally speaking,

restrictions on political speech challenged under the First Amendment are analyzed under strict scrutiny. *Carey v. Wolnitzek*, 614 F.3d 189, 198-200 (6th Cir. 2010) (applying strict scrutiny to First Amendment challenge to Kentucky judicial campaign canons). But again, Justice Brunner's complaint says nothing about content-based restrictions on speech, strict scrutiny, or anything else that would put Defendants on notice that Justice Brunner could be challenging the Code of Judicial Conduct as a content-based restriction on speech.

All Justice Brunner gives the Defendants are bare references to the Defendants' violation of the First Amendment. *See* Compl. ¶¶ 42, 46.2. Justice Brunner's complaint places an unfair burden on Defendants to speculate about the potential First Amendment claims at issue. Her unadorned, the-defendants-unlawfully-harmed-me accusation does not satisfy federal pleading standards. *Twombly*, 550 U.S. at 555. Accordingly, her First Amendment claim should be dismissed.

> c. **Justice Brunner's procedural due process claim fails because she has established neither a protected property interest nor a deprivation of that interest.**

To state a claim for a violation of procedural due process, Justice Brunner must plead a property interest protected by the due process clause, a deprivation of this property interest, and that the State did not give her adequate procedural rights to protect against an erroneous deprivation. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). And to survive a motion to dismiss a procedural due process claim under Rule 12(b)(6), the complaint must include direct or inferential allegations on *all* these elements. *Kreipke*, 807 F.3d at 774.

Here, Justice Brunner fails to include allegations on several material elements necessary to sustain a procedural due process claim. First, Justice Brunner fails to identify the property interest protected by the due process clause. Defendants are simply left to guess at the property interest

implicated by Justice Brunner's claim. Does it stem from a state statute, a formal contract, an implied contract, or some other source? *See Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017) (noting that "a property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances"). Is the property interest the right to run for political office? A right to run for office without political affiliation? A right to conduct campaign activities uninhibited by the Code of Judicial Conduct? The complaint offers no clue. By failing to plead her property interest, Justice Brunner's procedural due process claim never gets off the ground.

Second, while Justice Brunner generally alleges that the challenged laws deprived her of procedural due process, *see* Compl. ¶ 46.3, she omits any allegation that the State lacks adequate procedural rights to protect against an erroneous deprivation. Nowhere does Justice Brunner describe the procedural rights associated with S.B. 80 or the Code of Judicial Conduct, much less plead that these procedural rights insufficiently protect against erroneous deprivations of property interests. Even a cursory look at the Code of Judicial Conduct and the Rules for the Government of the Judiciary reveals robust procedural protections for suspected violations of the Code of Judicial Conduct. *See generally* Gov. Jud. R. II (setting forth the complaint, hearing, and appeal procedure for violations of the Code of Judicial Conduct by candidates for supreme court justice). To state a viable procedural due process claim, Justice Brunner must include at least some allegation that her procedural rights are constitutionally insufficient. Her silence on this material element of a procedural due process claim further dooms this cause of action. Justice Brunner's claim for deprivation of procedural due process must be dismissed.

### d. Justice Brunner's substantive due process claim fails because she fails to identify any liberty interest.

To state a claim for a violation of her substantive due process rights, Justice Brunner must "plausibly allege a conscience-shocking deprivation of a liberty interest, described with particular

15

care." *Courser v. Allard*, 969 F.3d 604, 616 (6th Cir. 2020). To plead a cognizable violation of substantive due process, a "careful description of the asserted fundamental liberty interest is essential." *Guertin v. Michigan*, 912 F.3d 907, 918 (6th Cir. 2019). A complaint containing no more than a conclusory allegation that a defendant's conduct violated the plaintiff's substantive due process rights fails to plausibly allege a substantive due process violation under federal pleading standards. *See, e.g.*, *Kolley v. Adult Protective Servs.*, 786 F. Supp. 2d 1277, 1294 (E.D. Mich. 2011) (finding "lone allegation" that defendants violated plaintiff's substantive due process right to familial integrity insufficient to state a claim for relief); *Duncan v. Newby*, No. 5:17-cv-137, 2018 U.S. Dist. LEXIS 13869, at *26 (W.D. Ky. Jan. 29, 2018) (dismissing a substantive due process claim when plaintiff "provides no depth with respect to how he possessed a fundamental right, what that fundamental right was or is, or how any governmental actions taken by Defendants shock the conscience, as required under the substantive due process clause").

