**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER BRUNNER, | ) | Case No. 4:23-cv-2180 |
| | ) | |
| Plaintiff, | ) | Judge Pearson |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAROSE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Rick L. Brunner        (0012998)
Patrick M. Quinn       (0081692)
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Tel:     (614) 241-5550
Fax:     (614) 241-5551
Email: rlb@brunnerlaw.com
        pmq@brunnerlaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     Introduction .................................................................................................. 1

II.    Statement of Facts ........................................................................................ 2

III.   Law & Argument .......................................................................................... 6

   a.   Justice Brunner's claims are ripe, and she has standing to pursue them. ........................... 6

   b.   Justice Brunner's claims against ODC and the Board are not barred by the Eleventh
        Amendment ................................................................................................ 10

   c.   The Complaint states a claim ......................................................................... 13

      i.  The Complaint states a claim that S.B. 80, by itself and in conjunction with Ohio Judicial
          Conduct Rule 4.1, violates Justice Brunner's First Amendment speech and association
          rights. ................................................................................................ 13

      ii. The Complaint states a claim that S.B. 80 is an arbitrary and impermissible classification
          which violates Equal Protection ..................................................................... 17

   d.   In the alternative, Justice Brunner should be granted leave to amend her complaint........ 20

IV.    Conclusion ................................................................................................ 21

i

## <u>Table of Authorities</u>

**Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ............... 6

*Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).................... 14, 15

*Ark Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558 (8th Cir. 1998) ............... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................................. 13

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 99 S.Ct. 2301,
    60 L.Ed.2d 895 (1979) ......................................................................................................... 7, 9

*Bachrach v. Secy. of Commonwealth*, 382 Mass. 268, 415 N.E.2d 832 (1981)........................... 14

*Bannister v. Knox Cty. Bd. of Edn.*, 49 F.4th 1000 (6th Cir. 2022) ............................................ 13

*Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017)........................................................................... 10

*Bowman v. U.S.*, 564 F.3d 765 (6th Cir. 2008)..................................................................... 18, 19

*Briggs v. Ohio Elections Com'n.*, 61 F.3d 487 (6th Cir. 1995) ..................................................... 9

*Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)........................ 14, 15

*Burson v. Freeman*, 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992)................................. 18

*Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010) ............................................................. *passim*

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 105 S.Ct. 3249,
    87 L.Ed.2d 313 (1985)............................................................................................................ 18

*Crawford v. U.S. Dept. of Treasury*, 868 F.3d 438 (6th Cir. 2017) .............................................. 9

*Crumpton v. Barry Cty. Jail Medical Staff*, No. 22-cv-1071, 2023 WL 6210824
    (W.D. Mich. Sept. 25, 2023) .................................................................................................. 10

*Daunt v. Benson*, 956 F.3d 396 (6th Cir. 2000)..................................................................... 14, 15

*Dibrell v. City of Knoxville*, 984 F.3d 1156 (6th Cir. 2021) ....................................................... 13

*Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018) ......................................................................10, 11

*Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 601 (6th Cir. 2002)............................................ 10

*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) .................................10, 11, 12

*Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022) ...................................................................... 17

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)........................................... 20

*Greater Cincinnati Coalition for the Homeless v. Cincinnati*, No. 08-cv-603,
    2010 WL 3448097 (S.D.Ohio July 7, 2010) ............................................................................ 7

*Holt v. Ohio*, No. 2-05-894, 2006 WL 8441982 (S.D.Ohio Sept. 27, 2006) ............................... 10

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557,
    115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) ............................................................................... 16

*Jackson v. Jamrog*, 411 F.3d 615 (6th Cir. 2005)...................................................................... 18

*Jones v. Jegley*, 947 F.3d 1100 (8th Cir. 2020) ........................................................................... 8

*Kesterson v. Kent State Univ.*, No. 16-cv-298, 2017 WL 995222
    (N.D.Ohio March 15, 2017)................................................................................................... 10

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming
    Control Bd.*, 172 F.3d 397 (6th Cir. 1999) ............................................................................ 18

*Lawrence v. Welch*, 531 F.3d 364 (6th Cir. 2008) ....................................................................... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ............... 6

*Marichi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, (2nd Cir. 1999) ........................... 7

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562,
    49 L.Ed.2d 520 (1976) ...................................................................................................... 18

*McNiel v. Community Probation Servs., LLC*, 945 F.3d 991, (6th Cir. 2019) .......................... 11

*Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ........................... 10

*N. Olmsted Chamber of Commerce v. City of N. Olmsted*, 86 F.Supp.2d 755
    (N.D.Ohio 2000) .............................................................................................................. 18

*National Rifle Assn. of America v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ................................. 8

*New Doe Child #1 v. Congress of the United States*, 891 F.3d 578 (6th Cir. 2018) ................... 16

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995) ...................... 7, 9

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) ..................................................................... 7, 9

*O'Toole v. O'Connor*, No. 15-cv-1446, 2016 WL 4394135 (Aug. 18, 2016) ............................. 10

*Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Brunner*,
    24 F.Supp.3d 680, 683 (S.D.Ohio 2014) ................................................................... 1, 3, 15, 19

*Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Brunner*,
    No. 10-cv-504, 2010 WL 11519482 (S.D.Ohio Aug. 19, 2010) ......................................... 1

*Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Husted*,
    814 F.3d 329 (6th Cir. 2016) ........................................................................... 1, 14, 15, 19

*Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016) ............................................... 15

*Pacific Gas & Electric Co. v. Public Utilities Comm'n of Cal.*, 415 U.S. 1,
    106 S.Ct. 903, 89 L.Ed.2d 1 (1986) ................................................................................. 16

