# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JENNIFER BRUNNER<br>23259 Hartley Road<br>Alliance, Ohio 44601<br><br>        Plaintiff<br><br>    v.<br><br>THE HONORABLE FRANK LAROSE<br>OHIO SECRETARY OF STATE<br>22 N. 4TH Street<br>Columbus, Ohio 43215<br><br>        and<br><br>JOSEPH M. CALIGIURI<br>DISCIPLINARY COUNSEL<br>65 South Front Street<br>Columbus, Ohio 43215<br><br>        and<br><br>RICHARD A. DOVE, DIRECTOR<br>BOARD OF PROFESSIONAL<br>CONDUCT<br>65 South Front Street<br>Columbus, Ohio 43215<br><br>        and<br><br>THE HONORABLE THOMAS J. OSOWIK<br>JUDGE, CHIEF JUSTICE OF THE OHIO<br>COURT OF APPEALS<br>1 Government Center<br>Toledo, Ohio 43604<br><br>        Defendants. | Case Number: 4:23-cv-2180<br><br>Judge Pearson |

## VERIFIED AMENDED COMPLAINT

Now comes the Plaintiff and for her Verified Amended Complaint states as follows:

**Nature of Claims**

1. This action is brought pursuant to 42 U.S.C. 1983, alleging that Plaintiff has been and is about to be deprived by defendants of certain rights secured by the United States Constitution, namely, rights guaranteed by the First, Fifth and Fourteenth Amendments, and that defendants are effecting Plaintiff's deprivation while acting under color of state law, as more fully described herein.

2. Plaintiff seeks relief from this court in the form of declaratory judgment of the rights and duties of the parties pursuant to 28 U.S.C. §§ 2201, *et seq.*, and Fed. R. Civ. P. 57, taking into account that defendants named herein have interests in the outcome of this litigation that requires their joinder to this litigation pursuant to 28 U.S.C. §§ 22.02 and Fed.R.Civ.P. 19(a)(1)(A) and (B), all as more fully described herein.

3. Plaintiff seeks injunctive relief from this court pursuant to Fed.Civ.R. 65 enjoining defendant LaRose from enforcing those portions of S.B. 80, which require that appellate judicial candidates in Ohio be identified on general election ballots as partisan candidates or by enjoining the other defendants named herein from enforcing those parts of the Ohio Code of Judicial Conduct against Plaintiff and other partisan judicial candidates all of which deprive Plaintiff and other partisan judicial candidates of their rights secured by the First, Fifth and Fourteenth Amendments of the United States Constitution.

**Parties, Jurisdiction, & Venue:**

4. Plaintiff is a citizen of the United States.

4. Plaintiff resides and votes in Columbiana County, Ohio.

5. Plaintiff is currently a justice of the Supreme Court of Ohio, having been duly elected to that position November 3, 2020.

6. Plaintiff has conducted many of her activities in campaigning for the office of justice and chief justice of the Supreme Court of Ohio in the years 2019 through 2022 from her residence at 23259 Hartley Road, Alliance, Ohio 44601, which is situated in Columbiana County, Ohio.

7. Defendant Frank LaRose is the duly elected Secretary of State of Ohio and as such is responsible pursuant to R.C. 3501.05(B), (C), and (G) for issuing instructions to Ohio's 88 county boards of elections for placement of names of judicial candidates on Ohio's ballots as they appear in all of the counties of the State of Ohio. He is named in his official capacity.

8. Joseph M. Caligiuri is the duly appointed disciplinary counsel of the State of Ohio, and pursuant to the Supreme Court Rules for the Government of the Judiciary of Ohio, Rule II, Sections 2 and 4, is responsible for accepting the filing of a grievance against a judge or justice alleging one or more violations of the Ohio Code of Judicial Conduct, reviewing it for the statement of one or more ethical violations, and transmitting it to the appropriate adjudication body, and in the case of a justice or candidate for justice of the Supreme Court of Ohio to the Chief Justice of the Court of Appeals for further processing and the following of prescribed adjudicatory procedures set forth in Gov.Jud. Rule II. Mr. Caligiuri is also responsible for investigating and prosecuting alleged violations of the Ohio Rules of Professional Conduct, which are applicable to all Ohio attorneys and judicial officials alike. He is named in his official capacity.

