**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER BRUNNER | ) | Case No. 4:23-cv-2180 |
| | ) | |
| Plaintiff, | ) | Judge Pearson |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAROSE, et al. | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OF PLAINTIFF JENNIFER BRUNNER IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Rick L. Brunner          (0012998)
Patrick M. Quinn         (0081692)
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Tel:    (614) 241-5550
Fax:    (614) 241-5551
Email: rlb@brunnerlaw.com
        pmq@brunnerlaw.com
*Counsel for Plaintiff*

## I.      Introduction

For more than 100 years, Ohio's system of selecting judges was unique. Candidates for judicial office ran in partisan primary elections, and the winners of the respective party primaries then faced off in a general election. That general election, however, was officially nonpartisan. By statute, the ballots did not identify the candidates as the nominees of any political party, and by Rule of Judicial Conduct, the candidates were restrained in how they could identify themselves as members of or affiliates with a political party and how they could campaign on issues associated with the parties. This system was "unquestionably inconsistent and, consequently, deserving of scrutiny." *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Brunner*, No. 10-cv-504, 2010 WL 11519482 (S.D.Ohio Aug. 19, 2010) ("*AFSCME I*"). Indeed, no other state in the country followed such a structure throughout its entire judiciary. *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Husted*, 814 F.3d 329, 333 n.1 (6th Cir. 2016)

Ohio defended this structure based upon an asserted "interest in minimizing partisanship in judicial elections and avoiding the appearance of coercion or *quid-pro-quo*," *Id.*, and claimed a "compelling interest in diminishing reliance on political parties in judicial selection." *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Brunner*, 24 F.Supp.3d 680, 683 (S.D.Ohio 2014) ("*AFSCME II*"). Ohio touted its judicial selection process as laudably "'leav[ing] to political parties the right to place candidates for judicial offices in nomination' while also 'withdraw[ing] candidates for judicial offices from partisan politics…'" *Husted*, 814 F.3d at 333 (affirming sub nom. *AFSCME II*).

Now, Ohio has cast these interests aside. Effective as of September 30, 2021, the Chief Justice and Justices of the Ohio Supreme Court, and the Judges of the Ohio Courts of Appeals run in fully partisan general elections, and their names appear on general election ballots alongside the

name of their affiliated political party. Yet, continuing its grand traditions of hybrid structures and half measures, Ohio still elects its trial court judges in non-partisan general elections and on ballots which do not disclose the candidate's political party.

All the while, Ohio's judges and judicial candidates remain subject to professional obligations outlined in the Ohio Code of Judicial Conduct. This code of conduct governs how judges and candidates may ethically conduct a judicial campaign without subjecting themselves to professional discipline, including restrictions on how candidates may speak about cases, controversies, or issues that are likely to come before the court, and limitations on how or when candidates may solicit campaign funds, while at the same time subject to state campaign finance laws on the expenditure and reporting of funds applicable to other state and local candidates.

The end result is that Ohio judicial elections are governed by a patchwork quilt of mismatched restrictions and regulations, often in tension with one another, and which lack any coherent, compelling, or rational justification for any legitimate interest which the state might assert. The result is also that these interwoven provisions of Ohio statutory law and judicial ethics operate to infringe on the Constitutional rights of Plaintiff, Justice Jennifer Brunner, to free speech and freedom of association as protected by the First Amendment, and to due process and equal protection of the laws as protected by the Fourteenth Amendment.

