PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER BRUNNER, | ) | CASE NO.  4:23-CV-2180 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| FRANK LAROSE, *et al*., | ) | |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 32] |

Pending before the Court is a motion for judgment on the pleadings (ECF No. 32) filed by Defendants: Joe Caligiuri, Disciplinary Counsel; Rick Dove, Director of the Board of Professional Conduct; and Judge John Willamowski,[1] Chief Justice of the Ohio Court of Appeals (collectively referred to as "Defendants").  Plaintiff Jennifer Brunner filed a response in opposition.  *See* ECF No. 35.  Defendants replied.  *See* ECF No. 36.  For the reasons below, the Court denies Defendants' motion.

## I.    Background

Plaintiff serves as a justice of the Ohio Supreme Court.  Verified Am. Compl.  (ECF No. 30 at PageID #: 371, ¶ 5).  In June 2021, Plaintiff announced she was running for Chief Justice of the Supreme Court of Ohio.  ECF No. 30 at PageID #: 378, ¶ 30.  In February 2022, Plaintiff filed a declaration of candidacy for the office of Chief Justice of the Ohio Supreme Court with the office of Defendant Ohio Secretary of State, Frank LaRose.  ECF No. 30 at PageID #: 374, ¶

---

[1] Judge Willamowski, the current Chief Justice of the Court of Appeals, has substituted as Defendant Judge Osowski pursuant to Federal Rule of Civil Procedure 25(d).  *See* Answer to First Am. Compl.  (ECF No. 31 at PageID #: 406 n.1).

(4:23CV2180)

15.  As both a candidate for judicial office and a judicial officer, Plaintiff is subject to the Ohio

Code of Judicial Conduct.  ECF No. 30 at PageID #: 374, ¶ 16.  Canon 4 of the Code of Judicial

Conduct concerns rules of conduct, including conduct during campaigns, and requires training on

campaign rules.  ECF No. 30 at PageID #: 375, ¶ 17.  Plaintiff is subject to disciplinary processes

as both a judicial officer and a judicial candidate.  Consequences may be imposed if she violates

rules within Canon 4 of the Code of Judicial Conduct as a judicial candidate.[2]  Violations of the

Code of Judicial Conduct "may carry consequences ranging from public reprimand, suspension

or even disbarment from the practice of law, [of] which licensure is a requirement for serving as

a judge or as a justice of the Supreme Court of Ohio."  ECF No. 30 at PageID #: 375, ¶ 18.

Before Plaintiff filed her declaration of candidacy for the office of Ohio Supreme Court

Chief Justice, the Ohio Legislature passed Senate Bill 80 ("S.B. 80"), altering the definition of

nonpartisan candidates.  ECF No. 30 at PageID #: 375-76, ¶¶ 19, 20.  Under S.B. 80, candidates

for justice of the Ohio Supreme Court, Chief Justice of the Ohio Supreme Court, and judge for

Ohio's 12 district courts of appeals are no longer defined as nonpartisan candidates.  ECF No. 30

at PageID #: 375-76, ¶ 20.  S.B. 80 requires such candidates to affiliate with a party or designate

themselves as an independent candidate.  The November 2022 election was the first time S.B. 80

was administered in a judicial election.  ECF No. 30 at PageID #: 377, ¶ 24.  Plaintiff, a

candidate for Ohio Supreme Court Chief Justice, was presented on the ballot as a partisan

candidate and lost the election.  ECF No. 30 at PageID #: 378, ¶ 31.

Plaintiff intends to run for reelection of office when her judicial term ends on January 1,

2027.  ECF No. 30 at PageID #: 380, ¶ 36.  If Plaintiff runs for reelection, her party affiliation

---

[2] These rules include: (1) Rules for the Government of the Judiciary Article II, and
(2) Rules for the Government of the Bar, Article V.  ECF No. 30 at PageID #: 375, ¶ 18.

