# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JENNIFER BRUNNER,                                 :
                                                  :
   *Plaintiff*,                               :
                                                  :
                                                  :   **Case No. 4:23-CV-2180**
   **v.**                                       :
                                                  :   **JUDGE BENITA Y. PEARSON**
FRANK LAROSE, et al.,                             :
                                                  :
   *Defendants*,                              :

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Under Rule 56 of the Federal Rules of Civil Procedure, Defendants move for summary judgment. There are no material facts in dispute, and Defendants are entitled to judgment as a matter of law. Plaintiff's claims against the Code of Judicial Conduct fail because recent amendments have mooted Plaintiff's claims. Further, Plaintiff cannot establish any facts showing there is a credible threat of Code enforcement against her. S.B. 80's requirement that appellate-level judicial candidates who seek a nomination from a political party bear that party's designation on the ballot withstands constitutional scrutiny. First, Plaintiff has no First Amendment right to coopt a ballot for her own political expression. And second, the law easily satisfies rational basis review. A memorandum in support follows.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
*\*Counsel of Record*
MICHAEL A. WALTON (0092201)
STEPHEN TABATOWSKI (0099175)
Assistant Attorneys General

Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ iii

INTRODUCTION ....................................................................................................... 1

Background .................................................................................................................. 1

Law And Argument ..................................................................................................... 3

I.      Legal Standard ................................................................................................ 3

II.     This Court lacks subject-matter jurisdiction  over Plaintiff's challenge
        to the Code of Judicial Conduct. ..................................................................... 4

        A.      Plaintiff's claims against the Code are moot. ........................................ 4

        B.      Plaintiff lacks standing to challenge the Code of Judicial Conduct........ 5

                1.      Plaintiff's injuries are neither traceable to the Code of
                        Judicial Conduct nor redressable by an order enjoining it.......... 5

                2.      Even if there were some evidence Plaintiff intends to violate
                        the Code, there is no evidence of any credible threat of
                        prosecution against her. .................................................. 6

III.    Plaintiff's First Amendment claim fails as a matter of law. ......................... 9

        A.      S.B. 80 imposes a minimal burden easily outweighed by the State's
                interests. ......................................................................................... 9

        B.      S.B. 80 does not violate the First Amendment in conjunction with
                the Code of Judicial Conduct. ......................................................... 13

IV.     Plaintiff's equal protection claim fails as a matter of law. .......................... 14

        A.      Partisan judicial candidates are not similarly situated to partisan
                non-judicial candidates. .................................................................. 15

        B.      Partisan judicial candidates are not similarly situated to nonpartisan
                judicial candidates, i.e. lower judge candidates ................................ 16

        C.      S.B. 80 easily passes rational basis review. ....................................... 17

V.      Plaintiff's claim for declaratory judgment fails as a matter of law. ........... 19

VI.     The Purcell doctrine forecloses any relief for the 2026 general election.
        ..................................................................................................... 19

Conclusion ...................................................................................................... 20

Certificate Of Service .................................................................................... 22

Certificate Of Compliance ............................................................................. 22

## STATEMENT OF ISSUES

1. Is Plaintiff Jennifer Brunner's challenge to the Code of Judicial Conduct moot?
2. Does Plaintiff have standing to challenge the Code of Judicial Conduct?
3. Does a law requiring party designations to appear on the general election ballot violate a candidate's First Amendment rights even though the candidate chose to seek that party's nomination?
4. Does S.B. 80 survive rational basis review under the Equal Protection clause?

## SUMMARY OF ARGUMENT

Plaintiff's challenge to the Code of Judicial Conduct is moot due to recent amendments that explicitly protect constitutionally protected speech and require dismissal of any grievance based solely on such speech. Plaintiff also lacks standing because her alleged injuries are not traceable to the Code and would not be redressed by enjoining it; instead, her claimed harm stems from S.B. 80's partisan-designation requirement. Additionally, Plaintiff cannot demonstrate a credible threat of enforcement, as there is no evidence she intends to violate the Code or that disciplinary authorities would pursue action against constitutionally protected conduct.

On the merits, S.B. 80 imposes only a minimal, nondiscriminatory burden that easily survives constitutional scrutiny under the *Anderson-Burdick* framework. The State has strong interests in informing voters, reducing confusion, and increasing voter participation, all of which the law advances. Plaintiff's First Amendment and Equal Protection claims fail because ballots are not forums for personal expression, similarly situated comparators do not exist, and the law is rationally related to legitimate state interests. Finally, any requested relief is barred by the *Purcell* doctrine, as altering election rules close to an ongoing election would create disruption and voter confusion.

**INTRODUCTION**

Some states elect their judges in partisan elections. Other states do so in nonpartisan elections. Some states select their judges by appointment, either by the state bar or state governor or a combination of the two. But until S.B. 80, only Ohio and Michigan used a method in which judges first ran in partisan primaries and then as nonpartisan candidates in the general election. The Sixth Circuit blessed this election method's constitutionality in 2016. *See Ohio Council 8 v. Husted*, 814 F.3d 329 (6th Cir. 2016). But in S.B. 80, the General Assembly made all appellate-level judicial races partisan for the primary and general elections to increase transparency and to boost voter information and turnout.

Now this Court must decide: was Ohio permitted to change its judicial-election system without running afoul of the Constitution? The answer is an easy "yes." Ballots have never been recognized as a forum for political expression; they are for electing candidates. And because electing candidates is the primary function of a ballot, the State of Ohio has an interest in using the ballot to give more information to the voter. These decisions lie well within the bounds of the State's prerogative to set its own election rules. Plaintiff Jennifer Brunner's attempt to dislodge the State's election rules must therefore fail. She has no First Amendment right to withhold information—here, the party with which she voluntarily affiliated—from Ohio voters.

