# EXHIBIT 1-BRUNNER DEPOSITION

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

_____

JENNIFER BRUNNER,

      Plaintiff,

   v.                           Case No.

FRANK LAROSE, ET AL.,           4:23-CV-2180

      Defendants.

_____

DEPOSITION OF JENNIFER BRUNNER

DATE:         Tuesday, November 4, 2025

TIME:         9:54 a.m.

LOCATION:     Ohio Attorney General

                 30 East Broad Street

                 Columbus, OH 43215

REPORTED BY:  Marianne Hissong

JOB NO.:     7721556

EXHIBIT 1 Page 1 of 156

Page 2

                    A P P E A R A N C E S

ON BEHALF OF PLAINTIFF JENNIFER BRUNNER:

     PATRICK M. QUINN, ESQUIRE

     Brunner Quinn Law Office

     5001 Horizons Drive, Suite 209

     Columbus, OH 43215

     pmq@brunnerlaw.com

     (614) 241-5550


ON BEHALF OF DEFENDANTS FRANK LAROSE, ET AL.:

     ANN YACKSHAW, ESQUIRE

     MICHAEL A. WALTON, ESQUIRE

     Ohio Attorney General

     Criminal Justice Section, Corrections Litigation

     Unit

     Columbus, OH 43215

     ann.yackshaw@ohioago.gov

     michael.walton@ohioago.gov

     (614) 466-2872

Page 3

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANTS FRANK LAROSE, ET AL.:

     STEPHEN P. TABATOWSKI, ESQUIRE

     Ohio Attorney General

     30 East Broad Street

     Columbus, OH 43215

     stephen.tabatowski@ohioago.gov

     (614) 466-2872


ALSO PRESENT:

     Thomas Andrews, Law Clerk, Ohio Attorney General

     Julie Pfeiffer, Section Chief of the

     Constitutional Offices Section

     Elizabeth Smith, Director, Board of Ohio

     Professional Conduct

Page 4

                        I N D E X

EXAMINATION:                                       PAGE

     By Ms. Yackshaw                               8


                      E X H I B I T S

NO.                DESCRIPTION                      PAGE

Exhibit A      Amended Complaint                   22

Exhibit B      The Ohio Code of Judicial Conduct  31

Exhibit C      Complaint from Joshua Brown

               (Grievance Form)                    84

Exhibit D      Ohio Courts of Appeals Judges

               Association - Two-sided Document    88


     (Exhibits retained by counsel.)

Page 5

P R O C E E D I N G S

THE REPORTER:  Good morning.  My name is Marianne Hissong.  I'm the reporter assigned by Veritext to take the record of this proceeding.  We are now on the record at 9:54 a.m.

This begins the deposition of Jennifer Brunner, taken in the matter of Jennifer Brunner vs. Frank Larose, et al. on November 4, 2025 at 30 East Broad Street on the 20th floor, Columbus, Ohio 43215. I'm a notary authorized to take acknowledgements and administer oaths in Ohio.

Additionally, absent an objection on the record before the witness is sworn in, all parties and the witness understand and agree that any certified transcript produced from the recording of this proceeding:

- is intended for all uses permitted under applicable procedural and evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and
- shall constitute written stipulation of such.

At this time, will everyone in attendance please identify yourself for the record,

Page 6

beginning with the taking attorney?

MS. YACKSHAW:  Ann Yackshaw with the Ohio Attorney General's office on behalf of the defendants.

MR. WALTON:  Michael Walton with the Ohio Attorney General's office on behalf of the defendants.

MR. TABATOWSKI:  Steve Tabatowski, also with the Ohio Attorney General's office on behalf of the defendants.

MS. PFEIFFER:  Julie Pfeiffer with the Ohio Attorney General's office.

MS. SMITH:  Elizabeth Smith, director of the Board of Professional Conduct.

MR. ANDREWS:  Thomas Andrews with the Attorney General's office.

MR. QUINN:  Patrick Quinn with Brunner Quinn on behalf of the plaintiff.

MS. BRUNNER:  Jennifer Brunner, the deponent.  Can I have some idea of who represents who here?  I mean, are you all representing all parties or are some representing different parties?

MS. YACKSHAW:  The attorneys who have appeared in the case are myself, Mike, Steve.  We are representing all defendants.  Ms. Smith obviously is a

EXHIBIT 1  Page 6 of 156

Page 7

defendant, is here as a party.  Mr. Andrews is a law clerk, not admitted --

MR. ANDREWS:  Just a law clerk?

MS. YACKSHAW:  Not admitted to the practice of law, is here to observe.  And Julie Pfeiffer --

MS. PFEIFFER:  I'm the section chief. I'm not -- I'm not counsel of record here.

MS. YACKSHAW:  Just here to observe.

MS. PFEIFFER:  Right, and depositions of this import -- just here.

MS. BRUNNER:  Okay.  Yeah.

MS. YACKSHAW:  I think that covers everyone.

MS. BRUNNER:  Okay.

THE REPORTER:  Hearing no objection, I will now swear in the witness.

Will you please raise your right hand?

WHEREUPON,

JENNIFER BRUNNER,

called as a witness and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE REPORTER:  Thank you.

MS. YACKSHAW:  Okay.  Thank you.

Page 8

EXAMINATION

BY MS. YACKSHAW:

Q    Good morning, Justice Brunner.  Thank you for being here today.  Like I just said, my name's Ann Yackshaw, I'm here on behalf of all the defendants in this matter.  And could you please state your name for the record?

A    Sure.  Jennifer Brunner.  Is this being audio recorded?  Is that how it's working?  There's no video; correct?

Q    No video.

MR. QUINN:  No, there is no video.

THE WITNESS:  No video?

BY MS. YACKSHAW:

Q    That's correct.  Yes.  Okay, and -- all right.  Justice Brunner, you have been deposed before; correct?

A    Correct.

Q    Most recent deposition?

A    Probably 2014.

Q    Okay, and was that when you were the Secretary of State?

A    No.

Q    No.  Okay.

A    It was a private matter.

EXHIBIT 1  Page 8 of 156

Page 9

Q   Okay.  All right.  We'll go over a few ground rules.  I know you know them from your experience being a deponent before, but just important that you give verbal answers to my questions today. Nods and "uh-huhs" are difficult for the court reporter to pick up.

I will, of course, wait until you finish your answer.  I just ask that you wait until I finish my questions before you begin your answers.  We have breaks.  You've got the break room which I've showed to you, so please, if you need a break, if you'd like to go to the break room or use the restroom, please let me know.

I will assume that you understand my questions if you answer them.  So if you don't feel that you understand one of my questions, please let me know and I will clarify.  And that's pretty much it for ground rules.  So are you able to answer my questions completely and truthfully here today?

A   I just swore that I would.

Q   Okay.  So you are here today to be deposed in the case Brunner vs. Larose, and you're familiar with that case?

A   Yes.

Q   And you're the plaintiff in that case?

EXHIBIT 1  Page 9 of 156

Page 10

A    Correct.

Q    Okay.  And Justice Brunner, did you do anything to prepare for our deposition today?

A    Yes, I reviewed my responses to the interrogatories and I myself prepared the documents for production.

Q    Okay, and so you reviewed the discovery responses and the documents?

A    Correct.  I read -- I read the documents, I just -- I didn't review them again 'cause it's a lot of video.  I already know what's in them.

Q    Okay.  Did you do anything else to prepare?

A    No.  Had a good night's sleep.

Q    Great.  Justice Brunner, when did you first become a candidate for judicial office?

A    In 2000.

Q    2000.  And how many times since 2000 have you sought judicial office?

A    Since 2000, 2002, 2014, 2016 unopposed, 2020, 2022, and I'm in the process of circulating petitions for 2026.  So that will be -- if you count the current, it's six times.  It is seven.  You -- you said since 2000, so I didn't have 2000.

Q    Sure.  So total, it's been --

A    Total seven.

Page 11

Q    You have been or will be a judicial candidate seven times?

A    Correct.  And I -- I already am.  I mean, petitions are circulating and I have a campaign committee.

Q    Okay, thank you.  Your candidacy in 2000 was for which judicial office?

A    Franklin County Court of Common Pleas.

Q    Okay, and did you run in the primary in 2000?

A    No, it was a seat for that expired term.  So I was nominated by the Franklin County Democratic Party and then ran and went against the governor's appointee.

Q    Okay.  And your candidacy in 2002, what judicial office did you seek in 2002?

A    Reelection.

Q    Okay.  Did you run in a primary in 2002?

A    No.

Q    And that was -- you said reelection, so reelection to the Franklin County Court of Common Pleas?

A    Correct.

Q    And did you -- were you successful?

A    Yes.

Page 12

Q    You said you did not run in a primary in 2022; is that correct?

A    In 2022?

Q    I'm sorry, in 2002?

A    That's correct.

Q    Thank you.

A    I mean -- I mean I was on the ballot, but I had no primary opponent if that's what you mean.

Q    Okay.  Okay.  Let me rephrase.  Did you seek the nomination of a party as a candidate in the 2002 election?

A    Not -- I mean, I was on the ballot for the formal nomination.  So if you're -- so yes, I did because that's the system.

Q    Okay, and that was the Democratic Party's nomination you were seeking?

A    That is correct.

        MR. QUINN:  Let her finish.

        MS. YACKSHAW:  Thank you.

BY MS. YACKSHAW:

Q    And to -- moving then to 2014, which judicial office did you seek in 2014?

A    10th District Court of Appeals.

Q    Okay.  And did you seek a party's nomination for the 10th District Court of Appeals?

Page 13

A    No, that was again -- I don't remember actually.  That was again for an unexpired term, so I -- I may have been on the ballot in the primary.

Q    You don't recall one way or the other if you were on the --

A    Well, I'm thinking that I -- I think -- I'm thinking that I screened for it in 2013, so I probably did have a primary election.  I was on the ballot for the primary election then.

Q    Okay, and were you on the ballot for the Democratic Primary?

A    Of course, yes.

Q    Okay.  Moving then to 2016, which judicial office did you seek in 2016?

A    Reelection to the 10th District Court of Appeals.

Q    And did you run in the primary in 2016?

A    Yes, I had to be nominated by a political party in order to be on the general election ballot.

Q    And in which political party's primary did you run in 2016?

A    Democratic.

Q    Okay.  And then moving on to 2020, which judicial office did you seek in 2020?

A    Supreme Court of Ohio.

Page 14

Q    And did you run in the primary in 2020?

A    My name appeared on the primary election ballot as a Democrat.

Q    And in 2022, which judicial office did you seek?

A    Chief Justice of the Supreme Court of Ohio.

Q    And did you run in a primary in 2022?

A    My name appeared on the primary election ballot as a Democrat as well as the general election as a Democrat due to a change in legislation.

Q    And with respect to the 2026 election, I believe you testified that you are currently circulating petitions?

A    Correct.

Q    And for what judicial office are you currently circulating petitions?

A    Associate Justice of the Supreme Court of Ohio.  It's for reelection.

Q    And are you seeking to run in the Democratic Party's primary for the 2026 primary election?

A    That is the only way I can get my name on the general election ballot is to pick a party, perhaps maybe run as an independent, but I'm -- I'm doing what I've always done, which is Democratic Primary.

Page 15

Q    Okay, and when does your current term as a Supreme Court justice expire?

A    It expires January 1, 2027.

Q    Okay.  And I -- you just testified I think that you are seeking the nomination of the Democratic Party for 2026 as associate justice of the Supreme Court; that's correct?

A    Correct.

Q    And you testified that that is the only way for you to get on the ballot at --

A    No, I didn't.  I said you could run as an independent.

Q    Okay.  All right.  So that being the case that you could run as a candidate for the Democratic Party or seek nomination as an independent candidate, why are you seeking in 2026 to be the nominee of the Democratic Party?

A    The only alternative is to run as an independent and those requirements are vastly different, and there's even a different filing deadline.  And I am running for reelection the same way I have always run for the Supreme Court, the Court of Appeals, and the Common Pleas Court.

Q    Okay.  So you're choosing to run as a candidate -- you're choosing to run in the Democratic

Page 16

Party Primary due to the different filing deadlines for party candidates and independent candidates and because you're seeking reelection and you ran as a Democrat before; is that fair?

A    And that's not the only reason; is an independent is a third candidate on the ballot and it's mathematically different in terms of the votes that are needed to win.  And a three-way race -- my experience with a multi -- multi candidate race was when I ran for Secretary of State in 2006, and there was a Republican, a Democrat, a Green Party candidate, and an independent candidate.

And it's -- it's typically what people expect is two people running for office, and it's less predictable in terms of how to fashion a campaign, how to set a good platform.  If you're running as an -- I've never run as an independent, so I -- but I -- I would suppose that it -- it is -- to me it seems like it'd be less predictable.

Q    Any other reasons than the ones you just testified to about why you're seeking the Democratic Party's nomination in 2026?

A    Only because I would like to be reelected and I'm doing this the traditional way that it's been done and the way that I know how to do it.

Page 17

Q    In your 2026 campaign, upcoming campaign, do you plan to seek the endorsement of the Ohio Democratic Party?

A    I don't plan to seek it.  I imagine they'll give it to me anyways.

Q    Okay, and then why don't you plan to seek the endorsement?

A    Because I don't really think I need it.

Q    Have you received the Ohio Democratic Party's endorsement in your prior campaigns?

A    I believe so.  I haven't been at the meetings where it may have occurred, but they -- in the past, starting with David Pepper, they had a policy where they put a little badge that had the names of the Supreme Court candidate -- candidates on literature that went out under their mailing postage permit, so I would assume that was an endorsement.

Q    Okay.  Okay.  Did you receive that endorsement in all, not counting 2026, but the six prior judicial campaigns that we talked about?

A    I know in two -- and the State Democratic Party doesn't usually endorse local candidates.  So the answer would be -- I don't -- I'm not really sure if for the Court of Appeals that the -- I don't think the Ohio Democratic Party actually did endorsements

Page 18

for Court of Appeals candidates, only for Supreme Court candidates.

Q    Okay.  Did you receive the Ohio Democratic Party's endorsement in 2020 and 2022?

A    Yes, 'cause I -- my name was on the slate card.

Q    And did you seek that endorsement or was that something that the Ohio Democratic Party decided to do without your asking?

A    They -- they did that without my asking.

Q    And then, just looking back to this, the 2020, 2022 campaigns, starting with 2020, would you say that you campaigned for the office of associate justice of the Supreme Court as a Democrat?

A    Depending on who I was talking to, yes. Like if it was a county party, I talked about values of taking care of those less fortunate.

Q    And do you associate those values with the Democratic Party?

A    I do.

Q    Okay, and you support those values?

A    Well I try to live those values.  I mean, as far as caring for people less fortunate than me because I focus on public service.

Q    And then moving now to the 2022 campaign for

Page 19

Chief Justice of the Supreme Court of Ohio, would you say that you campaigned for that office as a Democrat?

A     Depending on where I was.

Q     And can you explain that a little bit more where you may have considered yourself as campaigning as a Democrat versus not?

A     Well, I don't -- I don't really want to characterize it that I campaigned as a Democrat.  I campaigned as a judicial officer who happens to be a Democrat.  I mean, if you go way back to the Code of Judicial Conduct when it was Canon 7, I don't believe a candidate could even say they were a Democrat.

That's not something that's in that code anymore.  So if I was speaking to a Democratic Party, I probably mentioned that I was a Democrat, but they kind of already knew it because if you speak at a Democratic Party dinner, they don't bring a Republican in to talk to them unless they had a conversion experience.

Q     And you -- I believe you just testified that you campaign as a judicial officer who happens to be a Democrat.  So you do consider yourself to be a Democrat?

A     Oh, I do, but that doesn't mean -- here, go ahead.

Page 20

Q    I didn't mean to cut you off.  Please finish your answer.

A    No, I campaign -- say what your question was again?  I'm sorry.

MS. YACKSHAW:  Could you read it back?

THE REPORTER:  Yeah, I can.

(The reporter repeated the record as requested.)

THE WITNESS:  Oh, yes.  It's my personal belief.

BY MS. YACKSHAW:

Q    Okay.  Would you say that you agree with the Democratic Party on most issues?

A    It depends.  I'm pretty independent minded. So not -- not everything.

Q    Same thing for Democratic policies.  Would you say that you mostly support the policies you associate with the Democratic Party?

A    Again, it depends upon who's running the DNC because that platform varies across different leaders and presidents.

Q    Just looking at your last campaign in 2022 for Chief Justice of the Supreme Court of Ohio, during that campaign did you support the policies of the Democratic Party for your 2022 campaign?

Page 21

A     You mean personally or -- or verbally?

Q     In your campaign as a candidate.

A     For my campaign?  No, I don't -- that's not my job as a judge to espouse the policies of the Democratic Party.  And when you say did I support the policies, I might have -- I might have supported them in my mind.  But in terms of the way that I do my job and the way that I campaign, no.

Q     All right.  You said it's -- I believe you just testified it's not your job as a judge to espouse particular policies associated with a party.  What do you consider your job that -- and focusing here because we're talking about campaigns; as a judicial candidate, what do you think your job as a judicial candidate is running for judicial office?

A     To convince voters that I will be a good jurist who is fair, open-minded, approaches a case as a blank slate, able to listen to both sides, make a decision that's fair, and also to have the humility to remember that I'm a public servant always.

Q     And then speaking of a judicial candidate for that answer, now turning to what you think -- what you consider your job as a judge to be, could you tell me a little bit about that?

A     Same thing I just told you.

Page 22

Q    Going to start with an exhibit here.

MS. YACKSHAW:  Would you like one for yourself?

MR. QUINN:  Yeah, if you got an extra. I don't need a sticker on it; I can save you the drama.  Thank you.

BY MS. YACKSHAW:

Q    All right.  Justice Brunner, I have handed you a document I have marked as Exhibit A.  Do you recognize this document?

(Exhibit A was marked for identification.)

A    Yes.

Q    What is it?

A    It's the verified amended complaint in this matter.

Q    Okay, and did you review this document before it was filed?

A    I did.

Q    Okay, and looks like it was filed in August of 2024; is that correct?

A    That's what it says.

Q    Okay.  And just in your own words, and take the time you need to review the complaint and refresh yourself on it; could you just summarize what relief

Page 23

that you were seeking in this complaint?

A   You can't read it?  Why do I need to tell you?  I mean, it's right here in the prayer.

Q   Sure.  I'd just like you to summarize, you know, generally speaking, what relief you're seeking.

A   "Declaratory or injunctive relief to remedy violation of rights pursuant to 42 USC 1988, an award of reasonable -- plaintiff's reasonable attorney's fees and costs." That's in regard to count 1.  Count 1 regards -- regards the 1st Amendment in violation of -- of individual rights under the 1st Amendment.

"In regard to count 2, declaratory or injunctive relief pursuant to 42 USC 1988, and for an award of attorney's fees and costs in relation to count 2, which is an equal protection claim in the United States Constitution."

"In regard to count 3, declaratory judgment based on paragraph 60," again pursuant to 20 -- 20 -- this is pursuant to 28 USC 2201 and for -- and for such further relief as is necessary or proper.  Count 3 is for declaratory judgment, which essentially declares the rights of the parties.

"In regard to count 1, 2, 3, or any combination of them for injunctive relief pursuant to Federal rule 65 enjoining Secretary Larose from

Page 24

enforcing those portions of Senate Bill 80, which are now codified, that require appellate judicial candidates to be identified on the general election ballots as partisan candidates or by enjoining the other defendants named here from enforcing parts of those -- of those parts of the Code of Judicial Conduct against plaintiff and other partisan judicial candidates under the terms of Senate Bill 80.

An order restraining" -- I mean I can go to the 1st, 5th, 14th Amendments to the United States Constitution, but also "for an order restraining or enjoining the defendants for enforcing or ordering to be placed on the general election ballot political party designations for judicial candidates for offices of judge of Court of Appeals.

And an order restraining and enjoining the defendants requiring compliance with the provisions of rule -- rule 4.1 and its restrictions on judicial candidates who must bear political party designation next to their names on the general election ballot. An award of costs pre and post judgment interest, reasonable attorney's fees, and expert witness fees." That's the prayer.

Q    Okay.  All right.  If we could turn to page 14 in Exhibit A.  This is going to be paragraph 49.

Page 25

It's count 1, 42 USC 1983, 1st Amendment. Looking specifically at paragraph 49, it says that "Senate Bill 80 is spatially unconstitutional as an unreasonable and/or discriminatory measure of regulating access to the ballot and the conduct of elections." And will you understand me if I say that Senate Bill 80 is the partisan designation law?

A    Yes.

Q    That -- okay.  And the next sentence reads, "alternatively, Senate Bill 80 in conjunction with the provisions of the Code of Judicial Conduct regulating communications by judges and judicial candidates, including but not limited to rule 4.1 A6 is unconstitutional as applied to Plaintiff in so far as the combined effect operates to compel Plaintiff's speech serves as a content-based regulation of speech and is an unreasonable and/or discriminatory regulation of ballot access and the electoral process." Okay.  Did I read all that correctly?

A    It looks okay to me.

Q    Okay, great.  In this paragraph, paragraph 49, I understand that you are seeking relief with respect to Senate Bill 80, the partisan designation law and with respect to rule 4.1 A6 of the Code of Judicial Conduct.  Do I understand that correct?

Page 26

A    Well, they're alternate requests.

Q    Okay.  Could you explain that?

A    Well, essentially, Senate Bill 80 being alleged to be facially unconstitutional would -- let's see, "as -- as an unreasonable and/or discriminatory measure regulating access to the ballot and the conduct of elections." That affects -- that -- that's about the party label designation on the ballot.

If you look at the 2024 elections for the appellate level basis for the Court of Appeals, the District Courts of Appeals, there were only two contested elections at the general election in the State of Ohio.  One was in the 9th district, one was in the 1st district, and I would attribute that to Senate Bill 80.

Q    Okay, and so that relates to your claim in that Senate Bill 80 is facially unconstitutional?

A    Correct.

Q    Okay.  And then this alternative, the sentence that begins with "alternatively," it alleges here in the complaint that Senate Bill 80 in conjunction with rule 4.1 A6 that the Code of Judicial Conduct is unconstitutional as applied to you.  Am I understanding that correctly?

A    Let's see, yes.  "The -- the combined

Page 27

effects to compel Plaintiff speech serves as content-based regulation of speech and is unreasonable and/or discriminatory regulation of ballot access in the electoral process."

I suppose that that last phrase on regulation of ballot access in the electoral process would probably apply to anyone beyond me.  So "as applied" doesn't mean it just is applied to me because campaigning as a partisan is not compatible with the Code of Judicial Conduct.

Q    Okay.  In what ways is campaigning as a partisan incompatible with the Code of Judicial Conduct?

A    Well, you start with the Code of Judicial Conduct and I'm -- I don't have it all memorized, but essentially giving your viewpoints that would indicate how you would vote on a particular case is against the Code of Judicial Conduct.  It violates the Canons, and most partisan candidates promise a lot of things. Judges shouldn't be promising anything except fealty to the office.

And so for a judicial candidate who's running in a partisan election, other partisan candidates who aren't in the judiciary can say whatever they want, and a judicial candidate can't do

Page 28

that even though they've got a partisan label next to their name.

And so for some candidates, they're at a disadvantage because they may not agree with everything in their party's platform, but the public assumes that they do because of the party label next to their name, and they're not really in a position to say, "I don't believe that," or -- or vice versa.

Like if there's something that's not in their platform and they believe that, they really aren't able to say it, but I -- I frankly don't think a judge should be saying it anyways.

Q    So am I understanding you correctly to say that there's no way to agree or disagree with a party platform without also announcing your viewpoint on how a judge would vote on a particular case?

A    Well, and I -- I don't want to limit it to platform.  I'm -- I'm talking about particular issues that could come before the court, and it might happen that that issue is part of a party platform or that the public just assumes all Democrats favor this, all Republicans favor that, and so it may not even be as formal as a party platform.

Q    Okay.  Would you agree with me though that there are many statements that a judicial candidate

Page 29

could make agreeing or disagreeing with a plank of a party platform or a particular issue that do not rise to the level of announcing a viewpoint on how a judge might vote in a particular case?

A    I don't know if I'm going to say there are many.  When a judge decides to discuss issues, they can talk about that it is an issue, but they really shouldn't say what their viewpoint is on that issue.

You know, there may be things like gerrymandering, which are already unconstitutional, and so that would be something that they could speak about because they -- they take an oath to uphold the law and the constitution in both the United States and the State of Ohio.

Q    Okay.  Okay.  So could you -- is it your view that you could, in a campaign, say what your viewpoint on an issue like gerrymandering is without committing to a particular decision in a particular case?

A    Yes, you could do that because that really is not a partisan issue anyways because California, they're trying to gerrymander the other way.

Q    Okay.  And same thing, we'll just take another issue.  We'll say something like gun rights, 2nd Amendment rights.  Could you say -- could a

Page 30

judicial candidate say a viewpoint on an issue like 2nd Amendment rights without making a pledge or a commitment in a particular case or controversy?

A    You -- you can talk about upholding the Constitution, and lots of people read the 2nd Amendment in a lot of different ways.  If you're a candidate that goes to a gun show to campaign, I think they know where you stand on that issue.  I can't say I've ever been to a gun show.

Q    Okay.  But I mean, making a statement about your viewpoint on the 2nd Amendment wouldn't commit you to a particular result in a particular case; is that fair?

