**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER BRUNNER, | ) | Case No. 4:23-cv-2180 |
| | ) | |
| Plaintiff, | ) | Judge Pearson |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAROSE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF PLAINTIFF JENNIFER BRUNNER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Jennifer Brunner seeks one primary form of relief: a declaration that S.B. 80's requirement that she appear on the November 2026 general-election ballot with a Democratic Party designation violates the First and Fourteenth Amendments, and a corresponding injunction removing that designation from her candidacy. Failing that, she seeks, as less desirable alternative relief, a declaration that the Ohio Code of Judicial Conduct ("Code") cannot constitutionally be enforced against partisan judicial candidates' protected campaign speech, freeing her to campaign with the same expressive latitude as every other partisan candidate on the same ballot. Defendants' motion for summary judgment seeks to foreclose both. It fails.

On the primary claim, S.B. 80 is facially, and as-applied, unconstitutional. It compels Plaintiff to carry a partisan label she cannot freely explain, contextualize, or contest, because the very Code Defendants attempt to protect simultaneously bars the speech that would give the label meaning. That combination is not a minimally burdensome election regulation. It is compelled speech enforced by the threat of disbarment, with no commensurate communicative freedom. The Sixth Circuit's May 12, 2026 decision in *Fischer v. Thomas*, Nos. 25-5385/5400 (6th Cir. May 12, 2026) (*Fischer III*), forecloses Defendants' defense of the Code and confirms that the "bargain" Ohio struck when it chose partisan judicial elections requires it to allow candidates to communicate their views. Ohio cannot collect the ballot-placement benefit of S.B. 80 while refusing to honor that obligation.

On the Equal Protection claim, an independent, co-primary path to enjoining S.B. 80, the statute creates an irrational classification: appellate judges are partisan; trial judges are not. Three (3) of Ohio's twelve (12) appellate districts are single-county, yet those candidates bear the same partisan label as candidates in seventeen (17) county districts, demolishing the geographic-

1

information rationale. Legislative history establishes that the actual motivation was partisan electoral advantage, which is not a legitimate state interest. Defendants' post-hoc justifications fail on their own terms. And on the fallback Code claim, *Fischer III* directly holds that the Commitment Rule analog Plaintiff challenges is unconstitutional as applied to speech that expresses ideological positions without pledging specific outcomes. The motion should be denied in its entirety.

## II. STATEMENT OF FACTS

### A. The Pre-S.B. 80 Nonpartisan System and Plaintiff's 2020 Election

From Ohio's founding through 2021, candidates for the Supreme Court and courts of appeals ran in partisan primaries and then appeared on the general-election ballot without party designation. [Stipulated Facts ¶6.] After winning a competitive primary, they competed as nonpartisan candidates before a general electorate that evaluated them on qualifications, not party labels. In 2020, Justice Brunner won the Democratic primary and was placed on the general-election ballot without party affiliation. She won forty (40) counties and outperformed the Democratic presidential candidate statewide, prevailing in counties, including Columbiana County, that voted heavily for a presidential candidate of the opposing party. [Compl. ¶¶ 29-30; Stipulated Facts ¶¶7-8.]

### B. S.B. 80's Conversion to Partisan General Elections and Its Immediate Effects

In July 2021, Governor DeWine signed S.B. 80, which removed candidates for Chief Justice, Associate Justice, and appellate court judge from the statutory definition of "nonpartisan candidate." [Stipulated Facts ¶ 9; Compl. ¶20.] Candidates for Ohio's courts of common pleas, municipal courts, and county courts remain nonpartisan. [Stipulated Facts ¶9.] The bill was introduced days after Plaintiff announced her candidacy for Chief Justice and was described by

the Ohio Judicial Conference's executive director, former Justice Paul Pfeifer, as "motivated by a belief at Republican headquarters that this will somehow help in the next Supreme Court races." [Compl. Ex. 3 (Pfeifer Test. at 7, 12-13).]