Here, Justice Brunner fails to identify the fundamental liberty interest that is the subject of her substantive due process claim. She merely alleges that "certain restrictions on judicial candidates that conflict with permissible activities of partisan non-judicial candidates . . . constitute a denial of . . . substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution." Compl. ¶ 46.3. Again, the complaint leaves Defendants to guess at the liberty interest upon which they have intruded. Fundamental rights protected by the substantive due process clause include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, and to bodily integrity. *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007). Justice Brunner's complaint implicates none of these already-recognized fundamental liberty interests, and she fails to assert a new one. Accordingly, her substantive due process claim fails.

16

e. **Justice Brunner's equal protection claim fails because she does not challenge any disparate treatment.**

To state an equal protection claim, Justice Brunner must plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Disparate treatment is the "threshold element of an equal protection claim." *Id*. A complaint lacking any plausible allegation that similarly situated individuals have been treated differently than the plaintiff will fail as a matter of law. *See id*. (dismissing an equal protection claim with conclusory allegations of disparate treatment).

Justice Brunner's equal protection claim fails as a matter of law. Her complaint fails to put Defendants on notice of the disparate treatment she challenges. In Count I, she alleges that Defendants' actions are "in violation of Plaintiff's rights under the First, Fifth, and/or Fourteenth Amendments." Compl. ¶ 42. No disparate treatment is identified. In Count II, she alleges that "S.B. 80's requiring appellate judicial candidates in Ohio to bear political party labels on the general election ballot next to their names denies them the equal protection of the law." Compl. ¶ 46.5. But the other group of individuals identified by Justice Brunner in that same paragraph are "candidates for other public offices, including but not limited to, candidates for the office of Governor." *Id*. S.B. 80 treats this group of individuals *the same as* appellate judicial candidates: both groups of individuals must bear political party labels on the general election ballot. *See id.* Again, Justice Brunner fails to plead disparate treatment.

Elsewhere, Plaintiffs' complaint notes that candidates for the courts of common pleas are treated differently than candidates for the higher courts. *See, e.g.*, Compl. ¶ 24. But neither Count I nor Count II appears to challenge this differential treatment. *See* Compl. ¶¶ 42, 46.5. And even

17

if the Court construed Count I or Count II to target the differential treatment of appellate judges vis-à-vis common pleas judges, Justice Brunner still fails to plead the other material element of an equal protection claim, i.e., that the differential treatment burdens a fundamental right, targets a suspect class, or has no rational basis. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379. Once again, the complaint leaves Defendants without a clear understanding of Justice Brunner's equal protection claim, and the claim must therefore be dismissed.

### f.  The complaint's failure to set forth the statutes and rules challenged therein only compounds the other pleading errors.

The pleading deficiencies identified in Sections 3.b through 3.e *supra*, standing alone, justify dismissal of Justice Brunner's complaint. But the failure to specify the challenged statutes and rules further obfuscates her already unclear complaint.

Justice Brunner argues that portions of the Code of Judicial Conduct are unconstitutional. But nowhere in Justice Brunner's complaint does she identify by name or number the provisions of the Code of Judicial Conduct she challenges. Rather, she incorporates by reference Exhibits 2 and 3 and states that the restrictions set forth in those exhibits "that conflict with permissible activities of partisan non-judicial candidates" are unconstitutional. *See* Compl. ¶¶ 46.2, 46.3, 46.4. Stated differently, Justice Brunner appears to challenge only those rules that appear in Exhibit 2 or 3 that conflict with the rules applicable to nonjudicial candidates. Far from clarifying the scope of Justice Brunner's complaint, Exhibits 2 and 3 further confuse.