*Platt v. Bd. of Commrs. on Grievances and Discipline of Ohio Supreme Court*,
    769 F.3d 447 (6th Cir. 2014) ................................................................................... *passim*

*Platt v. Bd. of Commrs. on Grievances and Discipline of Ohio Supreme Court*,
    894 F.3d 235 (6th Cir. 2018) ........................................................................................... 9

*Platt v. Bd. of Commrs. on Grievances*, No. 13-cv-435, 2017 WL 1177576
    (S.D. Ohio March 30, 2017) ............................................................................................ 7

*PR Diamonds, Inc. v. Chandler*, No. 02-3921, 91 Fed.Appx. 418, 443, 2004 WL 422726
    (6th Cir. March 3, 2004) ................................................................................................. 20

*Riddell v. Natl. Democratic Party*, 508 F.2d 770 (5th Cir. 1975) ............................................. 14

*Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992) ......................................................................... 14

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ................................................. 11

*S&M Brands, Inc. v. Cooper*, 527 F.3d 500 (6th Cir. 2008) ..................................................... 10

*Skinner v. Switzer*, 562 U.S. 521, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011) .............................. 13

*Smith v. Jones*, No. 13-cv-744, 2014 WL 12591694 (N.D.Ohio Sept. 24, 2014) ...................... 20

*State ex rel. Weinberger v. Miller*, 87 Ohio St. 12, 99 N.E. 1078 (1912) ..................................... 3

*Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ................................. 7

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S.Ct. 2334,
    189 L.Ed.2d 246 (2014) ............................................................................................ 6, 7, 8

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 135 S.Ct. 2239,
    192 L.Ed.2d 274 (2015) ................................................................................................. 16

*Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) ......................................... 18

ii

*Winter v. Wolnitzek*, 834 F.3d 681 (6th Cir. 2016) ............................................................ 6, 7, 8, 17

*Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) .................................. 16

*Yukech v. Cal. Transport, LLC*, No. 20-cv-5804, 2022 WL 15523495
    (S.D.Ohio Oct. 27, 2022) ......................................................................................... 20

## Statutes

2021 Ohio Laws File 32 (S.B. 80) ............................................................................. *passim*

Ohio Rev. Code § 3501.01(J) (2013) .......................................................................... 3, 4

Ohio Rev. Code § 3505.03 (2014) ................................................................................. 3

Ohio Rev. Code § 3505.03(F) ................................................................................... 2, 4

Ohio Rev. Code § 3505.03(C).................................................................................... 4

Ohio Rev. Code § 3505.04 (1981) ................................................................................. 3

Ohio Rev. Code § 3505.04 ..................................................................................... 2, 3, 4

Ohio Rev. Code § 3505.01(A)(1).................................................................................. 4

## Other Authorities

Maureen O'Connor, *A Proposal for Strengthening Judicial Elections* (May 2013)....................... 3

## Rules

Fed. R. Civ. P. 15(a)(2) ....................................................................................... 20

Ohio Gov. Jud. R. II(1) ...................................................................................... 5, 6

Ohio Gov. Jud. R. II(2)(B) ...................................................................................5, 11

Ohio Gov. Jud. R. II(4)(A) ...................................................................................... 5

Ohio Gov. Jud. R. II(4)(C)(2)(b)...............................................................................11

Ohio Gov. Jud. R. II(6) ..................................................................................... 6, 12

Ohio Gov. Jud. R. II(E)(1) ...................................................................................5, 11

Ohio Jud. Cond. Canon 4 .............................................................................5, 6, 11, 13

Ohio Jud. Cond. Rule 4.6(F)................................................................................. 5, 8

Ohio Jud. Cond. Rule. 4.1(A)(6)........................................................................... 12, 16

Ohio Jud. Cond. Rule. 4.4(A) ................................................................................. 8

Ohio Prof. Cond. R. 8.2(b)................................................................................... 12

I.      **Introduction**

For more than 100 years, Ohio's system of selecting judges was unique. Candidates for judicial office ran in partisan primary elections, and the winners of the respective party primaries then faced off in a general election. That general election, however, was officially nonpartisan. By statute, the ballots did not identify the candidates as the nominees of any political party, and by Rule of Judicial Conduct, the candidates were restrained in how they could identify themselves as members of or affiliates with a political party and how they could campaign on issues associated with the parties. This system was "unquestionably inconsistent and, consequently, deserving of scrutiny." *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Brunner*, No. 10-cv-504, 2010 WL 11519482 (S.D.Ohio Aug. 19, 2010) ("*AFSCME I*"). Indeed, no other state in the country followed such a structure throughout its entire judiciary. *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Husted*, 814 F.3d 329, 333 n.1 (6th Cir. 2016)

Ohio defended this structure based upon an asserted "interest in minimizing partisanship in judicial elections and avoiding the appearance of coercion or *quid-pro-quo*," *Id.*, and claimed a "compelling interest in diminishing reliance on political parties in judicial selection." *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Brunner*, 24 F.Supp.3d 680, 683 (S.D.Ohio 2014) ("*AFSCME II*"). Ohio touted its judicial selection process as laudably "'leav[ing] to political parties the right to place candidates for judicial offices in nomination' while also 'withdraw[ing] candidates for judicial offices from partisan politics…" *Husted*, 814 F.3d at 333 (affirming sub nom. *AFSCME II*).

Now, Ohio has cast these interests aside. Effective as of September 30, 2021, the Chief Justice and Justices of the Ohio Supreme Court, and the Judges of the Ohio Courts of Appeals run in fully partisan general elections, and their names appear on general election ballots alongside the

name of their affiliated political party. Yet, continuing its grand traditions of hybrid structures and half measures, Ohio still elects its trial court judges in non-partisan general elections and on ballots which do not disclose the candidate's political party.