9. Richard A. Dove is the duly appointed director of the Board of Judicial Conduct ("Board"), and pursuant to the Supreme Court Rules for the Government of the Judiciary of Ohio, Rule II, the Board must appoint a probable cause panel from former members of the Board

to review a formal complaint filed with the Board by the special disciplinary counsel appointed by the Chief Justice of the Court of Appeals when a case involves a justice of the Supreme Court of Ohio; the Board, and specifically, the director of the board is responsible for facilitating the procedural management as clerk for the Chief Justice of the Court of Appeals for the adjudication of a grievance for which probable cause is found when filed against a justice of the Supreme Court of Ohio. Mr. Dove is named in his official capacity.

10. Judge Thomas J. Osowik is the Chief Justice of the Court of Appeals of Ohio and who is responsible for following the procedures set forth in the Supreme Court Rules for the Government of the Judiciary of Ohio, Rule II, for the adjudication of a grievance for which probable cause is found is filed against a justice of the Supreme Court of Ohio; he is responsible for naming the special disciplinary counsel for prosecuting grievances against justices of the Supreme Court of Ohio; and Judge Osowik is named in his official capacity.

11. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, in that it arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution; pursuant to 28 U.S.C. § 1343(a)(3) because it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; and under 28 U.S.C. § 1343(a)(4) because it seeks to secure equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983 that provides a cause of action for the protection of civil and constitutional rights.

12. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claims occurred in this judicial district and division.

**Statement of Facts:**

14. On June 9, 2021, Plaintiff, then a sitting justice of the Supreme Court of Ohio, publicly announced she would seek the office of chief justice of the Supreme Court of Ohio at the election to be held on November 8, 2022.

15. On February 1, 2022, Plaintiff filed a declaration of candidacy for the office of chief justice of the Supreme Court of Ohio for the general election to be held November 8, 2022, with the office of Defendant Ohio Secretary of State, Frank LaRose, who is named in his official capacity and whose duties include issuing instructions by directives and advisories to members of boards of elections in Ohio as to the proper methods for conducting elections, preparing rules and instructions for the conduct of elections, determining and prescribing the forms of ballots as required by law, compelling the observance by election officers of Ohio's counties the requirements of the election laws, and perform other duties prescribed by law, including instructing boards of elections on ballot preparation, pursuant to R.C. 3501.05 (B),(C),(G), (M) and (EE) and R.C. 3501.03, respectively.  A sample copy of Plaintiff's declaration of candidacy, a form prescribed by Defendant LaRose in his official capacity, is attached hereto and incorporated in as Exhibit 1.

16. Plaintiff is subject to the Ohio Code of Judicial Conduct as both a judicial officer and as a judicial candidate, which Code includes Canon 4 and which states in 4.1 that, "A judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary," and in Comment 8 of Rule 4.1 of the Code of Judicial Conduct the following:

> Campaigns for judicial office must be conducted differently from campaigns for other offices so as to foster and enhance respect and confidence for the judiciary. Judicial candidates have a special obligation to ensure the judicial system is viewed as fair, impartial, and free from partisanship.  To that end, judicial candidates are

urged to conduct their campaigns in such a way that will allow them, if elected, to maintain an open mind and uncommitted spirit with respect to cases or controversies coming before them. The narrowly drafted restrictions upon political and campaign activities of judicial candidates provided in Canon 4 allow candidates to conduct campaigns that provide voters with sufficient information to permit them to distinguish between candidates and make informed electoral choices.

17. Canon 4 of the Code of Judicial Conduct prescribes in great detail rules of conduct, including significant prohibitions of certain conduct, during campaigns for judicial office; these rules require attendance at specialized training concerning these campaign rules, which in some instances include complying with campaign rules set forth in Title 35 of the Ohio Revised Code, but in many instances differ significantly from those rules.