Certain of the Defendants – Ohio Disciplinary Counsel Joseph Caligirui, Director of the Ohio Board of Professional Conduct Richard A. Dove, and Chief Justice of the Ohio Court of Appeals Judge John Williamowski – now seek judgment on the pleadings. They do so on two narrow bases. First, that they do not have a sufficient role in connection with the enforcement of Ohio's Rule of Judicial Conduct 4.1(A)(6), but this is not the case; Defendants Caliguiri and Dove possess a sufficient role in and connection to enforcement of the speech regulation of Rule

4.1(A)(6) to divest them of Eleventh Amendment immunity pursuant to *Ex Parte Young*, and Defendants acknowledge the integral role played by the Chief Justice of the Ohio Court of Appeals in enforcing Canon 4 against Supreme Court Justices and candidates. Second, Defendants claim that Rule 4.1(A)(6) passes constitutional muster. But they advance this claim only after misconstruing the nature of Plaintiff's challenge to that rule; It is not a stand-alone assertion that the Rule violates the United States Constitution, but instead, a recognition that the combined effect of the Rule in place at the same time as a statutory scheme that identifies candidates such as Plaintiff as partisan political actors, that infringes on the free speech and associational rights of candidates. At a minimum, it is not so clearly to the contrary that this Court can make this determination at the pleading stage. Defendants' motion should be denied.

## II.    Statement of Facts

Ohio law provides for two different types of ballots to be voted at a general election. One, the office type ballot, is for electoral races between partisan candidates. This ballot type, for each race, includes the names of each candidate for the contested office; beneath the name of each candidate is "the name of the political party by which the candidate was nominated…" Ohio Rev. Code § 3505.03(F). The second form of general election ballot is the nonpartisan ballot. Ohio Rev. Code § 3505.04. As its name suggests, this ballot style includes the names of all candidates for offices which are nonpartisan under state law, such state and local boards of elections or certain municipal or township offices. *Id.*

Since at least 1851, Ohioans have selected their judges via direct election. *See* Maureen O'Connor, *A Proposal for Strengthening Judicial Elections* (May 2013)[1] at 3. Judicial elections

---

[1]    Available    at    https://web.archive.org/web/20150906212153/http://ohiojudicialreform.org/wp-content/resources/Plan13.pdf (Last Visited Nov. 4, 2024)

were initially full-blown partisan affairs, "dominated by party bosses, straight ticket voting, and a general undue influence of partisan party politics." *Id.* at 3-4. Ohio's fully partisan judicial elections eventually gave way to the "Non-Partisan Judiciary Act of 1911, which eliminated party affiliation on the general election ballot in Ohio, but retained it in the primaries." *Id.*at 4; *see also State ex rel. Weinberger v. Miller*, 87 Ohio St. 12, 99 N.E. 1078 (1912) (upholding constitutionality of act establishing non-partisan judicial general elections).

This was the system that would remain in place until 2021. Prior to that time, Ohio law provided that the names of all candidates nominated at a primary election "except judicial offices" should appear on the office type ballot in the succeeding general election. Ohio Rev. Code § 3505.03 (2014). Then, the nonpartisan ballot type would contain the names "of all nonpartisan candidates for election to judicial office…" Ohio Rev. Code § 3505.04 (1981); *see also* Ohio Rev. Code § 3501.01(J) (2013) (defining "nonpartisan candidate" to include "all candidates for judicial office…"). The effect of these provisions meant that Ohio's judicial candidates ran in partisan primary elections, but nonpartisan general elections. *AFSCME II*, 24 F.Supp.3d at 700 quoting O'Connor, *supra* ("Ohio is the only state 'that holds overtly partisan primaries with ostensibly nonpartisan general elections with the party affiliation not appearing on the ballot'").

Ohio Senate Bill 80, effective on September 30, 2021, marked a radical departure from this system. S.B. 80 amended Ohio law "to require certain judicial candidates to appear on the ballot with a party designation." 2021 Ohio Laws File 32 (S.B. 80). It did so by requiring that candidates for Chief Justice of the Ohio Supreme Court, Ohio Supreme Court Justices, and Judges of the Courts of Appeals would now appear on the office type ballot, and with "the name of the political party by which the candidate was nominated or certified" appearing alongside it. Ohio Rev. Code § 3505.03(C), (F). Now, only elections for Ohio's trial court judges appear on the nonpartisan

4

ballot type, Ohio Rev. Code § 3505.04, and only trial court judges are defined as nonpartisan candidates, Ohio Rev. Code § 3501.01(J). This results in a system in which the decisions of nonpartisan trial court judges are subject to appeal as of right to partisan intermediate appellate court judges and further discretionary review by partisan Supreme Court justices. Amended Complaint [DE30] at ¶22. Defendant Frank LaRose[2], the Ohio Secretary of State, is charged with prescribing ballot forms that comply with these statutory provisions in his role as the state's "chief election officer." Ohio Rev. Code §§ 3505.01(A)(1); 3501.04.