(4:23CV2180)

will accompany her name on the ballot, and she must continue to comply with the Code of Judicial Conduct's rules for judicial candidates.  ECF No. 30 at PageID #: 380, ¶ 38.  According to Plaintiff, the combined application of S.B. 80's party affiliation requirement and Rule 4.1(A)(6) Code of Judicial Conduct creates a tension denying her substantive due process rights as guaranteed under the First and Fifth Amendment of the United States Constitution.  ECF No. 30 at PageID #: 382, ¶ 46.  Against this backdrop, Plaintiff remarks that her participation in the political process as a judicial candidate could result in violations of the Code of Judicial Conduct that could give rise to sanctions causing the loss of her license to practice law.  ECF No. 30 at PageID #: 382, ¶ 46.

Plaintiff moves for equitable relief, *i.e.*, declaratory judgment and injunctive relief, enjoining "[D]efendant LaRose from enforcing those portions of S.B. 80, which require that appellate judicial candidates in Ohio be identified on general election ballots as partisan candidates or by enjoining the other defendants . . . from enforcing those parts of the Ohio Code of Judicial Conduct against Plaintiff and other partisan judicial candidates[.]"  ECF No. 30 at PageID #: 371, ¶ 3.

Defendants move for judgment on the pleadings, asserting that dismissal is warranted because the Eleventh Amendment bars Plaintiff's claims against Disciplinary Counsel, Joe Caligiuri, and Director of the Board of Professional Conduct, Rick Dove; and, because the Amended Complaint fails to state any claim against the Code of Judicial Conduct.

## II.    Legal Standard

### A.  Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings employs the same standard of review as a motion to dismiss under Rule 12(b)(6).  *Gay v. Cabinet for Health & Fam. Servs. Dep't for*

(4:23CV2180)

*Cmty. Based Servs.*, No. 18-5285, 2019 WL 1338524, at *3 (6th Cir. Jan. 23, 2019). As a result, when ruling on a motion for judgment on the pleadings, "a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Engler v. Arnold*, 862 F.3d 571 (6th Cir. 2017). To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting first *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Mere labels and conclusions are not enough; the allegations must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Judgment on the pleadings should be granted only if, subject to these conditions, no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Enoch v. Hogan*, 728 F. App'x 448, 452 (6th Cir. 2018) (internal quotation and citations omitted).

In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case if the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Erie Cty., Ohio v. Morton Salt, Inc.,* 702 F.3d 860, 863 (6th Cir. 2012).

### B. Eleventh Amendment

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

4

(4:23CV2180)

U.S. CONST. amend. XI.  "The Eleventh Amendment prohibits a suit brought in federal court against a state, its agencies, and its institutions unless the state has expressly waived its sovereign immunity or Congress has overridden the state's federal-court immunity." *Chappell v. Morgan, No. 16-3307, 2016 WL 9943213, at \*2 (6th Cir. Dec. 28, 2016)* (citing *Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)*).  The State of Ohio has not waived its sovereign immunity or consented to being sued in federal court.  *Id.*  (citing *Mixon v. Ohio, 193 F.3d 389, 397 (6th Cir. 1999)*).  "Immunity applies whether the plaintiff is seeking monetary or equitable relief." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984)*).  Because "[t]he Ohio Office of Disciplinary Counsel and Ohio Board of Professional Conduct are arms of the state[,]" immunity from Plaintiff's official-capacity claims brought under § 1983 *could* extend to Disciplinary Counsel Caligiuri and Director Dove.  *See Hunter v. Dove, 711 F. Supp. 3d 862, 870 (S.D. Ohio 2024), appeal dismissed, No. 24-3111, 2024 WL 5402636 (6th Cir. Nov. 19, 2024)* (citing *Novel v. Zapor, No. 2:14-CV-264, 2015 WL 12734021, at \*6 (S.D. Ohio Mar. 11, 2015)*).