**BACKGROUND**

Plaintiff Jennifer Brunner ran for justice of the Supreme Court of Ohio in 2020 and won a six-year term. Stipulated Facts at ¶ 7-8. In 2020, general elections for all judicial positions in Ohio were nonpartisan. *Id.* at ¶ 6. That is, after running in a partisan primary, judicial candidates were listed on the general election ballot without party affiliation. In 2021, the General Assembly enacted S.B. 80, which partially eliminated nonpartisan judicial general elections in Ohio. *Id.* at ¶ 9. Specifically, the bill excluded from the definition of "nonpartisan candidates" the offices of chief justice of the Supreme Court of Ohio, justice of the Supreme Court of Ohio, and appellate court judge. *Id.*; *see also* Ohio Rev. Code §

1

3501.01(J). The result is that races for these positions are partisan and candidates' party affiliations are listed on the general election ballot. Ohio Rev. Code § 3505.03(F). Elections for common pleas courts, municipal courts, and county courts remain nonpartisan. Stipulated Facts at ¶ 9; *see also* Ohio Rev. Code § 3505.04.

After S.B. 80's enactment, Justice Brunner ran for Chief Justice of the Supreme Court of Ohio as the Democratic Party's candidate in 2022 and lost. Stipulated Facts at ¶ 10-11. She continues to serve her six-year term as Justice of the Supreme Court, which will expire on January 1, 2027. *Id.* at ¶ 12. Justice Brunner again chose to seek the nomination of the Democratic Party for reelection. She has no opponent in the May 5 Democratic primary election and will therefore be the Democratic Party's candidate in the November general election. *Id.* at ¶ 13.

In her 2020 and 2022 campaigns, Justice Brunner, like all judicial candidates, had to comply, and must continue to comply during her 2026 campaign, with Ohio's Code of Judicial Conduct. Stipulated Facts at ¶ 16-18; *see also* Jud. Cond. R. Application. Included among these standards is Canon 4, which prohibits a judge or judicial candidate from "engag[ing] in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary." Jud. Cond. R. 4. Here, Plaintiff specifically targets a rule prohibiting candidates from making pledges, promises or commitments, on cases or issues likely to come before the court, that are inconsistent with the impartial performance of the adjudicative duties of judicial office. Jud. Cond. R. 4.1(A)(6). Judges and judicial candidates are subject to discipline for violations of Canon 4. The Rules for the Government of the Judiciary set forth the relevant disciplinary procedures. *See generally* Gov. Jud. R. II; Stipulated Facts at ¶ 23-28.

While this case has been pending, the Supreme Court of Ohio exercised its constitutional authority to amend some of these rules. Stipulated Facts at ¶ 21-22; Ohio Const. art. IV, § 5(B). Under a new Code provision, which took effect on February 12, 2026, judges and judicial candidates "maintain[] their constitutional protections and may express views in a non-adjudicative capacity regarding issues or

2

beliefs. It is not professional misconduct for a judge or judicial candidate to engage in speech or conduct protected by the United States and Ohio Constitutions, including Article I, Section 6 of, or the First Amendment to, the United States Constitution, as well as Article I, Section 11 or Article II, Section 12 of the Ohio Constitution." Jud.Cond.R. 1.4. Any grievance alleging "misconduct based solely on speech or conduct protected by the United States Constitution as well as Article I, Section 11 or Article II, Section 12 of the Ohio Constitution" must be dismissed without investigation. Gov. Jud.R.II(3)(C). The Rules for the Government of the Bar also require dismissal of any grievance based solely on protected speech or conduct. Gov.Bar R. V(2)(A), V(4)(A)(6), V(5)(B)(3), V(9)(A), V(9)(C)(2), V(10)(B), V(11)(A), V(12)(G), V(12)(J).

Plaintiff claims that S.B. 80 violates her rights under the Equal Protection Clause of the U.S. Constitution and also claims that S.B. 80, in conjunction with the Code of Judicial Conduct, violates her First Amendment rights. As a remedy, she seeks to avoid enforcement of either S.B. 80 or the Code of Judicial Conduct in her upcoming campaign. Doc. 30, PageID 384-87, ¶ 60. Her amended complaint names Ohio Secretary of State Frank LaRose, Disciplinary Counsel Joe Caligiuri, Director Elizabeth Smith of the Board of Professional Conduct, and Judge Robert Hendrickson, Chief Justice of the Ohio Courts of Appeals (the last two of whom automatically substituted as parties under Fed. R. Civ. P. 25(d)) as defendants.  Defendants now move for summary judgment.

## LAW AND ARGUMENT

### I.      Legal Standard

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Kent State Univ.*, 804 F. Supp. 2d 575, 581 (N.D. Ohio 2011) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' only if its resolution will affect the outcome of the lawsuit." *Id.* "Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element

essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* "The non-moving party is under an affirmative duty to point out specific facts in the record . . . which create a genuine issue of material fact." *Id.*

## II. This Court lacks subject-matter jurisdiction[1] over Plaintiff's challenge to the Code of Judicial Conduct.

### A. Plaintiff's claims against the Code are moot.

If a statute or rule relevant to a plaintiff's case is amended during litigation, a federal court's "first task is to consider if the case is moot." *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 692 (6th Cir. 2022). Federal courts "apply the law as it exists at the time of the decision," and many changes in the law tend to "eliminate the requisite case-or-controversy" between the parties. *Id.* If the new rule would remove the harm to the plaintiff, the case is moot; if the new rule would impose the same burdens on the plaintiff, the case is not. *Id.*

Here, the changes to the disciplinary rules moot Plaintiff's claims against the Code of Judicial Conduct. According to Plaintiff, S.B. 80 required her to choose a political designation or declare herself an independent, but the Code circumscribed what she could say to voters about that designation, as well as how that designation might affect cases, controversies, or issues likely to come before the Supreme Court of Ohio. Doc. 30, PageID 382 at ¶ 45-46. The Code now explicitly protects the kinds of statements Plaintiff says she wants to make. Under the new rules, Plaintiff "maintain[s her] constitutional protections and may express views in a non-adjudicative capacity regarding issues or beliefs." Jud.Cond.R. 1.4. And any grievance alleging protected speech or conduct *must* be dismissed without investigation. Gov. Jud.R.II(3)(C).