A    As long as -- it depends on the statement. It -- again, I mean if you say you -- you'll uphold the Constitution, you've made a statement, but nobody really knows how you're going to decide it.

Q    Okay.  I want to turn back to this paragraph that we've been talking about, this paragraph 49 in the complaint.  And again, I'm talking about this sentence beginning with "alternatively," and you've said that Senate -- the complaint says that Senate Bill 80 in conjunction with the provisions of the Code of Judicial Conduct, including but not limited to rule 4.1 A6, that the conjunction of those provisions are

Page 31

unconstitutional.

And what is -- what portions of the Code of Judicial Conduct are you challenging in this paragraph here other than rule 4.1 A6?  So it says, "including but not limited to." So what are the other provisions?

A    Well, do you have a copy of the code?

Q    I have a copy of just Canon 4 code, which I think is --

A    Right.  That'd be fine.

Q    Okay.  All right.  I can --

A    Just going to tell you just 'cause I mentioned one doesn't mean I don't mean others too. It's going to be up to the judge to decide.

Q    Okay.  I just marked Exhibit B, which is the Ohio Code of Judicial Conduct, and it is the table of contents and the -- I for the sake of the trees have omitted Canons 1 through 3 and have included all of Canon 4.

(Exhibit B was marked for identification.)

A    Can you ask me which parts of the code?

Q    So I -- my question, Justice Brunner, is back to Exhibit A, that same paragraph that we were talking about, paragraph 49, that -- where the complaint alleges that Senate Bill 80 in conjunction

Page 32

with the provisions of the Code of Judicial Conduct, including but not limited to rule 4.1 A6 are unconstitutional as applied to you.

My question is, which provisions of the Code of Judicial Conduct are you challenging here in paragraph 49 other than rule 4.1 A6?

A    Okay, well, let's -- let's begin with the preamble to Canon 4, which says, "A judge or judicial candidate shall not engage in political or campaign activity that is inconsistent with the independence, integrity, and impartiality of the judiciary."

It's a very broad statement.  A partisan judicial candidate is an oxymoron.  You probably know in the history of judicial elections that the nomination at a political party primary was a compromise that was reached.

I can't give you the exact year, and whoever the powers that be were at the time basically let the political parties have their say for the primary, but then in the general recognize that there shouldn't be a political party label on the ballot because people want to believe in the independence of the judiciary and would have more confidence if there's not a party label on the ballot in the general election.

Q    So then if I just may go back to my

Page 33

question, this paragraph here, paragraph 49 in the amended complaint, "Senate Bill 80 in conjunction with Canon 4 of the Code of Judicial Conduct is unconstitutional as applied." Is that what you just testified to?

A    Correct, and if you want me to go through 4.1, I'll start through 4.1.

Q    Okay, well we can go -- just 4.1, we'll just say A -- oh, sorry; 4.1 A1.  In paragraph 49 is 4.1 A1 one of the provisions of the Code of Judicial Conduct that you are challenging as unconstitutional?

A    Yes, because the judge is forced to be a partisan candidate, but yet the rules say that a judicial candidate, even though they're now a partisan candidate, cannot act as a leader of or hold office in a political party or make speeches on behalf of a political party, or another candidate for public office can't publicly endorse or oppose a candidate for another public office.

So you -- judges are allowed to appear in the same advertisement with another judicial candidate, but they cannot publicly endorse or oppose a candidate for another public office.

So if you are there together and you -- you cannot -- I mean, judges worry about whether they have

Page 34

their picture taken with somebody running for the State House, whether that looks like an endorsement, because it would be prohibited under this even though they're on the ballot with presumably the same party label as that candidate for the House of Representatives.

I -- I had a grievance filed against me -- and I'm looking at -- at subdivision 4.  I had a grievance filed against me in 2014 because I wrote a check to the Franklin County Democratic Party to pay for billboards that were being shared by judicial candidates, so I was grieved on this section because it was not a contribution that I made to the party for a fundraising event.

I cannot make any statement or comment that would reasonably be expected to affect the outcome or impair the fairness of a matter known to be pending or impending in any court in the United States or its territories.

JD Vance can talk about a Franklin County Common Pleas Court judge and his ruling on transgenders -- transgender being -- students being able to participate in sports, but I would not be able to do that.

I wouldn't do it anyways, but the point is,

Page 35

is by forcing me into a partisan position and not being able to speak as a partisan would, I don't have the same advantages that a partisan candidate has. Not that I really -- not that I really want them.

Q So you've just reviewed I think rule 4.1 A1 through 5; correct?

A And I'm not on 6 yet.

Q Well, 6 I'll represent to you is specifically named in paragraph 49 of the amended complaint. So my question is for rule 4.1 A1 through 5, are these all portions of the Code of Judicial Conduct that in conjunction with Senate Bill 80 you are alleging are unconstitutional as applied to you?

A Yes.

Q Okay. A1 through 5; correct?

A Yes.

Q Okay, and then moving on to rule 4.1B; now this provision, I'll give you a moment to review it, it speaks of the things --

A But -- but number 6 is -- I would not want to do this, but candidates for the State House can talk about what bills they're going to sponsor. Judges can't do this.

Q Right. Okay. And I understand your complaint specifically names 4.1 A6 as one of the

Page 36

rules that is unconstitutional as applied to you in conjunction with Senate Bill 80.  I am just trying to discern the other portions of the code that are referred to in the complaint, but not specified.

A    Okay.  I understand.

Q    So we know 4.1 A6 --

A    Yeah.  Sorry, I missed that nuance.

Q    So we just talked about A1 through 5.

A    Correct.

Q    Now 4.1 B, this speaks to things that a judge or judicial candidate may do?

A    Correct.

Q    Now this -- in paragraph 49, is rule 4.1 B one of the provisions of the Code of Judicial Conduct that is unconstitutional as applied to you?

A    Well, in a sense it is in terms of it's -- it's an actual limitation.

Partisan candidates are -- there's -- there's nothing in the revised code for Secretary of State rules for partisan candidates that says what they may do.  And so the -- the inference in B is that you may do this, but that's it. Especially if you are making a contribution to the political party.

I mean, political parties, local political

Page 37

parties on a yearly basis ask their -- all of their local elected officials to make contributions, a yearly contribution to the party.  And so what judges have to do is they have to wait for a fundraising event and then write a check for that amount at a fundraising event, which it's -- it's always going to be greater than what the individual ticket price is.

So, you know, a judge might purchase a table, but they -- they do that just to -- to be able to comply with this rule about -- with B3 and -- whereas any other candidate for a non-judicial office doesn't have to worry about whether they're staying within the bounds of these particular things.

And for -- for instance, if I wrote a check to a -- a county political party, if I was a county candidate or the state political party, how would I know the parties that they're not going to -- that they're not going to use it to pay party debts? And -- and these are not restrictions on a candidate who's running for a non-judicial office.

Q   Okay.  So then is it fair to say then that rule 4.1 B is included among the provisions of the Code of Judicial Conduct that you're alleging are unconstitutional?

A   It would be fair to say that.

Page 38

Q    Okay.  All right.  If you could stay on the rule 4.1 for a second, I'd like to ask you a couple questions about different provisions of rule 4.1 A, and we'll start with rule 4.1 A1.

And absent the Code of Judicial Conduct, if rule 4.1 A1 were to be declared in this case unconstitutional that's applied to you, would you seek then to act as a leader of or hold an office in a political party?

A    I might want to go to a convention.  In fact, I know -- I know people running for justice on the other side went to the Republican National Convention.

Q    Okay, but would you seek to -- absent the Code of Judicial Conduct, to act as a leader of or hold a position in a political party?

A    Yeah.  It'd be great to be a delegate.

Q    Okay.  And you think act as a leader of or hold an office in a political party includes serving as a delegate?

A    Sure.  I've been a delegate before, but when I was Secretary of State.

Q    All right.  Other than serving as a delegate, would you seek to hold any other office or act in any other leadership position in a political

Page 39

party?

A    You couldn't pay me enough to be a chair of a party.

Q    Fair enough.  All right.  And then absent rule 4.1 A2, would you seek to make speeches on behalf of a political party or other candidates for public office?

A    I -- yes, I -- I would because honestly when judicial candidates are invited to speak at a Democratic event, they have to be very careful about what they say.  And I would be happier if I could speak more freely about what I believe are important Democratic principles 'cause I don't believe that it would influence how I would vote on something.  It only would be an indication of my approach to life.

Q    So I understand if rule 4.1 A2, other portions of rule 4.1 A were enjoined, you feel you'd be able to speak more freely, but if it were enjoined, would you specifically seek to make speeches on behalf of a political party?

A    I think candidates are doing that now.

Q    Okay.  You think judicial candidates are doing that now?

A    I do.  I mean, from what I know of the 2022 campaign, there was a slate card for the Republican

Page 40

ticket and the members of that slate would stand up

and say, "You need conservative people, and you -- you

know, the state's just going to go to hell in a hand

basket if you have anybody but us who's here."

And I mean, you go back to what Judi French

said to the local officials back when she was

campaigning in 2014 that, you know, she was a backstop

for all the local officials and all the local

Republican officials.

Q    Looking out at rule 4.1 A3, if this 4.1 A3

were enjoined as part of this lawsuit, would you seek

to publicly endorse or oppose candidates for other

public offices?

A    I would.

Q    In your upcoming judicial campaign?

A    I would because there are good people who

run for office who could use the boost from somebody

who's been around, and it would be based on personal

knowledge.

Q    Is there any specific candidate for other

public office you seek to endorse in your 2026

campaign?

A    I don't know who all the candidates are.

Q    No one comes to mind sitting here today?

A    No.  No.

Page 41

Q    All right.  Looking now at rule 4.1 A4, if this provision were enjoined in this case would you seek to solicit funds or make a contribution or expenditure of your own campaign funds to a political party or candidates for other office?

A    There may be a situation where I would for a political party.

Q    Okay.  What kind of situation?

A    Well, I'd have to imagine what they would be.  I think -- I think it would actually be more in the context of a local party.

Q    Okay.  And if rule 4.1 A5 were to be declared unconstitutional in this litigation, would you seek to make any statement or comment that you would expect to affect the outcome or impair the fairness of a matter that's pending somewhere in the United States or it's territories?

A    I think things that could affect what I consider to be human rights.  If -- for instance, if the Obergefell case were revived so that it could be reversed, I would be inclined to want to speak on that.

Q    Okay.  Any other statements or comments you would make with respect to pending matters?

A    If Citizens United were revived for another

Page 42

review, or to make it more onerous, I would probably want to be able to say something about that.

Roe V. Wade was overturned when I was running for the chief justice spot, and all that I ever spoke about was what happened, and not, you know, whether it was good or it was bad because I was constrained from doing that.

Q    Okay.  And so if this rule 4.1 A5 were enjoined, you would be able to make a statement or comment, you know, as to the Supreme Court's decision?

A    Right.  I would limit it to federal litigation and not to -- I mean actually Federal U.S. Supreme Court litigation.  I would not be wanting to talk about something in any lower federal court because of the chance that it could refer a matter to the Supreme Court to determine what state law is.

Q    Okay, so any statements or comments you would make about pending --

A    The Ohio Supreme Court, I'm sorry.

Q    Thank you for that.  Any statements or comments that you would make about pending or impending court matters would be about matters that you would not -- that would not come before the Supreme Court of Ohio.  That's fair to say?

A    Correct.

Page 43

Q   Okay.  All right.  But you would like to make statements or comments about pending matters in the United States Supreme Court?

A   Correct.  I would, and I feel like the public would like for that too.

Q   Okay.  Would you expect the comments that you would like to make under rule 4.1 A5, so comments about Roe V. Wade, Citizens United, or Obergefell, would you reasonably expect those comments to affect or impair the outcome of those matters?

A   It would depend.  I don't know to what extent the U.S. Supreme Court looks at public comment for deciding how they're going to rate their decisions, but the rule is the rule.

Q   Okay.  All right.  Would you make a -- if rule 4.1 A5 were enjoined and you were seeking to speak on -- let's say the Obergefell litigation were to be revisited, the statements that you would like to make, would you make them intending to affect the outcome of that litigation in the federal courts?

A   I think anybody makes a statement because they want to be heard, and the reason they want to be heard is it's -- that's the first step to doing something about it.  That's why you see people protesting.  It goes back to the 1st Amendment.

Page 44

Q    Okay.  Other than the topics that we just talked about, Obergefell, Citizens United, Roe V. Wade, were there other statements or comments that you would like to make on pending or impending matters that you cannot make because of this rule?

A    I can't really tell you what's pending right now.  You know, they're -- I -- I can give you hypotheticals.

Q    But what are some other -- well it says pending or impending, so what are some impending matters that you'd like to speak on?

A    Well, there's always the question of search and seizure, that affects individual people's rights to privacy and due process.  There's questions with the current government shutdown.

I mean, for instance, if I were speaking at a political party event and someone asked me a question about why don't the Democrats just do something, you know, I -- I would like to be able to point out that if they move forward without the protection of healthcare, people are going to get to eat, but then they're not going to be able to get their health taken care of, or those that depend on the government for those sorts of things.

Q    Do you believe --

Page 45

A     I can't -- I can't say -- I really can't say that.

Q     Okay.  You believe that rule 4.1 A5 prevents you from speaking about the government shutdown?

A     I do, yes.

Q     Okay.  And then looking here at rule 4.1 A6, this is the -- in connection with "cases, controversies, or issues that are likely to become before the court to make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office." Now if this rule were enjoined, would you seek to make pledges, promises, or commitments that are currently prohibited by this rule?

A     I probably wouldn't, but if you look at the Elizabeth Burick case, if you go back and review that one 'cause I had the fortune or unfortune to represent her, and the only reason she didn't have to pay more in fines was the other side forgot to put a certificate of service on their brief -- on their damages.

She got a little bit lucky there.  So I -- what I'm saying is that people like Elizabeth Burick would not have actually had to pay out money and take a -- a ding on their law license, their way

Page 46

of making a living, because of these rules.

And this is a very broad rule.  It can be interpreted in a lot of different ways and it's going to depend upon who your hearing panel is and then what the makeup of the court is, which reviews what the recommendation of that -- basically of the Board of Judicial Conduct or -- is saying.

So it -- I would be trying to comply with A6 anyways, but the way that it's written, it's possible for someone to get caught in a web or in a net, snagged, if that's the right term, for something that they -- where they didn't actually mean to violate or they -- they were trying not to violate 4.1 A6.

Q   Is it fair to say then that you would not make any pledges, promises, or commitments that you feel violate rule 4.1 A6?

A   Correct, but that doesn't mean that somebody else wouldn't think that.  And this is not a requirement of candidates who are partisan and running for non-judicial office.  They do not have this framework of rules to abide by.

Their framework of rules exists in -- used to exist in -- in the section dealing with the Ohio Elections Commission and campaign violations.  Many of those campaign violations, almost all of them having

EXHIBIT 1  Page 46 of 156

Page 47

to do with speech and what they say are unconstitutional.  In fact, we don't even have an elections commission anymore.

Q    Okay.  We talked a little bit or at length now about rule 4.1, and my next question will be is if you are alleging in your complaint that any other portion of Canon 4 is unconstitutional as applied to you in your complaint?

There's a rule 4.2, a 4.3, a 4.4, 4.5, and then 4.6 is the definition section and that's the whole of Canon 4.  Now I say -- the rule 4.1 is the only rule mentioned in the complaint, but I just want to confirm that this statement in paragraph 49, that there are other provisions of the Code of Judicial Conduct that are unconstitutional as applied to you, do those other provisions include rules 4.2 to 4.6?

A    No, they don't.

Q    Okay, so the challenge is solely on rule 4.1?

A    No.  No.

Q    I'm sorry.

A    No, it's not 4.1.  4.2, we can go through that too.  None of these -- none of these rules and restrictions apply to non-judicial candidates.

Q    Okay.  Same thing for rule 4.3?

Page 48

A    Well, I mean, I'm going to look through here.  I mean, if you want to go one by one through 4.2, we can do that.  In -- in looking at rule 4.2 A and B, none of these requirements apply to whether they're -- whether they're actually requirements or prohibitions required apply to non-judicial partisan candidates.

Now looking at number 3, again, if you are a State Senator or State Representative who wants to run for judge, you cannot use the funds that were raised in running for -- for your state house office to run for judge.  And if you want to do a joint fundraiser as a judge, you can only do it with another judicial candidate.

You can only appear in a joint campaign advertisement with other judicial candidates, and then you are allowed to participate with judicial and non-judicial candidates in fundraising activities that are organized or sponsored by a political party, even though that's supposedly not making statements in support of a political party or raising money for a political party.

I mean -- and the thing is, is for non -- for non-judicial partisan candidates, if they break a rule, it doesn't go to their license that they

Page 49

have to earn a living.  I mean, if they're a insurance agent or something else, it doesn't affect their license.

You're allowed to appear on a slate card, but there's nothing in the revised code that tells a candidate that it's okay to do that.  They just assume that it is.  And you are allowed to seek, accept, or use endorsements from any person or organization.

And all of these things are -- are subject to interpretation because someone can file a complaint against them with the Board of Professional Conduct and then their campaign results in a situation where they're having to hire an attorney, take time out, appear at a hearing for having violated it, which starts -- if it's a -- there's a local grievance committee, it start -- may start with, for instance, the Mahoney County Bar Association.  Then it goes on to the Board of Professional Conduct, and it eventually goes to the chief -- the -- to -- to the full Supreme Court.  So you want to go to rule 4.3 now?

Q    Yeah.  So fair to say then that 4.2 is one of the rule -- one of the provisions of the Code of Judicial Conduct that you believe is -- you're alleging is unconstitutional as applied to you --

Page 50

A    In conjunction with Senate Bill 80, yes.

Q    All right.  And rule 4.3, same thing?

A    Well rule 4.3 in many ways mirrors what has been in the revised code related to speech during campaigns, but there are things that are more specific in it, and the standard here is knowingly or with reckless disregard.

And I'd have to go back and look at the code to -- to remember if -- if that was still the same mens rea.  So so far the question of knowing something to be false or with reckless disregard of whether or not it's false is still good law regarding judges in Ohio.

So that, again, goes to whether or not an individual can keep their law license because any violation of Canon 4 of the Code of Judicial Conduct is basically a disciplinary issue.

"Manifest bias or prejudice toward an opponent based on race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status." I guess I -- not -- it's not something I'd want to do, so -- it's -- but again, it's a rule that doesn't apply to partisan candidates.

I mean, I suppose the law may -- I -- I don't know about socioeconomic status.  That's the

Page 51

thing. I don't think -- know that the law actually deals with socioeconomic status, and I don't know if it deals with sexual orientation, probably not in Ohio. So race, sex, religion, national origin, disability, that one I'm not challenging, or -- or age I'm not challenging.

And I -- I guess what I'm saying is not that I would ever challenge them, I would never, ever make a -- a statement that was biased or prejudiced towards someone based on their sexual orientation or gender identity, which isn't in here, or socioeconomic status, but this is an additional requirement on judicial candidates that's not required of otherwise partisan non-judicial candidates.

And I'll correct that this is not something that -- this is something that's required of partisan judicial candidates that's not required of partisan non-judicial candidates.

"Use the title of public office or position immediately proceeding or following the name of judicial office when the candidate does not hold that officer or position," that's a vestige from the old statute that was false statements before the elections commission.

I don't know right now whether that's in the

Page 52

code or out of the code.  I mean sometimes they abolish, like, the elections commission, but leave the -- I don't know what the legislature's done in terms of leaving the -- the prohibitions in the statute, even though there's no teeth to enforce them.

"Use the term 'judge' when the candidate -- judicial candidate is not a judge unless that term appears after or below the name of the judicial candidate, is accompanied by either or both of the following words, 'elect' or 'vote' in prominent lettering before the judicial candidate's name."

Again, this is more specific to judges in terms of what the lettering should be, "the word 'for' in prominent lettering between the name of the judicial candidate, the term 'judge.'" It used to be that there was actually a requirement that it had to appear in the -- the same size font as I think the name of the judicial candidate.

None of these -- I mean, I -- with there being no elections commission and maybe now there's -- I think they're going to enforce it in the Secretary of State's office, the election integrity section that Mr. Larose created.  Maybe though -- I -- it -- it remains to be seen what they're going to be doing.

Page 53

But I want to point out too that a judicial candidate can be -- can be prosecuted by the Ohio Elections Commission, so I'm going to assume they can also be prosecuted -- prosecuted by Secretary of State.  So the judicial candidate has to please two masters.

"Use the term 'former' or 'retired' immediately proceeding the term 'judge' unless the term 'former' or 'retired' appears each time the term 'judge' is used, and the term 'former' or 'retired' appears in prominent lettering."

No other candidate has -- I mean as many times as Dan Troy has run for the House of Representatives, and I think he may have been beat once, he didn't have to run again as former or retired State Representative.  There are many others as well.

"Use the term -- use the term 'reelect' in either of the following circumstances," which is can't do this, "when the candidate has never been elected at a general or special election for which he's a judicial candidate." I -- that's not one that I would try to do anyways 'cause I've been a judicial candidate, doesn't apply to me.

"When the judicial candidate is not the current occupant of the office for which he or she is

Page 54

a judicial candidate," that's not one that I would be challenging.  "Misrepresent his or her identity, qualifications, present position, or other fact of -- or the identity qualifications, present, position, or other fact of an opponent," and that is knowingly or with reckless disregard.

That, again, is something that I think was pulled from the elections commission violation statutes and I -- again, I don't know whether it's still there or not.

"Make a false statement concerning a formal schooling or training completed or attempted by the judicial candidate, a degree, diploma -- diploma or certificate," et cetera.  I'm not going to read the whole thing.  That is also a vestige from revised code 3517.  It used to be 12 -- point 12, but then they moved it to a different section.

"Make a false statement concerning professional, occupational, or vocational licenses." Again, that is something that I can't tell you at this point because it came from the revised code.  Same with J, "A false statement that a candidate has been -- judicial candidate has been arrested, indicted, or convicted of a -- of a crime." That, again, is -- is pulled out of the state statute.  Same

Page 55

answer there.

"Make a statement" -- this is K -- "Make a statement that a judicial candidate has been arrested, indicted, or convicted of any crime without disclosing the outcome of all pending or concluding -- concluded legal proceedings." That, again, comes from revised code statute.

L, "Make a false statement that a judicial candidate has a record of treatment or confinement for a mental disorder." That again comes from state statute.

"Make a false statement that a judicial candidate has been subjected to military discipline for criminal misconduct or dishonorable discharge from the armed services," again, I believe that comes from the state statute.

"And falsely identify the source of a statement issued," this is number N, "falsely identify the source of a statement, issue statements under the name of another person without authorization, or falsely state the endorsement or opposition to a judicial -- judicial candidate by a person, organization, political party or publication."

I used to litigate that before the Ohio Elections Commission.  So that again comes from state

Page 56

statute.  Whether it's in -- still in effect right now or not, I don't know.  Do you want to move to 4.4?

Q    Well, with respect to 4.3, is it then fair to say you carved out a few provisions, F3 elect provision and portions of B about bias or prejudice, but that you would not seek to do even if rule 4.3 were enjoined?

A    It's not C, it's B.

Q    Bias?

MR. QUINN:  She said B.

THE WITNESS:  You said B?  I thought she said C.  Go ahead.

BY MS. YACKSHAW:

Q    Yeah, I said B.  Yeah.

MR. QUINN:  B.  B as in boy.

BY MS. YACKSHAW:

Q    I meant B if I didn't say B.

A    Okay, thank you.

Q    I apologize.

A    I must have misheard it.

Q    You would not seek to do the things currently prohibited by rule 4.3 B and F.  Would you seek to do the campaign actions listed in these other sections if these provisions were enjoined?

A    Well, I -- I'm not a person who wants to

Page 57

purposely lie, so I wouldn't lie.

Q    Okay.  Rule 4.4 is quite lengthy.  So this -- the entire provision is relating to campaign solicitations and contributions.  I don't necessarily want to go over the whole thing here.  I just want to know if in your amended complaint, rule 4.4 is one of the provisions of the Code of Judicial Conduct that in conjunction with Senate Bill 80 is unconstitutional as applied to you?

A    Yes.

Q    Okay.  And specifically the portions of rule 4.4 that do not apply to partisan non-judicial candidates?

A    A, no personal solicitations --

Q    Sorry.  You are -- your complaint -- I'm sorry.  I didn't mean to cut you off.  I don't think I asked that question well, so I'll ask it again.  Your complaints here, paragraph 49, is challenging the portions of rule 4.4 that do not apply to partisan non-judicial candidates?

A    That is correct.

Q    Okay.  I think that's good enough for our purposes, and then moving on to rule 4.5, this is the provision that says, "upon becoming a candidate in a primary or general election for non-judicial office,

Page 58

judge shall resign from judicial office." You testified earlier that you're seeking judicial office in 2026.

A    Correct.

Q    So it is fair to say that rule 4.5 is not among the rules that you are alleging in your amended complaint is unconstitutional as applied to you?  I'll give you a moment to review rule 4.5.

A    So it -- this doesn't apply to me 'cause I'm running for a judicial office.

Q    Okay.  All right.  So then it's fair to say that rule 4.5 is not among the provisions of the Code of Judicial Conduct you're alleging is unconstitutional as applied to you?

A    It may be as applied to others.  I did consider running for a non-judicial office, but I chose to not resign and to run for my own seat.

Q    Okay.  All right.  And then 4.6 --

A    So I -- I can't say that -- I mean, I -- I -- it's -- I'm not changing canoes right now.