In 2022, the first election under S.B. 80, Justice Brunner ran for Chief Justice as the Democratic nominee with her party label on the general-election ballot. She won only eighteen (18) counties, compared to forty (40) two years earlier. Every Democratic Supreme Court candidate lost statewide; every Democratic appellate candidate in a multi-county district lost. [Compl. ¶¶ 25, 31-32.] She is now the declared Democratic nominee for her current seat's successor term in November 2026, uncontested in the primary. [Stipulated Facts ¶¶ 12-13.]

**C. The Code of Judicial Conduct and the Double Bind**

Canon 4 governs campaign conduct for all judicial candidates, including those now classified as partisan under S.B. 80. Its restrictions include Rule 4.1(A)(6), which bars pledges, promises, or commitments in connection with cases or issues likely to come before the court. Additional provisions restrict judicial candidates from making speeches on behalf of political parties, endorsing non-judicial candidates, and making political contributions available to non-judicial partisan candidates. [Compl. ¶¶16-17; Brunner Dep. 33-57.] These restrictions do not apply to any other candidate appearing on the same partisan ballot. Violations can result in public reprimand, suspension, or disbarment, directly threatening Plaintiff's licensure and her eligibility to serve. [Compl. ¶18; Stipulated Facts ¶¶18, 23-28.] This Court has held that Defendants retain a "sufficient connection" to enforcement of these provisions under Ex parte Young. [DE_40, Order at 10-11.]

The resulting double bind is the constitutional injury. S.B. 80 compels Plaintiff to carry a Democratic Party label before the full Ohio electorate. The Code bars her from explaining what

that label means in the judicial context, from responding substantively to voters' partisan assumptions, and from engaging in the campaign activities, such as speeches on party platforms, endorsements, and issue commentary that the label implies and that every other partisan candidate on the same ballot may freely engage in. [Brunner Dep. 73:14-75:22.] Justice Brunner testified that during the 2022 campaign, she was constrained to silence about Dobbs, gun rights, and other issues voters associated with her Democratic affiliation because any substantive answer risked a Code grievance she had already experienced. [Brunner Dep. 73:14-74:7; 84-89.]

### D. The Code Amendments Do Not Cure the Injury

During this litigation, the Ohio Supreme Court amended the Rules for the Government of the Judiciary and the Code. Gov. Jud. R. II(3)(C) (effective January 1, 2026) that requires dismissal of grievances alleging "misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions." Jud. Cond. R. 1.4 (effective February 12, 2026) provides that engaging in constitutionally protected speech is not professional misconduct. [Stipulated Facts ¶¶21-22.] These amendments do not cure the injury because they create a safe harbor only for speech that is constitutionally protected, which isthe precise question this litigation presents. The chilling effect of potential discipline persists until this Court resolves whether Plaintiff's desired speech is protected. Any member of the public may still file a grievance; whether it is dismissed turns on a constitutional determination this Court has not yet made.

### III. LAW AND ARGUMENT[1]

### A. The Post-Filing Code Amendments Do Not Moot This Case and Do Not Deprive Plaintiff of Standing.

---

[1] The standard of review here is well-settled. Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All evidence must be viewed in the light most favorable to Plaintiff, with all reasonable inferences drawn in her favor.

*Fischer III* is controlling on both points. The Kentucky Commission made the same argument Defendants make here: that post-filing statements disavowing enforcement negated the candidates' standing. The Sixth Circuit squarely rejected that framing: "[W]hen plaintiffs have standing at the beginning of the case, subsequent factual developments concern mootness, not standing." *Fischer III*, slip op. at 5 (citing *Fox v. Saginaw County*, 67 F.4th 284, 295 (6th Cir. 2023)). Plaintiff filed this action in November 2023. Ohio's rule amendments took effect in January and February 2026. Those developments are mootness arguments, and they fail: voluntary cessation moots a case only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 5-6 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Ohio's new provisions protect only speech that is deemed "constitutionally protected," which is the unresolved merits question, and they do not foreclose discipline for speech that a disciplinary body determines falls outside that protection. That is not absolutely clear.