Exhibit 2 is the entire Code of Judicial Conduct. Defendants, of course, cannot be expected to comb through the entire Code of Judicial Conduct, determine which provisions Justice Brunner believes "conflict with permissible activities of partisan non-judicial candidates" and offer a constitutional defense of those provisions. *See* Compl. ¶¶ 46.2, 46.3, 46.4. As the plaintiff, Justice

Brunner bears the burden of providing Defendants with fair notice of what her claims are and the grounds upon which they rest. *Twombly*, 550 U.S. at 555.

Exhibit 3 does not improve matters. It is a table created by Justice Brunner comparing certain campaign rules for judicial candidates to the campaign rules for nonjudicial candidates. While the table certainly highlights some key differences between campaign rules for judicial and nonjudicial candidates, Exhibit 3 is not limited to *conflicting* rules. Indeed, Exhibit 3 illustrates that some of the rules applicable to judicial candidates are the same as or similar to the rules for nonjudicial candidates. For example, the table notes that both judicial and nonjudicial candidates are subject to electioneering communication rules. Compl. Ex. 3 at 2. Both kinds of candidates must follow identification rules for political advertising. *Id*. at 3 (citing Ohio Rev. Code § 3517.20). And neither a judicial nor a nonjudicial candidate may imply that the candidate holds an office that the candidate does not currently hold. *Id*. at 6 (citing Jud. Cond. Rule 4.3(C) and Ohio Rev. Code § 3517.21(B)(1)). Simply put, the rules included in Exhibit 3 do not necessarily conflict. Exhibit 3 thus leaves Defendants in the untenable position of determining which rules in Exhibit 3 are swept into Justice Brunner's constitutional challenge because they conflict with each other. Under federal pleading standards, Justice Brunner must give Defendants fair notice of the rules and statutes challenged in her complaint, and she fails to do so. *Twombly*, 550 U.S. at 555.

### g. Justice Brunner's claims for declaratory judgment and equitable relief fail for the same reasons as her substantive claims.

Counts II and III of Justice Brunner's complaint seek declaratory and equitable relief. As to Count II, Justice Brunner seeks declaratory judgments that the challenged laws and judicial-conduct rules violate the First Amendment, procedural due process clause, substantive due process clause, and equal protection clause. Compl. ¶ 49. But as set forth above, Justice Brunner fails to state a claim that the challenged laws and rules violate any constitutional provision, so her

accompanying claim for declaratory judgment fails, too. *Ohio ex rel. Desmond v. City of Lyndhurst*, No. 1:05-cv-1108, 2005 U.S. Dist. LEXIS 57319, at *16-17 (N.D. Ohio Jan. 6, 2006) (dismissing declaratory judgment claim when the accompanying substantive claims were all dismissed). And as to Count III, equitable relief is a remedy, not a cause of action. *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013).

## CONCLUSION

For these reasons, Defendants request that this Court grant their motion to dismiss and dismiss Justice Brunner's complaint.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*

ANN YACKSHAW (0090623)*
*Counsel of Record*
MICHAEL A. WALTON (0092201)
STEPHEN TABATOWSKI (0099175)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Michael.Walton@OhioAGO.gov

*Counsel for Defendants*
*Ohio Secretary of State, Office of Disciplinary Counsel, Board of Professional Conduct*

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 8, 2024, the foregoing Motion to Dismiss was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the page limitations for unassigned cases.

I also certify that, pursuant to the Court's Case Management Plan, I submitted a written request to opposing counsel for dismissal on January 4, 2023, and opposing counsel declined to dismiss.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General