All the while, Ohio's judges and judicial candidates remain subject to professional obligations outlined in the Ohio Code of Judicial Conduct. This code of conduct governs how judges and candidates may ethically conduct a judicial campaign without subjecting themselves to professional discipline, including restrictions on how candidates may speak about cases, controversies, or issues that are likely to come before the court, and limitations on how or when candidates may solicit campaign funds, while at the same time subject to state campaign finance laws on the expenditure and reporting of funds applicable to other state and local candidates.

The end result is that Ohio judicial elections are governed by a patchwork quilt of mismatched restrictions and regulations, often in tension with one another, and which lack any coherent, compelling, or rational justification for any legitimate interest which the state might assert. The result is also that these interwoven provisions of Ohio statutory law and judicial ethics operate to infringe on the Constitutional rights of Plaintiff, Justice Jennifer Brunner, to free speech and freedom of association as protected by the First Amendment, and to due process and equal protection of the laws as protected by the Fourteenth Amendment.

## II.    Statement of Facts

Ohio law provides for two different types of ballots to be voted at a general election. One, the office type ballot, is for electoral races between partisan candidates. This ballot type, for each race, includes the names of each candidate for the contested office; beneath the name of each candidate is "the name of the political party by which the candidate was nominated…" Ohio Rev. Code § 3505.03(F). The second form of general election ballot is the nonpartisan ballot. Ohio Rev.

2

Code § 3505.04. As its name suggests, this ballot style includes the names of all candidates for offices which are nonpartisan under state law, such state and local boards of elections or certain municipal or township offices. *Id.*

Since at least 1851, Ohioans have selected their judges via direct election. *See* Maureen O'Connor, *A Proposal for Strengthening Judicial Elections* (May 2013)[1] at 3. Judicial elections were initially full-blown partisan affairs, "dominated by party bosses, straight ticket voting, and a general undue influence of partisan party politics." *Id.* at 3-4. Ohio's fully partisan judicial elections eventually gave way to the "Non-Partisan Judiciary Act of 1911, which eliminated party affiliation on the general election ballot in Ohio, but retained it in the primaries." *Id.*at 4; *see also State ex rel. Weinberger v. Miller*, 87 Ohio St. 12, 99 N.E. 1078 (1912) (upholding constitutionality of act establishing non-partisan judicial general elections).

This was the system that would remain in place until 2021. Prior to that time, Ohio law provided that the names of all candidates nominated at a primary election "except judicial offices" should appear on the office type ballot in the succeeding general election. Ohio Rev. Code § 3505.03 (2014). Then, the nonpartisan ballot type would contain the names "of all nonpartisan candidates for election to judicial office…" Ohio Rev. Code § 3505.04 (1981); *see also* Ohio Rev. Code § 3501.01(J) (2013) (defining "nonpartisan candidate" to include "all candidates for judicial office…"). The effect of these provisions meant that Ohio's judicial candidates ran in partisan primary elections, but nonpartisan general elections. *AFSCME II*, 24 F.Supp.3d at 700 quoting

---

[1] Available at https://web.archive.org/web/20150906212153/http://ohiojudicialreform.org/wp-content/resources/Plan13.pdf

O'Connor, *supra* ("Ohio is the only state 'that holds overtly partisan primaries with ostensibly nonpartisan general elections with the party affiliation not appearing on the ballot'").

Ohio Senate Bill 80, effective on September 30, 2021, marked a radical departure from this system. S.B. 80 amended Ohio law "to require certain judicial candidates to appear on the ballot with a party designation." 2021 Ohio Laws File 32 (S.B. 80). It did so by requiring that candidates for Chief Justice of the Ohio Supreme Court, Ohio Supreme Court Justices, and Judges of the Courts of Appeals would now appear on the office type ballot, and with "the name of the political party by which the candidate was nominated or certified" appearing alongside it. Ohio Rev. Code § 3505.03(C), (F). Now, only elections for Ohio's trial court judges appear on the nonpartisan ballot type, Ohio Rev. Code § 3505.04, and only trial court judges are defined as nonpartisan candidates, Ohio Rev. Code § 3501.01(J). This results in a system in which the decisions of nonpartisan trial court judges are subject to appeal as of right to partisan intermediate appellate court judges and further discretionary review by partisan Supreme Court justices. Complaint [DE1] at ¶16. Defendant Frank LaRose, the Ohio Secretary of State, is charged with prescribing ballot forms that comply with these statutory provisions in his role as the state's "chief election officer." Ohio Rev. Code §§ 3505.01(A)(1); 3501.04.

Plaintiff Jennifer Brunner is a Justice of the Ohio Supreme Court. Complaint [DE1] at ¶5. She was first elected to that position in 2020, under Ohio's prior partisan primary / nonpartisan general structure. *Id.* On June 9, 2021, Plaintiff publicly announced her intention to seek the office of Chief Justice at the upcoming 2022 election to succeed Chief Justice Maureen O'Connor. *Id.* at ¶7. Justice Brunner filed her formal declaration of candidacy for the Chief Justice election on February 1, 2022. Plaintiff lost the 2022 Chief Justice election, which was the first conducted under Ohio's current system of fully partisan higher court elections. *Id.* at ¶¶19. She remains, however,

4

a Justice of the Ohio Supreme Court until her current term expires. *Id.* at ¶20. Since her current seat will be up for election in 2026, and because she is otherwise qualified to do so, Justice Brunner may run for reelection. *Id.*

As both a judicial officer and as a candidate who has established a campaign committee under state law for judicial office, Justice Brunner is subject to the provisions of Ohio's Code of Judicial Conduct. *Id.* at ¶9; *see also* Ohio Jud. Cond. Rule 4.6(F). Canon 4 of the Code of Judicial Conduct generally provides that a "judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary." Rules 4.1 and 4.2 of the Code contains various regulations governing a judge or judicial candidate in their speech, activities, and conduct of a political campaign, and Rule 4.4 of the Code regulates judicial campaign contributions and solicitations by judges or candidates. Rule 4.5 of the Code requires that a judge must resign their judicial office upon becoming a candidate for any nonjudicial elective office.