18. Plaintiff is also subject to disciplinary processes if she is found to have violated any of the rules contained in Canon 4 of the Code of Judicial Conduct as a judicial candidate; under the Rules for the Government of the Judiciary, Article II and Rules for the Government of the Bar, Article V;. when violations of the Code of Judicial Conduct are found, they may carry consequences ranging from public reprimand, suspension or even disbarment from the practice of law, which licensure is a requirement for serving as a judge or as a justice of the Supreme Court of Ohio.

19. After Plaintiff filed her declaration of candidacy for the office of chief justice on February 1, 2022, House Bill 141 was introduced on February 23, 2021 in the Ohio House of Representatives, and a similar, "companion bill," Senate Bill 80, was introduced in the Ohio Senate the same day. S.B. 80 was the legislation that ultimately passed; it was signed by Ohio's Governor July 1, 2021, and it became effective September 30, 2021, after the fund raising period for judicial candidates began for the 2022 judicial election season.

20. Senate Bill 80 amended R.C. 3501.01, 3505.03, 3505.04, and 3513.257 to eliminate only candidates for justice of the Supreme Court of Ohio, including the office of chief justice,

6

and candidates for judge of Ohio's 12 district courts of appeals from the definition of nonpartisan candidates; the new law also modified their statutory placement on the general election ballot so that the statewide judicial offices appear on the ballot immediately after candidates for statewide office and before candidates for federal office, including the office of U.S. Senator, and appellate district judicial candidates appear after the offices of state senator and state representative, the latter of which appear just following the listing of federal offices. S.B. 80 specifically leaves the offices of judge of municipal court, county court and common pleas court as nonpartisan, relegating their ballot placement to beneath state board of education candidates and not sequentially grouped with any other judicial candidates.

21. H.B. 149 had been reported out of the House committee to which it had been assigned the day after plaintiff announced her candidacy for Chief Justice, and it was passed by the entire House 13 days later, on June 23, 2021, and thereafter referred to the Ohio Senate. Meanwhile, S.B. 80, the companion bill, had been reported out of Senate Committee on April 21, 2021 and passed by the Senate the same day. The Ohio House had already reported the Senate bill out of committee less than a week before it passed the House version of the bill, and on June 25, 2021, 16 days after plaintiff had announced her candidacy and 2 days after it passed H.B. 149, the House passed S.B. 80.

22. As of September 30, 2021, the resulting change to the law adopted by the Ohio General Assembly and signed by the Governor is that trial court judicial candidates in Ohio are nonpartisan candidates, while candidates like Plaintiff for justice or chief justice, along with candidates for district appellate judge, all of whom who will hear and decide appeals of the state's nonpartisan trial judges' decisions, are now elected as partisan candidates.

7

23. As a further result of this change to the law, judicial candidates such as Plaintiff, who are seeking office to hear and decide appeals of nonpartisan trial judges' decisions or appeals of those decisions, must continue to campaign according to the same rules as the nonpartisan trial judges, which are strict rules that could affect their continuing ability to practice law if they are found to have violated them, even though these appellate level judicial candidates are now considered partisan candidates and appear on the ballot similarly to candidates for governor, attorney general or county prosecutor or even a candidate for member of the Ohio General Assembly, none of whom are similarly restricted in their campaign conduct.

24. The 2022 general election, held November 8, 2022, was the first time S.B. 80 was administered in a judicial election, requiring political party affiliation to appear on the ballot next to the names of candidates for justice, chief justice and judge of the court of appeals.

25. In 2022, with party affiliation on the ballot for all appellate judicial candidates, all candidates on the statewide ballot for the offices of chief justice and justice of the Supreme Court of Ohio, whose party affiliation was listed as "Democrat" lost in the general election.

26. Plaintiff has maintained her membership in the same political party, the Democratic Party, for all of her campaigns for election to public office.

27. In 2006, Plaintiff was a successful candidate for Ohio Secretary of State as a nonjudicial partisan candidate with her political party designation next to her name on the general election ballot, and in doing so, she was not subject to the restrictions on candidates for judicial offices as set forth in Ohio's Code of Judicial Conduct.

28. In that same 2006 general election for Ohio Secretary of State, Plaintiff carried a majority of the votes in Columbiana County, with her political party designation after her name on the general election ballot.