Plaintiff Jennifer Brunner is a Justice of the Ohio Supreme Court. Am. Cmpl. [DE30] at ¶5. She was first elected to that position in 2020, under Ohio's prior partisan primary / nonpartisan general structure. *Id.* On June 9, 2021, Plaintiff publicly announced her intention to seek the office of Chief Justice at the upcoming 2022 election to succeed Chief Justice Maureen O'Connor. *Id.* at ¶14. Justice Brunner filed her formal declaration of candidacy for the Chief Justice election on February 1, 2022. Plaintiff lost the 2022 Chief Justice election, which was the first conducted under Ohio's current system of fully partisan higher court elections. *Id.* at ¶24. She remains, however, a Justice of the Ohio Supreme Court until her current term expires. *Id.* at ¶3. Since her current seat will be up for election in 2026, and because she is otherwise qualified to do so, Justice Brunner may run for reelection. *Id.* at ¶37.

As both a judicial officer and as a candidate who has established a campaign committee under state law for judicial office, Justice Brunner is subject to the provisions of Ohio's Code of Judicial Conduct. *Id.* at ¶16; *see also* Ohio Jud. Cond. Rule 4.6(F). Canon 4 of the Code of Judicial Conduct generally provides that a "judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the

---

[2] Defendant LaRose does not join in the motion for judgment on the pleadings.

judiciary." Rules 4.1 and 4.2 of the Code contains various regulations governing a judge or judicial candidate in their speech, activities, and conduct of a political campaign, and Rule 4.4 of the Code regulates judicial campaign contributions and solicitations by judges or candidates. Rule 4.5 of the Code requires that a judge must resign their judicial office upon becoming a candidate for any nonjudicial elective office. Most pertinent, Rule 4.1(A)(6) contains a broad restriction on the speech of judges and judicial candidates designed to distinguish them from political actors of the executive or legislative branches: "A judge or judicial candidate shall not…[i]n connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office

Under Ohio's disciplinary structure, the Ohio Board of Professional Conduct (of which Defendant Dove serves as the Director) receives and evaluates "complaints of misconduct that are alleged to have been committed by a justice, judge, or candidate for judicial office." Ohio Gov. Jud. R. II(1). Grievances "alleging misconduct of the Chief Justice or a justice of the Supreme Court…shall be filed" with the office of Defendant Caliguiri, the Ohio Disciplinary Counsel. Ohio Gov. Jud. R. II(2)(B). Disciplinary Counsel "shall review the grievance to determine whether an ethical violation is alleged." *Id.* At this point, the Chief Justice of the Court of Appeals, Defendant Williamowski, selects a panel of judges from the Ohio courts of appeals conducts an initial review of the grievance, Ohio Gov. Jud. R. II(4)(A), which may ultimately result in the filing of a formal complaint alleging misconduct against a Justice. Ohio Gov. Jud. R. II(4)(B). In these proceedings on a formal complaint, the Director of the Board of Professional Conduct serves as the clerk. Ohio Gov. Jud. R. II(E)(1).