In *Ex parte Young, 209 U.S. 123 (1908)*, however, the Supreme Court established an exception to the Eleventh Amendment's general rule of sovereign immunity.  Under *Ex parte Young*, federal courts may enjoin state officers when they "threaten and are about to commence proceedings, either of a civil or criminal nature," to enforce an act that is in violation of the Federal Constitution.  *Ex parte Young, 209 U.S. at 156*.  The lawsuit may seek only equitable and prospective relief against a named state official.  *Enbridge Energy, LP v. Whitmer, 135 F.4th 467, 473 (6th Cir. 2025)* (internal quotations and citation omitted).

"To determine whether [claims] falls within the *Young* doctrine, a court ordinarily need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation

(4:23CV2180)

of federal law and seeks relief properly characterized as prospective." *Id*.  (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  "[T]he *Young* doctrine does not allow a federal action to proceed 'in every case where prospective declaratory and injunctive relief is sought against an officer.'" *Enbridge*, 135 F.4th at 473 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)).  Courts must assess whether the claim is against the state officer, or if it is against the state.  *See Enbridge*, 135 F.4th at 473.  In answering that question, the Supreme Court instructs courts to examine 'the *effect* of the relief sought[.]'" *Id*. (citing *Va. Office for Prot. And Advocacy v. Stewart*, 563 U.S. 247, 256 (2011) (emphasis original).

### III.    Discussion

#### A.  Disciplinary Counsel Caligiuri and Director Dove are Proper Parties

The parties disagree on whether Plaintiff's claims against Disciplinary Counsel Caligiuri and Director Dove brought under 42 U.S.C. § 1983 may bypass Eleventh Amendment sovereign immunity under the *Ex parte Young* exception.[3]  Neither party contests that the Amended Complaint alleges ongoing violations of federal law, and that the relief sought is prospective in nature.  The gravamen of their dispute is whether Disciplinary Counsel Caligiuri and Director Dove are the proper parties.

In determining whether a state official is the proper party, a plaintiff must allege facts showing that they "possess 'some connection with the enforcement of the [challenged law],' and must 'threaten [or] be about to commence proceedings'—that is, it must be likely that the official will enforce the law against the plaintiff[.]" *Doe v. DeWine*, 910 F.3d 842, 484 (6th Cir. 2018)

---

[3] Defendants concede that sovereign immunity under the Eleventh Amendment does not extend to Judge Willamowski.  *See* ECF No. 32 at PageID #: 425.

6

(4:23CV2180)

(alteration in original) (citations omitted); *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations.").  A defendant possesses a sufficient connection when he is "actively involved with administering the challenged statute[.]"  *Dewine*, 910 F.3d at 849 (internal brackets omitted).  "*Young* permits federal courts to treat real or threatened actions taken *pursuant to* state law as *ultra vires* on the 'fiction' that states cannot authorize unconstitutional acts."  *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022) (emphasis in original) (citation omitted).  For Plaintiff's claims to overcome sovereign immunity, she must sufficiently allege that Disciplinary Counsel Caligiuri and Director Dove have some connection with the enforcement of the alleged unconstitutional violations.

Under Defendants' theory, Disciplinary Counsel Caligiuri and Director Dove lack a sufficient connection to the alleged unconstitutional violations because they lack authority to enforce Canon 4's campaign-related conduct rules under the Code of Judicial Conduct.  ECF No. 32 at PageID #: 424.  Defendants Caligiuri and Dove rely on the special grievance procedures outlined in Rule II, Section 6 of the Supreme Court Rules for the Government of the Judiciary of Ohio ("Judicial Rule") to argue that they do not have enforcement authority over candidates for the Ohio Supreme Court.  *See* Ohio Gov. Jud. R. II(6)(A)(1);[4] ECF No. 32 at PageID #: 423.  Judicial Rule II, Section 6 provides the grievance procedures for alleged violations of Canon 4

---

[4] The Court uses the citation form set forth in the Supreme Court Rules for the Government of the Judiciary of Ohio.  *See* Ohio Gov. Jud. R. 20 ("These Rules shall be known as the Supreme Court Rules for the Government of the Judiciary of Ohio and shall be referred to and cited as 'Gov. Jud. R. _____.'")