These rule changes moot Plaintiff's claims against the Code because they eliminate the harm she alleges in her amended complaint. Before, the Code—at least arguably—*authorized* disciplinary

---

[1] For purposes of appeal, Defendants incorporate their argument that the Eleventh Amendment bars Plaintiff's claims against Defendants Caligiuri and Smith. Doc. 32 at PageID 421-25.

proceedings for statements that might qualify for First Amendment protection. Doc. 30, PageID 382 at ¶ 45-46. Plaintiff therefore arguably may have stated a First Amendment claim when she alleged that she wanted to make constitutionally protected statements about how her partisan designation affected (or did not affect) her political beliefs or legal issues but refrained from doing so out of fear of the Code. But now, the Code *does not authorize or permit* disciplinary proceedings for statements protected under the First Amendment. The rule removes the alleged harm: Plaintiff cannot be disciplined for statements or conduct protected by the First Amendment.[2] Her claims against the Code are therefore moot.

### B.    Plaintiff lacks standing to challenge the Code of Judicial Conduct.

As the party with the burden of proof on standing, Plaintiff cannot rely on "mere allegations" to satisfy standing, but "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, to survive summary judgment, Plaintiff must set forth facts establishing: (1) that she suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. *Id.*

#### 1.    Plaintiff's injuries are neither traceable to the Code of Judicial Conduct nor redressable by an order enjoining it.

Article III"s causation requirement is not met when the plaintiff's injuries would continue to exist absent the challenged rule or governmental action. *See, e.g.*, *L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (the injury must be "the result of the challenged official conduct"); *Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464,  485 (1982) (the injury must be "suffered by them *as a consequence*

---

[2] Plaintiff cannot save her claims from mootness by arguing that she could still be subject to discipline because disciplinary authorities might wrongly believe that her statements are *not* protected under the First Amendment. This hypothetical chain of events is simply too speculative: in essence, Plaintiff argues that the Code *might* injure her *if* she makes a constitutionally protected statement and *if* the disciplinary authorities misconstrue it as undeserving of First Amendment protection. *White v. United States*, 601 F.3d 545, 554 (6th Cir. 2010).

of the alleged constitutional error" (emphasis in original)). Under these circumstances, the challenged action or rule did not cause the alleged injury.

Here, the Code did not cause Plaintiff's claimed injuries. Under Plaintiff's theory of this case, the Code injures her *because* S.B. 80 exists: she says it is unfair to run with the Code's campaign restrictions as a partisan candidate. Her injury, therefore, traces to S.B. 80, not the Code, and an injunction of the Code would not remedy it. Indeed, Plaintiff admitted as much:

> Q: Okay. So the partisan designation law would have to be enjoined to give complete
> relief in this case?
> A: Yes.

Brunner Dep. 63:3-12. This is fatal to her standing to challenge the Code because Plaintiff does not seek to enjoin both the Code and S.B. 80 simultaneously. *Id.* at 63:13-19. Her requested relief is in the alternative: *either* the Code *or* S.B. 80 must go. Doc. 30, PageID 386 at ¶ 60.3. If an injunction of the Code would not provide relief, she does not have standing to challenge it.

### 2. Even if there were some evidence Plaintiff intends to violate the Code, there is no evidence of any credible threat of prosecution against her.

Plaintiff challenges the Code because she fears she may be subject to future disciplinary actions in her ongoing campaign for Supreme Court justice.[3] Plaintiff does not need to wait for enforcement actions under the Code to challenge its constitutionality under the First Amendment. *Christian Healthcare Ctrs. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024). But her allegations of future injuries must be "certainly impending such that there is a substantial risk that the harm will occur." *Id.* (citation and quotation marks

---

[3] Throughout these proceedings, Plaintiff has failed to pinpoint exactly which provisions of the Code of Judicial Conduct are the subject of her claims. While her substantive First Amendment claim says that Rule 4.1(A)(6) violates the Constitution, she seeks an injunction of all of Rule 4.1 in her prayer for relief. *Compare* Doc. 30, PageID 383 at ¶ 49, *with id.* at PageID 388-89. And in her deposition, Plaintiff testified that she believes that *all* the portions of Canon 4 injure her even though they are unmentioned in her amended complaint. Brunner Dep. 60-62. This motion for summary judgment assumes that Plaintiff challenges the constitutionality of Rule 4.1(A)(6), in conjunction with S.B. 80, alone. To the extent Plaintiff seeks relief based on other portions of the Code, Plaintiff would be seeking to amend her complaint by way of summary judgment motion, which is not permitted. *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 585 (W.D. Ky. 2012).

omitted). She "must allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the Code], and there exists a credible threat of prosecution thereunder.'" *Birmingham v. Nessel*, 2021 U.S. App. LEXIS 35896, at \*3 (6th Cir. Dec. 2, 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Under the principle of constitutional avoidance, a federal court ought to analyze whether the conduct is prohibited by state law first: "The courts should not resolve a significant constitutional question about whether a state official may enforce state law against certain conduct based on the mere *assumption* that the state law applies to that conduct." *Christian Healthcare Ctrs.*, 117 F.4th at 859 (Murphy, J., concurring).