Q    Okay, and then 4.6 is a definition section that defines the terms used in Canon 4.  Is 4.6 among the provisions of the Code of Judicial Conduct that you are alleging is unconstitutional as applied to you in conjunction with Senate Bill 80?

Page 59

A    Yes.  It -- now contribution -- I mean we might have to break this down because contribution has the same meaning as in 3517.01, which includes an in-kind contribution, so that's not an issue.

That's -- that one applies equally in terms of the definition to partisan judicial and partisan non-judicial candidates.  Same with aggregate, but immediate family is something that's different for judicial candidates.

Q    Okay.  So fair to say that you are challenging the portions of rule 4.6 that use definitions that do not appear elsewhere in the revised code?

A    Correct.

Q    We can set I think the Code of Judicial Conduct aside for now.  I have a couple more questions about the complaint.  So go back to Exhibit A, page 16.  Page 16 is a paragraph within count 3, the claim for declaratory judgement, just situating where we are.  We're looking specifically at paragraph 60.2.1.

This paragraph seeks a declaration that rule 4.1 violates the 1st Amendment on its face and as applied.  Now based on our discussion of the Code of Judicial Conduct and the scope of your complaint, is it fair to say that you're seeking then to invalidate

Page 60

all of rule 4.1 as violating the 1st Amendment?

A    I don't remember what I said.

Q    Fair enough.

A    I always tell my kids if you lie, you don't have to remember what you -- if you don't lie, if you tell the truth, you don't have to remember what you said.  It's only if you lie you have to remember what you said.  YouTube has proved that.

Q    All right.  So you don't remember what you testified to before, but looking at this paragraph here, paragraph 60.2.1, is your understanding in the complaint that you're seeking to invalidate all of rule 4.1 as violating the 1st Amendment?

A    I believe so, yeah.  I should say yes.

Q    Same question with respect to paragraph 60.2.2, so just -- still on page 16, just underneath. This paragraph says that rule 4.1 denies judicial candidate substantive due process on its face and as applied.  And again, sitting here looking at this, it's your understanding of this portion of the complaint you're seeking to invalidate all of rule 4.1. as denying you substantive due process?

A    That's -- that's my understanding.

Q    And let's turn now to page 19 of the complaint.  This is part of the wherefore clause.  The

Page 61

wherefore clause begins on page 18, continues to page 19.  And I just want to clarify a couple things about the nature of the relief that you're seeking.

Now, as I understand it, looking specifically at paragraph D1, this -- the relief that you're seeking is alternative relief.  So either Senate Bill 80, the partisan designation law, is declared unconstitutional and judicial candidates would be subject to the full Judicial Code of Conduct, or portions of the Code of Judicial Conduct are invalidated, and the Senate Bill 80 partisan designation law remains.  Did I summarize that accurately?

A   It's in the alternative.  Let me read it again.  Well, actually, I -- I -- it says in D, "in regard to count 1 or count 2 or count 3 or any combination of them." So I -- I don't think there's anything that would -- would -- in this complaint, that would limit Judge Pearson from doing a little bit of both.

Q   And when you say, "a little bit of both," you mean enjoining both the partisan designation law and part or all of Canon 4 of the Code of Judicial Conduct?

A   Correct.  Although I think that's going to

Page 62

depend upon the nature of the proceedings following the deposition.  I mean, if she decided to hold a hearing and, you know, there was testimony about problems with Canon 4, I suppose she -- she could, based on what's in the complaint, decide that she wants to look at both.

Q    Okay.  Now, would I -- you said that this is relief in the alternative.  Would either enjoining the partisan designation law or enjoining the portions of the Code of Judicial Conduct that we've discussed give you complete relief?

A    I'm sorry.  Can you start over?

Q    Yeah.  Would enjoining the partisan designation law only give you complete relief?

A    I would be satisfied with that.

Q    Okay.  And if the partisan designation law were upheld and the portions of the Code of Judicial Conduct that we've just been discussing were instead enjoined, would that give you a complete relief?

A    I think it would allow me to campaign with less concern about -- I -- it wouldn't give complete relief, actually.  No.  I -- I would prefer that judges abide by better rules than other candidates do because we only have our words as our tools to engender public confidence in what we do, and if we

Page 63

don't have public confidence in what we do, we can't
be effective.

Q    Okay.  All right.  So it's fair -- so
enjoining the partisan designation law would give
complete relief, but enjoining the campaign canons of
the Code of Judicial Conduct alone would not give
complete relief?

A    No.

Q    Okay.  So the partisan designation law would
have to be enjoined to give complete relief in this
case?

A    Yes.

Q    And I think you already answered this, but
for completeness, I apologize, this is a duplicative
question, but you're not seeking as relief in this
case to invalidate both simultaneously.  So the
partisan designation law plus all of the portions of
the Code of Judicial Conduct we discussed?

A    No.  No, I'm -- I'm not.

Q    All right.  I think we are finished with the
wherefore clause.  I want to move to a different
topic, and I know we've been going for a bit, so let's
take a break if that's okay with you.

MS. YACKSHAW:  What time is it?

MR. QUINN:  It is 11:25.

Page 64

MS. YACKSHAW:  11:25?  Would you like to break until 11:45, 20 minutes?

THE WITNESS:  Fifteen's fine with me.

MR. QUINN:  Yeah, that's fine.  I need like five minutes, so whatever everybody else decides is fine.

MS. YACKSHAW:  11:40?  Go off the record.

THE REPORTER:  We're going to go off the record now at 11:21.

(Off the record.)

THE REPORTER:  Okay, we're back on the record at 11:48.

BY MS. YACKSHAW:

Q    All right.  Okay.  Justice Brunner, we're going to go back to the complaint again.  That's Exhibit 1 -- or Exhibit A, excuse me.  I'd like to turn now to paragraph 46.  This is on page 13 of the complaint.

Okay.  In this paragraph you -- this paragraph in the complaint alleges that the Code of Judicial Conduct prohibits you from speaking plainly and freely on partisan issues in order to preserve the integrity of the judiciary.

My question is what specifically do you want

Page 65

to say on partisan issues that you believe the Code of Judicial Conduct prevents you from saying in your upcoming campaign?

A    Things that we discussed previously.  As an example, opinions about U.S. Supreme Court cases and perhaps -- or by way of example, I mean comments about other judicial candidates or non-judicial candidates that someone might construe as an endorsement and generally having to abide by fundraising rules that don't apply to non-judicial candidates.  And that's not by way of limitation.  I'm not saying these are the only things, but these are examples.

Q    Okay.  With respect to the U.S. Supreme Court cases that you believe the Code of Judicial Conduct prevents you from making comments on U.S. Supreme Court cases; that's correct?

A    Yeah.  That -- I think in the environment that we're in now, even if it's a decided case, because of the fact that the Supreme Court has already demonstrated that it's willing to revisit issues it's already decided, I think I have to be careful.

Q    Okay.  Am I understanding you then to say that you believe the Code of Judicial Conduct prohibits you from speaking about decided U.S. Supreme Court cases because they may come back around?

Page 66

A    Correct.

Q    Okay.  And you would like to say -- in your campaign you would like to make comments about already decided U.S. Supreme Court cases?

A    Correct.  And I -- I'm not saying that I plan to make it a platform of my campaign, but I do get asked questions, sometimes publicly, sometimes in private.

Q    What kinds of questions do you get about already decided U.S. Supreme Court cases?

A    I think you're asking me that -- I think you're asking me to create a hypothetical.

Q    No, I'm -- I -- what I'd like to ask you is that you said you get questions during your campaigns about U.S. Supreme Court cases; is that right?

A    Correct.

Q    Yeah.  And what kinds of questions do people ask you about already decided U.S. Supreme Court cases?

A    Sometimes they ask me what I think about a particular decision.

Q    Okay.  If you agree with a particular decision?

A    If I think it was a good or a bad decision or how will it affect them.

Page 67

Q    Okay, and you believe that the Code of Judicial Conduct prohibits you from answering those questions; is that fair?  Good or bad decision?

A    I -- I think that it could be construed as a prohibition, and when my law license is involved, I don't really want to take the chance.

Q    Okay.  And as to those comments that you would like to make about already decided U.S. Supreme Court cases, have you sought any opinions from any disciplinary authority on whether making comments on already decided Supreme Court cases would violate the Code of Judicial Conduct?

A    I'm not in the habit of doing that.

Q    All right.  And do you -- have you sought legal counsel as to whether comments on already decided Supreme Court cases would violate the code?

A    No.

Q    Have any of the defendants in this case told you that making comments about already decided U.S. Supreme Court cases would violate the Code of Judicial Conduct?

A    I don't talk to them.  Now that Elizabeth's here, I say hi in the hallway.

Q    And other than the defendants of this case, setting them aside, has anyone told you that making

Page 68

comments about already decided U.S. Supreme Court cases would violate the Code of Judicial Conduct?

A     No.  I haven't asked.

Q     Okay.  Are you aware if any judicial candidates have been disciplined for making comments about already decided Supreme Court cases?

A     No, I'm not.

Q     All right.  You said you also refrain from making comments about other judicial candidates that could be construed as an endorsement, and we talked about the Supreme Court cases.  Anything else --

A     And I -- and I said in non-judicial candidates as well.

Q     Non-judicial and -- right.  Judicial and non-judicial candidates.  Anything else that you would -- meant to include that this statement in paragraph 46 includes that speaking plainly and freely on partisan issues that you would like to do, but for the Code of Judicial Conduct other than those things that we discussed?

A     I think I would just say generally I would like the ability to -- and this is for the alternative that's not the complete relief.  That's the way -- that's the way you worded it earlier. I -- when I campaign, I have to measure every word

Page 69

that I say to make sure that I'm not violating the Code of Judicial Conduct, which there are no similar rules on partisan candidates that they have to pay attention to, and a campaign is about communication.

Q   Okay.  All right.  So sitting here today, there's no other partisan issue that you'd like to speak plainly or freely about as alleged in paragraph 46 other than what we've discussed here today?

A   Well, we talked about the government shutdown, and I cannot predict what issues will arise during the course of 2026, so I can't tell you what I don't know.

Q   Okay.  I'm just a -- yeah.  I just want to have a sense of what you mean in this paragraph of the complaint as we're sitting here today.  So we talked about decided Supreme Court cases, judicial candidates, non-judicial candidates, and now the government shut down.

A   Right.  I mean, there could be things like bombing Iraq.  I mean, we're bombing Venezuela that someone might ask me about.

Q   Okay.  Is it fair to say that you believe the Code of Judicial Conduct prevents you from giving your opinion on foreign policy issues?

A   It depends.  I mean, it depends if -- I

Page 70

mean, if it's something that's in the International Criminal Court or if it's in the World Court of Justice, or it could be something that's pending before a federal judge.

Q    Okay, and which of those would you consider to be barred by the Code of Judicial Conduct?

A    It says before any court.

Q    Okay.  All right.  So you would consider -- is it your position in this case that any statement about a foreign policy issue is barred by the Code of Judicial Conduct because it may come before an international or federal court?

A    Not any statement about foreign policy.

Q    Okay, but some statements about foreign policy; is that fair?

A    I don't know.

Q    I am going to talk a little bit about -- well, let me go back.  So in paragraph 46, the partisan issues that you believe the Code of Judicial Conduct prevents you from speaking on, just want to make sure I have a full understanding of the issues that are included here.

We've talked about Supreme Court cases, things that might go before international courts, foreign policy things, government shut down, judicial

Page 71

candidates, non-judicial candidates.  Are there any other issues included within this statement in paragraph 46?

A    I don't think it's a fair question because I can't -- I -- I can't predict what's going to come up in a campaign.

Q    Okay.  I'm just asking what you -- sitting here today.

A    I -- all right.  We've been talking about judicial sanctions that could include the suspension of my license to practice law, and it's not spelled out precisely in the Code of Judicial Conduct.  It's put in general statements, and so that's as much as I'm able to give you today in terms of general statements.

Q    Okay.  And in paragraph 46, would you say that the Code of Judicial Conduct prohibits you from speaking plainly and freely on partisan issues?  Are there any specific comments that -- absent the Code of Judicial Conduct, that you would make about cases, controversies, or issues that are likely to come before the Supreme Court of Ohio?

A    Are there any -- what was the subject again?

Q    Sure.  Oh, I'll ask the question again.

A    Are there any statements you said?

Page 72

Q    Yeah.  You said here that the Code of Judicial Conduct prevents you from speaking plainly and freely on unpartisan issues.  If rule 4.1 A6 were enjoined, would you speak on issues, partisan issues, that are likely to come before the Supreme Court of Ohio during your campaign?

A    I think it's a question of degree, and the difficulty with Canon 4 is that it doesn't speak in terms of degrees.  It's more black and white.  And so the concern that many judicial candidates have, including myself, is if I mention the topic at all I may be in trouble.

Somebody may file a complaint.  It could affect my campaign.  It could affect my ability and my time to effectively manage and -- and execute a campaign, and so the result is that you're better -- many candidates choose to say nothing.

Q    Okay.  And is it fair to say that you choose to say nothing as to issues likely to come before -- issues, cases, controversies likely to come before the Supreme Court of Ohio because of the Code of Judicial Conduct?

A    I will explain why I can't say anything. That's how I deal with it.

Q    Okay.  All right.  And if rule 4.1 A6 were

Page 73

enjoined as a result of this litigation, would you then speak or make commitments, make pledges about cases, controversies, or issues likely to come before the Supreme Court of Ohio?

A     Only to be fair and impartial.

Q     You would pledge to be fair and impartial in cases likely put before you?

A     Mm-hmm.

Q     Okay.  Let's talk a little bit about your campaigns for the Supreme Court of Ohio in 2020 and 2022.  Were there specific comments that you wanted to make but chose not to because of the Code of Judicial Conduct?

A     In 2022 there was the Dobbs decision.

Q     So you wanted to comment on the Dobbs decision during that campaign and elected not to because of the code?

A     I was able to say what the Dobbs decision was, but not to give any opinion on it, even if it wasn't about the substance, even if it was about the process.

Q     Can you explain what you mean by that?

A     First the leak of the decision and then the decision of the U.S. Supreme Court to overturn longstanding precedent of 50 years.

Page 74

Q    Okay.  And you chose not to comment on the leak, the -- issues because of the Code of Judicial Conduct?

A    Correct, and then the aftermath of Dobbs. There were a lot of articles about what the effects were on women because people didn't understand how it applied, and I was not able to comment on that either.

Q    The application of the Dobbs decision you did not comment on during your campaign?

A    Yeah.  Such as women dying in childbirth -- in -- in childbirth or other procedures being withheld from them.

Q    Just the universe of Dobbs comments that -- during the 2022 campaign, did you ever seek any opinion from a disciplinary authority about whether it would violate the Code of Judicial Conduct to speak about any aspect of the Dobbs decision?

A    No.

Q    Did anyone tell you that it would've violated the Code of Judicial Conduct to make the comment about the Dobbs decision during your judicial campaign?

A    No.  I didn't need to be told.

Q    Okay.  If we could look at paragraph 45, the amended complaint, we're staying on page 13.  This

Page 75

paragraph of the complaint says that a party affiliation is permitted to appear on the statewide judicial ballot at the 2026 general election.

You will be forced to speak about issues that as a judicial officer and a judicial candidate, you do not want to speak about, and I want to know with respect to this paragraph, what specifically will you be forced to speak about if party affiliations appear on the 2026 ballot?

A    Well, I said -- it could be any number of things that I don't personally believe, but because I'm listed on the general election ballot as a Democrat, that people will assume I do believe, and if they say, "you believe this," I won't be able to say yes or no.

Q    Okay.  So you -- is it your belief that the Code of Judicial Conduct prohibits you from disagreeing with specific issues supported by the Democratic Party?

A    No, it -- I'm not saying that at all.  I'm saying that party label on the ballot tells a story about me that isn't necessarily true, and because of the Code of Judicial Conduct, I'm not in a position to refute it.

Q    Okay.  And I'm trying to determine, is that

Page 76

because you think the Code of Judicial Conduct prohibits you from disagreeing with aspects of the Democratic Party's platform on issues or policies?

A    No, I think the Code of Judicial Conduct limits me in terms of what I can say about how much of a Democrat I am, or if I were a Republican, how much of a Republican I am.

Q    Okay, and what specifically does the code prevent you from saying about how much of a Democrat you are or aren't or how much of a Republican you are or aren't?

A    Well, understanding that formerly a -- a judicial candidate was not even able to identify themselves by a political party, the section of 4.1 B is not -- is not modified by the words "including, but not limited to."

There are limitations, these are what you may do.  So the -- if this -- if it can only be these things, then I don't think I could go into a soliloquy about why I joined the Democratic Party as a young person, so --

MS. YACKSHAW:  If I could ask Mr. Quinn not to coach the witness.

THE WITNESS:  He's not.

MR. QUINN:  I'm not coaching the

Page 77

witness.  I'm making notes.

THE WITNESS:  I can't see that well without my glasses.

So I -- you know, I'm looking at 4.1 B and these -- this is like, I can do this, I can do this, I can do this.  And maybe in 4.2 there's more -- oh, in -- in 3, "a judicial candidate may do any of the following," and so these are limitations as well 'cause it does not say, "including, but not limited to."

BY MS. YACKSHAW:

Q    If we could just set aside the code.  I wanted to just hone in on this particular paragraph in the amended complaint, and it's the allegation that you were forced to speak about issues that as a judicial officer and judicial candidate you do not want to speak about.

And I am just wondering specifically what those issues are other than the partisan -- is it just the partisan designation on the ballot or are there other issues that you are alleging you are forced to speak about?

A    It -- the party label on the ballot, as I said before -- I think you're asking the same question, just trying to get a different answer.  But

Page 78

the party label on the ballot gives the public the impression that -- because look, not everybody votes in a primary election, but at the general election, it's for everybody to vote.

And when you have a party label next to your name, people have assumptions.  For instance, in 2016 and beyond, Donald Trump campaigned about liberal, Democratic judges over and over and over again.  It gets picked up on right-wing, conservative, religious radio that, "well we got to forgive the Democrats 'cause they're people too."

Well I don't know that -- I -- I cannot refute whatever they're impugning to me as being a Democrat.  And I -- and if someone accuses me of being something that they say is a Democratic thing, I'm not in a position to say, "well, yes to this, but no to this," because then I'm, like, essentially telling someone what my biases could be and they're going to lose confidence in my -- my ability to be a fair and impartial judge.

Q    Okay.  So it's your position that the Code of Judicial Conduct prevents you from saying that you believe certain parts of the Democratic Party's platform or issues they support but not others?

A    Or what people think Democrats are like.

Page 79

Look, when I campaigned in -- when I -- when I've campaigned in any of my campaigns, people care more about whether you're honest and -- and whether you're running for a judicial or non-judicial office.  If you're just -- if they believe that you're honest, then they have more confidence in you.

Q   Okay.  All right.  So we've talked now at length about paragraphs 45, 46 about being forced to speak about issues, being unable to speak about other issues.  Are there other actions that you want to take in your 2026 campaign that you can't take because of the Code of Judicial Conduct?

A   I need to ask you to clarify if this is regarding party label on the ballot or the alternate Code of Judicial Conduct taken in conjunction with Senate Bill 80.

Q   It's specific to the Code of Judicial Conduct.  So what other things other than, you know, being forced to speak about certain issues, being prevented from speaking freely on other issues as described here in paragraph 45, 46 --

A   Well, as I said before, if the first alternative, which is finding Senate Bill 80 unconstitutional in it's face and/or as applied, I'm satisfied and I can live with what I'm used to dealing

Page 80

with in the Code of Judicial Conduct.

If that's not the outcome of the litigation, then I don't know if any federal judge would want to be in the position of picking and choosing which rules of the Code of Judicial Conduct are going to make up acceptable and legal conduct for judges in the State of Ohio.  So I -- I don't think I can answer your question.

Q   Okay.  That's fair.  That's fair to say.  So you're not seeking in this case to invalidate portions -- select portions of the Code of Judicial Conduct independently of the partisan designation law; is that fair?

A   Correct.  It's an -- it's an alternative either/or.

Q   Okay.  All right.  That's fair.  All right. Now do you believe that the partisan designation law prevents you from disagreeing with the party designated on the ballot for a judicial candidate?

A   You mean by saying I'm not a Democrat?

Q   Let -- strike that question.

Let me rephrase that.  Do you believe that the partisan designation law prevents a judicial candidate from disagreeing with certain policies or issues supported by the party designated on the

Page 81

ballot?

A    I do.  I do.

Q    The partisan designation law prevents that? Okay.  So --

A    Well -- well in -- in conjunction with the Code of Judicial Conduct.

Q    Okay.  So working together, the partisan designation law and the Code of Judicial Conduct prohibit judicial candidates from disagreeing with aspects of the party's platform?

A    Correct, if people even know the platform.

Q    And do you think that the Code of Judicial Conduct in conjunction with the partisan designation law would prohibit a judicial candidate from agreeing with aspects of the other party's platform, or issues supported by the other party?

A    I do.

Q    And has any disciplinary authority told you that the partisan designation law and the Code of Judicial Conduct together prohibit judicial candidates from disagreeing with issues or platforms of that candidate's party?

A    No, I haven't asked.  I -- I said I asked the federal court.  I don't know that the -- the Board of Conduct could give me an opinion on

Page 82

constitutionality nor could the disciplinary council.

Q   They couldn't give you -- okay.  Let me -- I understand what you're saying.  They couldn't give you an opinion on constitutionality, but the Board of Professional Conduct or disciplinary council could give you an opinion on whether certain speech -- certain conduct was in violation of the rules; is that correct?

A   That's correct.  What normally would happen before Elizabeth came on board is you would call Rick Dove, he would give you an off the cuff opinion, and then if you took it to the board it took months to get an answer.  So in the meantime you have to wait to get an answer.

And I don't recall whether that specifically would insulate you from -- I think that it might insulate you from prosecution, but you would have to conduct your speech in a way that precisely met the requirements of that opinion, so we're really not in any place different than we were with -- with the rule.

Q   Okay.  But did you ever call Rick Dove when he was a director of the board to ask him, "does the Code of Judicial Conduct allow me to express disagreement with certain positions of the Democratic

Page 83

Party?"

A    No.

Q    Do you ever call Rick Dove or anybody at the Board of Professional Conduct to ask whether the code prohibits you from agreeing with certain aspects of the Republican party's platform during a judicial campaign?

A    No, and I don't believe that I'd be bound to do that.  That's one person's opinion and it's my law license, not theirs.

Q    Okay.  So in 2022 you ran for Chief Justice of the Supreme Court of Ohio; that's right?

A    You asking me that?

Q    Yes.  Yes.

A    Yes, I did.

Q    Okay.  And in that election, I believe that your party affiliation was listed on the general election ballot?

A    Correct.

Q    Yes.  Okay.  And what party affiliation was listed on the general --

A    Democrat.

Q    Okay.  And during that election, I think you were -- it's your understanding that you were subject to the rules and the Code of Judicial Conduct?

Page 84

A    Absolutely.

Q    And you produced in this case -- I don't have them with me, all of them, but you produced a number of campaign documents from 2022 from that campaign for Chief Justice of the Supreme Court of Ohio.  Now do you believe that any of those campaign statements violated the code?

A    I'd have to look at the specific statements, but I tried my hardest not to do that.

Q    Okay.  And did anybody tell you that any of your campaign statements violated the Code of Judicial Conduct?

A    No.

Q    And in 2022, did anybody file a complaint against you for any violations of the Code of Judicial Conduct?

A    Yes.

Q    Okay, and who was that?

A    Joshua Brown.

MS. YACKSHAW:  This is C.

MR. QUINN:  Thank you.

(Exhibit C was marked for identification.)

BY MS. YACKSHAW:

Q    And Justice Brunner, have you seen this

Page 85

document before?

A    I have.

Q    And what is this?

A    It's a grievance form that I believe was filed with -- first with the disciplinary council.

Q    And is this the complaint that you just testified about that someone filed against you in 2022?

A    Yes.

Q    All right, and what was your understanding of the violations of the Code of Judicial Conduct that were alleged in this complaint?

A    I'm looking at 4.2 of the Code of Judicial Conduct, which "requires the judicial candidate to review and approve the content of all campaign statements and material produced by the judicial -- judicial candidate or his or her campaign committee before their dissemination."

And then I would think it would bring into account -- I don't know if he actually stated what section of the Code of Judicial Conduct he said is violated.  It's a very brief form.

Q    There is -- I'll represent to you there is an addendum, statement of facts, following the brief form.

Page 86

A    Oh, here we go.  So 4.3 was listed in focusing on section A, which is "post, publish broadcast, transmit, circulate, or distribute information concerning the judicial candidate or an opponent either knowing the information to be false or with reckless disregard of whether or not it was false."

Q    All right.  Is is your understanding that there were any other portions of the Code of Judicial Conduct at issue in this complaint?

A    Well, there were portions of the Code of Judicial Conduct that go directly to -- that -- that are not part of -- not part of Canon 4.  So he cited judicial conduct rule 3 and judicial conduct rule 2.

So these go directly to misconduct as a judge, not as a judicial candidate, but as a judge. So these were -- these were focused directly on my ability to retain my position as a judge or even my license as an attorney.

Q    Okay.  Other than rule 4.3, were any other provisions of Canon 4 involved in this complaint to your recollection?

A    Even though it's not stated in the complaint, it's implied that 4.2 would be involved the section that I just read you in A2.