Plaintiff had standing at filing: a concrete injury (Code-suppressed campaign speech during an active candidacy), traceable to Defendants' enforcement authority, redressable by injunction. That standing persists. Plaintiff was in fact grieved in the 2022 campaign under the predecessor Code, requiring counsel and diversion of campaign resources before dismissal. [Brunner Dep. 84-89.] That history constitutes past enforcement against this specific plaintiff for this specific type of speech, that is, precisely the kind of credible threat recognized in *Fischer III* and *Christian Healthcare Ctrs. v. Nessel*, 117 F.4th 826, 848 (6th Cir. 2024). Defendants have not categorically disavowed enforcement of Canon 4 against Plaintiff's future speech; they have promised only to dismiss grievances based on speech ultimately determined to be protected, a determination no court has yet made. Plaintiff also retains independent standing to challenge S.B. 80 directly, which

is the primary relief she seeks and which the Code amendments do not address at all. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

**B. S.B. 80 Is Unconstitutional Under the First Amendment Because It Compels Partisan Speech from Judicial Candidates Who Are Simultaneously Barred from Speaking Freely as Partisans.**

**1. The Ballot Designation Is Compelled Speech, Not Merely a Ballot-Access Regulation.**

Defendants frame S.B. 80 as a minimally burdensome ballot-format regulation under *Ohio Council 8 v. Husted*, 814 F.3d 329 (6th Cir. 2016). That framing is inapt. *Ohio Council 8* upheld Ohio's pre-S.B. 80 prohibition on party labels in judicial general elections, a law that prevented candidates from displaying their party affiliation. The candidates challenging that law wanted to carry a party label; the Court held the restriction imposed only a minimal burden because they retained "various means other than the general-election ballot" to communicate their affiliation and had "no traditional expectation of using a ballot for expressive purposes." *Id.* at 338-39. The constitutional posture here is the opposite: Plaintiff does not want to carry the party label that S.B. 80 compels. Ohio Council 8 addressed compelled silence; this case addresses compelled speech. They are different constitutional problems.

Compelled speech claims are analyzed under a different and more searching framework than ballot-access restrictions. The First Amendment prohibits government from compelling a private party "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 593 (6th Cir. 2018) (quotation omitted). Compulsion occurs when a governmental measure "punish[es], or threaten[s] to punish, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature." *Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014) (quotation omitted). This Court already held at the pleadings stage that S.B. 80's requirement that Plaintiff choose a political

6

designation or declare herself independent, combined with Defendants' authority to sanction her for violating Rule 4.1(A)(6), makes her compelled speech claim plausible. [DE_40, Order at 14-16.] Nothing in the summary-judgment record undermines that conclusion. If anything, Plaintiff's deposition testimony that details the concrete speech she was forced to suppress in 2022 because of the combination of the label and the Code strengthens it.

Defendants cannot escape this conclusion by invoking *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), for the proposition that "[b]allots are designed primarily to elect candidates, not to serve as fora for political expression." *Timmons* addressed a fusion ban that prevented a candidate from appearing on the ballot under two party labels simultaneously, a restriction on ballot content that the candidate objected to as limiting expression. This case presents the mirror image: the state has placed a label on the ballot over the candidate's objection and then uses a separate enforcement mechanism, namely the threat of disbarment under Canon 4, to punish any speech that would qualify, contextualize, or contest that label. *Timmons* says nothing about state-compelled partisan identification enforced by professional-discipline sanctions.

Defendants also cannot avoid the compelled-speech analysis by arguing that Plaintiff "chose" to seek the Democratic nomination and therefore voluntarily accepted the partisan label. *Fischer III* disposes of this argument directly: the Kentucky candidates voluntarily ran as Republicans and did not object to their party label, yet the court still held they had a constitutional right to communicate their party membership and ideological views, and that the conduct code could not suppress that right. *Fischer III*, slip op. at 12. If the First Amendment protects candidates who voluntarily embrace their party label, it necessarily protects a candidate like Plaintiff who is compelled to carry one by statute and cannot speak freely about what it means. The voluntary-nomination argument proves too little: seeking a party's nomination confers no right on the state

to conscript the nominee into partisan expression without the commensurate communicative freedom Fischer III requires.