Under Ohio's disciplinary structure, Defendant Board of Professional Conduct receives and evaluates "complaints of misconduct that are alleged to have been committed by a justice, judge, or candidate for judicial office." Ohio Gov. Jud. R. II(1). Grievances "alleging misconduct of the Chief Justice or a justice of the Supreme Court…shall be filed" with Defendant Office of Disciplinary Counsel. Ohio Gov. Jud. R. II(2)(B). Disciplinary Counsel "shall review the grievance to determine whether an ethical violation is alleged." *Id.* At this point, a panel of judges from the Ohio courts of appeals conducts an initial review of the grievance, Ohio Gov. Jud. R. II(4)(A), which may ultimately result in the filing of a formal complaint alleging misconduct against a Justice. In these proceedings on a formal complaint, the Director of the Board of Professional Conduct serves as the clerk. Ohio Gov. Jud. R. II(E)(1).

5

The Ohio Rules for the Government of the Judiciary establish a modified procedure for certain grievances alleging violations of Canon 4, but only for those made "by a judicial candidate for the Supreme Court…during the course of a campaign for judicial office…" Ohio Gov. Jud. R. II(6). Under this modified procedure, grievances are filed with the Board of Professional Conduct, and are ultimately evaluated and adjudicated by members drawn from the Ohio courts of appeals. *Id.* However, this modified procedure applies only to alleged Canon 4 violations made "during the course of a campaign." *Id*. Allegations of Canon 4 violations that do not arise out of speech or conduct "during the court of a campaign" are processed in accordance with the general disciplinary procedures of Ohio Gov. Jud. R. II(1) and (2)(B), not according to the particular Canon 4 procedure of II(6)

### III.    Law & Argument

#### a.  Justice Brunner's claims are ripe, and she has standing to pursue them.

Ripeness flows from both the Article III limits on the jurisdiction of the federal courts, as well as from "prudential considerations that are part of judicial self-government." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). At its core, the ripeness doctrine seeks to ensure that courts are not embroiled in "premature or abstract disagreements." *Platt v. Bd. of Commrs. on Grievances and Discipline of Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014) ("*Platt I*") citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) and *Carey v. Wolnitzek*, 614 F.3d 189, 196-197 (6th Cir. 2010). In pre-enforcement challenges under the First Amendment, the distinction between ripeness and standing "has evaporated." *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014).

6

However, in the pre-enforcement context, "the ripeness requirement is somewhat relaxed…" *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) citing *Marichi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2nd Cir. 1999); *Lawrence v. Welch*, 531 F.3d 364, 374 (6th Cir. 2008). This relaxed standard is necessary to avoid the risk of chilling protected acts of First Amendment expression. *See Greater Cincinnati Coalition for the Homeless v. Cincinnati*, No. 08-cv-603, 2010 WL 3448097 (S.D.Ohio July 7, 2010) citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995). As such, "courts do not closely scrutinize" the elements of ripeness. *Platt I*, 769 F.3d at 451 citing *Carey*, 614 F.3d at 196 and *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *see also Platt v. Bd. of Commrs. on Grievances*, No. 13-cv-435, 2017 WL 1177576 (S.D. Ohio March 30, 2017) (*"Platt II"*).

A case is therefore ripe when a plaintiff challenges enforcement of a law that is "sufficiently imminent." *Platt I*, 769 F.3d at 451 quoting *Driehaus*, 573 U.S. at 159. "This occurs when (1) the plaintiff alleges 'an intention to engage in a course of conduct' implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is 'credible.'" *Platt I*, 769 F.3d at 451 quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Winter*, 834 F.3d at 687.

Under these standards, this action is ripe and Plaintiff therefore has standing to pursue it. Justice Brunner is eligible to run for reelection. Complaint [DE 1] at ¶20. She is presently governed by the Code of Judicial Conduct, and the Code will apply to her conduct, expressive or otherwise, during a reelection campaign, *Id.* at ¶9. Her future plans to run for reelection are already implicated by the combination of the partisan ballot designation and the restrictions of the Code. *Id.* at ¶¶22, 25, 29. The chilling effect of this combination will only increase as time passes closer towards the conclusion of Justice Brunner's present term and the election campaign season for reelection. *Id.*

7

at ¶20. And the Code itself declares Justice Brunner to be a "judicial candidate," insofar as she is and remains a person "who has…authorized the solicitation or receipt of contributions or support for judicial office" through the formation of her campaign committee. Ohio Jud. Cond. Rule 4.6(F); *see also* Ohio Jud. Cond. Rule. 4.4(A) ("A judicial candidate may establish a campaign committee to manage and conduct a campaign for the candidate, subject to the provisions of this Code"). This suffices, at the pleading stage, to evince an "intention to engage in a course of conduct" – conducting a reelection campaign for judicial office – which is of a Constitutional magnitude. *Driehaus*, 573 U.S. at 160; *Platt I*, 769 F.3d at 452 (finding standing and ripeness where candidates campaign committee remains in place "and he could begin campaigning for another election today…").