29. In the 2020 general election for her current seat on the Supreme Court of Ohio, Plaintiff won her election in Columbiana County, without a political party designation after her name on the general election ballot, despite the Columbiana County electorate and most of the state voting for the former President, who is a member of a different political party than Plaintiff.

30. In 2020, which was a presidential election year and in which a majority of Ohio's voters voted for a Presidential candidate not of the same political party as Plaintiff, Plaintiff appeared on the ballot as a statewide nonpartisan candidate for justice of the Supreme Court of Ohio and received more votes than the Presidential candidate of her own party and won her election to the Supreme Court of Ohio by a greater percentage statewide than the former President in the State of Ohio, Plaintiff having received a majority of votes in 40 counties as set forth in Exhibit 2.

31. With the enactment of S.B. 80 and its requirement that Ohio appellate judicial candidates such as Plaintiff be identified on the ballot by political party affiliation and mandating a change in the ballot order of candidate offices throughout the state, combined with the already existing restrictions set forth in Ohio Judicial Conduct Rule 4.1 governing judicial candidates, Plaintiff lost the election for the office of chief justice in Columbiana County by a ratio significantly different from the ratio she had won it in 2020 just two years earlier; overall, Plaintiff won only 18 counties in Ohio in 2022, despite having prevailed in 40

9

counties just 2 years previously as a nonpartisan candidate not having a political party designation next to her name on the general election ballot.

32. In 2022, all candidates in multi-county appellate districts for judge of the court of appeals, whose party affiliation was listed as "Democrat" lost in the general election; all candidates in single-county appellate districts (Cuyahoga, Franklin and Hamilton Counties) for judge of the court of appeals, whose party affiliation was listed as "Republican" lost in the general election; and finally, two incumbent judges of the Tenth District Court of Appeals (a single-county district) who were elected as nominees of the Franklin County Republican Party, declined to run for reelection.

33. In 2024, the March primary election for judges of all of Ohio's twelve district courts of appeals had more contested races among the twelve districts of the state than there are contested races in the 2024 general election; just two contested appellate judge elections will be held in Ohio in the general election, one in the First District Court of Appeals (in Hamilton County) and in the Ninth District Court of Appeals (in Summit, Lorain, Medina and Wayne Counties.)

34. In 2024, Plaintiff had no candidates to vote for in the March primary election for the Seventh Appellate District, (comprised of Belmont, Carroll, Columbiana, Harrison, Jefferson, Mahoning, Monroe, and Noble Counties,) in the Democratic primary election; there was a Republican primary election for the Seventh District in which Plaintiff could not vote; thus, the winning primary election candidate for the Seventh District Court of Appeals is the only candidate Plaintiff may vote for in the general election.

35. On March 25, 2021, former Justice Paul Pfeifer, now Executive Director of the Ohio Judicial Conference testified before the Ohio General Assembly's House Government

10

Oversight Committee on the companion bill to Senate Bill 80, House Bill 149, describing the provisions of the bill as politically partisan and predicting it would limit voter choices in judicial races in Ohio and ultimately damage Ohio's judiciary; that video was recorded by The Ohio Channel, and the portion showing former Justice Pfeifer's testimony can be accessed via Justice Brunner's YouTube channel at this link: https://youtu.be/_KLwYIOoCn0, and a transcript of the video is attached hereto as Plaintiff's Exhibit 3.

36. Plaintiff's current term as a justice of the Supreme Court of Ohio ends January 1, 2027, in just over three years, with activities to run for reelection needing to begin in mid- to late-2025, about a year-and-a half from the commencement of this action.

37. Plaintiff presently intends to run for reelection, and she is eligible to do so, based on her age and other qualifications set forth in Ohio law

38. Absent relief from this court, Plaintiff will continue in 2026 to have, as she did in 2021 and 2022 in her campaign for chief justice, all the restrictions of the Code of Judicial Conduct that are not placed on other partisan candidates who are not running for judicial office.

39. Absent relief from this court, Plaintiff will continue to have, as she did in 2021 and 2022 in her campaign for chief justice, all the restrictions that are set forth in the Code of Judicial Conduct, even though other candidates for judge, to wit, candidates for the courts of common pleas and their divisions in the various counties of the state, county court judicial candidates and municipal candidates will not have party affiliation next to their names.