6

The Ohio Rules for the Government of the Judiciary establish a modified procedure for certain grievances alleging violations of Canon 4, but only for those made "by a judicial candidate for the Supreme Court…during the course of a campaign for judicial office…" Ohio Gov. Jud. R. II(6). Under this modified procedure, grievances are filed with the Board of Professional Conduct, and are ultimately evaluated and adjudicated by members drawn from the Ohio courts of appeals. *Id.* However, this modified procedure applies only to alleged Canon 4 violations made "during the course of a campaign." *Id.* Allegations of Canon 4 violations that do not arise out of speech or conduct "during the court of a campaign" are processed in accordance with the general disciplinary procedures of Ohio Gov. Jud. R. II(1) and (2)(B), not according to the particular Canon 4 procedure of II(6)

## III.    Law & Argument

### A.  Standard of Review

A Rule 12(c) motion for judgment on the pleadings is governed by the review and framework as a Rule 12(b)(6) motion to dismiss. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir.2014) citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-512 (6th Cir.2001). Under that more familiar standard, the Court construes the pleading in the light most favorable to the Plaintiff, assumes the truth of all factual allegations, and looks to determine whether the complaint alleges "sufficient factual matter, accepted as a true, to state a claim to relief that is plausible on its face." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir.2016). At the pleading stage, a plaintiff needs "to plead only factual allegations plausibly setting forth a claim. They do not need to identify the 'precise legal theories' on which they relied." *Bannister v. Knox Cty. Bd. of Edn.*, 49 F.4th 1000, 1009-1010 (6th Cir. 2022) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S.Ct.

7

1289, 179 L.Ed.2d 233 (2011), and *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021).

**B. Plaintiff's Claims Fall within the Scope of *Ex Parte Young*, and are therefore not Barred  by the Eleventh Amendment**

Although the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States," U.S. Constitution, Amendment XI, that bar is subject to the well-settled *Ex parte Young* exception. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Whether that exception applies requires "only…a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 601, 616 (6th Cir. 2002).

Defendants do not contest that the complaint alleges ongoing violations of federal law (although they dispute those claims on the merits); nor do Defendants contest that the relief sought by Justice Brunner is prospective in nature. Am. Cmpl. [DE 30] at 18-19; *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008); *Missouri v. Jenkins*, 491 U.S. 274, 279, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Instead, Defendants argue that the *Ex parte Young* exception does not apply because they do not have sufficient connection to the violations alleged in the Complaint. Motion [DE32] at 4-8.

To invoke the *Ex parte Young* exception, a defendant "must possess some connection with the enforcement" of the challenged law. *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018). This does not require that the defendant be vested with direct enforcement authority. Instead, *Ex parte Young* may be invoked against any official who is "actively involved with administering" the challenged provisions, or for whom there is "a realistic possibility that the official will take legal or administrative actions against the plaintiff's interests." *Id.* quoting *Russell v. Lundergan-*

8

*Grimes*, 784 F.3d 1037, 1048-1049 (6th Cir. 2015). It is not only, as Defendants argue, those who

"prosecute or adjudicate" claimed violations of the challenged provisions who are subject to *Ex*

*parte Young*. *See Doe; Platt v. Bd. of Commrs. on Grievances and Discipline of Ohio Supreme*

*Court*, 769 F.3d 447, 450 (6th Cir. 2014).

Defendant Dove, as the Director of the Board of Professional Conduct, and Defendant

Caliguri, Ohio Disciplinary Counsel are subject to the *Ex parte Young* exception here. Under Ohio

law, the allegations of disciplinary violations, including conduct alleged to be in violation of Canon

4, are filed with Disciplinary Counsel, who functions as the initial gatekeeper on whether the

matter proceeds or is terminated. Ohio Gov. Jud. R. II(2)(B). Throughout investigation and, if

warranted, formal proceedings, the Board of Professional Conduct serves the as the clerk and the

repository for such proceedings. Ohio Gov. Jud. R. II(4)(C)(2)(b); II(E)(1). Thus, both

Disciplinary Counsel and the Board are "actively involved with administering" the challenged

provisions of Canon 4. *Doe*, 910 F.3d at 848-849; *McNiel v. Community Probation Servs., LLC*,

945 F.3d 991, 995 (6th Cir. 2019) ("sovereign immunity does not stand in the way of a lawsuit

against a public official actively involved with administering the alleged violation"); *Platt I*, 769

F.3d 447 (The "Board, a defendant here, enforces the Code [of Judicial Conduct] by disciplining

its violators. The Board also enforces the Ohio Rules of Professional Conduct, which

independently prohibit Ohio attorneys from violation the Code [of Judicial Conduct…The Office

of Disciplinary Counsel…investigates and prosecutes suspected violators of the Code [of Judicial

Conduct]").