(4:23CV2180)

by judicial candidates for the Ohio Supreme Court.  Ohio Gov. Jud. R. II(6) ("A grievance that

alleges a violation by a judicial candidate for the Supreme Court of Canon 4 of the Code of

Judicial Conduct during the course of a campaign . . . shall be brought, conducted, and disposed

of in accordance with this section.").  Caligiuri and Dove argue that under Section 6, "the role of

relator/prosecutor (which is usually Disciplinary Counsel in other disciplinary proceedings) is

played by the grievant.  And if the grievant fails to prosecute the complaint, the Chief Justice of

the Court of Appeals appoints a 'special disciplinary counsel' to serve as the relator."  ECF No.

32 at PageID ##: 423-24.[5]  As for Director Dove, Defendants remark that he lacks enforcement

authority because his duties under Section 6 are merely administrative—not prosecutorial.  ECF

No. 32 at PageID #: 424.

Plaintiff responds that Disciplinary Counsel Caligiuri and Director Dove's enforcement

authority for Ohio Rules of Professional Conduct violations give rise to the grievance procedures

under Judicial Rule II, Section 2, making them the proper parties.  Mem. in Opp'n.  (ECF No. 35

at PageID ##: 448, 450).  Judicial Rule II, Section 2(A) states, in relevant part: "Except as

provided in Gov. Bar R. V and Section 5 of this rule, a grievance alleging misconduct of a judge

or candidate for judicial office . . . shall be filed with the Office of Disciplinary Counsel."  Ohio

Gov. Jud. R. II(2)(A).  Judicial Rule II, Section 2(B) similarly states, in relevant part: "Except as

provided in Section 5 and 6 of this rule, a grievance alleging misconduct of the Chief Justice or a

justice of the Supreme Court . . . shall be filed with the Office of Disciplinary Counsel."  Ohio

Gov. Jud. R. II(2)(B).  Plaintiff intones that a judicial candidate who violates Canon 4 of the

---

[5] The "special disciplinary counsel" cannot be the Disciplinary Counsel Caligiuri,
because Ohio Gov. Jud. R. II(4)(B)(3) states that special disciplinary counsel "shall not be
an employee or appointee of the Supreme Court[.]"

(4:23CV2180)

Code of Judicial Conduct necessarily violates the Ohio Rules of Professional Conduct, implicating the grievance procedures under Judicial Rule II, Section 6.  ECF No. 35 at PageID ##: 449-50 (citing Ohio Prof'l Cond. R. 8.2(b) and 8.4(a)).  In other words, Plaintiff suggests that an alleged violation of Canon 4 could subject her to grievance procedures under both Section 2 and Section 6.  But even if Section 6 is the only applicable section determining their enforcement authority, Plaintiff argues that *Ex parte Young* applies to a "broader swatch of officials than simply those vested with exclusive enforcement authority." *See* ECF No. 35 at PageID #: 448-49 (citations omitted).

Defendants believe that Section 6 is the only applicable provision, and that Plaintiff is barred from referring to other provisions in the Code of Judicial Conduct because the Amended Complaint fails to identify any other specific portions of the Code of Judicial Conduct that may apply.  ECF No. 36 at PageID #: 458.  The Court disagrees.

The Court must consider the entirety of the Amended Complaint and, at this juncture, the Court is not convinced that, by not identifying other portions of the Code of Judicial Conduct, Plaintiff fails to meet federal pleading standards under Rule 8.  ECF No. 32 at PageID #: 426; ECF No. 36 at PageID #: 461. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 896 n.3 (6th Cir. 2019) (citing *Finley v. Huss*, 723 F. App'x 294, 297 (6th Cir. 2018)) ("[A] federal court may consider an entire complaint to determine whether a plaintiff pleaded plausible claims.").