Once the court assures itself that the plaintiff truly intends to violate state law, it should then ask whether there is a credible threat of prosecution. "Mere allegations of a subjective chill on protected speech are insufficient to establish an injury-in-fact." *McKay v. Federspiel*, 823 F.3d 862, 868-69 (6th Cir. 2016). Rather, Plaintiff must establish a credible fear of enforcement through some combination of the following factors:

> (1) "a history of past enforcement against the plaintiffs or others"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff."

*Christian Healthcare Ctrs.*, 117 F.4th at 848 (majority opinion).

*Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022), is instructive on the application of these factors. There, two Kentucky judicial candidates publicly identified themselves as nominees of the Republican Party, accepted endorsements from that party, and made various statements about abortion. *Id.* at 306. Unidentified individuals filed disciplinary complaints against the candidates, who responded by challenging the portions of the Kentucky Code of Judicial Conduct that formed the basis of the complaints. *Id.* The judges established a credible threat of enforcement because one judge had been investigated for "similar conduct" in the past, and the Kentucky Judicial Conduct Commission sent the

7

candidates letters "warn[ing] that it had launched a preliminary investigation into their conduct." *Id.* at 308. The candidates "hired counsel to write responses to the Commission's letters," and they were hailed to an "'informal conference' to explain themselves." *Id.* at 309. From these facts, the Sixth Circuit had no trouble finding a credible threat of enforcement supporting standing. *Id.*

Here, Plaintiff cannot establish *either* an intention to engage in constitutionally protected speech that violates the Code *or* that there exists a credible threat of prosecution for her speech. Plaintiff alleges that the Code silences her on certain issues like United States Supreme Court cases, the QAnon conspiracy, making endorsements of other judicial candidates,[4] and matters of foreign policy. *See, e.g.*, Brunner Dep. 72:7-17. But as set forth in Part II.A. *supra*, to the extent these are protected statements under the First Amendment, they would not—by definition—violate the Code. Jud.Cond.R. 1.4. The set of conduct that is (1) protected by the First Amendment but (2) in violation of the Code of Judicial Conduct is a null set. Further, as to the rule Plaintiff alleges is unconstitutional—Rule 4.1(A)(6)—Plaintiff specifically alleges that she *does not* intend to violate it. Brunner Dep. 106:6-107:22.

Even if this Court concludes that Plaintiff has shown she intends to engage in constitutionally protected conduct that violates the Code, the Court must *also* find a credible threat of prosecution, which does not exist here. First and most importantly, Defendants have disavowed any prosecution of the Code against Plaintiff for any statements protected by the First Amendment through the rule changes. *See supra* Part II.A. Second, Plaintiff testified that—even *before* the Code changes—she received no warning letters or other communications from the Defendants that her campaign statements *might* violate the Code. Brunner Dep. 99:18-101:13. Third, no proceedings against Plaintiff or anyone else have been filed with the Board of Professional Conduct under Jud. Cond.R. 4.1(A)(6) now that the Code specifically protects

---

[4] To the extent the Court believes Plaintiff pleaded any claim against Jud.Cond. Rule 4.1(A)(3), the portion of the Code preventing judicial candidates from endorsing other candidates, the Supreme Court of Ohio has found that rule unconstitutional, so there is no risk of discipline. *Disciplinary Counsel v. Rudduck*, 2026-Ohio-1126.

First Amendment speech. Declaration of Elizabeth Smith ¶ 5-6. And while anyone may file a grievance alleging a violation of the Code, this fact alone does not suffice to withstand summary judgment, particularly considering that such grievances "shall be dismissed without investigation" if the grievance alleges misconduct based upon First Amendment protected speech or conduct. Gov. Jud.R. II(3)(C). Essentially, Plaintiff wants to enjoin all provisions of Jud. Code R.4.1 because the Rule *might* be enforced against her in some as-yet-unidentified way for some as-yet-unmade or unspecified statements. Brunner Dep. 108:5-6 ("At this time I don't know what statements I'll be making in my campaign."). Standing requires something more than such amorphous allegations.

### III.    Plaintiff's First Amendment claim fails as a matter of law.

#### A.  S.B. 80 imposes a minimal burden easily outweighed by the State's interests.

Defendants are entitled to summary judgment on Plaintiff's First Amendment challenge to S.B. 80 because "[a] ballot is a ballot, not a bumper sticker." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1016 (9th Cir. 2002). Ballots are tools of the State. They "are designed primarily to elect candidates, not to serve as fora for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 353 (1997).

The Sixth Circuit analyzes claims challenging the constitutionality of partisan-designation laws under the flexible *Anderson-Burdick* test. *See Ohio Council 8*, 814 F.3d at 334-335. Under the *Anderson-Burdick* test, the court must weigh "'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). "[S]evere restrictions" on constitutional rights invite strict scrutiny: the challenged law must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (quotations omitted). Laws that are "minimally burdensome and nondiscriminatory" are subject to "a less-searching examination closer to rational basis[.]" *Id..* A state's "'important regulatory

9

interests are generally sufficient to justify the restrictions.'" *Id.* (quoting *Burdick*, 504 U.S. at 434). Finally, if the alleged burden falls between minimal and severe, it is weighed "against the state's asserted interest and chosen means of pursuing it." *Id.* (citing *Green Party of Tenn.*, 767 F.3d at 546).