Page 87

Q    4.2 A2.  Okay.  Any other portions of Canon 4 at issue in this complaint that you recall?

A    There may be, but I am not identifying them at this point.

Q    Okay, and what was the result of this complaint?

A    I hired counsel.  Well, first of all it bounced around a bit.  It went from the disciplinary counsel to the Board of Professional Conduct to the chief judge of the Court of Appeals to a panel that the chief judge appointed.  And so that took a bit of time to actually start the clock running for the response to the complaint.

I hired legal counsel, Mr. Quinn, who represented me in submitting this information along with the affidavit of the person on my campaign who was responsible for the conduct that was complained of.

Q    Okay.  And after Mr. Quinn submitted your response to this complaint from Mr. Brown, what happened next?

A    We waited.  We waited for a response.

Q    Okay, and what was the response?

A    The chief of the panel found no violation.

Q    Okay.  And -- all right.  Do you recall the

Page 88

basis for the decision that there was no violation?

A    I don't know if they gave me a basis.

Q    This is Exhibit D.  There's -- this is a two-sided letter.  So there's a -- one side that the letterhead of Ohio Court Appeals Judge's Association and then the other side is a decision signed by three Courts of Appeals judges.  Now do you recognize this document?

(Exhibit D was marked for identification.)

A    I think it's the first time I've seen the documents signed by the three judges on the panel. I've seen the -- the note from the Court of Appeals Judges Association, but I don't recall seeing the one from judges -- the judges who were assigned to the panel.

Q    Okay.  I'll represent to you that your counsel produced this document, see the Bates number in the bottom right is JLB 0168, so you don't recall having seen this letter before?

A    No, and it could be that I just missed it.

Q    Okay.  So you are just aware then that no -- that the Courts of Appeals Judge's Association found no good cause for further investigation of Mr. Brown's complaint?

Page 89

A    Correct, and I believe that it was based on the affidavits we supplied which indicated that I didn't have any knowledge that my campaign spokesperson Twitter post was made before he made it.

Q    All right.  Other than this complaint from Mr. Brown in your 2022 campaign, are you aware of any other complaints, disciplinary complaints, filed against you for any conduct as a judicial candidate?

A    I don't believe so.

Q    All right.  In 2020 you testified you ran for Associate Justice on the Supreme Court of Ohio?

A    I did.

Q    Okay.  And at that election, your party affiliation was not listed on the general election ballot; that's correct?

A    That's correct.

Q    Okay, and what were the differences between your 2020 campaign and your 2022 campaign given that party affiliation was listed on the 2022 general election ballot but not 2020?

A    In 2020 I won 40 counties, and in 2022 I won 18.  Counties that I won in 2020 that were what I'd say light pink or light blue if you think of dark blue as heavily Democratic, dark red as heavily Republican in terms of the -- the vote proportion.

Page 90

Counties like those, like Union County, you know, there are a number of different counties like that where -- I think -- I can't remember if I won Pickaway or not, but those counties -- once party affiliation was on the ballot were 75/25, 80/20; where once I was identified as a Democrat, people assumed things about me that I had no ability to refute.

Q   Okay.  So I understand that the results obviously differed between the 2020 and the 2022 campaigns.  How did you campaign differently because of the party designation on the general election ballot?

A   Well, first of all, in 2020 it was -- the state was locked down for months because of the pandemic.  So I didn't even try to raise money in 2020 until September because I thought it was unfair to ask people who were struggling, many of them financially, for money.  So I primarily used social media to reach out to people.

In 2022 -- and I raised over a million dollars in 2020.  In 2022 I raised more money, I believe, than I did in 2020.  And, you know, fundraising was a bigger piece of the campaign.

Q   Would you attribute the differences between the 2020 and 2022 campaigns to the pandemic mostly?

Page 91

A     No.

Q     No?

A     No.

Q     What do you attribute the differences between the two campaigns to?

A     So I served as Secretary of State for four years, from 2007 to 2011.  During that time I was in the media a lot because it was the first election of President Obama.  I had a pretty familiar statewide ballot name which didn't go away in 2020.

And in 2022, same ballot name, now with Democrat next to my name after periods of years where the national dialogue from people like Donald Trump was liberal, democratic judges; people assumed things, obviously, about me that they didn't know were true, and I wasn't in a position to refute that.

Q     So you say people assumed -- voters assumed things about you that weren't true.  Can you give me an example of what kinds of things, what assumptions were made about you that weren't true?

A     Well, I read a news report where a lobbyist or someone involved in state Republican politics was posted at the Pickaway County Board of Elections and was watching when the provisional -- some type of late ballots was being counted.

Page 92

And his comment was to the effect that "I couldn't believe how many ballots were coming in in Pickaway County for Brunner.  They didn't know she was a Democrat." And within weeks after I announced I was running for chief, the legislature changed the state law to require partisan labels on the ballot so much that I was told by people on the inside that they were calling it the "Brunner Bill".

Q    So yeah, let me rephrase that question and ask it a different way because I think the -- if I understand your testimony, the -- what you just told me about Pickaway County, that would -- was something that likely occurred in 2020?

A    This occurred in 2020.

Q    So -- and I think you testified about in the 2022 general election that people assumed things about you that you had no ability to refute because you were listed on the general election ballot as a Democrat. My question is, what were those assumptions that you were unable to refute?

A    Oh, you could start with any -- everything from QAnon to the kinds of untruths that political candidates tell.

Q    Okay.  And do you think that the Code of Judicial Conduct would prevent you from making any

Page 93

statements about QAnon?

A    Yeah, I do.

Q    You do?  Okay.

A    I mean, QAnon was making allegations that people were involved in child pornography and being predators and, you know, that's -- that's not something a judge is going to comment on because if people really are doing that, they could be prosecuted, so --

Q    Okay.  All right.  So you were -- because of the Code of Judicial Conduct then unable to refute assumptions that -- about you being involved with QAnon?

A    No.  Things that were being said about by -- by groups like QAnon about Democrats.

Q    Okay.  I am just trying to figure out the assumptions that were made about you in 2022 because of the partisan designation on the ballot.  I am trying to understand what those assumptions were that you were unable to refute.

A    Okay, I'll give you an -- I'll give you a concrete example.  I went to the Richland County Farm Bureau meeting and people were afraid to talk to me. People would come to me quietly and say, "you know, I really do support you, but I can't really say it to

Page 94

people around here."

And then the lobbyist for the farm bureau came to the meeting and addressed the group and I talked to him afterward and said, "you know, you've endorsed my opponent, but you never even gave me a chance to screen with you.  Why wouldn't you give me a chance?  I live on a farm." And he didn't really have a good explanation for it.

Q   Okay, and because of the Code of Judicial Conduct, you were unable to tell people like the people in Richmond not to make any assumptions about you because you were --

A   Richland County.  You said Richmond County. Richland County.

Q   Richland County.  Excuse me, Richland. Okay, let me ask that again.  Because of the Code of Judicial Conduct, then you were unable to tell people like the people in Richland County not to make assumptions about you because you were listed on the ballot as a Democrat?

A   This was not the kind of meeting where I could stand up and give a speech.  It was talking to people one-on-one.  And if you can get someone to speak to you, which I never have a problem doing, but there were people who it was clear to me that because

Page 95

I was a Democrat and they knew I was a Democrat, that they shouldn't talk to me.  And others who did talk to me were talking very quietly as if they were doing something that they knew was out of line.

Q    Okay.  So would -- is it fair to say that voters were more reticent in certain areas to talk to you because of the partisan designation law?

A    Yes, and I was at -- and I was at the farm bureau, and I live on a farm.

Q    Okay, but there's nothing about the Code of Judicial Conduct that prevented you from telling voters not to make assumptions about you because you're a Democrat?

A    Well, when people don't really talk to you, I don't know how you can get into a conversation where you're asking them not to make assumptions about you because you have to have a conversation to be able to make a -- a statement like that.

Q    Okay.  I'm just wondering, is it then correct that it was the reticence of voters to speak to you that made you unable to dispel assumptions about you?

A    Correct, but it was essentially an example of what the party label does to voter's reaction.

Q    How would you -- did your campaign ads, your

Page 96

campaign speech change between 2020 and 2022 because of the partisan designation law?

A    Yes.  We ran two commercials for television and those were also run on digital media.  But there were three retired judges who were in a commercial and spoke very plainly about why I would make a good chief justice.

In the past it -- it was me -- me to camera talking because I didn't have to -- it didn't have to say I was a Republican or a Democrat, so we used third party validation as another means to try to counteract party label.

Q    And the third-party validation ads, what years did you run those ads?

A    In 2022.

Q    2022.  Okay, and you did not run third party validation ads in 2020?

A    No.  No, it was just me to camera.

Q    All right.  In either 2020 or 2022, did you make any statements, commitments about cases or controversies likely to come before the Supreme Court of Ohio?

A    On redistricting I said that I would be fair and impartial.  I may have said that gerrymandering is wrong, but again, that's what the law is.

Page 97

Q    Okay.  Any other cases or controversies you commented on in the 2020 or 2022 campaigns?

A    In the 2020 campaign I think I mentioned the Simpson case about sexual abuse and how the tort caps applied to it.  But it was only as -- in an explanatory function and not any opinion on it.  Just explained how the case -- what the case was about because it was being talked about a lot.

Q    Okay.  But no commitments or promises to resolve that case in particular way?

A    No.  No.

Q    Okay.  Did you say that the passage of Senate Bill 80, the partisan designation law, changed anything about how you did or did not make promises or commitments about cases or controversies likely to come before the Supreme Court?

A    It didn't because I was still bound by the rules of judicial conduct in Canon 4.

Q    Looking to the upcoming campaign in 2026, do you plan to campaign any differently than you did in 2022?

A    As far as the rules of judicial conduct go?

Q    Sure.  Yes.

A    I -- no, I -- I plan to abide by the rules of judicial conduct 'cause they're in force.

Page 98

Q    Okay.  And if portions of the Code of Judicial Conduct are enjoined as a result of this litigation, how would you conduct your 2026 campaign differently?

A    Well, I would have to look at the other rules of judicial conduct that are not in Canon 4 because I'm a judge, and I'm not just a judicial -- or campaign -- or candidate.

And so if I felt that anything that I might be permitted to do, if theoretically some of the rules or all of them in Canon 4 were found unconstitutional, I would still need to measure my conduct even in a campaign as against other rules of judicial conduct that exist for me as a judge.

Q    Okay.  So you wouldn't -- your campaign in 2026 would follow the portions of the Code of Judicial Conduct applicable to sitting judges; correct?

A    Correct.  And anything -- anything that's in force for Canon 4.

Q    All right.  Do you think -- let me -- hold on.  Are there -- we talked about prior complaints, I think -- believe that you testified already about the Josh Brown complaint.  Have there been other complaints filed against you about violations -- for violations of Canon 4?

Page 99

A    I mentioned the one in 2014 that was filed against me for writing a check to the party to pay for billboards.  This was the county party, and I only learned about it when I received the dismissal letter.

Q    Okay.  So you were not asked to respond -- to file a response to that complaint?

A    Correct.

Q    Okay.  Any complaints against you since 2014 other than those two that we've just discussed?

A    You mean judicial campaign complaints?

Q    Correct.

A    Correct.  No.

Q    All right.  So then you've never been -- never -- no probable cause finding has ever been made against you for a violation of any provision of Canon 4?

A    That's correct.  None.

Q    Okay.  And with respect to rule 4.1 A6 specifically, never been subject to any disciplinary proceedings for a violation of that rule?

A    Four point what?

Q    4.1 A6?

A    Oh, no.

Q    That's the pledges or commitments.

A    I have not.

Page 100

Q    Okay, and you've never been asked to respond to a complaint about a violation of that -- that rule?

A    No.

Q    Okay.  Have you ever received any warning letters from anyone for violations of Canon 4 other than the two we've talked about?

A    Who would send me a warning letter?

Q    Any disciplinary authority?

A    No.

Q    Any elections authority?

A    No.

Q    The same question for rule 4.1 A6 specifically?

A    The answer is no.

Q    No warning letters.  Okay.  All right.  So are there -- we talked about the prior disciplinary proceedings.  Are there any pending disciplinary proceedings that you're aware of against you for violations of any part of Canon 4?

A    No.

Q    For rule 4.1 A6 specifically?

A    No.

Q    And then no pending requests for a response to a complaint for any violations of Canon 4?

A    No.

Page 101

Q    No pending complaints that you're aware of --

A    Well, no, because the judicial fundraising period hasn't even started yet.

Q    All right.  So you -- would you agree with me that no disciplinary authority is attempting to enforce Canon 4 against you in any proceeding sitting here today?

A    No.

Q    No.  So somebody -- so let me ask that again.  There's no current enforcement of Canon 4 against you sitting here today?

A    No, there's not.

Q    All right.  Okay.  So -- and we talked a little bit about requests for opinions from the disciplinary authorities from the Board of Professional Conduct.  Do you have any pending requests for any opinions from disciplinary authorities on any part of Canon 4?

A    No.

Q    Okay, and not on rule 4.1 A6 in particular?

A    No.

Q    And then there's no pending request for any opinion from a disciplinary authority on any specific statement that you want to make for the upcoming 2026

Page 102

judicial campaigns?

A    I don't even know what specific statements I plan to make for my judicial campaign upcoming.

Q    Okay.  But you haven't sought, you know, an opinion from the disciplinary authorities on whether any particular statement would fall under the prohibitions of Canon 4?

A    No, and I feel like if I had to, then it'd be questionable whether I should make it or not.

Q    Okay, and no plans to seek any opinion from the disciplinary authorities on any particular statement for the upcoming judicial campaign?

A    I would prefer to err on the side of caution since my law license is at stake.

Q    All right.  Are you aware of any judicial candidate who's law license has been suspended for violations of the code during a judicial campaign?

A    I would have to research it.  I'm sure there's been at least one.

Q    Are you aware of anybody who's been disbarred because of violations of the Code of Judicial Conduct during a campaign?

A    I don't know.

Q    Yeah.  But sitting here, you're not aware of any particular --

Page 103

A    This law went into effect in the '90s and so it's been more than 20 years.  So I -- I would have to research it.

Q    Okay.  All right.

A    I should have called it a rule, not a law.

Q    Looking ahead to the 2026 campaign, do you think it would violate the Code of Judicial Conduct for you to say in the course of your campaign that you don't agree with all of the Democratic Party policies?

A    I -- I wouldn't be comfortable saying it.

Q    Okay, so you wouldn't say it?

A    No, I wouldn't say it.

Q    Okay, and that's based on your own understanding of the Code of Judicial Conduct?

A    Well, it's also based on my experience as a candidate.  Because if I were to say that, then the next question would be "what don't you agree with?" And then when you start getting into specifics, you start getting in really thin ice.

Q    Okay.  I think we talked before about it's your position that taking a stance on particular issues within the Democratic Party's platform, the Code of Judicial Conduct would prevent you from doing that?

A    Can you rephrase the question, please?

Page 104

Q    That was a bad question.  So when you say that you wouldn't -- you just testified that you wouldn't say that you don't agree with all of the Democratic Party's platform because it would lead someone to ask you what you do and don't agree with, and singling out specific issues that you do and don't agree with, that in your view would violate the Code of Judicial Conduct; correct?

A    In -- in my view it could because that particular issue could come before you as a justice and you're already on record for what your opinion is, which means you've already started writing the decision to some degree, and that means that people are not going to have confidence in a fair and impartial decision.

Q    Okay.  All right.  So to take an example, if you were to take -- you were to say that you, you know, believe in something like common sense or you were to believe in a particular statute regulating firearm possession and you were to say that you do or don't support that, that in your view would violate the Code of Judicial Conduct because that statute could then come before the court?

A    Correct.  I mean, the law is the law.  It's not up to me as a judge or a justice to say whether

Page 105

that law is right or wrong.  If the law is constitutional and it has to be applied in a particular case, you have to apply it.

Q  Okay.  That's fair.  We talked a little bit about, you know, in the upcoming campaign you wouldn't say that you disagree with some Democratic policies because it would lead to the follow-on questions you think you'd be prohibited from answering.

So then in the upcoming campaign, would you also avoid saying something or warning voters that you won't necessarily always agree with the Democrats on a particular issue?

A  That's -- again, could lead to the same kind of parsing that people want you to do about "what wouldn't you agree with them about?" I -- I just think it's more prudent to avoid it.

Q  Okay.  Do you think it would violate the Code of Judicial Conduct to ask voters not to make any assumptions about you based on your party affiliation?

A  I don't really know.  I think it'd be a dumb thing to do.

Q  Why would it be a dumb thing to do?

A  Because you're starting in, like, being defensive, like there's something wrong with you.

Q  Okay.  But you don't think it would violate

Page 106

the Code of Judicial Conduct to ask voters not to make
assumptions about you --

A    I don't know because then you're almost
saying I did violate the Code of Judicial Conduct.
I -- I don't -- I wouldn't -- I wouldn't say it.

Q    Okay.  So looking again ahead to the
upcoming campaign, do you -- are you intending to or
seeking to say anything in the course of this campaign
that would demonstrate any kind of bias against a
potential party in front of the Supreme Court of Ohio?

A    Why would I ever do that?

Q    So the answer is no?

A    Well, yeah.

Q    Okay.  And do you plan or are intending to
say anything in this upcoming campaign that would
constitute a promise not to apply the law equally to
all parties that appear before the Supreme Court?

A    I'm not sure why you're asking me these
questions.  So say that again, 'cause it's
so -- it's -- it's like -- like double negative, you
know?

Q    Sure.  Sure.  I'll say it again.  In your
upcoming campaign, do you intend to say anything that
would commit -- promising or committing not to apply
the law equally to all the parties before the Supreme

Page 107

Court of Ohio?

A    Oh, I wouldn't say it ever outright, and I would hope that anything I said wouldn't give people the impression that I would.

Q    Okay.  Do you intend to say anything during the course of the upcoming campaign that promises not to be fair to any party appearing before the Supreme Court of Ohio because of that person's party affiliation?

A    Oh, no.  No.  I was trying to understand your question.

Q    Okay.  All right.  And do you intend to say anything during your upcoming campaign that promises or commits to reach a particular result in a particular case?

A    Absolutely not.

Q    Do you intend to say anything during the upcoming campaign that commits or promises to decide issues based on something other than the facts, the law, and the record in front of the Supreme Court?

A    No, and I plan to tell people that I do my very best to be fair.

Q    I think we talked today a lot about the things that you -- the issues that you believe the Code of Judicial Conduct prohibits you from speaking

Page 108

on.  Are there specific statements that you want to make during the upcoming 2026 campaign that you won't make because you believe that they're prohibited by the Code of Judicial Conduct?

A    At this time I don't know what statements I'll be making in my campaign.

Q    Nothing sitting here today specifically --

A    Well, I don't know what kind of questions I'll be asked by people and I -- you know, I've made one campaign speech, maybe two as of recent, and I was able to campaign under the rubric -- or I mean under the restrictions of Canon 4.

And I'm trying to think if they -- I -- I don't know.  I just -- I don't know.  I mean, I can't -- I mean, I -- you -- you asked me questions before about what I intend to do, but now you're asking me questions about what's going to happen in the future, which I really can't tell you.

Q    Okay.  All right.  So sitting here today, there's not a specific statement that you want to make in your upcoming campaign but cannot make because of the code?

A    Because I don't know what those would be.

Q    Okay, that's fair.  I think --

                    MS. YACKSHAW:  What time is it?  One

Page 109

o'clock?

MR. WALTON:  1:07.

MS. YACKSHAW:  I know that we are long overdue for lunch, but I think that if I had 15 minutes, I could wrap this up.

THE WITNESS:  That'd be fine.

MS. YACKSHAW:  In another 15, so if we could defer lunch?

MR. QUINN:  Yeah, that's fine.  You want to just keep going or you want to take a break?

MS. YACKSHAW:  I -- if I could take a break for 15 minutes and then --

THE WITNESS:  Oh, okay.  I -- I'd prefer to keep going but if you need a break, take a break.

MS. YACKSHAW:  Five minutes?

MR. QUINN:  Yeah.

THE WITNESS:  Okay.

MS. YACKSHAW:  Five minutes and you can go off the record.

(Off the record.)

THE REPORTER:  Okay.  We're back on the record, 1:14.

MS. YACKSHAW:  Okay.  That's all my questions.  Thank you so much Justice Brunner for your

Page 110

attendance today.

MR. QUINN:  Okay.  I'm not going to have any questions.  We will reserve our right to read.

THE REPORTER:  [Unintelligible response.]

MS. YACKSHAW:  Yes.

THE REPORTER:  And Mr. Quinn?

MR. QUINN:  I'll let you know.  You'll contact us about reading and reviewing?  Cool.

MS. YACKSHAW:  And no expedited request here.  Just normal course is fine.

THE REPORTER:  With that, we're going to go off the record at 1:14 p.m.

(Signature reserved.)

(Whereupon, at 1:14 p.m., the proceeding was concluded.)

Page 111

CERTIFICATE OF DEPOSITION OFFICER

I, MARIANNE HISSONG, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

*Marianne C Hissong*

MARIANNE HISSONG

Notary Public in and for the

State of Ohio

[X] Review of the transcript was requested.

Page 112

CERTIFICATE OF TRANSCRIBER

I, MACKENZIE PHILLIPPI, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

MACKENZIE PHILLIPPI

Page 113

Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

November 19, 2025

To: Patrick M. Quinn, Esq.

Case Name: Brunner, Jennifer v. Larose, Frank, Et Al.

Veritext Reference Number: 7721556

Witness:  Jennifer Brunner       Deposition Date:  11/4/2025

Dear Sir/Madam:

Enclosed please find a deposition transcript.  Please have the witness review the transcript and note any changes or corrections on the included errata sheet, indicating the page, line number, change, and the reason for the change.  Have the witness' signature notarized and forward the completed page(s) back to us at the Production address shown above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,
Production Department

NO NOTARY REQUIRED IN CA

Page 114

DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 7721556
CASE NAME: Brunner, Jennifer v. Larose, Frank, Et Al.
DATE OF DEPOSITION: 11/4/2025
WITNESS' NAME: Jennifer Brunner

In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.

I have made no changes to the testimony as transcribed by the court reporter.

_____          _____
Date                              Jennifer Brunner

Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:

They have read the transcript;
They signed the foregoing Sworn
        Statement; and
Their execution of this Statement is of
        their free act and deed.

I have affixed my name and official seal

this _____ day of_____, 20_____.

_____
Notary Public
_____
Commission Expiration Date

Veritext Legal Solutions
www.veritext.com                                     888-391-3376

EXHIBIT 1  Page 114 of 156

Page 115

DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 7721556
CASE NAME: Brunner, Jennifer v. Larose, Frank, Et Al.
DATE OF DEPOSITION: 11/4/2025
WITNESS' NAME: Jennifer Brunner
In accordance with the Rules of Civil
Procedure, I have read the entire transcript of
my testimony or it has been read to me.
I have listed my changes on the attached
Errata Sheet, listing page and line numbers as
well as the reason(s) for the change(s).
I request that these changes be entered
as part of the record of my testimony.

I have executed the Errata Sheet, as well
as this Certificate, and request and authorize
that both be appended to the transcript of my
testimony and be incorporated therein.
_____          _____
Date                      Jennifer Brunner

Sworn to and subscribed before me, a
Notary Public in and for the State and County,
the referenced witness did personally appear
and acknowledge that:
They have read the transcript;
They have listed all of their corrections
       in the appended Errata Sheet;
They signed the foregoing Sworn
       Statement; and
Their execution of this Statement is of
       their free act and deed.
I have affixed my name and official seal
this _____ day of_____, 20_____.
       _____
       Notary Public

       _____
       Commission Expiration Date

Veritext Legal Solutions

Page 116

ERRATA SHEET

VERITEXT LEGAL SOLUTIONS MIDWEST

ASSIGNMENT NO: 7721556

PAGE/LINE(S) /        CHANGE        /REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____        _____
Date                     Jennifer Brunner

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____

DAY OF _____, 20_____ .