### 2. The Combination of S.B. 80 and Canon 4 Creates a Severe Burden, Not a Minimal One, Under *Anderson-Burdick*.

The *Anderson-Burdick* framework is the constitutional standard the Sixth Circuit applies to First and Fourteenth Amendment challenges to state election laws, including laws governing how candidates and their affiliations appear on the ballot. *See Ohio Council 8 v. Husted*, 814 F.3d 329, 334-35 (6th Cir. 2016). The framework takes its name from two Supreme Court decisions, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), and it requires a court to weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789. The standard is not fixed but slides with the severity of the burden: laws that impose a severe restriction on constitutional rights are subject to strict scrutiny and must be narrowly tailored to advance a compelling state interest; laws that are minimally burdensome and nondiscriminatory receive only rational-basis-like review, and important regulatory interests will generally suffice; and laws that fall between those poles are weighed against the state's asserted interests and the fit between those interests and the means chosen to pursue them. *Ohio Council 8*, 814 F.3d at 334-35; *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014).

Applied here, the framework directs the Court to ask three questions in sequence: first, what is the actual burden that the combined operation of S.B. 80 and the Code of Judicial Conduct imposes on Plaintiff's First Amendment rights; second, what state interests do Defendants offer to justify that burden; and third, whether those interests are weighty enough, and the means chosen

sufficiently tailored, to outweigh the constitutional cost. As the argument below demonstrates, that inquiry resolves in Plaintiff's favor: the combined burden is severe, not minimal, because S.B. 80 compels a partisan label that Canon 4 simultaneously prevents Plaintiff from explaining or contesting, and Defendants' voter-information and turnout interests, even if credited in full, are neither compelling enough to survive heightened scrutiny nor sufficiently served by a regime that broadcasts a partisan signal while gagging the signaled candidate.

Even under *Anderson-Burdick*'s flexible balancing, the combined operation of S.B. 80 and Canon 4 imposes a severe, not minimal, burden. *Ohio Council 8*'s minimal-burden holding rested on two pillars: candidates retained alternative expressive channels, and they had no traditional expectation of ballot-based expression. *Id.* at 338-39. S.B. 80 destroys both pillars when read in conjunction with Canon 4.

On alternative channels, *Fischer III* has now confirmed that the channels Ohio Council 8 identified as available, including communicating party membership, speaking on issues of the day, expressing ideological positions, endorsing other candidates, making speeches on behalf of party platforms, are constitutionally protected speech in judicial elections. *Fischer III*, slip op. at 12-15. Canon 4 closes those channels specifically for partisan judicial candidates. When S.B. 80 compels the partisan label and Canon 4 forecloses the alternative means, the two pillars of Ohio Council 8's minimal-burden analysis collapse simultaneously. The safety valve is shut.

On traditional expectations: S.B. 80 did not simply format an already-existing partisan system. It converted a 110-year nonpartisan tradition into a partisan one at the appellate level, creating a new expressive obligation with no historical antecedent. Candidates who ran for appellate office in 2020 and before had no "traditional expectation" of appearing as partisan candidates in general elections. The conversion is the source of the burden, and it is one the

9

legislature imposed over the objection of the Ohio Judicial Conference, the courts of appeals judges association, and Plaintiff herself.

A severe burden requires narrow tailoring to a compelling state interest. Defendants' voter-information and turnout interests are neither sufficiently compelling to justify this regime nor narrowly tailored to it. As Pfeifer testified, those interests could be served by a nonpartisan voter information guide without conscripting judicial candidates into partisan expression. [Compl. Ex. 3 (Pfeifer Test. at 9-10).] And the equal-protection analysis below demonstrates that the statute does not even consistently pursue those interests. Rather, it imposes partisan labels on single-county appellate districts where the geographic-information rationale does not apply.

### 3. *Fischer III* Confirms That Ohio's Partisan-Election Choice Incurs First Amendment Obligations That Canon 4 Violates.**

Defendants will argue that *Fischer III* is inapposite because Kentucky already had a partisan judicial election system when it imposed its conduct code, while S.B. 80 converted Ohio's nonpartisan system. That distinction disfavors Defendants, not Plaintiff. *Fischer III* established a floor: even where a state already operates a partisan system, a conduct code cannot suppress a candidate's constitutional right to communicate party membership and ideological views. Ohio's system is more constitutionally acute because the compelled label was legislatively imposed rather than historically extant. S.B. 80 did not merely regulate speech within an existing partisan framework; it conscripts Plaintiff into partisan candidacy she opposes.