Defendants resist this conclusion, positing that because it is not unequivocal that Justice Brunner will definitively run for reelection, her claim is too speculative to provide standing. Motion [DE12] at 4-6. Defendants' argument is misplaced. Recall that the dispositive question is whether Justice Brunner has "established a credible threat of enforcement?" of the provisions to which she objects. *Winter*, 834 F.3d at 687; *see also National Rifle Assn. of America v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997). In order to establish a credible enforcement threat at the pleading stage, a "general expression of intent is enough." *Jones v. Jegley*, 947 F.3d 1100, 1103-1104 (8th Cir. 2020) citing *Ark Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998).

Thus, intention is sufficient for the certainty Defendants allege is necessary. The Complaint sufficiently alleges the sort of "general expression of intent," *Id.*, required to vest standing when it identifies that Plaintiff currently holds office and has not committed herself to surrender that office at its conclusion. Complaint [DE1] at ¶25. Since ripeness and standing in this context ask only

about whether there is a "substantial probability" of future events, the sort of unblemished crystal ball the Defendants argue for is not required. *See Briggs v. Ohio Elections Com'n.*, 61 F.3d 487, 492-493 (6th Cir. 1995) (claim challenging Ohio election laws is ripe where candidate "stated she plans to run for state office again"); *New Mexicans for Bill Richardson*, 64 F.3d at 1500 (rejecting claim that challenge to election laws is not ripe until candidate "announces his intention to run for state elective office); *See also Crawford v. U.S. Dept. of Treasury*, 868 F.3d 438, 454 (6th Cir. 2017); *Babbitt*, 442 U.S. at 402 (when enforcement of "an allegedly unconstitutional statute is not imaginary or wholly speculative," a plaintiff need not first violate the statute to provide standing).

Moreover, an action presents a live controversy capable of resolution by the courts "so long as a candidate 'retains the right to run for judicial office again…" *Platt v. Bd. of Commrs. on Grievances and Discipline of Ohio Supreme Court*, 894 F.3d 235, 243 (6th Cir. 2018) ("*Platt III'*"); *Carey*, 614 F.3d at 197 (where former candidate "retains the right to run for judicial office again, and all candidates for judicial office in Kentucky, whether sitting judges or not, are subject to Canon 5," "the claims may proceed"). Although *Platt III* and *Carey* speak to the right or ability of the plaintiff to run for office in the future in terms of mootness, the same rationale that led those courts to find Article III Jurisdiction applies equally to, and forecloses, Defendants' ripeness argument.

Particularly in light of the relaxed standard applicable to the ripeness analysis in pre-enforcement First Amendment cases, *Norton*, 298 F.3d at 554, and taking the factual allegations as true at this stage, the Complaint alleges claims which are ripe and for which Justice Brunner has standing to pursue.

**b. Justice Brunner's claims against ODC and the Board are not barred by the Eleventh Amendment**

Although the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States," U.S. Constitution, Amendment XI, that bar is subject to the well-settled *Ex parte Young* exception. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Whether that exception applies requires "only…a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 601, 616 (6th Cir. 2002).

Defendants do not contest that the complaint alleges ongoing violations of federal law (although they dispute those claims on the merits); nor do Defendants contest that the relief sought by Justice Brunner is prospective in nature. Complaint [DE1] at p.14-15; *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008); *Missouri v. Jenkins*, 491 U.S. 274, 279, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Instead, Defendants argue that the *Ex parte Young* exception does not apply because they do not have sufficient connection to the violations alleged in the Complaint. Motion [DE12] at 8-11[2].

To invoke the *Ex parte Young* exception, a defendant "must possess some connection with the enforcement" of the challenged law. *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018). This

---

[2] Insofar as Defendants argue that the *Ex parte Young* exception is inapplicable to the Office of Disciplinary Counsel and the Board of Professional Conduct, the proper remedy is not dismissal, but rather the substitution of parties. *See Holt v. Ohio*, No. 2-05-894, 2006 WL 8441982 (S.D.Ohio Sept. 27, 2006); *Crumpton v. Barry Cty. Jail Medical Staff*, No. 22-cv-1071, 2023 WL 6210824 (W.D. Mich. Sept. 25, 2023); *Kesterson v. Kent State Univ.*, No. 16-cv-298, 2017 WL 995222 (N.D.Ohio March 15, 2017). As such, to the extent the Court credits Defendants' arguments on this point, it should not dismiss, but should instead substitute Joseph Caligiuri in his official capacity as Disciplinary Counsel and Richard Dove in his official capacity as Director of the Ohio Board of Professional Conduct (*see, e.g., O'Toole v. O'Connor*, No. 15-cv-1446, 2016 WL 4394135 (Aug. 18, 2016)) for the Office of Disciplinary Counsel and the Board of Professional Conduct, respectively.

10

does not require that the defendant be vested with direct enforcement authority. Instead, *Ex parte Young* may be invoked against any official who is "actively involved with administering" the challenged provisions, or for whom there is "a realistic possibility that the official will take legal or administrative actions against the plaintiff's interests." *Id.* quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048-1049 (6th Cir. 2015).

The Board and Disciplinary Counsel are subject to the *Ex parte Young* exception here. Under Ohio law, the allegations of disciplinary violations, including conduct alleged to be in violation of Canon 4, are filed with Disciplinary Counsel, who functions as the initial gatekeeper on whether the matter proceeds or is terminated. Ohio Gov. Jud. R. II(2)(B). Throughout investigation and, if warranted, formal proceedings, the Board of Professional Conduct serves the as the clerk and the repository for such proceedings. Ohio Gov. Jud. R. II(4)(C)(2)(b); II(E)(1). Thus, both Disciplinary Counsel and the Board are "actively involved with administering" the challenged provisions of Canon 4. *Doe*, 910 F.3d at 848-849; *McNiel v. Community Probation Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) ("sovereign immunity does not stand in the way of a lawsuit against a public official actively involved with administering the alleged violation"); *Platt I*, 769 F.3d 447 (The "Board, a defendant here, enforces the Code [of Judicial Conduct] by disciplining its violators. The Board also enforces the Ohio Rules of Professional Conduct, which independently prohibit Ohio attorneys from violation the Code [of Judicial Conduct…The Office of Disciplinary Counsel…investigates and prosecutes suspected violators of the Code [of Judicial Conduct]").