40. Plaintiff, while having to campaign for reelection, beginning in 2025, with the specter of a party designation on the general election ballot next to her name in the 2026 general

11

election, will not be able to engage in all of the types of activities that other partisan candidates who are non-judicial candidates are permitted to engage in.

41. Nearly 50 years ago, the United States Supreme Court decided *Buckley v. Valeo,* 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976), holding that the limiting of money spent by candidates in a campaign was a limit on freedom of expression in that campaign—speech— and struck down expenditure limitations in campaigns as a violation of the First Amendment of the United States Constitution.

42. With the enactment of S.B. 80, candidates for the Supreme Court of Ohio and for judge of the courts of appeals, now designated on general election ballots as partisan candidates, are subject to a limited time period for raising funds that nonjudicial candidates having party designations are not subject to, including personally contributing to their own campaigns, which in effect, limits their campaign expenditures as compared to non-judicial partisan candidates.

43. As pled in the aforementioned paragraphs, the limitations on judicial campaign expenditures in the aforementioned paragraphs for judicial candidates who are, because of S.B. 80, partisan candidates, violates Plaintiff's guarantee of free speech under the First Amendment to the U.S. Constitution and guarantee of equal protection under the law pursuant to the Fourteenth Amendment to the U.S. Constitution.

44. Plaintiff has been and is required by S.B. 80 to be identified as a Democrat on the general election ballot, whether or not she subscribes to all tenets of the Democratic Party and whether or not she disagrees with all tenets of the Republican Party; Plaintiff is essentially being forced to campaign either to reinforce or dispel commonly held beliefs about what being a Democrat or Republican means to the public, despite the Code of Judicial Conduct,

Rules 2.10(B) and 4.1(A)(6), prohibiting a judge from engaging in this type of campaign conduct, specifically, "A judge shall not, in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office," and in the Code's preamble in its first paragraph that,

> An independent, fair, and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the rules contained in this code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.

45. If party affiliation is permitted to appear on the statewide judicial ballot at the 2026 general election, Plaintiff is forced to speak about issues that as a judicial officer and a judicial candidate, she does not want to speak about, while the Code of Judicial Conduct prohibits what she may want to speak freely about, putting in peril her ability to maintain her law license by subjecting her to prosecution pursuant to the procedures of Supreme Court Rules for Government of the Judiciary.

46. S.B. 80 requires Plaintiff to run as a partisan candidate in 2026, but the Code of Judicial Conduct as discussed in the aforementioned paragraphs, prohibits Plaintiff from speaking plainly and freely on partisan issues in order to preserve the integrity of the judiciary; this rubric denies Plaintiff substantive due process in that Plaintiff's aforementioned fundamental First and Fifth Amendment rights of freedom of speech and equal protection under the law in participating in the political process as a candidate are not protected from governmental interference, even to the extent that Plaintiff could be subject to a

13

prosecutorial process for violations of the Code of Judicial Conduct pursuant to a process set forth in Ohio Rules for the Government of the Judiciary (Rule II) and the Code of Professional Conduct that could subject her to judicial sanctions that could include suspension of her license to practice law.

**Count One:** *42 U.S.C. § 1983 / First Amendment*

47. Paragraphs 1-46 are re-alleged and incorporated herein as if fully restated herein.

48. The actions of the Defendants as set forth herein are under color of law, and are in violation of Plaintiff's rights under the First Amendment to the United States Constitution.

49. By way of example, and without limitation, S.B. 80 is facially unconstitutional as an unreasonable and/or discriminatory measure regulating access to the ballot and the conduct of elections. Alternatively, S.B. 80, in conjunction with the provisions of the Code of Judicial Conduct regulating communications by judges and judicial candidates (including, but not limited to, Rule 4.1(A)(6)), is unconstitutional as applied to Plaintiff insofar as the combined effect operates to compel Plaintiff's speech, serves as a content-based regulation of speech, and is an unreasonable and/or discriminatory regulation of ballot access and the electoral process.

50. The burdens imposed by S.B. 80, both on its own and in conjunction with the Code of Judicial Conduct, are not outweighed by any state interest, justification, or basis.