Defendants' argument to the contrary, Motion [DE32] at 5-6, ignores that *Ex parte Young*

applies to a broader swath of officials than simply those vested with exclusive enforcement

authority[3]. Even as they minimize their roles, the Board and Disciplinary Counsel do not dispute

they have an involvement in the administration of enforcing the Code of Judicial Conduct. *See*

*Platt I, supra*.

In any event, the Board and Disciplinary Counsel do in fact play the more traditional role

of adjudicator and prosecutor with respect to Justice Brunner's complaint. Defendants make much

of the more specialized grievance procedures of Section 6 of the Ohio Rules for the Government

of the Judiciary. Motion [DE32] at 7-8. But on their face, the procedures of Section 6 govern only

grievances alleging misconduct "during the course of a campaign…" Ohio Gov. Jud. R. II(6).

Meanwhile, the provisions of the Code of Judicial Conduct implicated by this case are broader

than just regulation of campaign speech or conduct. For example, Ohio Jud. Cond. Rule. 4.1(A)(6)

prohibits a judge – at any time, and in any context – from making any "pledges, promises, or

commitments that are inconsistent with the impartial performance of the adjudicative duties of

judicial office" "in connection with cases, controversies, or issues that are likely to come before

the court." If a judicial officer such as Justice Brunner were alleged to have violated this provision

outside of the context of "the course of a campaign," the specialized procedures of Section 6 would

not apply, and enforcement would fall to Disciplinary Counsel and the Board under Section 4.

Further, any violation of the Code of Judicial Conduct serves as an independent basis for

the imposition of punishment under the Rules of Professional Conduct which are applicable to all

Ohio attorneys, and which *are* prosecuted and adjudicated by Ohio Disciplinary Counsel and the

Board of Professional Conduct. *See* Ohio Prof. Cond. R. 8.2(b) ("A lawyer who is a candidate for

judicial office shall not violate the provisions of the Ohio Code of Judicial Conduct applicable to

---

[3] Defendants do not advance an argument that the Eleventh Amendment bars Plaintiff's claims against Defendant Judge Williamowski. Motion [DE32] at 8

judicial candidates"); 8.4(a) ("It is professional misconduct for a lawyer to…violate…the Ohio Rules of Professional Conduct…"). Defendants do not dispute that the Board and Disciplinary Counsel each possess enforcement authority and actively administer the general disciplinary process as to lawyers.

Thus, this action falls squarely within the scope of the *Ex parte Young* exception. Defendants' argument that the Board and Disciplinary Counsel are immune is without merit.

### C. The Amended Complaint States a Claim that S.B. 80 in Conjunction with Code of Judicial Conduct Rule 4.1(A)(6) Violates the First Amendment

Through the combined effect of (a) S.B. 80's provisions mandating Justice Brunner to run in a partisan reelection for judicial office and (b) the restrictions of Canon 4 prohibiting Justice Brunner from expressing any areas of difference or disagreement with her political party, Ohio law operates to infringe on Justice Brunner's rights to freedom of speech and association as protected by the First Amendment. Moreover, by requiring Justice Brunner to appear on the ballot as a member of or as affiliated with a political party, while simultaneously restricting her from highlighting any areas with which she may disagree with the official or widely-understood platform of her party, Ohio law effectively compels Justice Brunner's speech, also in violation of the First Amendment.

Plaintiff does not bring a stand-alone claim that Code of Judicial Conduct Rule 4.1(A)(6), by itself or in isolation, is unconstitutional. Rule 4.1(A)(6) is constitutionally problematic when considered and applied in conjunction with S.B. 80. The latter tethers a judicial candidate such as Justice Brunner to a partisan political label, while the former restricts what she may say in connection with "cases, controversies, or issues that are likely to come before the court…" Rule 4.1(A)(6). Thus, the core proposition of Plaintiff's claims with respect to Code of Judicial Conduct Rule 4.1(A)(6) is a simple one: The State cannot have it both ways. It cannot require, through S.B.