The Amended Complaint, alleges that Disciplinary Counsel Caligiuri and Director Dove may invoke prosecutorial processes for violations of Ohio's Code of Judicial Conduct and the Ohio's Rules of Professional Conduct:

> 46. S.B. 80 requires Plaintiff to run as a partisan candidate in 2026, but the Code of Judicial Conduct . . . prohibits Plaintiff from speaking plainly and freely on partisan issues in order to preserve the integrity of the judiciary; this rubric denies Plaintiff

9

(4:23CV2180)

> substantive due process in that Plaintiff's aforementioned fundamental First and Fifth Amendment rights of freedom of speech and equal protection under the law in participating in the political process as a candidate are not protected from governmental interference, **even to the extent that Plaintiff could be subject to a prosecutorial process for violations of the Code of Judicial Conduct pursuant to a process set forth in Ohio Rules for the Government of the Judiciary (Rule II) and the Code of Professional Conduct** that could subject her to judicial sanctions that could include suspension of her license to practice law.
>
> ****
>
> 60.6 That the other defendants herein, Caligiuri, Dove, and Judge [Willamoski] as Chief Justice of the Court of Appeals, are state actors who under color of law are depriving Plaintiff and other judicial candidates declared by S.B. 80 to be partisan candidates of their civil rights secured by the First, Fifth and Fourteenth amendments of the United States Constitution by the enforcement of those portions of the Ohio Code of Judicial Conduct that cause **Plaintiff and other judicial appellate candidates to be deprived of their rights to speak freely as other partisan candidate are permitted to do during the general election campaign season, all of which deprives Plaintiff and others similar [*sic*] situated of the freedom to speak on issues, campaign for other offices, and generally campaign without threat of prosecution pursuant to the Code of Judicial Conduct and the Ohio Rules for Government of the Judiciary, or, in the alternative**[.]

ECF No. 30 at PageID ##: 382, 487, ¶¶ 46, 60.6 (emphasis added).

Against this backdrop, the Court concludes that Director Dove's discretion to make findings concerning complaints of misconduct (Ohio Gov. Jud. R. II(1)(A)), and Disciplinary Counsel Caligiuri's authority to prosecute formal complaints (Ohio Gov. Jud. R. II(2)(A)) give them a "sufficient connection" under *Ex parte Young*.[6] *See Russell*, 784 F.3d at 1047-48

---

[6] While the Judicial Rules outline the prosecutorial and adjudicative duties for the Ohio Disciplinary Counsel and Board of Professional Conduct, the allegations against Disciplinary Counsel Caligiuri and Director Dove satisfy *Ex parte Young* because, as the respective individuals in charge of their agencies, they are "likely responsible for its enforcement against Plaintiff." *See Booth v. Fink*, No. 1:23-CV-758, 2024 WL 3811390,

(4:23CV2180)

(determining that the Kentucky Attorney General's authority to investigate and prosecute violations of a 300-foot buffer-zone law, and the Kentucky Secretary of State and members of the State Board of Elections statutory role in administering and effectuating the buffer-zone law, gave them a sufficient connection to enforcement of the challenged law under *Ex parte Young*). Furthermore, it is undisputed that a judicial candidate violates the Ohio Rules of Professional Conduct if they violate the Ohio Code of Judicial Conduct.  *See* Ohio Prof'l Cond. Rule 8.2(b) (providing that "[a] lawyer who is a candidate for judicial office shall not violate the provisions of the Ohio Code of Judicial Conduct applicable to judicial candidates."); Ohio Prof'l Cond. Rule 8.4(a) ("It is professional misconduct for a lawyer to . . . violate . . . the Ohio Rules of Professional Conduct. . . .").  Therefore, it is plausible that Disciplinary Counsel Caligiuri and Director Dove may threaten to or impose sanctions on Plaintiff under the grievance procedures under Judicial Rule II, Section 2, making them "actively involved with administering" the alleged unconstitutional violation.  *See* Ohio Gov. Jud. R. I(1) (providing that the Ohio Rules of Professional Conduct are binding on all judicial candidates, and that the "willful breach of the Rules" shall result in punishment "by reprimand, suspension, disbarment, or probation as required in Gov. Jud. R. II[.]").