**Burden.** S.B. 80 imposes, at most, a minimal burden. Indeed, the Sixth Circuit has already upheld a law regulating party designations on ballots for judicial candidates, finding it minimally burdensome. *See generally Ohio Council 8*, 814 F.3d 329. *Ohio Council 8* involved a challenge to Ohio's pre-S.B. 80 law *prohibiting* judicial candidates' party affiliation from appearing on general election ballots. *Id.* at 333-34. Among the plaintiffs were three candidates for state-court judgeships in the 2010 general election. *Id.* at 332. The judicial candidates claimed that their inability to run with their party designation on the ballot infringed upon their freedom of expression and association. *Id.* at 337–38. Applying *Anderson-Burdick*, the Court held the law placed "at most only minimal burdens" on judicial candidates' First and Fourteenth Amendment rights. *Id.* at 339. It cited two primary reasons why: (1) the "various means other than the general-election ballot" that candidates could use to "communicate party-affiliation information to voters," and (2) the "practical nature of ballots versus other sources of information." *Id.* at 339.

First, the law was minimally burdensome because it only foreclosed candidates from expressing their affiliation in one place—the ballot—and did not inhibit the many other "various means" for expressing affiliation. *Id.* at 337. The Court noted that candidates remained "entirely free to associate themselves with the parties of their choice and express their party affiliations publicly in forums other than the general-election ballot." *Id.* Nothing in the law prevented them from "running in partisan primaries, attending political gatherings, participating in fund-raising activities sponsored by political parties, appearing on political parties' sample ballots, and saying that they are a member[] of or are endorsed by a political party." *Id.*

Second, the "practical nature of ballots" also lessened the candidates' burden, because ballots have never been a traditional forum for candidate expression. *Id.* at 338. "'Ballots serve primarily to elect

10

candidates," the Court reasoned, "not as forums for political expression."' *Id.* (quoting *Timmons*, 520 U.S. at 363). It "stretches the idea of 'candidate expression' to include the way that the state identifies a candidate on the ballot." *Id.* at 338. In other words, the candidates' burden was further lessened because they had no traditional expectation of using a ballot for expressive purposes.

While true that S.B. 80 now *requires* Plaintiff's party designation to appear on the ballot, much of the logic of *Ohio Council 8* still applies here. As in that case, S.B. 80 does not foreclose the other "various means" by which judicial candidates could express their party affiliation and attendant views, including any "assumptions" voters might make about Plaintiff's party affiliation, her disagreements with "the Democratic Party policies," or discussions about "whatever [voters are] impugning to [her] as being a Democrat." *See* Brunner Dep. at 78:5–11; 93:21–22; 103:6–10. Notwithstanding S.B. 80, all the opportunities for political expression that remained open to the candidate plaintiffs in *Ohio Council 8* remain open to Plaintiff here as well. And as in *Ohio Council 8*, there is still no constitutional right to use a ballot to send a particularized message to voters. *Timmons*, 520 U.S. at 363. If anything, S.B. 80 imposes even less of a burden on speech here than *Ohio Council 8*. S.B. 80 displays a judicial candidate's party affiliation *after* that candidate has already voluntarily sought that party's nomination. Ohio Rev. Code § 3513.05; 3513.08; 3505.03. Judicial candidates who do not wish to associate with a political party need not do so in order to appear on the ballot. Ohio Rev. Code § 3513.257. Here, the general election ballot will associate Plaintiff with the Democratic Party because she chose to seek that party's nomination. Stipulated Facts ¶ 13; Declaration of Chris Burnett ¶ 13 & Ex. E.

Finally, in addition to being minimally burdensome, S.B. 80 is not discriminatory. Every candidate for a particular office is treated just like every other candidate for that same office. As a Supreme Court justice candidate, Plaintiff "is treated like every other candidate for that office." *Marcellus v. Virginia State Bd. of Elections*, 849 F.3d 169, 177 (4th Cir. 2017) (restriction on ballot party-identifiers for local candidates was not discriminatory); *see also Houton v. Wu*, 814 F. Supp. 3d 124, 2026 U.S. Dist. LEXIS 98, at *9-10

11

(D.Mass. 2026) ("Where candidates for the same office are all subject to the same requirements, those requirements are not discriminatory within the meaning of the *Anderson-Burdick* inquiry.")

S.B. 80 is thus a "minimally burdensome and nondiscriminatory" regulation subject to rational review, where the State's important regulatory interests are sufficient to justify its restrictions. *Ohio Council 8*, 814 F.3d at 335.

***State's interests.*** By requiring ballots to list the party affiliation of candidates for Ohio's appellate courts and its highest court, S.B. 80 minimizes voter confusion—an interest the Supreme Court has described not just as "important" but "compelling." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193-95 (1986); *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality opinion). S.B. 80 minimizes confusion by providing voters with "relevant information about the candidates on the ballot," which the Court has also held to be an important regulatory interest. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 458 (2008); Christopher S. Elmendorf, Informing Consent: Voter Ignorance, Political Parties, and Election law, 2013 U. Ill. L. Rev. 363, 367 ("[L]earning a candidate's party affiliation enables voters to infer the candidate's position on most significant issues . . . .").

Second, S.B. 80 works to increase voter participation and turnout[5] in Ohio's appellate-level judicial elections. *Utah Republican Party v. Cox*, 885 F.3d 1219, 1236 (10th Cir. 2018) (including "voter participation" in state interests that constitute "the very backbone of our constitutional scheme"). In this regard, S.B. 80 has succeeded. In the 2020 general election, 5.9 million Ohioans cast a ballot for President and Vice President, but only 4.8 million voted in Plaintiff's race for Supreme Court justice. Burnett Decl. at ¶ 6. After S.B. 80's enactment, voter participation in Supreme Court races exploded: in 2024, 5.8 million Ohioans voted for the office of President and Vice President, and 5.4 million also voted in the Supreme

---

[5] *Ohio Council 8* concluded that low levels of voter participation were insufficient to demonstrate a severe burden on the plaintiff judicial candidates. 814 F.3d at 337. Ohio did not cite voter participation as a state interest in that case, so *Ohio Council 8*'s statements about the minimal burden caused by voter drop-off say nothing about whether Ohio has an interest in increasing voter participation here.