_____
Notary Public

_____
Commission Expiration Date

**[0168 - 4]**

Page 1

**0**

**0168**   88:19

**1**

**1**   15:3 23:9,10
23:23 25:1
31:17 61:16
64:17
**10th**   12:23,25
13:15
**11/4/2025**
113:8 114:3
115:3
**1100**   113:1
**11:21**   64:10
**11:25**   63:25
64:1
**11:40**   64:7
**11:45**   64:2
**11:48**   64:13
**12**   54:16,16
**13**   64:18 74:25
**14**   24:25
**14th**   24:10
**15**   109:4,7,12
**16**   59:18,18
60:16
**18**   61:1 89:22
**1820**   113:2
**19**   60:24 61:2
113:4
**1983**   25:1
**1988**   23:7,13

**1:07**   109:2
**1:14**   109:23
110:14,16
**1st**   23:10,11
24:10 25:1
26:14 43:25
59:22 60:1,13

**2**

**2**   23:12,15,23
61:16 86:14
**20**   23:19,19
64:2 103:2
114:16 115:22
116:22
**2000**   10:16,17
10:17,19,23,23
11:6,10
**2002**   10:19
11:15,16,18
12:4,10
**2006**   16:10
**2007**   91:7
**2011**   91:7
**2013**   13:7
**2014**   8:20
10:19 12:21,22
34:9 40:7 99:1
99:8
**2016**   10:19
13:13,14,17,21
78:6
**2020**   10:20
13:23,24 14:1

18:4,12,12
73:10 89:10,18
89:20,21,22
90:9,13,15,21
90:22,25 91:10
92:13,14 96:1
96:17,19 97:2
97:3
**2022**   10:20
12:2,3 14:4,7
18:4,12,25
20:22,25 39:24
73:11,14 74:14
83:11 84:4,14
85:8 89:6,18
89:19,21 90:9
90:20,21,25
91:11 92:16
93:17 96:1,15
96:16,19 97:2
97:21
**2024**   22:21
26:9
**2025**   1:12 5:8
113:4
**2026**   10:21
14:11,20 15:6
15:16 16:22
17:1,19 40:21
58:3 69:11
75:3,9 79:11
97:19 98:3,16
101:25 103:6
108:2

**2027**   15:3
**209**   2:5
**20th**   5:9
**216-523-1313**
113:3
**2180**   1:8
**22**   4:7
**2201**   23:19
**241-5550**   2:8
**28**   23:19
**28061**   111:16
**2nd**   29:25 30:2
30:5,11

**3**

**3**   23:17,21,23
31:17 48:8
59:18 61:16
77:7 86:14
**30**   1:15 3:5 5:8
**31**   4:8
**33557**   112:14
**3517**   54:16
**3517.01**   59:3

**4**

**4**   1:12 5:8 31:7
31:18 32:8
33:3 34:8 47:7
47:11 50:16
58:22 61:23
62:4 72:8
86:13,21 87:2
97:18 98:6,11
98:19,25 99:16

**[4 - ability]**

100:5,19,24
101:7,11,19
102:7 108:12
**4.1** 24:18 25:13
25:24 26:22
30:25 31:4
32:2,6 33:7,8,9
33:9 35:5,10
35:25 36:6,10
36:13 37:22
38:2,3,4,6 39:5
39:16,17 40:10
40:10 41:1,12
42:8 43:7,16
45:3,6 46:13
46:16 47:5,11
47:19 59:22
60:1,13,17
72:3,25 76:14
77:4 99:18,22
100:12,21
101:21
**4.1.** 33:7 47:22
60:22
**4.1b** 35:17
**4.2** 47:9,16,22
48:3,3 49:22
77:6 85:13
86:24 87:1
**4.3** 47:9,25
49:20 50:2,3
56:3,6,22 86:1
86:20

**4.4** 47:9 56:2
57:2,6,12,19
**4.5** 47:9 57:23
58:5,12
**4.5.** 58:8
**4.6** 47:10,16
58:18,21,22
59:11
**40** 89:21
**42** 23:7,13 25:1
**43215** 1:16 2:6
2:16 3:6 5:9
**44114** 113:2
**45** 74:24 79:8
79:21
**46** 64:18 68:17
69:8 70:18
71:3,16 79:8
79:21
**466-2872** 2:19
3:8
**49** 24:25 25:2
25:22 30:19
31:24 32:6
33:1,9 35:9
36:13 47:13
57:18
**4:23** 1:8

**5**

**5** 35:6,11,15
36:8
**50** 73:25

**5001** 2:5
**5th** 24:10

**6**

**6** 35:7,8,20
**60** 23:18
**60.2.1** 60:11
**60.2.1.** 59:20
**60.2.2** 60:16
**614** 2:8,19 3:8
**65** 23:25

**7**

**7** 19:11
**75/25** 90:5
**7721556** 1:18
113:7 114:2
115:2 116:2

**8**

**8** 4:3
**80** 24:1,8 25:3
25:7,10,23
26:3,15,17,21
30:23 31:25
33:2 35:12
36:2 50:1 57:8
58:25 61:7,11
79:16,23 97:13
**80/20** 90:5
**84** 4:10
**88** 4:12

**9**

**90s** 103:1
**9:54** 1:13 5:5
**9th** 26:13

**a**

**a.m.** 1:13 5:5
**a1** 33:9,9 35:5
35:10,15 36:8
38:4,6
**a2** 39:5,16
86:25 87:1
**a3** 40:10,10
**a4** 41:1
**a5** 41:12 42:8
43:7,16 45:3
**a6** 25:13,24
26:22 30:25
31:4 32:2,6
35:25 36:6
45:6 46:8,13
46:16 72:3,25
99:18,22
100:12,21
101:21
**abide** 46:21
62:23 65:9
97:24
**ability** 68:22
72:14 78:19
86:18 90:7
92:17 111:10
112:7

EXHIBIT 1  Page 118 of 156

**[able - amended]** Page 3

able 9:18 21:18 28:11 34:23,23 35:2 37:9 39:18 42:2,9 44:19,22 71:14 73:18 74:7 75:14 76:13 95:17 108:11
abolish 52:2
above 113:17
absent 5:12 38:5,14 39:4 71:19
absolutely 84:1 107:16
abuse 97:4
accept 49:7
acceptable 80:6
access 25:5,18 26:6 27:3,6
accompanied 52:9
accordance 114:5 115:5
account 85:20
accurate 111:9 112:5
accurately 61:13
accuses 78:14
acknowledge 114:11 115:16
acknowledge... 5:10

act 33:15 38:8 38:15,18,25 114:14 115:20
action 111:12 111:16 112:8 112:12
actions 56:23 79:10
activities 48:18
activity 32:10
actual 36:17
actually 13:2 17:25 41:10 42:12 45:24 46:12 48:5 51:1 52:16 61:15 62:22 85:20 87:12
addendum 85:24
additional 51:12
additionally 5:12
address 113:15
addressed 94:3
adjudicative 45:11
administer 5:11
admitted 7:2,4
ads 95:25 96:13 96:14,17

advantages 35:3
advertisement 33:21 48:16
affect 34:16 41:15,18 43:9 43:19 49:2 66:25 72:14,14
affects 26:7 44:13
affidavit 87:16
affidavits 89:2
affiliation 75:2 83:17,20 89:14 89:19 90:5 105:19 107:9
affiliations 75:8
affixed 114:15 115:21
afraid 93:23
aftermath 74:4
afterward 94:4
age 50:20 51:5
agent 49:2
aggregate 59:7
agree 5:14 20:12 28:4,14 28:24 66:22 101:5 103:9,17 104:3,5,7 105:11,15
agreeing 29:1 81:14 83:5

ahead 19:25 56:12 103:6 106:6
al 1:8 2:10 3:2 5:8 113:6 114:3 115:3
allegation 77:14
allegations 93:4
alleged 26:4 69:7 85:12
alleges 26:20 31:25 64:21
alleging 35:13 37:23 47:6 49:25 58:6,13 58:24 77:21
allow 62:20 82:24
allowed 33:20 48:17 49:4,7
alternate 26:1 79:14
alternative 15:18 26:19 61:6,14 62:8 68:22 79:23 80:14
alternatively 25:10 26:20 30:21
amended 4:7 22:15 33:2

**[amended - assumes]** Page 4

35:9 57:6 58:6
74:25 77:14
**amendment**
23:10,11 25:1
29:25 30:2,6
30:11 43:25
59:22 60:1,13
**amendments**
24:10
**amount** 37:5
**andrews** 3:11
6:15,15 7:1,3
**ann** 2:11 6:2
8:4
**ann.yackshaw**
2:17
**announced**
92:4
**announcing**
28:15 29:3
**answer** 9:8,15
9:18 17:23
20:2 21:22
55:1 77:25
80:7 82:13,14
100:14 106:12
**answered**
63:13
**answering** 67:2
105:8
**answers** 9:4,9
**anybody** 40:4
43:21 83:3
84:10,14

102:20
**anymore** 19:14
47:3
**anyways** 17:5
28:12 29:21
34:25 46:9
53:22
**apologize** 56:19
63:14
**appeals** 4:11
12:23,25 13:16
15:23 17:24
18:1 24:15
26:10,11 87:10
88:5,7,13,23
**appear** 33:20
48:15 49:4,14
52:17 59:12
75:2,9 106:17
114:11 115:15
**appeared** 6:24
14:2,8
**appearing**
107:7
**appears** 52:8
53:9,11
**appellate** 24:2
26:10
**appended**
115:11,18
**applicable** 5:18
98:17
**application**
74:8

**applied** 25:14
26:23 27:8,8
32:3 33:4
35:13 36:1,15
38:7 47:7,15
49:25 57:9
58:7,14,15,24
59:23 60:19
74:7 79:24
97:5 105:2
**applies** 59:5
**apply** 27:7
47:24 48:4,6
50:23 53:23
57:12,19 58:9
65:10 105:3
106:16,24
**appointed**
87:11
**appointee**
11:14
**approach**
39:15
**approaches**
21:17
**approve** 85:15
**areas** 95:6
**armed** 55:15
**arrested** 54:23
55:3
**articles** 74:5
**aside** 59:16
67:25 77:12

**asked** 44:17
57:17 66:7
68:3 81:23,23
99:5 100:1
108:9,15
**asking** 18:9,10
66:11,12 71:7
77:24 83:13
95:16 106:18
108:17
**aspect** 74:17
**aspects** 76:2
81:10,15 83:5
**assigned** 5:3
88:15
**assignment**
114:2 115:2
116:2
**associate** 14:17
15:6 18:13,18
20:18 89:11
**associated**
21:11
**association**
4:12 49:17
88:5,14,23
**assume** 9:14
17:17 49:6
53:3 75:13
**assumed** 90:6
91:14,17,17
92:16
**assumes** 28:6
28:21

**[assumptions - believe]**

**assumptions**
78:6 91:19
92:19 93:12,17
93:19 94:11,19
95:12,16,21
105:19 106:2
**attached** 115:7
**attempted**
54:12
**attempting**
101:6
**attendance**
5:25 110:1
**attention** 69:4
**attorney** 1:14
2:13 3:4,11 6:1
6:3,6,9,12,16
49:13 86:19
111:14 112:10
**attorney's** 23:8
23:14 24:22
**attorneys** 6:23
**attribute** 26:14
90:24 91:4
**audio** 8:9 111:8
112:4
**august** 22:20
**authorities**
101:16,19
102:5,11
**authority** 67:10
74:15 81:18
100:8,10 101:6
101:24

**authorization**
55:20
**authorize**
115:11
**authorized**
5:10
**ave** 113:1
**avoid** 105:10
105:16
**award** 23:7,14
24:21
**aware** 68:4
88:22 89:6
100:18 101:1
102:15,20,24

**b**

**b** 4:5,8 31:14
31:19 36:10,13
36:22 37:22
48:4 56:5,8,10
56:11,14,15,15
56:17,17,22
76:14 77:4
**b3** 37:10
**back** 18:11
19:10 20:5
30:18 31:23
32:25 40:5,6
43:25 45:16
50:8 59:17
64:12,16 65:25
70:18 109:22
113:15

**backstop** 40:7
**bad** 42:6 66:24
67:3 104:1
**badge** 17:14
**ballot** 12:7,12
13:3,8,10,19
14:3,9,22
15:10 16:6
24:13,20 25:5
25:18 26:6,8
27:3,6 32:21
32:24 34:4
75:3,9,12,21
77:20,23 78:1
79:14 80:19
81:1 83:18
89:15,20 90:5
90:12 91:10,11
92:6,18 93:18
94:20
**ballots** 24:4
91:25 92:2
**bar** 49:17
**barred** 70:6,10
**based** 23:18
25:16 27:2
40:18 50:19
51:10 59:23
62:5 89:1
103:13,15
105:19 107:19
**basically** 32:18
46:6 50:17

**basis** 26:10
37:1 88:1,2
**basket** 40:4
**bates** 88:18
**bear** 24:19
**beat** 53:14
**becoming**
57:24
**beginning** 6:1
30:21
**begins** 5:6
26:20 61:1
**behalf** 2:2,10
3:2 6:3,6,9,18
8:5 33:16 39:5
39:19
**belief** 20:10
75:16
**believe** 14:12
17:11 19:11,20
21:9 28:8,10
32:22 39:12,13
44:25 45:3
49:24 55:15
60:14 65:1,14
65:23 67:1
69:22 70:19
75:11,13,14
78:23 79:5
80:17,22 83:8
83:16 84:6
85:4 89:1,9
90:22 92:2
98:22 104:18

**[believe - campaigning]**

104:19 107:24 108:3

**best** 107:22 111:10 112:6

**better** 62:23 72:17

**beyond** 27:7 78:7

**bias** 50:18 56:5 56:9 106:9

**biased** 51:9

**biases** 78:18

**bigger** 90:23

**bill** 24:1,8 25:3 25:7,10,23 26:3,15,17,21 30:23 31:25 33:2 35:12 36:2 50:1 57:8 58:25 61:7,11 79:16,23 92:8 97:13

**billboards** 34:11 99:3

**bills** 35:22

**bit** 19:4 21:24 45:22 47:4 61:19,21 63:22 70:17 73:9 87:8,11 101:15 105:4

**black** 72:9

**blank** 21:18

**blue** 89:23,23

**board** 3:14 6:14 46:6 49:11,18 81:24 82:4,10,12,23 83:4 87:9 91:23 101:16

**bombing** 69:20 69:20

**boost** 40:17

**bottom** 88:19

**bounced** 87:8

**bound** 83:8 97:17

**bounds** 37:13

**boy** 56:15

**break** 9:10,11 9:12 48:25 59:2 63:23 64:2 109:10,12 109:14,15

**breaks** 9:10

**brief** 45:20 85:22,24

**bring** 19:17 85:19

**broad** 1:15 3:5 5:9 32:12 46:2

**broadcast** 86:3

**brown** 4:9 84:19 87:20 89:6 98:23

**brown's** 88:25

**brunner** 1:5,11 2:2,4 5:7,7 6:17,19,19 7:12,15,20 8:3 8:8,16 9:22 10:2,14 22:8 31:22 64:15 84:25 92:3,8 109:25 113:6,8 114:3,4,9 115:3,4,13 116:20

**brunnerlaw.c...** 2:7

**bureau** 93:23 94:2 95:9

**burick** 45:16 45:24

**c**

**c** 2:1 3:1 4:9 5:1 56:8,12 84:20 84:22

**ca** 113:25

**california** 29:21

**call** 82:10,22 83:3

**called** 7:21 103:5

**calling** 92:8

**camera** 96:8,18

**campaign** 11:4 16:15 17:1,1

18:25 19:21 20:3,22,24,25 21:2,3,8 29:16 30:7 32:9 39:25 40:15,22 41:4 46:24,25 48:15 49:12 56:23 57:3 62:20 63:5 65:3 66:3,6 68:25 69:4 71:6 72:6,14 72:16 73:16 74:9,14,22 79:11 83:7 84:4,5,6,11 85:15,17 87:16 89:3,6,18,18 90:10,23 95:25 96:1 97:3,19 97:20 98:3,8 98:13,15 99:10 102:3,12,17,22 103:6,8 105:5 105:9 106:7,8 106:15,23 107:6,13,18 108:2,6,10,11 108:21

**campaigned** 18:13 19:2,8,9 78:7 79:1,2

**campaigning** 19:5 27:9,11

EXHIBIT 1 Page 122 of 156

**[campaigning - challenge]**

40:7
**campaigns**
  17:10,20 18:12
  21:13 50:5
  66:14 73:10
  79:2 90:10,25
  91:5 97:2
  102:1
**candidacy**  11:6
  11:15
**candidate**
  10:15 11:2
  12:10 15:14,15
  15:25 16:6,9
  16:11,12 17:15
  19:12 21:2,14
  21:15,21 27:22
  27:25 28:25
  30:1,7 32:9,13
  33:13,14,15,17
  33:18,22,23
  34:5 35:3
  36:11 37:11,16
  37:19 40:20
  48:14 49:6
  51:21 52:7,7,9
  52:15,18 53:2
  53:5,12,19,21
  53:23,24 54:1
  54:13,22,23
  55:3,9,13,22
  57:24 60:18
  75:5 76:13
  77:7,16 80:19

80:24 81:14
85:14,17 86:4
86:16 89:8
98:8 102:16
103:16
**candidate's**
  52:11 81:22
**candidates**
  16:2,2 17:15
  17:22 18:1,2
  24:3,4,8,14,19
  25:12 27:19,24
  28:3 34:12
  35:21 36:18,20
  39:6,9,21,22
  40:12,23 41:5
  46:19 47:24
  48:7,16,18,24
  50:23 51:13,14
  51:17,18 57:13
  57:20 59:7,9
  61:8 62:23
  65:7,7,10 68:5
  68:9,13,15
  69:3,17,17
  71:1,1 72:10
  72:17 81:9,20
  92:23
**canoes**  58:20
**canon**  19:11
  31:7,18 32:8
  33:3 47:7,11
  50:16 58:22
  61:23 62:4

72:8 86:13,21
87:1 97:18
98:6,11,19,25
99:16 100:5,19
100:24 101:7
101:11,19
102:7 108:12
**canons**  27:18
  31:17 63:5
**caps**  97:4
**card**  18:6 39:25
  49:4
**care**  18:17
  44:23 79:2
**careful**  39:10
  65:21
**caring**  18:23
**carved**  56:4
**case**  1:7 6:24
  9:22,23,25
  15:13 21:17
  27:17 28:16
  29:4,19 30:3
  30:12 38:6
  41:2,20 45:16
  63:11,16 65:18
  67:18,24 70:9
  80:10 84:2
  97:4,7,7,10
  105:3 107:15
  113:6 114:3
  115:3
**cases**  45:7 65:5
  65:14,16,25

66:4,10,15,19
67:9,11,16,20
68:2,6,11
69:16 70:23
71:20 72:20
73:3,7 96:20
97:1,15
**caught**  46:10
**cause**  10:10
  18:5 31:11
  39:13 45:17
  53:22 58:9
  77:9 78:11
  88:24 97:25
  99:14 106:19
**caution**  102:13
**certain**  78:23
  79:19 80:24
  82:6,7,25 83:5
  95:6
**certificate**
  45:20 54:14
  111:1 112:1
  115:11
**certification**
  114:1 115:1
**certified**  5:15
**certify**  111:4
  112:2
**cetera**  54:14
**chair**  39:2
**challenge**  47:18
  51:8

EXHIBIT 1  Page 123 of 156

**[challenging - comments]** Page 8

**challenging**
31:3 32:5
33:11 51:5,6
54:2 57:18
59:11
**chance** 42:15
67:6 94:6,7
**change** 14:10
96:1 113:13,14
115:8 116:3
**changed** 92:5
97:13
**changes** 113:12
114:7 115:7,9
**changing** 58:20
**characterize**
19:8
**check** 34:10
37:5,14 99:2
**chief** 3:12 7:7
14:6 19:1
20:23 42:4
49:19 83:11
84:5 87:10,11
87:24 92:5
96:6
**child** 93:5
**childbirth**
74:11,11
**choose** 72:17
72:18
**choosing** 15:24
15:25 80:4

**chose** 58:17
73:12 74:1
**circulate** 86:3
**circulating**
10:20 11:4
14:13,16
**circumstances**
53:18
**cited** 86:13
**citizens** 41:25
43:8 44:2
**civil** 114:5
115:5
**claim** 23:15
26:16 59:18
**clarify** 9:17
61:2 79:13
**clause** 60:25
61:1 63:21
**clear** 94:25
**clerk** 3:11 7:2,3
**cleveland** 113:2
**clock** 87:12
**coach** 76:23
**coaching** 76:25
**code** 4:8 19:10
19:13 24:6
25:11,24 26:22
27:10,12,14,18
30:23 31:2,6,7
31:15,21 32:1
32:4 33:3,10
35:11 36:3,14
36:19 37:23

38:5,15 47:14
49:5,23 50:4,8
50:16 52:1,1
54:15,21 55:7
57:7 58:12,23
59:13,15,23
61:9,10,23
62:10,17 63:6
63:18 64:21
65:1,14,23
67:1,12,16,20
68:2,19 69:2
69:23 70:6,11
70:19 71:12,17
71:19 72:1,21
73:12,17 74:2
74:16,20 75:17
75:23 76:1,4,8
77:12 78:21
79:12,15,17
80:1,5,11 81:6
81:8,12,19
82:24 83:4,25
84:7,11,15
85:11,13,21
86:9,11 92:24
93:11 94:9,16
95:10 98:1,16
102:17,21
103:7,14,23
104:7,22
105:18 106:1,4
107:25 108:4
108:22

**codified** 24:2
**columbus** 1:16
2:6,16 3:6 5:9
**combination**
23:24 61:17
**combined**
25:15 26:25
**come** 28:19
42:23 65:25
70:11 71:5,21
72:5,19,20
73:3 93:24
96:21 97:16
104:10,23
**comes** 40:24
55:6,10,15,25
**comfortable**
103:10
**coming** 92:2
**comment** 34:15
41:14 42:10
43:12 73:15
74:1,7,9,21
92:1 93:7
**commented**
97:2
**comments**
41:23 42:17,21
43:2,6,7,9 44:3
65:6,15 66:3
67:7,10,15,19
68:1,5,9 71:19
73:11 74:13

**[commercial - confidence]**

**commercial**
  96:5
**commercials**
  96:3
**commission**
  46:24 47:3
  51:24 52:2,20
  53:3 54:8
  55:25 114:19
  115:25 116:25
**commit**  30:11
  106:24
**commitment**
  30:3
**commitments**
  45:10,13 46:15
  73:2 96:20
  97:9,15 99:24
**commits**
  107:14,18
**committee**  11:5
  49:16 85:18
**committing**
  29:18 106:24
**common**  11:8
  11:21 15:23
  34:21 104:18
**communication**
  69:4
**communicati...**
  25:12
**compatible**
  27:9

**compel**  25:15
  27:1
**complained**
  87:17
**complaint**  4:7,9
  22:15,24 23:1
  26:21 30:20,22
  31:25 33:2
  35:10,25 36:4
  47:6,8,12
  49:10 57:6,15
  58:7 59:17,24
  60:12,21,25
  61:18 62:5
  64:16,19,21
  69:15 72:13
  74:25 75:1
  77:14 84:14
  85:6,12 86:10
  86:21,24 87:2
  87:6,13,20
  88:25 89:5
  98:23 99:6
  100:2,24
**complaints**
  57:18 89:7,7
  98:21,24 99:8
  99:10 101:1
**complete**  62:11
  62:14,19,21
  63:5,7,10
  68:23
**completed**
  54:12 113:15

**completely**
  9:19
**completeness**
  63:14
**compliance**
  24:17
**comply**  37:10
  46:8
**compromise**
  32:16
**concern**  62:21
  72:10
**concerning**
  54:11,18 86:4
**concluded**  55:5
  110:17
**concluding**
  55:5
**concrete**  93:22
**conduct**  3:15
  4:8 6:14 19:11
  24:7 25:5,11
  25:25 26:7,23
  27:10,13,15,18
  30:24 31:3,15
  32:1,5 33:3,10
  35:12 36:14
  37:23 38:5,15
  46:7 47:15
  49:11,18,24
  50:16 57:7
  58:13,23 59:16
  59:24 61:9,10
  61:24 62:10,18

  63:6,18 64:22
  65:2,15,23
  67:2,12,21
  68:2,19 69:2
  69:23 70:6,11
  70:20 71:12,17
  71:20 72:2,22
  73:13 74:3,16
  74:20 75:17,23
  76:1,4 78:22
  79:12,15,18
  80:1,5,6,12
  81:6,8,13,20,25
  82:5,7,18,24
  83:4,25 84:12
  84:16 85:11,14
  85:21 86:10,12
  86:14,14 87:9
  87:17 89:8
  92:25 93:11
  94:10,17 95:11
  97:18,22,25
  98:2,3,6,12,13
  98:17 101:17
  102:22 103:7
  103:14,23
  104:8,22
  105:18 106:1,4
  107:25 108:4
**confidence**
  32:23 62:25
  63:1 78:19
  79:6 104:14

EXHIBIT 1  Page 125 of 156

**confinement**
55:9
**confirm** 47:13
**conjunction**
25:10 26:22
30:23,25 31:25
33:2 35:12
36:2 50:1 57:8
58:25 79:15
81:5,13
**connection**
45:7
**conservative**
40:2 78:9
**consider** 19:22
21:12,23 41:19
58:16 70:5,9
**considered**
19:5
**constitute** 5:22
106:16
**constitution**
23:16 24:11
29:13 30:5,16
**constitutional**
3:13 105:2
**constitutional...**
82:1,4
**constrained**
42:7
**construe** 65:8
**construed** 67:4
68:10

**cont'd** 3:1
**contact** 110:10
**content** 25:16
27:2 85:15
**contents** 31:16
**contested** 26:12
**context** 41:11
**continues** 61:1
**contribution**
34:13 36:23
37:3 41:3 59:1
59:2,4
**contributions**
37:2 57:4
**controversies**
45:8 71:21
72:20 73:3
96:21 97:1,15
**controversy**
30:3
**convention**
38:10,13
**conversation**
95:15,17
**conversion**
19:18
**convicted**
54:24 55:4
**convince** 21:16
**cool** 110:10
**copy** 31:6,7
**correct** 8:10,15
8:17,18 10:1,9
11:3,23 12:2,5

12:17 14:14
15:7,8 22:21
25:25 26:18
33:6 35:6,15
36:9,12 42:25
43:4 46:17
51:15 57:21
58:4 59:14
61:25 65:16
66:1,5,16 74:4
80:14 81:11
82:8,9 83:19
89:1,15,16
95:20,23 98:17
98:18 99:7,11
99:12,17 104:8
104:24
**corrections**
2:14 113:12
115:17
**correctly** 25:19
26:24 28:13
**costs** 23:9,14
24:21
**council** 82:1,5
85:5
**counsel** 4:14
7:8 67:15 87:7
87:9,14 88:18
111:11,14
112:7,10
**count** 10:21
23:9,9,12,15,17
23:21,23 25:1