*Fischer III*'s "bargain" principle applies with heightened force here. When a state chooses to make judicial elections partisan, it must allow candidates "to communicate their views so that voters know which candidates align with their own values." *Fischer III*, slip op. at 15. That is the quid pro quo of the partisan-election choice. Ohio cannot claim the informational benefit of the partisan label, the very benefit Defendants invoke to defend S.B. 80, while refusing to honor the

communicative freedom that the bargain requires. In Kentucky, the candidates voluntarily identified themselves as Republicans; the First Amendment protected that choice. Here, Plaintiff does not choose to identify as a Democrat on the general-election ballot, as S.B. 80 compels that identification by statute. If *Fischer III* protects voluntary party identification, *a fortiori* it protects a candidate compelled by law to carry a label she cannot explain without risking disbarment.

### C. S.B. 80 Independently Violates Equal Protection Because Its Classification of Appellate Judges as Partisan Has No Rational Basis.

#### 1. The Comparators Established by S.B. 80 Itself Require Equal Treatment.

S.B. 80 classified appellate judicial candidates as partisan and placed them on the same general-election ballot alongside non-judicial partisan candidates, appealing to the same voters in the same election cycle. Having made that classification, Ohio may not deny judicial candidates the expressive latitude that partisan status carries in every other context. Defendants' argument that appellate judicial candidates are not similarly situated to other partisan candidates because of the unique demands of judicial office proves too much: if the distinction were real and constitutionally significant, it would counsel against partisan-ballot classification of judges altogether, not merely against honoring the expressive rights that classification confers. Ohio cannot invoke the distinctiveness of judges to deny them the rights attached to the status it legislatively imposed on them. *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002).

#### 2. The Classification Has No Rational Basis and Was Motivated by Partisan Electoral Advantage.

The record establishes that S.B. 80 was "motivated by a belief at Republican headquarters that this will somehow help in the next Supreme Court races, " as reflected in testimony from the Ohio Judicial Conference's own executive director before the General Assembly. [Compl. Ex. 3 (Pfeifer Test. at 7, 12-13).] Partisan electoral advantage is not a legitimate state interest. *Romer v.*

*Evans*, 517 U.S. 620 (1996). That evidence alone creates a genuine dispute of material fact sufficient to defeat summary judgment.

Each of Defendants' three post-hoc rationalizations fails. On voter information and geographic reach: party labels carry informational value only if the labeled candidate can explain what the label means in a judicial context, but Canon 4, which Defendants simultaneously defend, bars that explanation. More fundamentally, three (3) of Ohio's twelve (12) appellate districts, the First (Hamilton County only), the Eighth (Cuyahoga County only), and Tenth (Franklin County only), are single-county districts. Ohio Rev. Code § 2501.01. Voters in those districts face no geographic information gap relative to the candidates they elect. S.B. 80 applied the partisan designation uniformly to all twelve districts regardless. That undifferentiated treatment demonstrates that geographic information gaps are not driving the legislative choice, and a justification that the statute's own structure refutes cannot supply a rational basis.

On binding precedent and appellate significance, the greater the constitutional significance of appellate decisions, the stronger the state's interest in protecting the public perception of appellate impartiality, which is precisely the interest the pre-S.B. 80 nonpartisan system served. Retired Justice Pfeifer testified that S.B. 80 would "damage Ohio's judiciary" and that "R or D doesn't tell you anything about how that would come out" on constitutional questions. [Compl. Ex. 3 (Pfeifer Test. at 13).] A justification that is refuted by the state's own judiciary experts and that simultaneously undermines the interest it purports to serve is not a rational basis. On voter participation: this interest applies with equal or greater force to trial-court elections, which the legislature left nonpartisan. Ohio has no answer for why it cares about participation in appellate elections but not trial-court elections. That asymmetry is inconsistent with the claimed interest and

12

defeats rational basis. Taken together, none of Defendants' justifications survives scrutiny, and record evidence of improper motivation independently precludes summary judgment.