Defendants' argument to the contrary, Motion [DE12] at 8, ignores that *Ex parte Young* applies to a broader swath of officials than simply those vested with exclusive enforcement authority. Even as they minimize their roles, the Board and Disciplinary Counsel do not dispute

11

they have an involvement in the administration of enforcing the Code of Judicial Conduct. *See Platt I, supra.*

In any event, the Board and Disciplinary Counsel do in fact play the more traditional role of adjudicator and prosecutor with respect to Justice Brunner's complaint. Defendants make much of the more specialized grievance procedures of Section 6 of the Ohio Rules for the Government of the Judiciary. Motion [DE12] at 9-10. But on their face, the procedures of Section 6 govern only grievances alleging misconduct "during the course of a campaign…" Ohio Gov. Jud. R. II(6). Meanwhile, the provisions of the Code of Judicial Conduct implicated by this case are broader than just regulation of campaign speech or conduct. For example, Ohio Jud. Cond. Rule. 4.1(A)(6) prohibits a judge – at any time, and in any context – from making any "pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office" "in connection with cases, controversies, or issues that are likely to come before the court." If a judicial officer such as Justice Brunner were alleged to have violated this provision outside of the context of "the course of a campaign," the specialized procedures of Section 6 would not apply, and enforcement would fall to Disciplinary Counsel and the Board under Section 4.

Further, the Ohio Rules of Professional Conduct are applicable to all attorneys in Ohio, including judges, and it is a separate and independent violation of those rules for a "lawyer who is a candidate for judicial office" to "violate the provisions of the Ohio Code of Judicial Conduct." Ohio Prof. Cond. R. 8.2(b). *See Platt I*, 769 F.3d at 450. Defendants do not dispute that the Board and Disciplinary Counsel each possess enforcement authority and actively administer the general disciplinary process as to lawyers.

Thus, this action falls squarely within the scope of the *Ex parte Young* exception. Defendants' argument that the Board and Disciplinary Counsel are immune is without merit.

12

### c.   The Complaint states a claim

At the outset, Defendants mischaracterize the Rule 12(b)(6) inquiry. At the pleading stage, a plaintiff needs "to plead only factual allegations plausibly setting forth a claim. They do not need to identify the 'precise legal theories' on which they relied." *Bannister v. Knox Cty. Bd. of Edn.*, 49 F.4th 1000, 1009-1010 (6th Cir. 2022) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011), and *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). Defendants complain, citing only a single unreported district court case, that the complaint does not sufficiently to their liking specify its precise legal theories. Motion [DE12] at 13. Not only is this not true, *see infra*, it is also not the applicable standard.

### i.   The Complaint states a claim that S.B. 80, by itself and in conjunction with Ohio Judicial Conduct Rule 4.1, violates Justice Brunner's First Amendment speech and association rights.

Through the combined effect of (a) S.B. 80's provisions mandating Justice Brunner to run in a partisan reelection for judicial office and (b) the restrictions of Canon 4 prohibiting Justice Brunner from expressing any areas of difference or disagreement with her political party, Ohio law operates to infringe on Justice Brunner's rights to freedom of speech and association as protected by the First Amendment. Moreover, by requiring Justice Brunner to appear on the ballot as a member of or as affiliated with a political party, while simultaneously restricting her from highlighting any areas with which she may disagree with the official or widely-understood platform of her party, Ohio law effectively compels Justice Brunner's speech, also in violation of the First Amendment.

"With respect to the political designations of the candidates on nomination papers or on the ballot, a State could wash its hands of such business and leave it to the educational efforts of the

13

candidates themselves, or their sponsors, during the campaigns." *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992). For more than a century, Ohio's hands were clean in this regard, at least with respect to general election ballots.

In S.B. 80, Ohio charted a different path for Supreme Court Justices and Court of Appeals Judges. Having now chosen to elect its judicial officers in a fully partisan process concluding with a ballot specifying a candidate's affiliated political party, Ohio is obligated to "take into account the provisions of the Federal and State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws." *Id.*, citing *Bachrach v. Secy. of Commonwealth*, 382 Mass. 268, 415 N.E.2d 832, 834 (1981) citing *Riddell v. Natl. Democratic Party*, 508 F.2d 770, 775-779 (5th Cir. 1975). *Rosen* thus recognizes that "although a state may refuse to include party labels on ballots entirely, once it chooses to allow them, it must do so in a nondiscriminatory manner." *Husted*, 814 F.3d at 338 citing *Rosen*, 970 F.2d at 175.

S.B. 80 fails this test. It is, on its face, not "nondiscriminatory" in its configuration of the ballot among candidates, not only segmenting judicial offices from non-judicial, but itself effectively slicing the judiciary into multiple categories. It is true, of course, that a state may constitutionally draw distinctions "in light of the different role that judges must play from their legislative and executive counterparts…" *Husted.*, 814 F.3d at 338 citing *Carey*, 614 F.3d at 201. But no case of which we are aware permits a State to cast one part of its elected judiciary into the partisan arena while leaving others to a partisan-primary/nonpartisan-general hybrid.