**Count Two:** *42 U.S.C. § 1983 / Equal Protection*

51. Paragraphs 1-50 are re-alleged and incorporated herein as if fully restated herein.

52. The actions of the Defendants as set forth herein are under color of law, and are in violation of Plaintiff's rights and guarantees to equal protection of the laws under the Fifth and/or Fourteenth Amendments to the United States Constitution.

53. By way of example, and without limitation, S.B. 80 creates arbitrary and impermissible classifications and distinctions among Ohio's elected judiciary and between partisan judicial candidates and partisan non-judicial candidates.

54. The arbitrary classifications imposed by S.B. 80 operate to infringe upon Plaintiff's fundamental rights under the First Amendment, as described herein.

55. S.B. 80 is not justified by any compelling governmental interest, nor is S.B. 80 and its arbitrary classifications among elected officials narrowly drawn in support of any such interest.

56. S.B. 80 does not bear any rational relationship to any legitimate governmental interest.

**Count Three:** *Declaratory Judgment*

57. Paragraphs 1-56 are re-alleged and incorporated herein as if fully restated herein.

58. The averments of this Count One constitute a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq.*, and Fed. R. Civ. P. 57.

59. There is a dispute and controversy between Plaintiffs and Defendants as to the rights, status, and other relationships between them, including, but not limited to, Plaintiff's rights under the First, Fifth and Fourteenth Amendments of the United States Constitution.

60. Plaintiff is entitled to declaratory judgment as follows:

    60.1 That the Defendants named herein have interest in the outcome of this litigation that requires their joinder to this litigation pursuant to 28 U.S.C. §§ 22.02 and Fed.Civ.R. 19(a)(1)(A) and (B).

    60.2 That S.B. 80 is unconstitutional on its face and as applied to Plaintiff in that defendants as state actors are acting under color of law to implement it and/or the Ohio Code of Judicial Conduct, all to deprive Plaintiff of her rights secured by the

First, Fifth and Fourteenth amendments of the United States Constitution, as described in 42 U.S. 1983, to wit:

60.2.1  To impose the restrictions on judicial candidates set forth in Judicial Conduct Rule 4.1, which restrictions conflict with the permissible activities of partisan non-judicial candidates as applied to candidates for appellate judicial office, such as the offices of judge of the courts of appeals, and justice or chief justice of the Supreme Court of Ohio, who must bear political party designation next to their names on the general election ballot, constitute a deprivation of and/or an unreasonable restriction upon Plaintiff's freedom of speech guaranteed by the First Amendment to the United States Constitution, on their face, and as applied to Plaintiff, all in connection with campaigning for reelection to the Supreme Court of Ohio or to another partisan office that is not a judicial office in 2026;

60.2.2  To impose the restrictions on judicial candidates set forth in Judicial Conduct Rule 4.1, which restrictions conflict with the permissible activities of partisan non-judicial candidates as applied to candidates for Ohio appellate judicial office, such as the offices of judge of the courts of appeals and justice or chief justice of the Supreme Court of Ohio, who must bear political party designation next to their names on the general election ballot, constitute a denial of substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution, on their face, and as applied to Plaintiff, all in connection with campaigning for reelection to the Supreme Court of Ohio or to another partisan office that is not a judicial office in 2026;

16

60.3 That, as a result of the violations of the United States Constitution, that this Court should find that the party designations required by S.B. 80 to be on the general election ballot for judicial appellate candidates such as Plaintiff are unconstitutional on their face and as applied and henceforth may not be enforced by defendant LaRose and the State of Ohio, or, in the alternative, to not enforce on candidates for offices of the state's courts of appeals and the Supreme Court of Ohio, like Plaintiff, the restrictions of Rule 4.1 of the Ohio Code of Judicial Conduct ("A judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary,") that interfere with the First, Fifth and Fourteenth amendment rights that are accorded other partisan, non-judicial candidates;