11

80, Plaintiff to pursue election on a partisan ballot while simultaneously limiting the content of Plaintiff's permissible speech. If judges are truly to be held different in the electoral process, then they cannot be treated wholly equal to non-judicial partisan candidates. Alternatively, if Ohio appellate-level judges are to be treated the same as other partisan candidates, then their speech cannot be subjected to the content-based restrictions applicable to judges.

"With respect to the political designations of the candidates on nomination papers or on the ballot, a State could wash its hands of such business and leave it to the educational efforts of the candidates themselves, or their sponsors, during the campaigns." *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992). For more than a century, Ohio's hands were clean in this regard, at least with respect to general election ballots.

In S.B. 80, Ohio charted a different path for Supreme Court Justices and Court of Appeals Judges. Having now chosen to elect its judicial officers in a fully partisan process concluding with a ballot specifying a candidate's affiliated political party, Ohio is obligated to "take into account the provisions of the Federal and State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws." *Id.*, citing *Bachrach v. Secy. of Commonwealth*, 382 Mass. 268, 415 N.E.2d 832, 834 (1981) citing *Riddell v. Natl. Democratic Party*, 508 F.2d 770, 775-779 (5th Cir. 1975). *Rosen* thus recognizes that "although a state may refuse to include party labels on ballots entirely, once it chooses to allow them, it must do so in a nondiscriminatory manner." *Husted*, 814 F.3d at 338 citing *Rosen*, 970 F.2d at 175.

S.B. 80 fails this test. It is, on its face, not "nondiscriminatory" in its configuration of the ballot among candidates, not only segmenting judicial offices from non-judicial, but itself effectively slicing the judiciary into multiple categories. It is true, of course, that a state may constitutionally draw distinctions "in light of the different role that judges must play from their

legislative and executive counterparts…" *Husted.*, 814 F.3d at 338 citing *Carey*, 614 F.3d at 201. But no case of which we are aware permits a State to cast one part of its elected judiciary into the partisan arena while leaving others to a partisan-primary/nonpartisan-general hybrid. Moreover, and all the while, the sort of constitutionally permissible distinctions that might otherwise justify Rule 4.1(A)(6) are of significantly lessened force given the scheme called for by S.B. 80.

Defendants cite *Ohio Council 8 Am. Fedn. of State, Cty., & Mun. Employees, AFL-CIO v. Husted*, 814 F.3d 329 (6th Cir. 2016), which they claim supports the propositions that S.B. 80, even in conjunction with Rule 4.1(A)(6), passes muster under the First Amendment. Motion [DE32] at 14. But the law at issue in *Husted* is in no way similar to Ohio's post-S.B. 80 ballot regime. *Husted* evaluated Ohio's pre-S.B. 80 law, in which a judicial candidate's political party membership or affiliation was expressly prohibited from appearing on the ballot form itself. *Id.*, 814 F.3d at 332 (Ohio law "precludes judicial candidates from being associated with their political parties on the general-election ballot"). The plaintiffs in *Husted* sought an order that would "permit judicial candidates to list their political party affiliations" on the general election ballot. *Id.*, 814 F.3d at 333. The district court rejected this challenge – on summary judgment, not at the pleading stage – and the Sixth Circuit affirmed based on "Ohio's interest in minimizing partisanship in judicial elections." *Id.*, 614 F.3d at 332.

The outcome of *Husted* does not control this case. The laws challenged there and here and different. The procedural posture of that case was different from this one. And the asserted state interest in minimizing partisanship there is the exact opposite of what Ohio has furthered here in enacting in S.B. 80 to require party designation on the ballot for Supreme Court justices and appellate court judges. Rather, the relevant observation of *Husted* actually supports Justice Brunner here: Although "a state may refuse to include party labels on ballots entirely, once it

13

chooses to allow them, it must do so in a nondiscriminatory manner." *Id.*, 614 F.3d at 338 citing *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992). And a portion of that "nondiscriminatory manner" must include consistency in the treatment of judicial candidates with respect to their permissible speech. Either they must be permitted to speak freely as partisan political candidates (contra to what Jud. Cond. R. 4.1(A)(6) currently provides), or they must not be partisan political candidates (contra to what S.B. 80 currently provides).