Defendants argue that it does not "matter that [Disciplinary Counsel Caligiuri and Director Dove] have authority over 'the general disciplinary process as to lawyers[,]'" (ECF No. 36 at PageID #: 459), but their conclusory assertion does not persuade the Court.  *See Youngblood v. Bd. of Commissioners of Mahoning Cnty., Ohio*, 847 F. App'x 267, 272 (6th Cir.

_____

at *5 (W.D. Mich. Aug. 14, 2024) (citing *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019)) (permitting suit for injunctive relief under *Ex parte Young* against a sheriff involved in "the enforcement chain of the challenged statute[.]").

11

(4:23CV2180)

2021) ("We need not consider 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.'"); *see also Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (recognizing generally that conclusory assertions in a responsive brief results in a party "waiv[ing] its arguments") (citing *Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 Fed. Appx. 370, 374 (6th Cir. 2015)).

Because Plaintiff seeks equitable and prospective relief against a named state official, rather than the state itself, and Disciplinary Counsel Caligiuri and Director Dove are the proper parties, they meet the *Ex parte Young* exception. *Enbridge Energy,* 135 F.4th at 473. (internal quotations and citation omitted). Accordingly, Disciplinary Counsel Caligiuri and Director Dove are excepted from sovereign immunity under the Eleventh Amendment.

### B. The Amended Complaint States a Claim Against the Code of Judicial Conduct

The Amended Complaint asserts a claim that S.B. 80, in conjunction with the Ohio Code of Judicial Conduct Rule 4.1(A)(6), violates the First Amendment of the United States Constitution:

> 49. By way of example, and without limitation, S.B. 80 is facially unconstitutional as an unreasonable and/or discriminatory measure regulating access to the ballot and the conduct of elections. Alternatively, S.B. 80, in conjunction with the provisions of the Code of Judicial Conduct regulating communications by judges and judicial candidates (including, but not limited to, Rule 4.1(A)(6)), is unconstitutional as applied to Plaintiff insofar as the combined effect operates to compel Plaintiff's speech, serves as a content-based regulation of speech, and is an unreasonable and/or discriminatory regulation of ballot access and the electoral process.

ECF No. 30 at PageID #: 383, ¶ 49.

Rule 4.1(A)(6) provides,

> In connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments

12

(4:23CV2180)

> that are inconsistent with the impartial performance of the adjudicative duties of judicial office.

Ohio Jud. Cond. Rule 4.1(A)(6).

Defendants argue that the Amended Complaint fails to state a claim alleging that S.B. 80, in conjunction with Rule 4.1(A)(6), violates the First Amendment under "any of the theories[of]—compelled speech, content-based restriction, or ballot access[.]" ECF No. 32 at PageID #: 428.  Plaintiff counters that while Ohio may allow appellate judicial candidates to have a partisan political label, S.B. 80 cannot subject only appellate-level judges to content-based restrictions, because that amounts to impermissible discrimination.  ECF No. 35 at PageID #: 451-53.  She also provides that S.B. 80 and Rule 4.1(A)(6) create a combined effect that amounts to compelled speech, because she cannot "publicly explain the nuances of [her] views or express [her] disagreement with the recognized platform of [her] political [party]", because of the threat of "professional discipline." ECF No. 35 at PageID #: 454.

Under the compelled-speech doctrine,

> the First Amendment stringently limits a State's authority to compel a private party to express a view with which the private party disagrees. . . . While the Government is generally entitled to say what it wishes and to select the views that it wants to express, . . . it may not do so by forcing a private party to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable. . . . [W]here the State's interest is to disseminate an ideology, no matter how acceptable to some, such interest cannot outweigh an individual's First Amendment right to avoid becoming the courier for such message.

*New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 593 (6th Cir. 2018) (citations and internal quotations omitted, alteration in original).  The Sixth Circuit defines "compulsion" in a compelled speech action as:

> A general principle of compelled speech jurisprudence . . . is that a violation of the First Amendment right against compelled speech

(4:23CV2180)

> occurs only in the context of actual compulsion. . . . In order to compel the exercise or suppression of speech, the governmental measure must punish, *or threaten to punish*, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature. . . . The consequence need not be direct; imprisonment, fines, injunctions, or taxes may suffice. . . . A discouragement that is minimal and wholly subjective does not, however, impermissibly deter the exercise of free speech rights.

*Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014) (first omission in original, citations and internal quotations omitted, emphasis added).

Defendants assert that S.B. 80 cannot compel speech, because Plaintiff "has a choice to affiliate with any party or none." ECF No. 36 at PageID #: 463. That assertion, however, is contradicted by their acknowledgment that S.B. 80 requires Plaintiff to make a choice between: (a) retaining her affiliation with a specific political party or (b) declaring herself an independent. *See* ECF No. 32 at PageID #: 429 n.4 (citing to Ohio Rev. Code § 3513.257 and Ohio Rev. Code § 3505.03(F) which provide that a candidate desiring to be listed on the ballot without a party affiliation must first file a nominating petition as an independent candidate).

Defendants lobs that, even if S.B. 80 compels speech, Rule 4.1(A)(6) cannot compel speech by "den[ying] her ability to speak." ECF No. 36 at PageID #: 464. That conclusion is based on a mistaken premise and disregards procedural context and coercive mechanisms that give rise to compulsion.

At the threshold, Defendants mistakenly believe that denying Plaintiff the ability to speak is not compelled speech. It is. Under the First Amendment, the "difference between compelled speech and compelled silence" is "without constitutional significance." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988) ("[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of *both what to say and what not to say*.") (emphasis added); *see also Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (holding that "[t]he

14

(4:23CV2180)

right to speak and the right to refrain from speaking are complementary components of the" First Amendment) (internal quotations and citation omitted).

Next, Defendants ignore that each of them play a role in the grievance procedures for Canon 4 violations (which include a violation of Rule 4.1(A)(6)) giving rise to sanctions that could result in Plaintiff's suspension or disbarment from the practice of law.  In her opposition, Plaintiff argues that the threat of sanctions for alleged Canon 4 violations silence her (and other judicial candidates) from voicing dissent with their affiliated party's ideological platforms, especially if Plaintiff intends to speak on "'cases, controversies, or issues likely to come before . . . the highest court of [Ohio]'", such as abortions or restrictions on the private right of citizens to own semi-automatic firearms.  *See* ECF No. 35 at PageID #: 454.  *See 16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").  *Cf. Republican Party of Minn. v. White*, 536 U.S. 765, 769, 788 (2002) (holding that a Minnesota canon of judicial conduct prohibiting judicial candidates from voicing their views on disputed legal and political issues violated the First Amendment after a complaint was filed with the Office of Lawyers Professional Responsibility against a Minnesota Supreme Court justice candidate who distributed literature criticizing "crime, welfare, and abortion", forcing the candidate to cease his campaign out of fear of "further ethical complaints that would jeopardize his ability to practice law.").

S.B. 80's requirement that Plaintiff choose a political designation or declare herself as an independent, and Defendants' authority to sanction her for violating Rule 4.1(A)(6), makes plausible Plaintiff's First Amendment claim alleged under § 1983.  *See generally*, *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 769 F.3d 447, 452 (6th Cir. 2014)

15

(4:23CV2180)

(concluding that Plaintiff's fear that the Ohio Board of Commissioners on Grievances and Discipline and the Office of Disciplinary Counsel would enforce the Code of Judicial Conduct against him was "credible."); *Fischer v. Thomas*, 52 F.4th 303, 313 (6th Cir. 2022) (recognizing that when judicial candidates must make a "choice between self-censorship and uncertain sanctions[,] [t]he First Amendment protects the candidates from having to make such a choice.").

Therefore, the Amended Complaint alleges a cognizable First Amendment claim against the Code of Judicial Conduct.

### IV.   Conclusion

For the reasons above, the Court denies Defendants' Motion for Judgment on the Pleadings (ECF No. 32).


IT IS SO ORDERED.


| August 8, 2025 | /s/ Benita Y. Pearson |
| --- | --- |
| Date | Benita Y. Pearson |
| | United States District Judge |

16