12

Court races that year. *Id.* at ¶ 10. S.B. 80 produced similar effects between the 2018 and 2022 elections for statewide offices. *Id.* at ¶¶ 5, 7-9. S.B. 80 more than *halved* the voter drop-off and has proven itself as an effective means of increasing voter participation. In short, S.B. 80 is a minimally burdensome, nondiscriminatory regulation that advances important and compelling state interests. It comfortably passes constitutional muster under *Anderson-Burdick*.

**B.      S.B. 80 does not violate the First Amendment in conjunction with the Code of Judicial Conduct.**

Plaintiff's "alternative" challenge to S.B. 80 "in conjunction with the provisions of the Code of Judicial Conduct regulating communications by judges and judicial candidates" also fails. Doc. 30, PageID 383, ¶ 49. As shown in Part II.A, *supra*, the changes to the Code put protected speech beyond the reach of disciplinary authorities. So, there is no danger that the Code will silence Plaintiff. Regardless, Plaintiff's hybridization of the Code and S.B. 80 still leaves her well short of establishing a First Amendment violation. S.B. 80 and the Code do not "compel Plaintiff's speech," are not "a content-based regulation of speech," and are not "an unreasonable and/or discriminatory regulation of ballot access and the electoral process." Doc. 30, PageID 381-382 at ¶ 44.

Neither the Code nor S.B. 80—alone or together--compel Plaintiff to speak. Plaintiff *chose* to seek the Democratic Party's nomination. Stipulated Facts ¶ 13; Burnett Decl. Ex. E. And now, nothing in the Code compels her to remain silent about her political affiliation, issues on the Democratic Party's platform, or issues on which she disagrees with her chosen party. If Plaintiff believes that running as a Democrat "tells a story about her," the Code lets her complete that story without fear of discipline. Brunner Dep. 34:25–35:4; 75:16–24.

S.B. 80 and the Code do not regulate speech based on its content. The Sixth Circuit has already instructed that partisan-designation laws like S.B. 80 are analyzed under *Anderson-Burdick*, not as content based or content neutral. *Ohio Council 8*, 814 F.3d at 334-35. But in any event, the Sixth Circuit has held that when an election statute applies regardless of the underlying topic or idea, it is not content based.

13

*Comm. to Impose Term Limits on the Ohio Supreme Ct. v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018) (finding Ohio's single-subject rule for constitutional amendments not content based and applying *Anderson-Burdick*). Here, S.B. 80 does not regulate Plaintiff based on *what* she says—here, that she is a Democrat—but instead regulates *where* she says it—on the ballot. *Id.* In contrast, Rule 4.1(A)(6) of the Code *does* regulate based on content, subject to the protections of the First Amendment. As set forth in Part II.B, however, Plaintiff puts forth no facts establishing that she wishes to say something that violates the Code, is not protected by the First Amendment, and has a credible fear of prosecution for it. *See also* Brunner Dep. 108:1-6. Without any justiciable claim against the Code, it does her no good to attempt to graft the Code onto S.B. 80 to make the latter content based.

Finally, Defendants described in Part III.A *supra* why S.B. 80 does not unlawfully restrict access to the ballot under *Anderson-Burdick*. Because the Code does not regulate ballot access at all, its combination with S.B. 80 does not change the above calculus.

## IV.     Plaintiff's equal protection claim fails as a matter of law.

"To avoid summary judgment on an equal-protection claim, a plaintiff must present evidence that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Pough v. Dewine*, 2025 U.S. App. LEXIS 24723, at \*8 (6th Cir. Sept. 23, 2025) (citations and quotation marks omitted). "To be 'similarly situated' for purposes of an equal protection claim, the plaintiff and comparator must be alike 'in all relevant respects.'" *Id.* at \*8-9 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Disparate treatment is the "threshold element of an equal protection claim." *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379. Thus, if a plaintiff fails to establish disparate treatment compared to similarly situated individuals, the defendants are entitled to summary judgment as a matter of law. *See, e.g.*, *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1153 (6th Cir. 2022). This applies to both facial and as-applied challenges under the Equal Protection Clause. *See Snyder v. United States*, 990 F.Supp.2d 818, 841

14

(S.D. Ohio 2014); *Taylor v. Cuyahoga County Land Reutilization Corp.*, 2014 U.S. LEXIS 146537, at \*10 (N.D. Ohio Oct. 14, 2014).

### A. Partisan judicial candidates are not similarly situated to partisan non-judicial candidates.

Here, Defendants are entitled to summary judgment on Plaintiff's claim that S.B. 80 violates the Equal Protection Clause because she has failed to prove disparate treatment as compared to any similarly situated individuals. In her amended complaint, Plaintiff identifies two classes of individuals that she claims are similarly situated to partisan judicial candidates, such as herself: (1) partisan non-judicial candidates and (2) nonpartisan judicial candidates, i.e. lower court judicial candidates. Doc. 30, PageID 384 at ¶ 53 ("S.B. 80 creates arbitrary and impermissible classifications and distinctions among Ohio's elected judiciary and between partisan judicial candidates and partisan non-judicial candidates."). Upon examination, neither category is similarly situated to Plaintiff.