59:18 61:16,16
61:16
**counted** 91:25
**counteract**
96:11
**counties** 89:21
89:22 90:1,2,4
**counting** 17:19
**county** 11:8,12
11:21 18:16
34:10,20 37:15
37:15 49:17
90:1 91:23
92:3,12 93:22
94:13,13,14,15
94:18 99:3
114:10 115:15
**couple** 38:2
59:16 61:2
**course** 9:7
13:12 69:11
103:8 106:8
107:6 110:12
**court** 1:1 9:5
11:8,21 12:23
12:25 13:15,25
14:6,17 15:2,7
15:22,22,23
17:15,24 18:1
18:2,14 19:1
20:23 24:15
26:10 28:19
34:18,21 42:13
42:14,16,19,22

**[court - democratic]** Page 11

42:24 43:3,12
45:9 46:5
49:20 65:5,14
65:16,19,25
66:4,10,15,18
67:9,11,16,20
68:1,6,11
69:16 70:2,2,7
70:12,23 71:22
72:5,21 73:4
73:10,24 81:24
83:12 84:5
87:10 88:5,13
89:11 96:21
97:16 104:23
106:10,17
107:1,8,20
114:7
**court's** 42:10
**courts** 4:11
26:11 43:20
70:24 88:7,23
**covers** 7:13
**create** 66:12
**created** 52:23
**crime** 54:24
55:4
**criminal** 2:14
55:14 70:2
**cuff** 82:11
**current** 10:22
15:1 44:15
53:25 101:11

**currently** 14:12
14:16 45:14
56:22
**cut** 20:1 57:16
**cv** 1:8

**d**

**d** 4:1,11 5:1
61:15 88:3,9
**d1** 61:5
**damages** 45:21
**dan** 53:13
**dark** 89:23,24
**date** 1:12 113:8
114:3,9,19
115:3,13,25
116:20,25
**david** 17:13
**day** 114:16
115:22 116:22
**days** 113:18
**deadline** 15:21
**deadlines** 16:1
**deal** 72:24
**dealing** 46:23
79:25
**deals** 51:2,3
**dear** 113:10
**debts** 37:18
**decide** 30:17
31:13 62:5
107:18
**decided** 18:8
62:2 65:18,21

65:24 66:4,10
66:18 67:8,11
67:16,19 68:1
68:6 69:16
**decides** 29:6
64:5
**deciding** 43:13
**decision** 21:19
29:18 42:10
66:21,23,24
67:3 73:14,16
73:18,23,24
74:8,17,21
88:1,6 104:13
104:15
**decisions** 43:14
**declaration**
59:21
**declaratory**
23:6,12,17,21
59:19
**declared** 38:6
41:13 61:8
**declares** 23:22
**deed** 114:14
115:20
**deemed** 113:19
**defendant** 7:1
**defendants** 1:9
2:10 3:2 6:4,7
6:10,25 8:5
24:5,12,17
67:18,24

**defensive**
105:24
**defer** 109:8
**defines** 58:22
**definition**
47:10 58:21
59:6
**definitions**
59:12
**degree** 54:13
72:7 104:13
**degrees** 72:9
**delegate** 38:17
38:20,21,24
**democrat** 14:3
14:9,10 16:4
16:11 18:14
19:2,6,8,10,12
19:15,22,23
75:13 76:6,9
78:14 80:20
83:22 90:6
91:12 92:4,18
94:20 95:1,1
95:13 96:10
**democratic**
11:12 12:15
13:11,22 14:19
14:24 15:5,14
15:17,25 16:21
17:3,9,21,25
18:3,8,19
19:14,17 20:13
20:16,18,25

**[democratic - dismissal]** Page 12

21:5 34:10 39:10,13 75:19 76:3,20 78:8 78:15,23 82:25 89:24 91:14 103:9,22 104:4 105:6

**democrats** 28:21 44:18 78:10,25 93:15 105:11

**demonstrate** 106:9

**demonstrated** 65:20

**denies** 60:17

**denying** 60:22

**department** 113:22

**depend** 43:11 44:23 46:4 62:1

**depending** 18:15 19:3

**depends** 20:14 20:19 30:14 69:25,25

**deponent** 6:20 9:3

**deposed** 8:16 9:21

**deposition** 1:11 5:6,20 8:19 10:3 62:2

111:1 113:8,11 114:1,3 115:1 115:3

**depositions** 7:10

**described** 79:21

**description** 4:6

**designated** 80:19,25

**designation** 24:19 25:7,23 26:8 61:7,12 61:22 62:9,14 62:16 63:4,9 63:17 77:20 80:12,17,23 81:3,8,13,19 90:11 93:18 95:7 96:2 97:13

**designations** 24:14

**determine** 42:16 75:25

**dialogue** 91:13

**differed** 90:9

**differences** 89:17 90:24 91:4

**different** 6:22 15:20,20 16:1 16:7 20:20 30:6 38:3 46:3

54:17 59:8 63:21 77:25 82:20 90:2 92:10

**differently** 90:10 97:20 98:4

**difficult** 9:5

**difficulty** 72:8

**digital** 96:4 111:8 112:3

**ding** 45:25

**dinner** 19:17

**diploma** 54:13 54:13

**directly** 86:12 86:15,17

**director** 3:14 6:13 82:23

**disability** 50:20 51:5

**disadvantage** 28:4

**disagree** 28:14 105:6

**disagreeing** 29:1 75:18 76:2 80:18,24 81:9,21

**disagreement** 82:25

**disbarred** 102:21

**discern** 36:3

**discharge** 55:14

**disciplinary** 50:17 67:10 74:15 81:18 82:1,5 85:5 87:8 89:7 99:19 100:8,16 100:17 101:6 101:16,18,24 102:5,11

**discipline** 55:13

**disciplined** 68:5

**disclosing** 55:4

**discovery** 10:7

**discriminatory** 25:4,17 26:5 27:3

**discuss** 29:6

**discussed** 62:10 63:18 65:4 68:20 69:8 99:9

**discussing** 62:18

**discussion** 59:23

**dishonorable** 55:14

**dismissal** 99:4

**[disorder - enjoined]**

| | | | |
|---|---|---|---|
| **disorder** 55:10 | **dove** 82:11,22 | 62:8 74:7 | **employed** |
| **dispel** 95:21 | 83:3 | 80:15 86:5 | 111:11,14 |
| **disregard** 50:7 | **drama** 22:6 | 96:19 | 112:8,11 |
| 50:11 54:6 | **drive** 2:5 | **elect** 52:10 56:4 | **employee** |
| 86:6 | **due** 14:10 16:1 | **elected** 37:2 | 111:13 112:10 |
| **dissemination** | 44:14 60:18,22 | 53:19 73:16 | **enclosed** |
| 85:18 | **duly** 7:21 111:5 | **election** 12:11 | 113:11 |
| **distribute** 86:3 | **dumb** 105:20 | 13:8,9,19 14:2 | **endorse** 17:22 |
| **district** 1:1,2 | 105:22 | 14:8,9,11,20,22 | 33:18,22 40:12 |
| 12:23,25 13:15 | **duplicative** | 24:3,13,20 | 40:21 |
| 26:11,13,14 | 63:14 | 26:12 27:23 | **endorsed** 94:5 |
| **division** 1:3 | **duties** 45:11 | 32:24 52:22 | **endorsement** |
| **dnc** 20:19 | **dying** 74:10 | 53:20 57:25 | 17:2,7,10,17,19 |
| **dobbs** 73:14,15 | | 75:3,12 78:3,3 | 18:4,7 34:2 |
| 73:18 74:4,8 | **e** | 83:16,18,23 | 55:21 65:8 |
| 74:13,17,21 | | 89:13,14,20 | 68:10 |
| **document** 4:12 | **e** 2:1,1 3:1,1 4:1 | 90:11 91:8 | **endorsements** |
| 22:9,10,17 | 4:5 5:1,1 | 92:16,18 | 17:25 49:8 |
| 85:1 88:8,18 | **earlier** 58:2 | **elections** 25:6 | **enforce** 52:5,21 |
| **documents** | 68:24 | 26:7,9,12 | 101:7 |
| 10:5,8,9 84:4 | **earn** 49:1 | 32:14 46:24 | **enforcement** |
| 88:12 | **east** 1:15 3:5 | 47:3 51:23 | 101:11 |
| **doing** 14:24 | 5:8 | 52:2,20 53:3 | **enforcing** 24:1 |
| 16:24 39:21,23 | **eastern** 1:3 | 54:8 55:25 | 24:5,12 |
| 42:7 43:23 | **eat** 44:22 | 91:23 100:10 | **engage** 32:9 |
| 52:25 61:19 | **effect** 25:15 | **electoral** 25:18 | **engender** 62:25 |
| 67:13 93:8 | 56:1 92:1 | 27:4,6 | **enjoined** 39:17 |
| 94:24 95:3 | 103:1 | **elizabeth** 3:14 | 39:18 40:11 |
| 103:23 | **effective** 63:2 | 6:13 45:16,23 | 41:2 42:9 |
| **dollars** 90:21 | **effectively** | 82:10 | 43:16 45:12 |
| **donald** 78:7 | 72:15 | **elizabeth's** | 56:7,24 62:19 |
| 91:13 | **effects** 27:1 | 67:22 | 63:10 72:4 |
| **double** 106:20 | 74:5 | **email** 113:17 | 73:1 98:2 |
| | **either** 52:9 | | |
| | 53:18 61:6 | | |

**[enjoining - family]**

| | | | |
|---|---|---|---|
| **enjoining** 23:25 24:4,12,16 61:22 62:8,9 62:13 63:4,5 | 44:17 **eventually** 49:19 **everybody** 64:5 78:2,4 | **expect** 16:14 41:15 43:6,9 **expected** 34:16 **expedited** 110:11 | **facially** 26:4,17 **fact** 38:11 47:2 54:3,5 65:19 **facts** 85:24 107:19 |
| **entered** 115:9 **entire** 57:3 114:5 115:5 | **evidentiary** 5:19 | **expenditure** 41:4 | **fair** 16:4 21:17 21:19 30:13 37:21,25 39:4 |
| **environment** 65:17 | **exact** 32:17 **examination** 4:2 8:1 | **experience** 9:3 16:9 19:19 103:15 | 42:24 46:14 49:22 56:3 58:5,11 59:10 |
| **equal** 23:15 **equally** 59:5 106:16,25 | **examined** 7:23 **example** 65:5,6 91:19 93:22 95:23 104:16 | **expert** 24:22 **expiration** 114:19 115:25 116:25 | 59:25 60:3 63:3 67:3 69:22 70:15 71:4 72:18 |
| **err** 102:13 **errata** 113:13 113:18 115:7 115:10,18 116:1 | **examples** 65:12 **except** 27:20 **excuse** 64:17 94:15 | **expire** 15:2 **expired** 11:11 **expires** 15:3 **explain** 19:4 | 73:5,6 78:19 80:9,9,13,16 95:5 96:23 104:14 105:4 107:7,22 |
| **es** 111:4 **especially** 36:23 | **execute** 72:15 **executed** 115:10 | 26:2 72:23 73:22 **explained** 97:7 | 108:24 **fairness** 34:17 41:16 |
| **espouse** 21:4,10 **esq** 113:5 **esquire** 2:3,11 2:12 3:3 | **execution** 114:14 115:19 **exhibit** 4:7,8,9 4:11 22:1,9,11 | **explanation** 94:8 **explanatory** 97:6 | **fall** 102:6 **false** 50:11,12 51:23 54:11,18 |
| **essentially** 23:22 26:3 27:16 78:17 95:23 | 24:25 31:14,19 31:23 59:17 64:17,17 84:22 88:3,9 | **express** 82:24 **extent** 43:12 **extra** 22:4 | 54:22 55:8,12 86:5,7 **falsely** 55:17,18 55:21 |
| **et** 1:8 2:10 3:2 5:8 54:14 113:6 114:3 115:3 | **exhibits** 4:14 **exist** 46:23 98:14 | **f** | **familiar** 9:22 91:9 |
| **event** 34:14 37:5,6 39:10 | **exists** 46:22 | **f** 56:22 **f3** 56:4 **face** 59:22 60:18 79:24 | **family** 59:8 |

**[far - general]** Page 15

| | | | |
|---|---|---|---|
| **far** 18:23 25:14 50:10 97:22 | **fine** 31:9 64:3,4 64:6 109:6,9 110:12 | **forcing** 35:1 | **freely** 39:12,18 64:23 68:17 |
| **farm** 93:22 94:2,7 95:8,9 | **fines** 45:19 | **foregoing** 111:3,4 112:4 114:13 115:18 | 69:7 71:18 72:3 79:20 |
| **fashion** 16:15 | **finish** 9:7,8 12:18 20:1 | **foreign** 69:24 70:10,13,14,25 | **french** 40:5 |
| **favor** 28:21,22 | **finished** 63:20 | **forgive** 78:10 | **front** 106:10 107:20 |
| **fealty** 27:20 | **firearm** 104:20 | **forgot** 45:19 | **full** 49:20 61:9 70:21 |
| **federal** 23:25 42:11,12,14 43:20 70:4,12 80:3 81:24 | **first** 7:21 10:14 43:23 73:23 79:22 85:5 87:7 88:11 90:13 91:8 | **form** 4:10 85:4 85:22,25 | **function** 97:6 |
| **feel** 9:15 39:17 43:4 46:16 102:8 | **five** 64:5 109:16,19 | **formal** 12:13 28:23 54:11 | **fundraiser** 48:12 |
| **fees** 23:9,14 24:22,22 | **floor** 5:9 | **former** 53:7,9 53:10,15 | **fundraising** 34:14 37:4,6 48:18 65:9 90:23 101:3 |
| **felt** 98:9 | **focus** 18:24 | **formerly** 76:12 | **funds** 41:3,4 48:10 |
| **fifteen's** 64:3 | **focused** 86:17 | **fortunate** 18:17 18:23 | **further** 23:20 88:24 111:13 112:9 |
| **figure** 93:16 | **focusing** 21:12 86:2 | **fortune** 45:17 | **future** 108:18 |
| **file** 49:10 72:13 84:14 99:6 | **follow** 98:16 105:7 | **forward** 44:20 113:15 | |
| **filed** 22:18,20 34:7,9 85:5,7 89:7 98:24 99:1 | **following** 51:20 52:10 53:18 62:1 77:8 85:24 | **found** 87:24 88:24 98:11 | **g** |
| **filing** 15:20 16:1 | **follows** 7:23 | **four** 91:6 99:21 | **g** 5:1 |
| **financially** 90:17 111:15 112:11 | **font** 52:17 | **framework** 46:21,22 | **gender** 51:10 |
| **find** 113:11 | **force** 97:25 98:19 | **frank** 1:8 2:10 3:2 5:8 113:6 114:3 115:3 | **general** 1:14 2:13 3:4,11 13:19 14:9,22 24:3,13,20 26:12 32:20,24 53:20 57:25 71:13,14 75:3 75:12 78:3 |
| **finding** 79:23 99:14 | **forced** 33:12 75:4,8 77:15 77:21 79:8,19 | **franklin** 11:8 11:12,21 34:10 34:20 | |
| | | **frankly** 28:11 | |
| | | **free** 114:14 115:20 | |

**[general - human]**                                             Page 16

83:17,21 89:14
89:19 90:11
92:16,18
**general's** 6:3,6
6:9,12,16
**generally** 23:5
65:9 68:21
**gerrymander**
29:22
**gerrymanderi...**
29:10,17 96:24
**getting** 103:18
103:19
**give** 9:4 17:5
32:17 35:18
44:7 58:8
62:10,14,19,21
63:4,6,10
71:14 73:19
81:25 82:2,3,6
82:11 91:18
93:21,21 94:6
94:22 107:3
**given** 89:18
**gives** 78:1
**giving** 27:16
69:23
**glasses** 77:3
**go** 9:1,12 19:10
19:24 24:9
32:25 33:6,8
38:10 40:3,5
45:16 47:22
48:2,25 49:20

50:8 56:12
57:5 59:17
64:7,9,16
70:18,24 76:19
86:1,12,15
91:10 97:22
109:20 110:14
**goes** 30:7 43:25
49:17,19 50:14
**going** 22:1
24:25 29:5
30:17 31:11,13
35:22 37:6,17
37:18 40:3
43:13 44:21,22
46:3 48:1
52:21,25 53:3
54:14 61:25
63:22 64:9,16
70:17 71:5
78:18 80:5
93:7 104:14
108:17 109:10
109:14 110:2
110:13
**good** 5:2 8:3
10:13 16:16
21:16 40:16
42:6 50:12
57:22 66:24
67:3 88:24
94:8 96:6
**government**
44:15,24 45:4

69:9,18 70:25
**governor's**
11:13
**great** 10:14
25:21 38:17
**greater** 37:7
**green** 16:11
**grievance** 4:10
34:7,9 49:15
85:4
**grieved** 34:12
**ground** 9:2,18
**group** 94:3
**groups** 93:15
**guess** 50:21
51:7
**gun** 29:24 30:7
30:9

**h**

**h** 4:5
**habit** 67:13
**hallway** 67:23
**hand** 7:18 40:3
**handed** 22:8
**happen** 28:19
82:9 108:17
**happened** 42:5
87:21
**happens** 19:9
19:21
**happier** 39:11
**hardest** 84:9

**health** 44:23
**healthcare**
44:21
**heard** 43:22,23
**hearing** 7:16
46:4 49:14
62:3
**heavily** 89:24
89:24
**hell** 40:3
**hereto** 111:15
112:11
**hi** 67:23
**hire** 49:13
**hired** 87:7,14
**hissong** 1:17
5:3 111:2,17
**history** 32:14
**hmm** 73:8
**hold** 33:15 38:8
38:16,19,24
51:21 62:2
98:20
**hone** 77:13
**honest** 79:3,5
**honestly** 39:8
**hope** 107:3
**horizons** 2:5
**house** 34:2,5
35:21 48:11
53:13
**huhs** 9:5
**human** 41:19

**[humility - issues]**

humility  21:19
hypothetical
  66:12
hypotheticals
  44:8

**i**

ice  103:19
idea  6:20
identification
  22:12 31:20
  84:23 88:10
identified  24:3
  90:6
identify  5:25
  55:17,18 76:13
identifying
  87:3
identity  51:11
  54:2,4
imagine  17:4
  41:9
immediate  59:8
immediately
  51:20 53:8
impair  34:17
  41:15 43:10
impartial  45:10
  73:5,6 78:20
  96:24 104:15
impartiality
  32:11
impending
  34:18 42:22

44:4,10,10
implied  86:24
import  7:11
important  9:3
  39:12
impression
  78:2 107:4
impugning
  78:13
inclined  41:21
include  47:16
  68:16 71:10
included  31:17
  37:22 70:22
  71:2 113:13
includes  38:19
  59:3 68:17
including  25:13
  30:24 31:4
  32:2 72:11
  76:15 77:9
incompatible
  27:12
inconsistent
  32:10 45:10
incorporated
  115:12
independence
  32:10,22
independent
  14:23 15:12,15
  15:19 16:2,6
  16:12,17 20:14

independently
  80:12
indicate  27:16
indicated  89:2
indicating
  113:13
indication
  39:15
indicted  54:24
  55:4
individual
  23:11 37:7
  44:13 50:15
inference  36:22
influence  39:14
information
  86:4,5 87:15
injunctive  23:6
  23:13,24
inside  92:7
instance  37:14
  41:19 44:16
  49:16 78:6
insulate  82:16
  82:17
insurance  49:1
integrity  32:11
  52:22 64:24
intend  106:23
  107:5,12,17
  108:16
intended  5:17
intending
  43:19 106:7,14

interest  24:21
interested
  111:15 112:12
international
  70:1,12,24
interpretation
  49:10
interpreted
  46:3
interrogatories
  10:5
invalidate
  59:25 60:12,21
  63:16 80:10
invalidated
  61:11
investigation
  88:24
invited  39:9
involved  67:5
  86:21,24 91:22
  93:5,12
iraq  69:20
issue  28:20
  29:2,7,8,17,21
  29:24 30:1,8
  50:17 55:19
  59:4 69:6
  70:10 86:10
  87:2 104:10
  105:12
issued  55:18
issues  20:13
  28:18 29:6

EXHIBIT 1  Page 133 of 156

**[issues - judicial]**

45:8 64:23 65:1,20 68:18 69:10,24 70:19 70:22 71:2,18 71:21 72:3,4,4 72:19,20 73:3 74:2 75:4,18 76:3 77:15,19 77:21 78:24 79:9,10,19,20 80:25 81:15,21 103:22 104:6 107:19,24

**it'd** 16:19 38:17 102:8 105:20

**j**

**j** 54:22
**january** 15:3
**jd** 34:20
**jennifer** 1:5,11 2:2 5:6,7 6:19 7:20 8:8 113:6 113:8 114:3,4 114:9 115:3,4 115:13 116:20
**jlb** 88:19
**job** 1:18 21:4,7 21:10,12,14,23
**joined** 76:20
**joint** 48:12,15
**josh** 98:23
**joshua** 4:9 84:19

**judge** 21:4,10 21:23 24:15 28:12,16 29:3 29:6 31:13 32:8 33:12 34:21 36:11 37:8 48:10,12 48:13 52:6,7 52:15 53:8,10 58:1 61:19 70:4 78:20 80:3 86:16,16 86:18 87:10,11 93:7 98:7,14 104:25

**judge's** 88:5,23
**judgement** 59:19
**judges** 4:11 25:12 27:20 33:20,25 35:23 37:3 50:12 52:12 62:23 78:8 80:6 88:7 88:12,14,15,15 91:14 96:5 98:17
**judgment** 23:17,21 24:21
**judi** 40:5
**judicial** 4:8 10:15,18 11:1 11:7,16 12:22 13:13,24 14:4

14:15 17:20 19:9,11,21 21:13,14,15,21 24:2,6,7,14,18 25:11,12,25 26:22 27:10,12 27:14,18,22,25 28:25 30:1,24 31:3,15 32:1,5 32:8,13,14 33:3,10,14,21 34:11 35:11 36:11,14 37:11 37:20,23 38:5 38:15 39:9,22 40:15 45:11 46:7,20 47:14 47:24 48:6,13 48:16,17,18,24 49:24 50:16 51:13,14,17,18 51:21 52:7,9 52:11,15,18 53:1,5,21,22,24 54:1,13,23 55:3,8,12,22,22 57:7,12,20,25 58:1,2,10,13,16 58:23 59:6,7,9 59:15,24 60:17 61:8,9,10,23 62:10,17 63:6 63:18 64:22 65:2,7,7,10,14

65:23 67:2,12 67:20 68:2,4,9 68:12,14,14,15 68:19 69:2,16 69:17,23 70:6 70:11,20,25 71:1,10,12,17 71:20 72:2,10 72:22 73:12 74:2,16,20,21 75:3,5,5,17,23 76:1,4,13 77:7 77:16,16 78:22 79:4,4,12,15,17 80:1,5,11,19,23 81:6,8,9,12,14 81:20,20 82:24 83:6,25 84:11 84:15 85:11,13 85:14,17,17,21 86:4,9,12,14,14 86:16 89:8 92:25 93:11 94:9,17 95:11 97:18,22,25 98:2,6,7,13,16 99:10 101:3 102:1,3,12,15 102:17,22 103:7,14,23 104:8,22 105:18 106:1,4 107:25 108:4

EXHIBIT 1  Page 134 of 156

**judiciary** 27:24 32:11,22 64:24
**julie** 3:12 6:11 7:5
**jurist** 21:17
**justice** 2:14 8:3 8:16 10:2,14 14:6,17 15:2,6 18:14 19:1 20:23 22:8 31:22 38:11 42:4 64:15 70:3 83:11 84:5,25 89:11 96:7 104:10,25 109:25

**k**

**k** 55:2
**keep** 50:15 109:10,14
**kids** 60:4
**kind** 19:16 41:8 59:4 94:21 105:13 106:9 108:8
**kinds** 66:9,17 91:19 92:22
**knew** 19:16 95:1,4
**know** 9:2,2,13 9:17 10:11 16:25 17:21 23:5 29:5,9

30:8 32:13 36:6 37:8,17 38:11,11 39:24 40:3,7,23 42:5 42:10 43:11 44:7,19 50:25 51:1,2,25 52:3 54:9 56:2 57:6 62:3 63:22 69:12 70:16 75:6 77:4 78:12 79:18 80:3 81:11,24 85:20 88:2 90:2,22 91:15 92:3 93:6,24 94:4 95:15 102:2,4,23 104:18 105:5 105:20 106:3 106:21 108:5,8 108:9,14,14,23 109:3 110:9
**knowing** 50:10 86:5
**knowingly** 50:6 54:6
**knowledge** 40:19 89:3 111:10 112:6
**known** 34:17
**knows** 30:17

**l**

**l** 55:8
**label** 26:8 28:1 28:6 32:21,24 34:5 75:21 77:23 78:1,5 79:14 95:24 96:12
**labels** 92:6
**larose** 1:8 2:10 3:2 5:8 9:22 23:25 52:23 113:6 114:3 115:3
**late** 91:24
**law** 2:4 3:11 7:1,3,5 25:7,24 29:13 42:16 45:25 50:12,15 50:24 51:1 61:7,12,22 62:9,14,16 63:4,9,17 67:5 71:11 80:12,17 80:23 81:3,8 81:14,19 83:9 92:6 95:7 96:2 96:25 97:13 102:14,16 103:1,5 104:24 104:24 105:1,1 106:16,25 107:20