**D. If the Court Does Not Enjoin S.B. 80, *Fischer III* Requires As-Applied Relief Against Canon 4's Enforcement Against Plaintiff's Protected Campaign Speech.**

If the Court declines to enjoin S.B. 80, Plaintiff is entitled, at minimum, to relief against enforcement of Canon 4, as applied to the specific speech *Fischer III* holds is constitutionally protected. The Kentucky Commitment Rule challenged in *Fischer III* is textually identical to Ohio's Rule 4.1(A)(6). The Sixth Circuit held that candidates have a constitutional right to take positions on "issues of the day" without pledging specific outcomes in cases, and that such speech is "simply part of the bargain that states strike when they choose to make judges elected directly by the people." *Fischer III*, slip op. at 14-15. The speech Plaintiff specifically identified, including commentary on U.S. Supreme Court decisions, her views on issues voters associate with her Democratic label, and responses to partisan assumptions voters bring to the ballot, does not pledge a particular outcome in any case. It is the precise speech *Fischer III* protects.

*Fischer III* also reaffirmed that candidates have a constitutional right to portray themselves as members of a political party and to communicate their general ideological positions as shorthand for their approach to issues of the day, "even in nonpartisan judicial elections." *Id.* at 12. Canon 4's restrictions on that speech are unconstitutional as applied to partisan judicial candidates whose party identity is already displayed on the general-election ballot by statute. An injunction barring enforcement of Canon 4's campaign restrictions against the categories of speech identified in Plaintiff's complaint and deposition would redress Plaintiff's injury even if S.B. 80 remains in force, because it would restore the expressive parity between partisan judicial candidates and all other partisan candidates that S.B. 80's own logic requires. [Compl. ¶¶ 60.3, 60.6; Brunner Dep. 61:14-22, 62:8-10.]

The Ohio Supreme Court's own recent decision in *Disciplinary Counsel v. Rudduck*, 2026-Ohio-1126, reinforces this conclusion. In <u>Rudduck</u>, the Ohio Supreme Court held Rule 4.1(A)(3), Canon 4's prohibition on judicial candidates endorsing other candidates, is unconstitutional on its face. Defendants acknowledged that holding in a footnote to their motion. Mot. at 9 n.4. *Rudduck* confirms that the Ohio Supreme Court itself recognizes that Canon 4's categorical restrictions on partisan political expression by judicial candidates are constitutionally vulnerable. The endorsement prohibition struck down in Rudduck is of a piece with the pledge-and-commitment restriction in Rule 4.1(A)(6): both suppress the partisan campaign speech that every other candidate on the same ballot may engage in freely. If the former falls under the First Amendment, the latter, as applied to partisan judicial candidates whose party identity is already compelled by S.B. 80, cannot stand either. *Rudduck* removes any doubt that the as-applied *Fischer III* relief Plaintiff seeks in the alternative is both constitutionally required and consistent with Ohio's own emerging constitutional jurisprudence on Canon 4.

### E. The Purcell Doctrine Does Not Foreclose Relief, and the Supreme Court's Recent Decisions in the Louisiana and Alabama Cases Confirm That Courts Act on Constitutional Violations During Election Cycles.

Defendants invoke *Purcell v. Gonzalez*, 549 U.S. 1 (2006), as a near-categorical bar, quoting the observation that "court orders can themselves result in voter confusion" as elections approach and citing a Sixth Circuit concurrence for the proposition that Purcell applies "irrespective of the correctness" of the underlying constitutional ruling. [Mot. at 24.] That reading of Purcell is untenable after the Supreme Court's own conduct in May 2026, which was the same month Defendants filed this motion.