More generally, in the election context, the First Amendment requires a "flexible standard for a court to evaluate constitutional challenges to specific provisions of a State's election laws." *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2000) citing *Anderson v. Celebrezze*, 460 U.S. 780,

14

103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) and *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119

L.Ed.2d 245 (1992) (cleaned up). The *Anderson / Burdick* test requires a court to

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights

*Daunt*, 956 F.3d at 406 quoting *Anderson*, 460 U.S. at 789. An enactment which amounts to a

"severe" burden on a plaintiff's First and Fourteenth Amendment rights is unconstitutional unless

it is "narrowly drawn to advance a state interest of compelling importance." *Id.* quoting *Burdick*,

504 U.S. at 434. In contrast, when the provision in question "imposes only reasonable,

nondiscriminatory restrictions…the State's important regulatory interests are generally sufficient"

to uphold the provision as constitutional. *Id.* "Regulations falling somewhere in between – i.e.,

regulations that impose a more-than-minimal but less-than-severe burden – require a flexible

analysis, weighing the burden on the plaintiffs against the state's asserted interest and chosen

means of pursuing it." *Id.* quoting *Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir.

2016).

S.B. 80 fails the *Anderson/Burdick* test, no matter how it is framed. In the past, Ohio has

consistently taken the position that it has an important state interest in distancing the judiciary from

partisanship. *See Husted*, 814 F.3d at 332; *AFSCME II*, 24 F.Supp.3d at 698 (reciting the state's

interest in "minimizing partisanship in judicial election. The distinction between the roles of the

judiciary and other branches of government have been used to support the different treatment of

these elected officials in Ohio for more than a century"). That justification, as applied to Ohio's

former hybrid system, can no longer carry the day under the S.B. 80 scheme. Ohio has eschewed

avoiding or minimizing partisan political influence. And it has done so without any apparent or stated permissible interest to replace it.

Finally, the combined effect of S.B. 80, requiring Justice Brunner to run for reelection in a fully partisan election, with political affiliation according to her nomination identified next to her name on the ballot, along with Judicial Conduct Rule 4.1(A)(6), prohibiting her "in connection with cases, controversies, or issues that are likely to come before the court [from making] pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office," operates to tether her to the actual or perceived viewpoints of the political party that nominates her, while simultaneously denying her the ability to speak about how her views may conflict or differ with her party. In other words, the combination of the statute and the rule function to compel Justice Brunner's speech.

"Under the compelled-speech doctrine, the 'First Amendment stringently limits a State's authority to compel a private party to express a view with which the private party disagrees.'" *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 593 (6th Cir. 2018) quoting *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 219, 135 S.Ct. 2239, 192 L.Ed.2d 274 (2015). The state may not force "a private party to 'be an instrument for fostering public adherence to an ideological point of view [she] finds unacceptable.'" *Id.* quoting *Wooley v. Maynard*, 430 U.S. 705, 715, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). "One important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say.'" *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) quoting *Pacific Gas & Electric Co. v. Public Utilities Comm'n of Cal.*, 415 U.S. 1, 11, 106 S.Ct. 903, 909, 89 L.Ed.2d 1 (1986).

16

To see why the combined effect of S.B. 80 and Rule 4.1(A)(6) amounts to unconstitutional compelled speech, consider two hypotheticals: One, a Justice associated with the Democratic Party does not believe that restrictions on the ability of private citizens to own semi-automatic firearms are constitutionally permissible. Two, a Justice associated with the Republican Party is not convinced that human life begins at the moment of conception, and therefore, any laws relating to abortion should not necessarily be viewed in this light. Each of these hypothetical justices would appear on an Ohio general election ballot alongside the name of their associated political party. Those parties are commonly and widely understood to favor legal views antithetical to those held by the hypothetical jurists. The issues involved, the existence and/or scope of the right to bear arms or to an abortion, respectively, are beyond doubt the types of "cases, controversies, or issues" likely to come before any court, especially the highest court of this state. As such, the justices in this hypothetical situation may not publicly explain the nuances of their views or express their disagreement with the recognized platform of their political parties[3]. They are chained by the force of state law and the threat of professional discipline to be associated with views with which they disagree. This is compelled speech, and the Constitution forbids it.

### ii. The Complaint states a claim that S.B. 80 is an arbitrary and impermissible classification which violates Equal Protection.

Ohio law, post-S.B. 80, establishes three different classifications of candidates for elected office: (1) Candidates for non-judicial office, (2) Candidates for trial court judicial offices, and (3) Candidates for Supreme Court and appellate judicial offices. There is not, nor can there be, any

---

[3] The qualifier of Ohio Jud. Con. R. 4.6(A)(6) relating to speech "inconsistent with the impartial performance of the adjudicative duties of judicial office" does nothing to solve this problem. That limitation on the scope of the Rule's prohibitions is so vague and imprecise that the Sixth Circuit has been unable to give it an authoritative construction. *Winter*, 834 F.3d at 695; *see also Fischer v. Thomas*, 52 F.4th 303, 312-313 (6th Cir. 2022)

justification for these wholly arbitrary differences in the electoral process, and as explained above, they infringe upon Justice Brunner's fundamental First Amendment rights. As such, S.B. 80 is therefore subject to a strict scrutiny analysis, an analysis which it fails because it neither advances a compelling governmental interest nor is narrowly tailored. But even if S.B. 80 were subject to a lesser standard of review, it still falls; It is not rationally related to any legitimate state interest.

"The Equal Protection Clause 'protects against arbitrary classifications, and requires that similarly situated persons be treated equally.'" *Bowman v. U.S.*, 564 F.3d 765, 772 (6th Cir. 2008) quoting *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005). The level of scrutiny applied in the Equal Protection analysis depends on whether the challenged provisions infringe a fundamental right. *Id.* citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). When they do, strict scrutiny applies, and requires that the law "be narrowly tailored to advance a compelling governmental interest." *Id.* Otherwise, a provision challenged on the basis of equal protection is subject to rational basis review, which queries whether the challenged law "bears a 'rational relationship to a legitimate state interest.'" *Id.* quoting *Jamrog*, 411 F.3d at 618.