60.4 That, while permitting candidates for other public offices, including, but not limited to, candidates for the office of Governor to run for office unencumbered by state regulatory rules and constitutional restrictions applicable only to judicial candidates, S.B. 80's requiring of all appellate judicial candidates in Ohio to bear political party labels on the general election ballot next to their names denies them the equal protection of the law as it exists for other partisan candidates who are not judicial candidates and can no longer withstand the requisite level of scrutiny, the rationale for the lines of the classification having been blurred by the enactment of S.B. 80;

60.5 That the defendant, Frank LaRose is a state actor who under color of law is depriving Plaintiff and other judicial candidates declared by S.B. 80 to be partisan candidates of their civil rights secured by the First, Fifth and Fourteenth

17

amendments of the United States Constitution by the enforcement of those portions of S.B. 80 that cause Plaintiff and other judicial appellate candidates to be identified on the general election ballot as partisan candidates, because S.B. 80 is both facially and as applied to Plaintiff, in violation of 42 U.S.C. 1983;

60.6 That the other defendants herein, Caligiuri, Dove, and Judge Osowik as Chief Justice of the Court of Appeals, are state actors who under color of law are depriving Plaintiff and other judicial candidates declared by S.B. 80 to be partisan candidates of their civil rights secured by the First, Fifth and Fourteenth amendments of the United States Constitution by the enforcement of those portions of the Ohio Code of Judicial Conduct that cause Plaintiff and other judicial appellate candidates to be deprived of their rights to speak freely as other partisan candidate are permitted to do during the general election campaign season, all of which deprives Plaintiff and others similar situated of the freedom to speak on issues, campaign for other offices, and generally campaign without threat of prosecution pursuant to the Code of Judicial Conduct and the Ohio Rules for Government of the Judiciary, or, in the alternative;

60.7 That this Court declare the respective rights and liabilities of the parties.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. In regard to Count One, for declaratory and/or injunctive relief to remedy the violation and impairment of Plaintiff's rights, and pursuant to 42 U.S.C. § 1988, for an award of Plaintiff's reasonable attorney's fees and costs; and

B.  In regard to Count Two, for declaratory and/or injunctive relief to remedy the violation of Plaintiff's rights, and pursuant to 42 U.S.C. § 1988, for an award of Plaintiff's reasonable attorney's fees and costs; and

C.  In regard to Count Three, for the declaratory judgments prayed for in paragraph 60 above, and pursuant to 28 U.S.C. § 2201 *et seq.*, for such further relief as is necessary or proper; and

D.  In regard to Count One, or Count Two, or Count Three, or any combination of the them:

  (1) For injunctive relief from this court pursuant to Fed.Civ.R. 65 enjoining Defendant LaRose from enforcing those portions of S.B. 80, which require that appellate judicial candidates in Ohio be identified on general election ballots as partisan candidates or by enjoining the other Defendants named herein from enforcing those parts of the Ohio Code of Judicial Conduct against Plaintiff and other partisan judicial candidates under the terms of S.B. 80, all of which deprive Plaintiff and other partisan judicial candidates of their rights secured by the First, Fifth and Fourteenth Amendments of the United States Constitution.

  (2) For an order restraining and enjoining the the Defendants from enforcing or ordering to be placed on any general election ballot henceforth the political party designations for judicial candidates for the offices of judge of the court of appeals of any district of this state and for candidates for justice and chief justice of the Supreme Court of Ohio, or alternatively,

  (3) For an order restraining and enjoining the Defendants from requiring compliance with the provisions of Rule 4.1 of the Code of Judicial Conduct and its restrictions on

judicial candidates who must bear political party designation next to their names on the general election ballot.

E. For an award of costs, pre- and post-judgment interest, reasonable attorney fees, and expert witness fees; and

F. Any and all such other relief as the Court may find just and proper.

Respectfully submitted,

/s Patrick M. Quinn
Patrick M. Quinn         (0081692)
Email: pmq@brunnerlaw.com
Rick L. Brunner          (0012998)
EMail: rlb@brunnerlaw.com
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Telephone: (614) 241-5550
Facsimile: (614) 241-5551
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 19th day of August, 2024, a true and accurate copy of the foregoing document was filed with the Clerk of Courts' ECF system, which will send notice to all parties and counsel of record.

/s/ Patrick M. Quinn
Patrick M. Quinn         (0081692)