Finally, the combined effect of S.B. 80, requiring Justice Brunner to run for reelection in a fully partisan election, with political affiliation according to her nomination identified next to her name on the ballot, along with Judicial Conduct Rule 4.1(A)(6), prohibiting her "in connection with cases, controversies, or issues that are likely to come before the court [from making] pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office," operates to tether her to the actual or perceived viewpoints of the political party that nominates her, while simultaneously denying her the ability to speak about how her views may conflict or differ with her party. In other words, the combination of the statute and the rule function to compel Justice Brunner's speech.

"Under the compelled-speech doctrine, the 'First Amendment stringently limits a State's authority to compel a private party to express a view with which the private party disagrees.'" *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 593 (6th Cir. 2018) quoting *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 219, 135 S.Ct. 2239, 192 L.Ed.2d 274 (2015). The state may not force "a private party to 'be an instrument for fostering public adherence to an ideological point of view [she] finds unacceptable.'" *Id.* quoting *Wooley v. Maynard*, 430 U.S. 705, 715, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). "One important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say.'"

14

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) quoting *Pacific Gas & Electric Co. v. Public Utilities Comm'n of Cal.*, 415 U.S. 1, 11, 106 S.Ct. 903, 909, 89 L.Ed.2d 1 (1986).

To see why the combined effect of S.B. 80 and Rule 4.1(A)(6) amounts to unconstitutional compelled speech, consider two hypotheticals: One, a Justice associated with the Democratic Party does not believe that restrictions on the ability of private citizens to own semi-automatic firearms are constitutionally permissible. Two, a Justice associated with the Republican Party is not convinced that human life begins at the moment of conception, and therefore, any laws relating to abortion should not necessarily be viewed in this light. Each of these hypothetical justices would appear on an Ohio general election ballot alongside the name of their associated political party. Those parties are commonly and widely understood to favor legal views antithetical to those held by the hypothetical jurists. The issues involved, the existence and/or scope of the right to bear arms or to an abortion, respectively, are beyond doubt the types of "cases, controversies, or issues" likely to come before any court, especially the highest court of this state. As such, the justices in this hypothetical situation may not publicly explain the nuances of their views or express their disagreement with the recognized platform of their political parties[4]. They are chained by the force of state law and the threat of professional discipline to be associated with views with which they disagree. This is compelled speech, and the Constitution forbids it.

---

[4] The qualifier of Ohio Jud. Con. R. 4.1(A)(6) relating to speech "inconsistent with the impartial performance of the adjudicative duties of judicial office" does nothing to solve this problem. That limitation on the scope of the Rule's prohibitions is so vague and imprecise that the Sixth Circuit has been unable to give it an authoritative construction. *Winter*, 834 F.3d at 695; *see also Fischer v. Thomas*, 52 F.4th 303, 312-313 (6th Cir. 2022)

**IV.     Conclusion**

For all of these reasons, Defendants' motion for judgment on the pleadings should be denied.

Respectfully Submitted,


_____/s/ Patrick M. Quinn_____
Rick L. Brunner                (0012998)
Patrick M. Quinn              (0081692)
BRUNNER QUINN
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Tel:    (614) 241-5550
Fax:    (614) 241-5551
Email: rlb@brunnerlaw.com
          pmq@brunnerlaw.com
*Counsel for Plaintiff*


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 4th day of November, 2024, a true and accurate copy of the foregoing document was filed with the Clerk of Courts' ECF system, which will send notice to all parties and counsel of record.

_____/s/ Patrick M. Quinn_____
Patrick M. Quinn              (0081692)

16