First, partisan judicial candidates and partisan candidates for non-judicial offices are not similarly situated. Unlike other elected public offices, the judiciary must independently, fairly, and competently interpret and apply the laws of the state. Justice Stevens captured the importance of this distinction, explaining, "[t]here is a critical difference between the work of a judge and the work of other public officials. In a democracy, issues of policy are properly decided by majority vote; it is the business of legislators and executives to be popular. But in litigation, issues of law or fact should not be determined by popular vote; it is the business of judges to be indifferent to unpopularity." *Republican Party of Minnesota v. White*, 536 U.S. 765, 798 (2002) (Stevens, J., dissenting). Judicial campaigns, unlike campaigns for other public offices, must remain free from bias or preconceived determinations that may endure upon the candidate's assumption of the bench. *See id.* at 790-792 (O'Connor, J., concurring).

Even assuming, arguendo, that partisan judicial candidates are similarly situated to other political candidates, S.B. 80 treats them the same – both are subject to the party designation ballot requirement. Of course, partisan candidates are not subject to the Code of Judicial Conduct, but Plaintiff's equal

15

protection claim does not target the Code. Doc. 30, PageID 384 at ¶ 53-56. Accordingly, because S.B. 80 does not discriminate between the two classes, Plaintiff's equal protection claim fails.

> **B.** **Partisan judicial candidates are not similarly situated to nonpartisan judicial candidates, i.e. lower judge candidates**

Second, candidates for appellate judicial office and candidates for non-appellate judicial office are not similarly situated. This is evident from the myriad differences between appellate judges and non-appellate judges in Ohio.

The three levels of Ohio's court system all play different roles. Ohio's courts of appeals and the Supreme Court of Ohio sit, primarily, as courts of review, evaluating the decisions of lower courts. *See* Ohio Const., art. IV, Sec. 2-4 (setting forth the organization and jurisdiction of all three of Ohio's levels of courts). Accordingly, courts of appeals and the Supreme Court of Ohio largely exercise appellate, as opposed to original, jurisdiction. *See id.*, Sec. 2-3. Comparatively, Ohio's courts of common pleas have original jurisdiction over a far wider scope of cases, serving primarily as fact-finders. *Compare id.* (courts of appeals have original jurisdiction over six types of cases, while the Supreme Court of Ohio has original jurisdiction over seven types of cases) *with id.*, Sec. 4 (courts of common pleas have original jurisdiction over "all justiciable matters"). This is consistent with the well-established principle that "the law is the specialty of the appeals court, while, * * * the facts are the province of the trial court." *Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 974 F.3d 767, 786 (6th Cir. 2020) (citing *Doherty v. City of Maryville*, 431 Fed. Appx. 381, 385 (6th Cir. 2011) (citing *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006))). Moreover, individual judges in Ohio's trial-level courts render final decisions, whereas Ohio's appellate courts require a majority before a decision can be final. *See id.*, Sec. 3(B)(3) ("A majority of the [court of appeals] judges hearing the cause shall be necessary to render a judgment."); *id.* Sec. 2(A) ("A majority of the supreme court shall be necessary to constitute a quorum or to render a judgment.").

Judges at the three levels are also elected differently. Although all judges run in partisan primaries, candidates for appellate-level judgeships run as partisans in the general election, and other judicial

16

candidates do not. Ohio Rev. Code § 3505.03(A), (C). Additionally, each of the three levels of courts is elected by a different group of voters. Judges in common pleas courts are elected by eligible voters residing in that county. Ohio Rev. Code § 2301.01(A); Ohio Const. art. IV, Sec. 6(A)(3). Judges for courts of appeals are elected by eligible voters in an appellate district, most of which include multiple counties. Ohio Const. art. IV. Sec. 6(A)(2). Justices, including the chief justice, for the Supreme Court of Ohio are elected by eligible voters statewide. *Id.* Sec. 6(A)(1).

In sum, comparing appellate-level judicial candidates to either non-judicial officers or trial court judges is comparing apples to oranges: they perform different functions, exercise different jurisdiction in different ways, and are elected by different voters. Because of these differences, candidates for courts of appeals and the Supreme Court are not similarly situated to lower court judges. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's equal protection claim.

### C. S.B. 80 easily passes rational basis review.

Because Plaintiff cannot demonstrate that she is treated differently from any similarly situated individual, the equal protection analysis can end there. But even if this Court determines that Plaintiff has established the first requirement, i.e., dissimilar treatment, Plaintiff cannot prove that S.B. 80 is not rationally related to a legitimate government interest.

For equal protection challenges that do not involve either a fundamental right or a suspect class, courts review the challenged law under rational basis review. *See, e.g.*, *Clark v. Jackson*, 2023 U.S. App. LEXIS 8318, at *21 (6th Cir. Apr. 5, 2023). Here, although Plaintiff attempts to invoke a fundamental right, i.e., the First Amendment, no such right is triggered. *See supra* Part III. Moreover, Plaintiff has not identified a suspect class. Thus, her equal protection challenge to S.B. 80 is subject to rational basis review. "For a successful equal protection challenge under rational basis review, *a petitioner* must show 'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" (Emphasis added.) *Clark*, 2023 U.S. Dist. LEXIS 8318 at *21

(quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Importantly, Plaintiff bears the burden to prove her equal protection claim, not Defendants. *See, e.g.*, *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006) ("Under rational basis review, Defendant need not offer any rational basis so long as this Court can conceive of one; the burden falls entirely to Plaintiff to show there is no rational basis, not the other way around."). Plaintiff has not (and cannot) carried that burden here.

Here, the State has multiple legitimate interests related to S.B. 80[6]. As discussed above, the State has a compelling interest in minimizing voter confusion. *See supra* at Part III. Again, S.B. 80 accomplishes this by providing additional information to Ohio's voters. This is especially important because appellate courts in Ohio have jurisdiction over multiple counties (appellate judges outside of the First, Eighth, and Tenth District courts of appeals) or the entire state (Supreme Court). The number of counties in the multi-county districts range from four (the Ninth District) to seventeen (the Third District). Ohio Rev. Code § 2501.01. Thus, voters may have more information and knowledge about local candidates than candidates from other counties, potentially residing more than 100 miles from each other. S.B. 80 helps close this gap by providing additional information to voters regarding non-local candidates.