**laws** 5:19
**lawsuit** 40:11
**lead** 104:4 105:7,13
**leader** 33:15 38:8,15,18
**leaders** 20:20
**leadership** 38:25
**leak** 73:23 74:2
**learned** 99:4
**leave** 52:2
**leaving** 52:4
**legal** 55:6 67:15 80:6 87:14 113:1 116:1
**legislation** 14:10
**legislature** 92:5
**legislature's** 52:3
**length** 47:4 79:8
**lengthy** 57:2
**letter** 88:4,20 99:4 100:7 113:19
**letterhead** 88:5
**lettering** 52:11 52:13,14 53:11
**letters** 100:5,15
**level** 26:10 29:3

EXHIBIT 1 Page 135 of 156

**[liberal - making]** Page 20

**liberal** 78:7
91:14
**license** 45:25
48:25 49:3
50:15 67:5
71:11 83:10
86:19 102:14
102:16
**licenses** 54:19
**lie** 57:1,1 60:4,5
60:7
**life** 39:15
**light** 89:23,23
**likely** 45:8
71:21 72:5,19
72:20 73:3,7
92:13 96:21
97:15
**limit** 28:17
42:11 61:19
**limitation**
36:17 65:11
**limitations**
76:17 77:8
**limited** 25:13
30:24 31:5
32:2 76:16
77:10
**limits** 76:5
**line** 95:4
113:13 115:7
116:3
**listed** 56:23
75:12 83:17,21

86:1 89:14,19
92:18 94:19
115:7,17
**listen** 21:18
**listing** 115:7
**literature**
17:16
**litigate** 55:24
**litigation** 2:14
41:13 42:12,13
43:17,20 73:1
80:2 98:3
**little** 17:14 19:4
21:24 45:22
47:4 61:19,21
70:17 73:9
101:15 105:4
**live** 18:22
79:25 94:7
95:9
**living** 46:1 49:1
**lobbyist** 91:21
94:2
**local** 17:22
36:25 37:2
40:6,8,8 41:11
49:15
**location** 1:14
**locked** 90:14
**long** 30:14
109:3
**longstanding**
73:25

**look** 26:9 45:15
48:1 50:8 62:6
74:24 78:2
79:1 84:8 98:5
**looking** 18:11
20:22 25:2
34:8 40:10
41:1 45:6 48:3
48:8 59:20
60:10,19 61:4
77:4 85:13
97:19 103:6
106:6
**looks** 22:20
25:20 34:2
43:12
**lose** 78:19
**lot** 10:10 27:19
30:6 46:3 74:5
91:8 97:8
107:23
**lots** 30:5
**lower** 42:14
**lucky** 45:22
**lunch** 109:4,8

**m**

**m** 2:3 113:5
**mackenzie**
112:2,15
**madam** 113:10
**made** 30:16
34:13 89:4,4
91:20 93:17

95:21 99:15
108:9 114:7
**mahoney** 49:17
**mailing** 17:16
**make** 21:18
29:1 33:16
34:15 37:2
39:5,19 41:3
41:14,24 42:1
42:9,18,21
43:2,7,15,19,19
44:4,5 45:9,13
46:15 51:8
54:11,18 55:2
55:2,8,12 66:3
66:6 67:8 69:1
70:21 71:20
73:2,2,12
74:20 80:5
94:11,18 95:12
95:16,18 96:6
96:20 97:14
101:25 102:3,9
105:18 106:1
108:2,3,20,21
**makes** 43:21
**makeup** 46:5
**making** 30:2,10
36:23 46:1
48:20 65:15
67:10,19,25
68:5,9 77:1
92:25 93:4
108:6

Veritext Legal Solutions

**[manage - necessary]**

manage  72:15
manifest  50:18
manner  5:20
marianne  1:17
  5:3 111:2,17
marked  22:9
  22:11 31:14,19
  84:22 88:9
masters  53:6
material  85:16
mathematically
  16:7
matter  5:7 8:6
  8:25 22:16
  34:17 41:16
  42:15
matters  41:24
  42:22,22 43:2
  43:10 44:4,11
mean  6:21 11:3
  12:7,7,8,12
  18:22 19:10,24
  20:1 21:1 23:3
  24:9 27:8
  30:10,15 31:12
  31:12 33:25
  36:25 39:24
  40:5 42:12
  44:16 46:12,17
  48:1,2,23 49:1
  50:24 52:1,19
  53:12 57:16
  58:19 59:1
  61:22 62:2

65:6 69:14,19
  69:20,25 70:1
  73:22 80:20
  93:4 99:10
  104:24 108:11
  108:14,15
meaning  59:3
means  5:21
  96:11 104:12
  104:13
meant  56:17
  68:16
measure  25:4
  26:6 68:25
  98:12
media  90:18
  91:8 96:4
meeting  93:23
  94:3,21
meetings  17:12
members  40:1
memorized
  27:15
mens  50:10
mental  55:10
mention  72:11
mentioned
  19:15 31:12
  47:12 97:3
  99:1
met  82:18
michael  2:12
  6:5

michael.walton
  2:18
midwest
  113:17 116:1
mike  6:24
military  55:13
million  90:20
mind  21:7
  40:24
minded  20:14
  21:17
minutes  64:2,5
  109:5,12,16,19
mirrors  50:3
misconduct
  55:14 86:15
misheard  56:20
misrepresent
  54:2
missed  36:7
  88:21
mm  73:8
modified  76:15
moment  35:18
  58:8
money  45:24
  48:21 90:15,18
  90:21
months  82:12
  90:14
morning  5:2
  8:3
move  44:20
  56:2 63:21

moved  54:17
moving  12:21
  13:13,23 18:25
  35:17 57:23
multi  16:9,9

**n**

n  2:1 3:1 4:1
  5:1 55:18
name  5:2 8:6
  14:2,8,21 18:5
  28:2,7 51:20
  52:8,11,14,18
  55:20 78:6
  91:10,11,12
  113:6 114:3,4
  114:15 115:3,4
  115:21
name's  8:4
named  24:5
  35:9
names  17:15
  24:20 35:25
national  38:12
  50:19 51:4
  91:13
nature  61:3
  62:1
necessarily
  57:4 75:22
  105:11
necessary
  23:20

EXHIBIT 1  Page 137 of 156

**[need - okay]**

**need** 9:11 17:8 22:5,24 23:2 40:2 64:4 74:23 79:13 98:12 109:14
**needed** 16:8
**negative** 106:20
**neither** 111:11 112:7
**net** 46:10
**never** 16:17 51:8 53:19 94:5,24 99:13 99:14,19 100:1
**news** 91:21
**night's** 10:13
**nods** 9:5
**nominated** 11:12 13:18
**nomination** 12:10,13,16,24 15:5,15 16:22 32:15
**nominee** 15:16
**non** 37:11,20 46:20 47:24 48:6,18,24,24 51:14,18 57:12 57:20,25 58:16 59:7 65:7,10 68:12,14,15 69:17 71:1 79:4

**normal** 110:12
**normally** 82:9
**northern** 1:2
**notarized** 113:14
**notary** 5:10 111:18 113:25 114:10,18 115:15,23 116:23
**note** 88:13 113:12
**notes** 77:1
**november** 1:12 5:8 113:4
**nuance** 36:7
**number** 35:20 48:8 55:18 75:10 84:4 88:18 90:2 113:7,13
**numbers** 115:7

**o**

**o** 5:1
**o'clock** 109:1
**oath** 29:12
**oaths** 5:11
**obama** 91:9
**obergefell** 41:20 43:8,17 44:2
**objection** 5:12 7:16

**observe** 7:5,9
**obviously** 6:25 90:9 91:15
**occupant** 53:25
**occupational** 54:19
**occurred** 17:12 92:13,14
**office** 2:4 6:3,6 6:9,12,16 10:15,18 11:7 11:16 12:22 13:14,24 14:4 14:15 16:14 18:13 19:2 21:15 27:21 33:15,18,19,23 37:12,20 38:8 38:19,24 39:7 40:17,21 41:5 45:12 46:20 48:11 51:19,21 52:22 53:25 57:25 58:1,2 58:10,16 79:4
**officer** 19:9,21 51:22 75:5 77:16 111:1,2
**offices** 3:13 24:14 40:13
**official** 114:15 115:21
**officials** 37:2 40:6,8,9

**oh** 1:16 2:6,16 3:6 19:24 20:9 33:9 71:24 77:7 86:1 92:21 99:23 107:2,10 109:13
**ohio** 1:2,14 2:13 3:4,11,14 4:8,11 5:9,11 6:3,6,9,12 13:25 14:6,18 17:2,9,25 18:3 18:8 19:1 20:23 26:13 29:14 31:15 42:19,24 46:23 50:13 51:4 53:2 55:24 71:22 72:6,21 73:4,10 80:7 83:12 84:6 88:5 89:11 96:22 106:10 107:1,8 111:19 113:2
**ohioago.gov** 2:17,18 3:7
**okay** 7:12,15 7:25 8:15,21 8:24 9:1,21 10:2,7,12 11:6 11:9,15,18 12:9,9,15,24

EXHIBIT 1 Page 138 of 156

**[okay - paragraph]**

13:10,13,23
15:1,4,13,24
17:6,18,18
18:3,21 20:12
22:17,20,23
24:24 25:9,19
25:20,21 26:2
26:16,19 27:11
28:24 29:15,15
29:23 30:10,18
31:10,14 32:7
33:8 35:15,17
35:24 36:5
37:21 38:1,14
38:18 39:22
41:8,12,23
42:8,17 43:1,6
43:15 44:1
45:3,6 47:4,18
47:25 49:6
56:18 57:2,11
57:22 58:11,18
58:21 59:10
62:7,16 63:3,9
63:23 64:12,15
64:20 65:13,22
66:2,22 67:1,7
68:4 69:5,13
69:22 70:5,8
70:14 71:7,16
72:18,25 73:9
74:1,24 75:16
75:25 76:8
78:21 79:7

80:9,16 81:4,7
82:2,22 83:11
83:16,20,23
84:10,18 86:20
87:1,5,19,23,25
88:17,22 89:13
89:17 90:8
92:24 93:3,10
93:16,21 94:9
94:16 95:5,10
95:19 96:16
97:1,9,12 98:1
98:15 99:5,8
99:18 100:1,4
100:15 101:14
101:21 102:4
102:10 103:4
103:11,13,20
104:16 105:4
105:17,25
106:6,14 107:5
107:12 108:19
108:24 109:13
109:18,22,24
110:2
**old**  51:22
**omitted**  31:17
**once**  53:15 90:4
90:6
**onerous**  42:1
**ones**  16:20
**open**  21:17
**operates**  25:15

**opinion**  69:24
73:19 74:15
81:25 82:4,6
82:11,19 83:9
97:6 101:24
102:5,10
104:11
**opinions**  65:5
67:9 101:15,18
**opponent**  12:8
50:19 54:5
86:5 94:5
**oppose**  33:18
33:22 40:12
**opposition**
55:21
**order**  13:19
24:9,11,16
64:23
**ordering**  24:12
**organization**
49:8 55:23
**organized**
48:19
**orientation**
50:20 51:3,10
**origin**  50:20
51:4
**outcome**  34:16
41:15 43:10,20
55:5 80:2
111:16 112:12
**outright**  107:2

**overdue**  109:4
**overturn**  73:24
**overturned**
42:3
**own**  22:23 41:4
58:17 103:13
**oxymoron**
32:13

**p**

**p**  2:1,1 3:1,1,3
5:1
**p.m.**  110:14,16
**page**  4:2,6
24:24 59:17,18
60:16,24 61:1
61:1 64:18
74:25 113:13
113:15 115:7
116:3
**pandemic**
90:15,25
**panel**  46:4
87:10,24 88:12
88:16
**paragraph**
23:18 24:25
25:2,21,21
30:18,19 31:3
31:23,24 32:6
33:1,1,9 35:9
36:13 47:13
57:18 59:18,20
59:21 60:10,11

**[paragraph - people's]**                                      Page 24

60:15,17 61:5
64:18,20,21
68:17 69:7,14
70:18 71:3,16
74:24 75:1,7
77:13 79:21
**paragraphs**
79:8
**parsing** 105:14
**part** 28:20
40:11 60:25
61:23 86:13,13
100:19 101:19
115:9
**participate**
34:23 48:17
**particular**
21:11 27:17
28:16,18 29:2
29:4,18,18
30:3,12,12
37:13 66:21,22
77:13 97:10
101:21 102:6
102:11,25
103:21 104:10
104:19 105:3
105:12 107:14
107:15
**parties** 5:13
6:21,22 23:22
32:19 36:25
37:1,17 106:17
106:25 111:12

111:14 112:8
112:11
**partisan** 24:4,7
25:7,23 27:9
27:12,19,23,23
28:1 29:21
32:12 33:13,14
35:1,2,3 36:18
36:20 46:19
48:6,24 50:23
51:14,16,17
57:12,19 59:6
59:6 61:7,11
61:22 62:9,13
62:16 63:4,9
63:17 64:23
65:1 68:18
69:3,6 70:19
71:18 72:4
77:19,20 80:12
80:17,23 81:3
81:7,13,19
92:6 93:18
95:7 96:2
97:13
**parts** 24:5,6
31:21 78:23
**party** 7:1 11:13
12:10 13:19
14:22 15:6,15
15:17 16:1,2
16:11 17:3,22
17:25 18:8,16
18:19 19:14,17

20:13,18,25
21:5,11 24:14
24:19 26:8
28:6,14,20,23
29:2 32:15,21
32:23 33:16,17
34:4,10,13
36:24 37:3,15
37:16,18 38:9
38:16,19 39:1
39:3,6,20 41:5
41:7,11 44:17
48:19,21,22
55:23 75:1,8
75:19,21 76:14
76:20 77:23
78:1,5 79:14
80:18,25 81:16
81:22 83:1,17
83:20 89:13,19
90:4,11 95:24
96:11,12,13,16
99:2,3 103:9
105:19 106:10
107:7,8
**party's** 12:15
12:24 13:20
14:20 16:22
17:10 18:4
28:5 76:3
78:23 81:10,15
83:6 103:22
104:4

**passage** 97:12
**past** 17:13 96:8
**patrick** 2:3
6:17 113:5
**pay** 34:10
37:18 39:2
45:18,24 69:3
99:2
**pearson** 61:19
**pending** 34:17
41:16,24 42:18
42:21 43:2
44:4,6,10 55:5
70:3 100:17,23
101:1,17,23
**people** 16:13,14
18:23 30:5
32:21 38:11
40:2,16 43:24
44:21 45:23
66:17 74:6
75:13 78:6,11
78:25 79:2
81:11 90:6,17
90:19 91:13,14
91:17 92:7,16
93:5,8,23,24
94:1,10,11,17
94:18,23,25
95:14 104:13
105:14 107:3
107:21 108:9
**people's** 44:13

**[pepper - prayer]** Page 25

pepper  17:13
performance
  45:11
period  101:4
periods  91:12
permit  17:17
permitted  5:17
  75:2 98:10
person  49:8
  55:20,22 56:25
  76:21 87:16
person's  83:9
  107:8
personal  20:10
  40:18 57:14
personally  21:1
  75:11 114:11
  115:15
petitions  10:21
  11:4 14:13,16
pfeiffer  3:12
  6:11,11 7:6,7
  7:10
phillippi  112:2
  112:15
phone  113:3
phrase  27:5
pick  9:6 14:22
pickaway  90:4
  91:23 92:3,12
picked  78:9
picking  80:4
picture  34:1

piece  90:23
pink  89:23
place  82:20
placed  24:13
plainly  64:22
  68:17 69:7
  71:18 72:2
  96:6
plaintiff  1:6 2:2
  6:18 9:25 24:7
  25:14 27:1
plaintiff's  23:8
  25:15
plan  17:2,4,6
  66:6 97:20,24
  102:3 106:14
  107:21
plank  29:1
plans  102:10
platform  16:16
  20:20 28:5,10
  28:15,18,20,23
  29:2 66:6 76:3
  78:24 81:10,11
  81:15 83:6
  103:22 104:4
platforms
  81:21
pleas  11:8,22
  15:23 34:21
please  5:25
  7:18 8:6 9:11
  9:12,16 20:1
  53:5 103:25

113:11,11
pledge  30:2
  73:6
pledges  45:9,13
  46:15 73:2
  99:24
plus  63:17
pmq  2:7
point  34:25
  44:20 53:1
  54:16,21 87:4
  99:21
policies  20:16
  20:17,24 21:4
  21:6,11 76:3
  80:24 103:9
  105:6
policy  17:14
  69:24 70:10,13
  70:15,25
political  13:18
  13:20 24:13,19
  32:9,15,19,21
  33:16,17 36:24
  36:25,25 37:15
  37:16 38:9,16
  38:19,25 39:6
  39:20 41:4,7
  44:17 48:19,21
  48:22 55:23
  76:14 92:22
politics  91:22
pornography
  93:5

portion  47:7
  60:20
portions  24:1
  31:2 35:11
  36:3 39:17
  56:5 57:11,19
  59:11 61:10
  62:9,17 63:17
  80:11,11 86:9
  86:11 87:1
  98:1,16
position  28:7
  35:1 38:16,25
  51:19,22 54:3
  54:5 70:9
  75:23 78:16,21
  80:4 86:18
  91:16 103:21
positions  82:25
possession
  104:20
possible  46:9
post  24:21 86:2
  89:4
postage  17:16
posted  91:23
potential
  106:10
powers  32:18
practice  7:5
  71:11
prayer  23:3
  24:23

**[pre - protesting]**

| | | | |
|---|---|---|---|
| **pre** 24:21 | **prevented** | **problems** 62:4 | **prohibited** 34:3 |
| **preamble** 32:8 | 79:20 95:11 | **procedural** | 45:14 56:22 |
| **precedent** | **prevents** 45:3 | 5:18 | 105:8 108:3 |
| 73:25 | 65:2,15 69:23 | **procedure** | **prohibition** |
| **precisely** 71:12 | 70:20 72:2 | 114:5 115:5 | 67:5 |
| 82:18 | 78:22 80:18,23 | **procedures** | **prohibitions** |
| **predators** 93:6 | 81:3 | 74:11 | 48:6 52:4 |
| **predict** 69:10 | **previously** 65:4 | **proceeding** 5:4 | 102:7 |
| 71:5 | **price** 37:7 | 5:16 51:20 | **prohibits** 64:22 |
| **predictable** | **primarily** | 53:8 101:7 | 65:24 67:2 |
| 16:15,19 | 90:18 | 110:17 112:4 | 71:17 75:17 |
| **prefer** 62:22 | **primary** 11:9 | **proceedings** | 76:2 83:5 |
| 102:13 109:14 | 11:18 12:1,8 | 55:6 62:1 | 107:25 |
| **prejudice** | 13:3,8,9,11,17 | 99:20 100:17 | **prominent** |
| 50:18 56:5 | 13:20 14:1,2,7 | 100:18 111:3,5 | 52:10,14 53:11 |
| **prejudiced** | 14:8,20,20,25 | 111:6,9 112:6 | **promise** 27:19 |
| 51:9 | 16:1 32:15,19 | **process** 10:20 | 106:16 |
| **prepare** 10:3 | 57:25 78:3 | 25:19 27:4,6 | **promises** 45:9 |
| 10:12 | **principles** | 44:14 60:18,22 | 45:13 46:15 |
| **prepared** 10:5 | 39:13 | 73:21 | 97:9,14 107:6 |
| 112:3 | **prior** 17:10,20 | **produced** 5:15 | 107:13,18 |
| **present** 3:10 | 98:21 100:16 | 84:2,3 85:16 | **promising** |
| 54:3,4 | 111:5 | 88:18 | 27:20 106:24 |
| **preserve** 64:23 | **privacy** 44:14 | **production** | **proper** 23:21 |
| **president** 91:9 | **private** 8:25 | 10:6 113:15,17 | **proportion** |
| **presidents** | 66:8 | 113:22 | 89:25 |
| 20:21 | **probable** 99:14 | **professional** | **prosecuted** |
| **presumably** | **probably** 8:20 | 3:15 6:14 | 53:2,4,4 93:9 |
| 34:4 | 13:7 19:15 | 49:11,18 54:19 | **prosecution** |
| **pretty** 9:17 | 27:7 32:13 | 82:5 83:4 87:9 | 82:17 |
| 20:14 91:9 | 42:1 45:15 | 101:17 | **protection** |
| **prevent** 76:9 | 51:3 | **prohibit** 81:9 | 23:15 44:21 |
| 92:25 103:23 | **problem** 94:24 | 81:14,20 | **protesting** |
| | | | 43:25 |

**[proved - recall]**

**proved** 60:8
**provision** 35:18
  41:2 56:5 57:3
  57:24 99:15
**provisional**
  91:24
**provisions**
  24:17 25:11
  30:23,25 31:5
  32:1,4 33:10
  36:14 37:22
  38:3 47:14,16
  49:23 56:4,24
  57:7 58:12,23
  86:21
**prudent** 105:16
**public** 18:24
  21:20 28:5,21
  33:17,19,23
  39:6 40:13,21
  43:5,12 51:19
  62:25 63:1
  78:1 111:18
  114:10,18
  115:15,23
  116:23
**publication**
  55:23
**publicly** 33:18
  33:22 40:12
  66:7
**publish** 86:2
**pulled** 54:8,25

**purchase** 37:8
**purposely** 57:1
**purposes** 57:23
**pursuant** 23:7
  23:13,18,19,24
**put** 17:14 45:19
  71:13 73:7

**q**

**qanon** 92:22
  93:1,4,13,15
**qualifications**
  54:3,4
**qualified** 111:7
**question** 20:3
  31:22 32:4
  33:1 35:10
  44:12,18 47:5
  50:10 57:17
  60:15 63:15
  64:25 71:4,24
  72:7 77:25
  80:8,21 92:9
  92:19 100:12
  103:17,25
  104:1 107:11
**questionable**
  102:9
**questions** 9:4,9
  9:15,16,19
  38:3 44:14
  59:16 66:7,9
  66:14,17 67:3
  105:7 106:19

108:8,15,17
  109:25 110:3
**quietly** 93:24
  95:3
**quinn** 2:3,4
  6:17,17,18
  8:12 12:18
  22:4 56:10,15
  63:25 64:4
  76:22,25 84:21
  87:14,19 109:9
  109:17 110:2,8
  110:9 113:5
**quite** 57:2

**r**

**r** 2:1 3:1 5:1
**race** 16:8,9
  50:19 51:4
**radio** 78:10
**raise** 7:18
  90:15
**raised** 48:10
  90:20,21
**raising** 48:21
**ran** 11:13 16:3
  16:10 83:11
  89:10 96:3
**rate** 43:13
**rea** 50:10
**reach** 90:18
  107:14
**reached** 32:16

**reaction** 95:24
**read** 10:9,9
  20:5 23:2
  25:19 30:5
  54:14 61:14
  86:25 91:21
  110:4 114:5,6
  114:12 115:5,6
  115:17
**reading** 110:10
  113:19
**reads** 25:9
**really** 17:8,23
  19:7 28:7,10
  29:7,20 30:17
  35:4,4 44:6
  45:1 67:6
  82:19 93:8,25
  93:25 94:7
  95:14 103:19
  105:20 108:18
**reason** 16:5
  43:22 45:18
  113:14 115:8
  116:3
**reasonable**
  23:8,8 24:22
**reasonably**
  34:16 43:9
**reasons** 16:20
**recall** 13:4
  82:15 87:2,25
  88:14,19

EXHIBIT 1  Page 143 of 156

**[receipt - requirement]**

**receipt** 113:18
**receive** 17:18
  18:3
**received** 17:9
  99:4 100:4
**recent** 8:19
  108:10
**reckless** 50:7
  50:11 54:6
  86:6
**recognize**
  22:10 32:20
  88:7
**recollection**
  86:22
**recommendat...**
  46:6
**record** 5:4,5,13
  5:25 7:8 8:7
  20:7 55:9 64:8
  64:10,11,13
  104:11 107:20
  109:20,21,23
  110:14 111:9
  112:5 115:9
**recorded** 5:20
  8:9 111:6
**recording** 5:15
  111:8 112:4
**red** 89:24
**redistricting**
  96:23
**reduced** 111:7

**reelect** 53:17
**reelected** 16:23
**reelection**
  11:17,20,21
  13:15 14:18
  15:21 16:3
**refer** 42:15
**reference** 113:7
  114:2 115:2
**referenced**
  114:11 115:15
**referred** 36:4
**refrain** 68:8
**refresh** 22:24
**refute** 75:24
  78:13 90:7
  91:16 92:17,20
  93:11,20
**regard** 23:9,12
  23:17,23 61:16
**regarding**
  50:12 79:14
**regards** 23:10
  23:10
**regulating** 25:5
  25:11 26:6
  104:19
**regulation**
  25:16,18 27:2
  27:3,6
**related** 50:4
  111:11 112:7
**relates** 26:16