In *Louisiana v. Callais*, 608 U.S. --, No. 25A1197 (2026), the Supreme Court held on April 29, 2026, that Louisiana's congressional redistricting plan was an unconstitutional racial

gerrymander. One week later, on May 4, 2026, the Court granted an application to issue the Callais judgment forthwith, departing from its ordinary 32-day default period under Sup. Ct. Rule 45.3 so that Louisiana could redraw its congressional map in time for its 2026 primary elections, which were already underway. As Justice Jackson noted in dissent, the Court had invoked the forthwith procedure only twice in 25 years; it did so here explicitly to accelerate implementation of a major election-rule change during an ongoing primary election. *Callais v. Louisiana*, No. 25A1197 (May 4, 2026) (Jackson, J., dissenting). Then, one week after that, on May 11, 2026, the Supreme Court vacated the Northern District of Alabama's permanent injunction of Alabama's unconstitutional 2023 redistricting plan and remanded for reconsideration in light of Callais, with Justice Sotomayor noting in dissent that the Alabama primary election was "scheduled for next week" and that early voting had already begun. *Allen v. Caster*, Nos. 25-243, 25-273, 25-274 (May 11, 2026) (Sotomayor, J., dissenting).

What the Court did in *Callais* and *Allen v. Caster* is exactly what Defendants say courts must never do: it changed the ground rules of elections during an ongoing election cycle, with elections weeks, not months, away. In *Callais*, the Court issued its judgment immediately to accelerate a map change during an active primary. In *Allen v. Caster*, it vacated a district court order protecting voters from an unconstitutional redistricting scheme with elections the following week. Purcell's concern is disruption and reliance, not constitutional correctness, and the Supreme Court's own practice confirms that when a constitutional violation is established, courts act even when elections are near.

The equities here cut sharply against applying *Purcell* to bar relief. The disruption Defendants invoke, namely the expectations of 39 other appellate candidates who filed in reliance on S.B. 80's partisan designation, is categorically smaller than the disruption the Supreme Court

imposed in the Louisiana and Alabama cases, where entire congressional districts serving hundreds of thousands of voters were restructured with elections days or weeks away. Removing a two-word partisan designation from one candidate's line on a general-election ballot five months before November 3, 2026 is a ministerial change that Ohio's Secretary of State routinely makes when candidate information is corrected after filing deadlines. It does not restructure a single race for any other candidate on the ballot, does not affect ballot order or placement, and does not require voter education or re-registration. The 39 other appellate candidates retain their party labels; only Plaintiff's label is at issue.

Defendants' reliance on *Purcell* is also self-defeating in a more fundamental respect. Every candidate who filed a declaration of candidacy for an appellate judicial race in 2026 did so against the backdrop of this litigation, which has been pending since November 2023 and has been publicly litigated through a motion to dismiss, an appeal, and now a motion for summary judgment. No candidate who filed after November 2023 can credibly claim reliance on a legal regime whose constitutionality has been under active judicial scrutiny throughout the filing period. Purcell's reliance rationale does not protect parties who entered a contested legal landscape with notice of the dispute.

## V. CONCLUSION

S.B. 80's requirement that Plaintiff appear on the 2026 general-election ballot with a Democratic Party designation is unconstitutional under the First and Fourteenth Amendments. The Court should declare it so and enjoin Secretary LaRose from placing a partisan designation next to Plaintiff's name on the November 2026 ballot. In the alternative, the Court should declare that Canon 4 of the Code of Judicial Conduct cannot constitutionally be enforced against the categories of speech the Sixth Circuit protected in *Fischer III* as applied to partisan judicial candidates. Either

form of relief is available; neither is foreclosed by mootness, standing, or Purcell. Defendants'

motion for summary judgment should be denied in its entirety.

Respectfully submitted,

/s/ Patrick Quinn

| Patrick M. Quinn | (0081692) |
|---|---|
| Rick L. Brunner | (0012998) |

Email  pmq@brunnerlaw.com
        rlb@brunnerlaw.com
THE BRUNNER LAW FIRM., CO., L.P.A.
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220
Telephone: (614) 241-5550
Facsimile: (614) 241-5551
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, the foregoing Memorandum Contra to Defendants

Motion for Summary Judgement was filed with the Court. Notice of this filing will be sent by

operation of the Court's electronic filing system to all parties for whom counsel has entered an

appearance. Parties may access this filing through the Court's system.

/s/ Patrick Quinn

Patrick M. Quinn                    (0081692)