S.B. 80 is subject to strict scrutiny because it "impermissibly interferes with the exercise" of fundamental First Amendment rights, including political speech and speech in connection with campaigning for elected office as a Justice or Judge in Ohio's courts. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Id.* at n.3 citing *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *N. Olmsted Chamber of Commerce v. City of N. Olmsted*, 86 F.Supp.2d 755, 779 (N.D.Ohio 2000) quoting *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999).

18

The law does not survive strict scrutiny; It is not "the rare law that survives" this level of review. *Carey*, 614 F.3d at 200 quoting *Burson v. Freeman*, 504 U.S. 191, 211, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992). There is no compelling interest furthered by Ohio's decision to inject partisanship into the campaigns for the Ohio Supreme Court and intermediate appellate court judicial offices while simultaneously leaving trial court judges – the majority of judges in Ohio – on the nonpartisan sideline. Judge Dlott suggested as much when she observed that Ohio's ability to treat judicial candidates differently from the elected executive and legislative branches hinged on doing so in a manner that "treats all judicial candidates equally." *AFSCME II*, 24 F.Supp.3d at 690. And nothing in S.B. 80 suggests that it is in any way narrowly tailored to accomplish whatever heretofore-unstated supposed interest it purportedly furthers.

Even viewed under the more forgiving lens of rational basis scrutiny, S.B. 80 still fails. There is no legitimate and permissible state interest furthered by carving the judiciary into two electoral camps to which S.B. 80 is rationally related. *See Bowman*, 564 U.S. at 772. It obviously cannot be removing partisanship from judicial elections, since S.B. 80 makes elections more partisan, not less. It cannot be motivated by providing the citizenry with more detail or information about the candidates, since it has already long been the case that there are a "variety of means available for voters to learn which judicial candidates" belong to which political party. *AFSCME II*, 24 F.Supp.3d at 699. It cannot be an effort to eliminate or reduce the phenomenon of voter drop off (in which voters abstain from voting in a particular race although still voting other races on the same ballot) because "the very fact that voter drop off is greater in judicial races than in other partisan low-information races supports the conclusion that fewer individuals in judicial elections rely solely on party affiliation to cast their votes…" *Husted*, 814 F.3d at 339. Thus, whatever interests the state may tender to stitch together a constitutional defense of S.B. 80, they are utterly

19

unsupported by the system created by the law in which the decisions of elected nonpartisan trial court judges are reviewed by fully partisan elected appellate judges and justices.

S.B. 80 is properly viewed as an infringement on fundamental rights subject to strict scrutiny, and it fails that review. But even if considered under rational basis review, it does not further any legitimate state interest. S.B. 80 violates Equal Protection.

### d. In the alternative, Justice Brunner should be granted leave to amend her complaint.

Much of Defendants' motion to dismiss turns on arguments that Justice Brunner's complaint does not provide fair notice of its claims or is insufficient as-pled. *See, e.g,.* Motion [DE12] at 6, 12-13, 18-19. As explained above, this is incorrect, the Complaint states a claim and it is properly before this Court. However, it is also manifestly clear that the bulk of the claimed deficiencies raised by Defendants are neither fatal nor incurable.

As a general matter, "when a motion to dismiss is granted…the usual practice is to grant plaintiffs leave to amend the complaint." *PR Diamonds, Inc. v. Chandler*, No. 02-3921, 91 Fed.Appx. 418, 443, 2004 WL 422726 (6th Cir. March 3, 2004). This "usual practice" follows from Fed. R. Civ. P. 15(a)(2), which provides that a court "should freely give leave [to amend] when justice so requires." *See, e.g., Smith v. Jones*, No. 13-cv-744, 2014 WL 12591694 (N.D.Ohio Sept. 24, 2014) quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

This should be the case here. Should the Court find that the Complaint does not provide sufficient notice of its claims or its theories, it should nonetheless follow the "usual practice," *PR Diamonds,* 91 Fed.Appx. at 443, and afford to plaintiff the leave to amend that is to be freely granted. *Foman*, 371 U.S. at 182. Doing so would further the "spirit of the Federal Rules of Civil Procedure [which] expresses a preference for resolution of cases on the merits and requires liberal

amendment allowances rather than deciding cases on technicalities or pleading errors." *Yukech v. Cal. Transport, LLC*, No. 20-cv-5804, 2022 WL 15523495 (S.D.Ohio Oct. 27, 2022).

## IV.    Conclusion

"There is room for debate about whether the election of state court judges is a good idea or a bad one. Yet there is no room for debate that, if a State opts to select its judges through popular elections, it must comply" with the dictates and protections of the federal Constitution. *Carey*, 614 F.3d at 209. Ohio has not done so here. The Complaint states claims for relief which are ripe, Justice Brunner has standing to pursue them, and the Defendants are not immune from answering for those claims. Defendants' motion to dismiss [DE12] should be denied; Or, in the alternative, Plaintiff should be granted leave to amend.

Respectfully Submitted

_____/s/ Patrick M. Quinn_____
Rick L. Brunner          (0012998)
Patrick M. Quinn         (0081692)
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Tel:    (614) 241-5550
Fax:    (614) 241-5551
Email:  rlb@brunnerlaw.com
        pmq@brunnerlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of February, 2024, a true and accurate copy of the foregoing document was filed with the Clerk of Courts' ECF system, which will send notice to all parties and counsel of record.

_____/s/ Patrick M. Quinn_____
Patrick M. Quinn         (0081692)

21