This additional information is especially important given the function of appellate courts vis-à-vis trial courts. Trial courts issue decisions that are binding on the parties only. In contrast, appellate courts set binding precedent that lower courts must follow. *See United States v. Cornell*, 2025 U.S. Dist. LEXIS 278304, at *5 (S.D. Ohio Apr. 22, 2026) (A trial court "does not have a choice about whether or not to

---

[6] Because S.B. 80 treats partisan judicial candidates and partisan non-judicial candidates the same, i.e., both appear on the ballot with a party designation, there is no need to conduct a rational basis analysis as to that proffered distinction. That said, any difference in campaign finance/expenditures limitations is based on a clear need for the judiciary to remain impartial and independent. *See Ohio Council 8*, 814 F.3d at 338 (quoting *Williams-Yulee v. Fla. Bar*, 135 S.Ct. 1656, 1666 (2015) (additional citation omitted) ("the Supreme held that the closely related interest of maintaining public perception of judicial integrity and impartiality is 'a state interest of the highest order'").

'side' with a Court of Appeals decision. Trial courts are obliged to follow precedent set by the Supreme Court and Courts of Appeals."). Further, appellate courts frequently address questions of law, including broad legal, social, and constitutional issues. In short, appellate-level opinions are far more likely to affect a person's life than a lower court's. Accordingly, providing voters with additional knowledge about appellate-level judges allows them to make a more informed decision. Finally, as stated previously, S.B. 80 had a direct effect on an increase in voter participation in judicial races. *See generally* Burnett Decl. Because appellate-level decisions reach much more broadly than trial court decisions, the State has an interest in encouraging voter participation in those elections. Accordingly, even applying rational basis review, Defendants are entitled to judgment as a matter of law on Plaintiff's equal protection claim.

## V.     Plaintiff's claim for declaratory judgment fails as a matter of law.

As set forth above, Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment and equal protection claims against S.B. 80 and the Code of Judicial Conduct. Because neither S.B. 80 nor the Code violate any constitutional provision, Plaintiff's accompanying claim for declaratory judgment fails, too. *Ohio ex rel. Desmond v. City of Lyndhurst*, 2005 U.S. Dist. LEXIS 57319, at *16-17 (N.D. Ohio Jan. 6, 2006) (dismissing declaratory judgment claim when the accompanying substantive claims were all dismissed).

## VI.     The Purcell doctrine forecloses any relief for the 2026 general election.

The *Purcell* doctrine, which has become a "bedrock tenet of election law," says that "federal courts ordinarily should not enjoin a state's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring); *see also Republican Nat'l Comm. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam). This is because court orders "can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase" *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). To avoid these issues, federal courts should not interfere with the administration of state election laws during an election. Indeed, the *Purcell* principle is

19

so strong that some Sixth Circuit judges have applied it "[i]rrespective of the correctness" of the matter under review. *See Kennedy v. Benson*, 119 F.4th 464, 470-71 (6th Cir. 2024) (Griffin, J., concurring in the denial of rehearing en banc). The Supreme Court has not yet defined the "time frame that constitutes 'on the eve of the election'" for purposes of the *Purcell* doctrine. *See id.* at 470 (Clay, J., concurring in the denial of rehearing en banc). But everyone agrees that *Purcell* forecloses changes to voting rules once voting has begun. *See, e.g., id.*; *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 227 (4th Cir. 2024). Under this rationale, *Purcell* should likewise block any changes to statutes making races partisan or nonpartisan once those races are underway.

Here, every single partisan candidate for an appellate-level judgeship filed their declaration of candidacy *months ago.* These candidates did so in reliance on Ohio Rev. Code §§ 3505.03-04 and knowing that their party designation would appear on the general election ballot. Indeed, some candidates chose to seek a party's nomination *because of* S.B. 80's partisan designation requirement. Declaration of Mark Hanni ¶ 3. Party affiliations share important information about these candidates' values with their potential voters. *Id.* at ¶ 2. Enjoining S.B. 80 for the 2026 general election would reduce the amount of information available to these candidates' voters, and worse, it would upset the election rules for these candidates midstream, which is exactly what *Purcell* prohibits. Enjoining S.B. 80 months after 2026's candidate-filing deadline for partisan candidates changes the rules for 39 appellate-level judicial candidates mid-election, even though they all entered the 2026 election season expecting their party affiliations to appear on the general election ballot. *Id.* at ¶ 3; Burnett Decl. at ¶ 14. The *Purcell* doctrine blocks this kind of disruptive federal judicial interference.

## CONCLUSION

For these reasons, there are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law as to all Plaintiff's claims. Accordingly, Defendants respectfully ask this Court to grant their motion and enter judgment in their favor.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/ *Ann Yackshaw*
ANN YACKSHAW (0090623)*
*Counsel of Record*
MICHAEL A. WALTON (0092201)
STEPHEN TABATOWSKI (0099175)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Michael.Walton@OhioAGO.gov

*Counsel for Defendants*

21

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, the foregoing Motion to for Summary Judgement was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

/s/ Ann Yackshaw

ANN YACKSHAW (0090623)
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Standard Track. This memorandum complies with the page limitations for Standard Track cases.

I further certify that undersigned counsel submitted written requests for dismissal on February 24, March 24, and April 29. Opposing counsel refused to dismiss any claims against any defendant, and upon reassessment, Defendants believe they are entitled to judgment as a matter of law.

s/ Ann Yackshaw

ANN YACKSHAW (0090623)
Assistant Attorney General