**relating** 57:3
**relation** 23:14
**relative** 111:13
  112:10
**relief** 22:25
  23:5,6,13,20,24
  25:22 61:3,5,6
  62:8,11,14,19
  62:22 63:5,7
  63:10,15 68:23
**religion** 50:19
  51:4
**religious** 78:9
**remains** 52:24
  61:12
**remedy** 23:6
**remember** 13:1
  21:20 50:9
  60:2,5,6,7,9
  90:3
**repeated** 20:7
**rephrase** 12:9
  80:22 92:9
  103:25
**report** 91:21
**reported** 1:17
**reporter** 5:2,3
  7:16,24 9:6
  20:6,7 64:9,12
  109:22 110:5,8
  110:13 114:7
**represent** 35:8
  45:17 85:23
  88:17

**representative**
  48:9 53:16
**representatives**
  34:6 53:14
**represented**
  87:15
**representing**
  6:21,22,25
**represents** 6:20
**republican**
  16:11 19:17
  38:12 39:25
  40:9 76:6,7,10
  83:6 89:24
  91:22 96:10
**republicans**
  28:22
**request** 101:23
  110:11 115:9
  115:11
**requested** 20:8
  111:21
**requests** 26:1
  100:23 101:15
  101:18
**require** 24:2
  92:6
**required** 48:6
  51:13,16,17
  113:25
**requirement**
  46:19 51:12
  52:16

EXHIBIT 1  Page 144 of 156

**[requirements - rule]**

**requirements**
15:19 48:4,5
82:19
**requires** 85:14
**requiring**
24:17
**research**
102:18 103:3
**reserve** 110:3
**reserved**
110:15
**resign** 58:1,17
**resolve** 97:10
**respect** 14:11
25:23,24 41:24
56:3 60:15
65:13 75:7
99:18
**respond** 99:6
100:1
**response** 87:13
87:20,22,23
99:6 100:23
110:6
**responses** 10:4
10:8
**responsible**
87:17
**restraining**
24:9,11,16
**restrictions**
24:18 37:19
47:24 108:12

**restroom** 9:12
**result** 30:12
72:16 73:1
87:5 98:2
107:14
**results** 49:12
90:8
**retain** 86:18
**retained** 4:14
**reticence** 95:20
**reticent** 95:6
**retired** 53:7,9
53:10,15 96:5
**returned**
113:18
**reversed** 41:21
**review** 10:10
22:17,24 35:18
42:1 45:16
58:8 85:15
111:21 113:12
114:1 115:1
**reviewed** 10:4
10:7 35:5
**reviewing**
110:10
**reviews** 46:5
**revised** 36:19
49:5 50:4
54:15,21 55:6
59:13
**revisit** 65:20
**revisited** 43:18

**revived** 41:20
41:25
**richland** 93:22
94:13,14,15,15
94:18
**richmond**
94:11,13
**rick** 82:10,22
83:3
**right** 7:10,18
8:16 9:1 15:13
21:9 22:8 23:3
24:24 31:9,10
35:24 38:1,23
39:4 41:1
42:11 43:1,15
44:6 46:11
50:2 51:25
56:1 58:11,18
58:20 60:9
63:3,20 64:15
66:15 67:14
68:8,14 69:5
69:19 70:8
71:9 72:25
78:9 79:7
80:16,16 83:12
85:10 86:8
87:25 88:19
89:5,10 93:10
96:19 98:20
99:13 100:15
101:5,14
102:15 103:4

104:16 105:1
107:12 108:19
110:3
**rights** 23:7,11
23:22 29:24,25
30:2 41:19
44:13
**rise** 29:2
**roe** 42:3 43:8
44:2
**room** 9:10,12
**rubric** 108:11
**rule** 23:25
24:18,18 25:13
25:24 26:22
30:24 31:4
32:2,6 35:5,10
35:17 36:13
37:10,22 38:2
38:3,4,6 39:5
39:16,17 40:10
41:1,12 42:8
43:7,14,14,16
44:5 45:3,6,12
45:14 46:2,16
47:5,9,11,12,18
47:25 48:3,25
49:20,23 50:2
50:3,23 56:6
56:22 57:2,6
57:11,19,23
58:5,8,12
59:11,21 60:1
60:13,17,21

EXHIBIT 1  Page 145 of 156

**[rule - services]**

72:3,25 82:21
86:14,14,20
99:18,20 100:2
100:12,21
101:21 103:5
**rules**  5:19 9:2
9:18 33:13
36:1,20 46:1
46:21,22 47:16
47:23 58:6
62:23 65:9
69:3 80:4 82:8
83:25 97:18,22
97:24 98:6,10
98:13 114:5
115:5
**ruling**  34:21
**run**  11:9,18
12:1 13:17,21
14:1,7,19,23
15:11,14,18,22
15:24,25 16:17
40:17 48:9,11
53:13,15 58:17
96:4,14,16
**running**  15:21
16:14,16 20:19
21:15 27:23
34:1 37:20
38:11 42:4
46:19 48:11
58:10,16 79:4
87:12 92:5

**s**

**s**  2:1 3:1 4:5 5:1
113:15 115:8,8
116:3
**sake**  31:16
**sanctions**  71:10
**satisfied**  62:15
79:25
**save**  22:5
**saying**  28:12
45:23 46:7
51:7 65:2,11
66:5 75:20,21
76:9 78:22
80:20 82:3
103:10 105:10
106:4
**says**  22:22 25:2
30:22 31:4
32:8 36:21
44:9 57:24
60:17 61:15
70:7 75:1
**schooling**  54:12
**scope**  59:24
**screen**  94:6
**screened**  13:7
**seal**  114:15
115:21
**search**  44:12
**seat**  11:11
58:17

**second**  38:2
**secretary**  8:22
16:10 23:25
36:20 38:22
52:22 53:4
91:6
**section**  2:14
3:12,13 7:7
34:12 46:23
47:10 52:23
54:17 58:21
76:14 85:21
86:2,25
**sections**  56:24
**see**  26:5,25
43:24 77:2
88:18
**seeing**  88:14
**seek**  11:16 12:9
12:22,24 13:14
13:24 14:5
15:15 17:2,4,6
18:7 38:7,14
38:24 39:5,19
40:11,21 41:3
41:14 45:13
49:7 56:6,21
56:23 74:14
102:10
**seeking**  12:16
14:19 15:5,16
16:3,21 23:1,5
25:22 43:16
58:2 59:25

60:12,21 61:3
61:6 63:15
80:10 106:8
**seeks**  59:21
**seems**  16:19
**seen**  52:24
84:25 88:11,13
88:20
**seizure**  44:13
**select**  80:11
**senate**  24:1,8
25:3,7,10,23
26:3,15,17,21
30:22,22 31:25
33:2 35:12
36:2 50:1 57:8
58:25 61:7,11
79:16,23 97:13
**senator**  48:9
**send**  100:7
**sense**  36:16
69:14 104:18
**sentence**  25:9
26:20 30:21
**september**
90:16
**servant**  21:20
**served**  91:6
**serves**  25:16
27:1
**service**  18:24
45:20
**services**  55:15

**[serving - spokesperson]**                                          Page 31

| | | | |
|---|---|---|---|
| **serving** 38:19 38:23 | **similar** 69:2 | **solicit** 41:3 | 79:20 107:25 |
| **set** 16:16 59:15 77:12 | **simpson** 97:4 | **solicitations** 57:4,14 | **speaks** 35:19 36:10 |
| **setting** 67:25 | **simultaneously** 63:16 | **soliloquy** 76:19 | **special** 53:20 |
| **seven** 10:22,25 11:2 | **sincerely** 113:21 | **solutions** 113:1 116:1 | **specific** 40:20 50:5 52:12 71:19 73:11 |
| **sex** 50:19 51:4 | **singling** 104:6 | **somebody** 34:1 40:17 46:17 72:13 101:10 | 75:18 79:17 84:8 101:24 |
| **sexual** 50:20 51:3,10 97:4 | **sir** 113:10 | **sorry** 12:4 20:4 33:9 36:7 42:19 47:21 57:15,16 62:12 | 102:2 104:6 108:1,20 |
| **shared** 34:11 | **sitting** 40:24 60:19 69:5,15 71:7 98:17 101:7,12 102:24 108:7 108:19 | **sorts** 44:24 | **specifically** 25:2 35:9,25 39:19 57:11 59:20 61:5 64:25 75:7 76:8 77:18 82:15 99:19 100:13,21 108:7 |
| **sheet** 113:13 115:7,10,18 116:1 | | **sought** 10:18 67:9,14 102:4 | |
| **show** 30:7,9 | **situating** 59:19 | **source** 55:17,19 | |
| **showed** 9:10 | **situation** 41:6,8 49:12 | **spatially** 25:3 | |
| **shown** 113:16 | **six** 10:22 17:19 | **speak** 19:16 29:11 35:2 39:9,12,18 41:21 43:17 44:11 69:7 72:4,8 73:2 74:17 75:4,6,8 77:15,17,22 79:9,9,19 94:24 95:20 | **specifics** 103:18 |
| **shut** 69:18 70:25 | **size** 52:17 | | **specified** 36:4 |
| **shutdown** 44:15 45:4 69:10 | **skills** 111:10 112:6 | | **speech** 25:16 25:16 27:1,2 47:1 50:4 82:7 82:18 94:22 96:1 108:10 |
| | **slate** 18:5 21:18 39:25 40:1 49:4 | | |
| **side** 38:12 45:19 88:4,6 102:13 | | | |
| | **sleep** 10:13 | | |
| **sided** 4:12 88:4 | **smith** 3:14 6:13 6:13,25 | | **speeches** 33:16 39:5,19 |
| **sides** 21:18 | **snagged** 46:11 | **speaking** 19:14 21:21 23:5 44:16 45:4 64:22 65:24 68:17 70:20 71:18 72:2 | **spelled** 71:11 |
| **signature** 110:15 111:16 112:14 113:14 | **social** 90:18 | | **spoke** 42:5 96:6 |
| | **socioeconomic** 50:21,25 51:2 51:11 | | **spokesperson** 89:4 |
| **signed** 88:6,12 114:13 115:18 | | | |
| **signing** 113:19 | **solely** 47:18 | | |

**[sponsor - supposedly]**

**sponsor** 35:22
**sponsored**
  48:19
**sports** 34:23
**spot** 42:4
**stake** 102:14
**stance** 103:21
**stand** 30:8 40:1
  94:22
**standard** 50:6
**start** 22:1
  27:14 33:7
  38:4 49:16,16
  62:12 87:12
  92:21 103:18
  103:19
**started** 101:4
  104:12
**starting** 17:13
  18:12 105:23
**starts** 49:15
**state** 8:6,22
  16:10 17:21
  26:13 29:14
  34:2 35:21
  36:20 37:16
  38:22 42:16
  48:9,9,11 53:5
  53:16 54:25
  55:10,16,21,25
  80:6 90:14
  91:6,22 92:5
  111:19 114:10
  115:15

**state's** 40:3
  52:22
**stated** 85:20
  86:23
**statement**
  30:10,14,16
  32:12 34:15
  41:14 42:9
  43:21 47:13
  51:9 54:11,18
  54:22 55:2,3,8
  55:12,18,19
  68:16 70:10,13
  71:2 85:24
  95:18 101:25
  102:6,12
  108:20 114:13
  114:14 115:19
  115:19
**statements**
  28:25 41:23
  42:17,20 43:2
  43:18 44:3
  48:20 51:23
  55:19 70:14
  71:13,15,25
  84:7,8,11
  85:16 93:1
  96:20 102:2
  108:1,5
**states** 1:1 23:16
  24:10 29:13
  34:18 41:17
  43:3

**statewide** 75:2
  91:9
**status** 50:21,25
  51:2,12
**statute** 51:23
  52:5 54:25
  55:7,11,16
  56:1 104:19,22
**statutes** 54:9
**stay** 38:1
**staying** 37:13
  74:25
**stenographic**
  5:21
**step** 43:23
**stephen** 3:3
**stephen.tabat...**
  3:7
**steve** 6:8,24
**sticker** 22:5
**stipulation**
  5:22
**story** 75:21
**street** 1:15 3:5
  5:9
**strike** 80:21
**struggling**
  90:17
**students** 34:22
**subdivision**
  34:8
**subject** 49:9
  61:9 71:23
  83:24 99:19

**subjected**
  55:13
**submitted**
  87:19
**submitting**
  87:15
**subscribed**
  114:10 115:14
  116:21
**substance**
  73:20
**substantive**
  60:18,22
**successful**
  11:24
**suite** 2:5 113:2
**summarize**
  22:25 23:4
  61:12
**superior** 113:1
**supplied** 89:2
**support** 18:21
  20:17,24 21:5
  48:21 78:24
  93:25 104:21
**supported** 21:6
  75:18 80:25
  81:16
**suppose** 16:18
  27:5 50:24
  62:4
**supposedly**
  48:20

**[supreme - things]**                                                     Page 33

| | | | |
|---|---|---|---|
| **supreme**  13:25 | 114:10,13 | 101:14 103:20 | 16:21 19:20 |
| 14:6,17 15:2,6 | 115:14,18 | 105:4 107:23 | 21:10 33:5 |
| 15:22 17:15 | 116:21 | **talking**  18:15 | 58:2 60:10 |
| 18:1,14 19:1 | **system**  12:14 | 21:13 28:18 | 85:7 89:10 |
| 20:23 42:10,13 | **t** | 30:19,20 31:24 | 92:15 98:22 |
| 42:16,19,24 | | 71:9 94:22 | 104:2 |
| 43:3,12 49:20 | **t**  4:5 | 95:3 96:9 | **testifying**  111:5 |
| 65:5,13,16,19 | **tabatowski**  3:3 | **teeth**  52:5 | **testimony**  62:3 |
| 65:25 66:4,10 | 6:8,8 | **television**  96:3 | 92:11 114:6,7 |
| 66:15,18 67:8 | **table**  31:15 | **tell**  7:22 21:23 | 115:6,9,12 |
| 67:11,16,20 | 37:9 | 23:2 31:11 | **thank**  7:24,25 |
| 68:1,6,11 | **take**  5:4,10 | 44:6 54:20 | 8:3 11:6 12:6 |
| 69:16 70:23 | 22:23 29:12,23 | 60:4,6 69:11 | 12:19 22:6 |
| 71:22 72:5,21 | 45:25 49:13 | 74:19 84:10 | 42:20 56:18 |
| 73:4,10,24 | 63:23 67:6 | 92:23 94:10,17 | 84:21 109:25 |
| 83:12 84:5 | 79:10,11 | 107:21 108:18 | **that'd**  31:9 |
| 89:11 96:21 | 104:16,17 | **telling**  78:17 | 109:6 |
| 97:16 106:10 | 109:10,11,14 | 95:11 | **theirs**  83:10 |
| 106:17,25 | **taken**  5:7 34:1 | **tells**  49:5 75:21 | **theoretically** |
| 107:7,20 | 44:23 79:15 | **term**  11:11 | 98:10 |
| **sure**  8:8 10:24 | 111:3,12 112:9 | 13:2 15:1 | **thin**  103:19 |
| 17:23 23:4 | **talk**  19:18 29:7 | 46:11 52:6,8 | **thing**  20:16 |
| 38:21 69:1 | 30:4 34:20 | 52:15 53:7,8,9 | 21:25 29:23 |
| 70:21 71:24 | 35:22 42:14 | 53:9,10,17,17 | 47:25 48:23 |
| 97:23 102:18 | 67:22 70:17 | **terms**  16:7,15 | 50:2 51:1 |
| 106:18,22,22 | 73:9 93:23 | 21:7 24:8 | 54:15 57:5 |
| **suspended** | 95:2,2,6,14 | 36:16 52:4,13 | 78:15 105:21 |
| 102:16 | **talked**  17:20 | 58:22 59:5 | 105:22 |
| **suspension** | 18:16 36:8 | 71:14 72:9 | **things**  27:19 |
| 71:10 | 44:2 47:4 | 76:5 89:25 | 29:9 35:19 |
| **swear**  7:17 | 68:10 69:9,15 | **territories** | 36:10 37:13 |
| **swore**  9:20 | 70:23 79:7 | 34:19 41:17 | 41:18 44:24 |
| **sworn**  5:13 | 94:4 97:8 | **testified**  7:23 | 49:9 50:5 |
| 7:21 111:5 | 98:21 100:6,16 | 14:12 15:4,9 | 56:21 61:2 |

**[things - typically]** Page 34

65:4,12 68:19
69:19 70:24,25
75:11 76:19
79:18 90:7
91:14,18,19
92:16 93:14
107:24
**think** 7:13 13:6
15:4 17:8,24
21:14,22 28:11
30:7 31:8 35:5
38:18 39:21,22
41:10,10,18
43:21 46:18
51:1 52:17,21
53:14 54:7
57:16,22 59:15
61:17,25 62:20
63:13,20 65:17
65:21 66:11,11
66:20,24 67:4
68:21 71:4
72:7 76:1,4,19
77:24 78:25
80:7 81:12
82:16 83:23
85:19 88:11
89:23 90:3
92:10,15,24
97:3 98:20,22
103:7,20 105:8
105:15,17,20
105:25 107:23
108:13,24

109:4
**thinking** 13:6,7
**third** 16:6
96:10,13,16
**thirty** 113:18
**thomas** 3:11
6:15
**thought** 56:11
90:16
**three** 16:8 88:6
88:12 96:5
**ticket** 37:7 40:1
**time** 1:13 5:24
22:24 32:18
49:13 53:9
63:24 72:15
87:12 88:11
91:7 108:5,25
**times** 10:17,22
11:2 53:13
**title** 51:19
**today** 8:4 9:4
9:19,21 10:3
40:24 69:5,8
69:15 71:8,14
101:8,12
107:23 108:7
108:19 110:1
**together** 33:24
81:7,20
**told** 21:25
67:18,25 74:23
81:18 92:7,11

**took** 82:12,12
87:11
**tools** 62:24
**topic** 63:22
72:11
**topics** 44:1
**tort** 97:4
**total** 10:24,25
**toward** 50:18
**towards** 51:9
**traditional**
16:24
**training** 54:12
**transcribed**
114:7
**transcriber**
112:1
**transcript** 5:15
111:21 112:3,5
113:11,12
114:5,12 115:5
115:11,17
**transcriptionist**
111:8
**transgender**
34:22
**transgenders**
34:22
**transmit** 86:3
**treatment** 55:9
**trees** 31:16
**tried** 84:9
**trouble** 72:12

**troy** 53:13
**true** 75:22
91:15,18,20
111:9 112:5
**trump** 78:7
91:13
**truth** 7:22,22
7:23 60:6
**truthfully** 9:19
**try** 18:22 53:22
90:15 96:11
**trying** 29:22
36:2 46:8,13
75:25 77:25
93:16,19
107:10 108:13
**tuesday** 1:12
**turn** 24:24
30:18 60:24
64:18
**turning** 21:22
**twitter** 89:4
**two** 4:12 16:14
17:21 26:11
53:5 88:4 91:5
96:3 99:9
100:6 108:10
**type** 91:24
**typewriting**
111:7
**typically** 16:13

**[u.s. - violate]** Page 35

**u**

**u.s.** 42:12 43:12
65:5,13,15,24
66:4,10,15,18
67:8,19 68:1
73:24
**uh** 9:5
**unable** 79:9
92:20 93:11,20
94:10,17 95:21
**unconstitutio...**
25:3,14 26:4
26:17,23 29:10
31:1 32:3 33:4
33:11 35:13
36:1,15 37:24
38:7 41:13
47:2,7,15
49:25 57:8
58:7,14,24
61:8 79:24
98:11
**under** 5:18
17:16 23:11
24:8 34:3 43:7
55:19 102:6
108:11,11
**underneath**
60:16
**understand**
5:14 9:14,16
25:6,22,25
35:24 36:5

39:16 61:4
74:6 82:3 90:8
92:11 93:19
107:10
**understanding**
26:24 28:13
60:11,20,23
65:22 70:21
76:12 83:24
85:10 86:8
103:14
**unexpired** 13:2
**unfair** 90:16
**unfortune**
45:17
**unintelligible**
110:5
**union** 90:1
**unit** 2:15
**united** 1:1
23:16 24:10
29:13 34:18
41:17,25 43:3
43:8 44:2
**universe** 74:13
**unopposed**
10:19
**unpartisan**
72:3
**unreasonable**
25:4,17 26:5
27:2
**untruths** 92:22

**upcoming** 17:1
40:15 65:3
97:19 101:25
102:3,12 105:5
105:9 106:7,15
106:23 107:6
107:13,18
108:2,21
**upheld** 62:17
**uphold** 29:12
30:15
**upholding** 30:4
**usc** 23:7,13,19
25:1
**use** 9:12 37:18
40:17 48:10
49:8 51:19
52:6 53:7,17
53:17 59:11
**used** 46:22
52:15 53:10
54:16 55:24
58:22 79:25
90:18 96:10
**uses** 5:17
**usually** 17:22

**v**

**v** 1:7 42:3 43:8
44:2 113:6
114:3 115:3
**validation**
96:11,13,17

**values** 18:16,18
18:21,22
**vance** 34:20
**varies** 20:20
**vastly** 15:19
**venezuela**
69:20
**verbal** 9:4
**verbally** 21:1
**verified** 22:15
**veritext** 5:4
113:1,7 116:1
**veritext.com.**
113:17
**versa** 28:8
**versus** 19:6
**vestige** 51:22
54:15
**vice** 28:8
**video** 8:10,11
8:12,13 10:11
**view** 29:16
104:7,9,21
**viewpoint**
28:15 29:3,8
29:17 30:1,11
**viewpoints**
27:16
**violate** 46:12
46:13,16 67:11
67:16,20 68:2
74:16 103:7
104:7,21
105:17,25

**[violate - written]** Page 36

106:4
**violated**  49:14
  74:20 84:7,11
  85:22
**violates**  27:18
  59:22
**violating**  60:1
  60:13 69:1
**violation**  23:7
  23:10 50:16
  54:8 82:7
  87:24 88:1
  99:15,20 100:2
**violations**
  46:24,25 84:15
  85:11 98:24,25
  100:5,19,24
  102:17,21
**vocational**
  54:19
**vote**  27:17
  28:16 29:4
  39:14 52:10
  78:4 89:25
**voter's**  95:24
**voters**  21:16
  91:17 95:6,12
  95:20 105:10
  105:18 106:1
**votes**  16:7 78:2
**vs**  5:7 9:22

**w**

**wade**  42:3 43:8
  44:3
**wait**  9:7,8 37:4
  82:13
**waited**  87:22
  87:22
**waived**  113:19
**walton**  2:12 6:5
  6:5 109:2
**want**  19:7
  27:25 28:17
  30:18 32:22
  33:6 35:4,20
  38:10 41:21
  42:2 43:22,22
  47:12 48:2,12
  49:20 50:22
  53:1 56:2 57:5
  57:5 61:2
  63:21 64:25
  67:6 69:13
  70:21 75:6,6
  77:17 79:10
  80:3 101:25
  105:14 108:1
  108:20 109:10
  109:10
**wanted**  73:11
  73:15 77:13
**wanting**  42:13
**wants**  48:9
  56:25 62:6

**warning**  100:4
  100:7,15
  105:10
**watching**  91:24
**way**  13:4 14:21
  15:9,22 16:8
  16:24,25 19:10
  21:7,8 28:14
  29:22 45:25
  46:9 65:6,11
  68:24,24 82:18
  92:10 97:10
**ways**  27:11
  30:6 46:3 50:3
**we've**  30:19
  62:10,18 63:22
  69:8 70:23
  71:9 79:7 99:9
  100:6
**web**  46:10
**weeks**  92:4
**went**  11:13
  17:16 38:12
  87:8 93:22
  103:1
**wherefore**
  60:25 61:1
  63:21
**white**  72:9
**willing**  65:20
**win**  16:8
**wing**  78:9
**withheld**  74:12

**witness**  5:13,14
  7:17,21 8:13
  20:9 24:22
  56:11 64:3
  76:23,24 77:1
  77:2 109:6,13
  109:18 111:4
  113:8,11 114:1
  114:4,11 115:1
  115:4,15
**witness'**  113:14
**women**  74:6,10
**won**  89:21,21
  89:22 90:3
**wondering**
  77:18 95:19
**word**  52:13
  68:25
**worded**  68:24
**words**  22:23
  52:10 62:24
  76:15
**working**  8:9
  81:7
**world**  70:2
**worry**  33:25
  37:12
**would've**  74:19
**wrap**  109:5
**write**  37:5
**writing**  99:2
  104:12
**written**  5:22
  46:9

**[wrong - youtube]**                                    Page 37

**wrong**  96:25
  105:1,24
**wrote**  34:9
  37:14

**x**

**x**  4:1,5 111:21

**y**

**yackshaw**  2:11
  4:3 6:2,2,23
  7:4,9,13,25 8:2
  8:5,14 12:19
  12:20 20:5,11
  22:2,7 56:13
  56:16 63:24
  64:1,7,14
  76:22 77:11
  84:20,24
  108:25 109:3,7
  109:11,16,19
  109:24 110:7
  110:11
**yeah**  7:12 20:6
  22:4 36:7
  38:17 49:22
  56:14,14 60:14
  62:13 64:4
  65:17 66:17
  69:13 72:1
  74:10 92:9
  93:2 102:24
  106:13 109:9
  109:17

**year**  32:17
**yearly**  37:1,3
**years**  73:25
  91:7,12 96:14
  103:2
**young**  76:20
**youtube**  60:8

Veritext Legal Solutions

www.veritext.com                                    888-391-3376

EXHIBIT 1  Page 153 of 156

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

EXHIBIT 1  Page 154 of 156

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

EXHIBIT 1 Page 155 of 156

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

EXHIBIT 1  Page 156 of 156