**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER BRUNNER,** | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | **Case No. 4:23-CV-2180** |
| **v.** | : | |
| | : | **JUDGE BENITA Y. PEARSON** |
| **FRANK LAROSE, et al.,** | : | |
| | : | |
| *Defendants,* | : | |

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT**

---

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Ann Yackshaw*

ANN YACKSHAW (0090623)*
*Counsel of Record*
MICHAEL A. WALTON (0092201)
STEPHEN TABATOWSKI (0099175)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov

*Counsel for Defendants*

i

This Court permitted Plaintiff Jennifer Brunner's claims to survive a motion to dismiss because the Court believed Plaintiff plausibly alleged violations of her constitutional rights. Doc. 40 at PageID 516. But Plaintiff's opposition to Defendants' motion for summary judgment shows that allegations are all Plaintiff has: she offers no facts supporting her standing to challenge the Code of Judicial Conduct, no facts establishing compelled speech, and no facts showing either that she has been treated differently than a similarly situated individual or that any such differential treatment lacks a rational basis. Plaintiff cannot survive summary judgment on allegations alone, and this Court should therefore grant Defendants' motion.

## I. Plaintiff's opposition offers no facts that establish standing to challenge Rule 4.1(A)(6) of the Code of Judicial Conduct.

To satisfy the injury-in-fact requirement of standing, a plaintiff in a pre-enforcement challenge to a disciplinary rule must establish the following: (1) an intention to engage in a course of conduct arguably affected with a constitutional interest (2) proscribed by the disciplinary rule (3) for which there exists a credible threat of prosecution. *See McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016). At the summary judgment stage, "mere allegations" on these requirements do not suffice. *Id*. Rather, a plaintiff "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true," to establish each of the three requirements. *Id.* Here, Plaintiff cannot survive summary judgment because she fails to adduce *any* facts on *any* of the three requirements.

### A. The record is devoid of facts establishing Plaintiff's intention to engage in constitutionally protected speech.

To demonstrate standing at the summary judgment stage, a plaintiff must first offer specific facts showing that she intends to engage in a course of conduct arguably affected with a constitutional interest. This requirement often presents little trouble. The plaintiffs in *Fischer v. Thomas*, Nos. 25-5385/5400, 2026 U.S. App. LEXIS 13652 (6th Cir. May 12, 2026), the case on

1

which Plaintiff primarily relies, easily cleared this hurdle. There, the judicial candidates offered facts showing that they wanted to engage in specific types of speech: identifying themselves as conservative Republicans in their campaign speech and literature, displaying elephant imagery in their campaigns, and using endorsements from pro-life organizations in their campaign materials. *Id.* at *2. In contrast, a plaintiff who relied on the complaint's "mere allegations" that he intended to record trial activities in violation of a courthouse rule could not survive summary judgment on standing grounds. *McKay*, 823 F.3d at 867–68.

Plaintiff falls closer to *McKay* than *Fischer*. Unlike *Fischer*, Plaintiff does not articulate the specific campaign speech she intends to make. In her opposition, Plaintiff points to some amorphous desire to clarify what being a Democrat means to her. Opp., Doc. 50 at PageID 855. But a review of the cited portions of the deposition transcript on this point reveals no concrete course of conduct Plaintiff plans to undertake:

> Well, I said -- it could be any number of things that I don't personally believe, but because I'm listed on the general election ballot as a Democrat, that people will assume I do believe, and if they say, "you believe this," I won't be able to say yes or no.
> ***
> I'm saying that party label on the ballot tells a story about me that isn't necessarily true, and because of the Code of Judicial Conduct, I'm not in a position to refute it.

Brunner Dep., Doc. 48-1 at PageID 733. Indeed, Plaintiff said that she "do[esn't] know what statements" she will make during her campaign. *Id*. at PageID 766.

Lacking any facts showing her intention to engage in protected speech during this campaign, Plaintiff turns to prior campaigns for facts to support her standing. For example, she points to her inability to comment on the *Dobbs* decision during her 2022 campaign as an example of constitutionally protected speech she would like to make. Opp., Doc. 50 at PageID 855 (citing Brunner Dep., Doc. 48-1 at PageID 731–32). But Plaintiff's silence on *Dobbs* in 2022 does not

2

move the needle here. Plaintiff points to no facts showing that she intends to comment on *Dobbs* during this campaign, and as explained in Section II.B *infra*, no facts show that any such comments would violate the amended Code. This leaves Plaintiff with the "mere allegations" in her amended complaint, which cannot stave off summary judgment. *See McKay*, 823 F.3d at 867–68.

**B. Plaintiff presents no facts establishing that the Code applies to any campaign speech she wishes to make.**

To challenge the constitutionality of a disciplinary rule, a plaintiff must allege that the rule prohibits the protected speech she wants to make. Here, Plaintiff runs into an intractable problem: the Code does not prohibit *any* constitutionally protected speech. Jud. Cond. R. 1.4 (Judicial candidates "maintain their constitutional protections and may express views in a non-adjudicative capacity regarding issues or beliefs."); Ohio Gov. Jud. R.II(3)(C). Plaintiff waves off this problem, arguing that the new Code provisions "protect only speech that is deemed 'constitutionally protected,' which is the unresolved merits question." Opp., Doc. 50 at PageID 856. But this argument simply underscores the lack of proof here. Plaintiff's failure to articulate specific campaign speech she intends to make means that she hasn't offered sufficient facts of her intention to engage in protected speech. *See supra* Part I.A. But it also means that this Court cannot determine whether Plaintiff's speech would be prohibited by the Code. And federal courts cannot resolve the constitutionality of a disciplinary rule without "first deciding whether the [rule covers] the challenger['s] conduct." *Fischer*, 2026 U.S. App. LEXIS 13652, at *12 (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)). The record does not contain enough facts showing that Plaintiff intends to violate the Code through constitutionally protected speech.

**C. No facts show threatened enforcement of the Code against Plaintiff.**

Even assuming Plaintiff presented sufficient facts to show she intends to engage in constitutionally protected conduct that violates the Code, which she did not, Plaintiff has not

pointed to specific facts establishing a credible threat of Code enforcement against her. *McKay*, 823 F.3d at 869 (noting that plaintiffs can establish a threat of enforcement through a combination of (1) prior enforcement actions, (2) warning letters, (3) an attribute of the rule making enforcement against plaintiff likely, and (4) the defendants' refusal to disavow enforcement). Plaintiff points to two facts that she believes establish a threat of enforcement against her: a 2022 grievance and Defendants' purported refusal to categorically disavow enforcement. Opp., Doc. 50 at PageID 856. But neither fact clears the summary judgment hurdle.

The 2022 grievance is irrelevant to the issues before the Court. The 2022 grievance alleged violations of two portions of the Code, Rule 4.2 and Rule 4.3, that are unchallenged here. *See* Brunner Dep., Doc. 48-1 at PageID 743–44. Because this case challenges Rule 4.1(A)(6) in conjunction with S.B. 80, enforcement actions under different portions of the Code do not help Plaintiff manufacture standing. The undisputed evidence shows that no one has been subject to enforcement actions under Rule 4.1(A)(6), either before or after the Code changed. *Compare* Elizabeth Smith Decl., Doc. 48-2 at PageID 816–17 (affirming the lack of enforcement actions under Rule 4.1(A)(6)), *with Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1025–26 (6th Cir. 2024) (relying on "at least one past instance of enforcement by Defendants" to find sufficient facts supporting a credible threat of enforcement at the summary judgment stage).

Finally, Plaintiff's argument that the Defendants have not "categorically disavowed enforcement" need not detain the Court long. Opp., Doc. 50 at PageID 856. A refusal to disavow enforcement occurs when the defendants confirm that the plaintiffs' desired course of conduct violates the law and is punishable under that law. *See, e.g.*, *Kareem*, 95 F.4th at 1023 (finding a refusal to disavow enforcement when defendants "warned voters a number of times that displaying a marked ballot is illegal under Ohio law"). Here, by contrast, the law's amendments confirm that

4

Plaintiff's desired conduct falls outside of its scope, and *no* facts show that any defendant has ever told Plaintiff—or anyone else—that her campaign speech violates the law. *See, e.g.*, Brunner Dep., Doc. 48-1 at PageID 732.

Not one scintilla of evidence establishes *either* that Plaintiff intends to make constitutionally protected statements that violate the Code *or* that a credible threat of prosecution exists thereunder. She therefore lacks standing to challenge the Code.

## II. S.B. 80 does not violate the First Amendment, alone or in conjunction with the Code of Judicial Conduct.

Plaintiff also fails to present evidence creating a genuine issue of fact on the merits. Start with her First Amendment claim.

### A.  There is no competent summary-judgment evidence of compelled speech.

Plaintiff begins her First Amendment argument in now-familiar territory: making conclusory assertions that a "combination of the [partisan] label and the Code" compels her speech. Opp., Doc. 50 at PageID 858. Noting that the Court "already held at the pleadings stage" that her compelled speech claim was "plausible," she concludes that "[n]othing in the summary-judgment record undermines that conclusion." *Id.*

But, again, to avoid summary judgment Plaintiff needs more than plausible allegations. She must adduce evidence demonstrating that her speech has been compelled—in other words, evidence that the State has forced her to "express a view with which [she] disagrees." *See New Doe Child #1 v. Cong. Of U.S.*, 891 F.3d 578, 593 (6th Cir. 2018); *see also* Order, Doc. 40 at PageID 514. This means *factual* evidence: "conclusory evidence"—such as a party's "generic testimony" "unadorned with supporting facts"—is "insufficient to establish a factual dispute that will defeat summary judgment." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (cleaned up).

5

Discovery has borne no such factual evidence. Again, Plaintiff simply concludes that "S.B. 80 compels Plaintiff to carry a Democratic Party label before the full Ohio electorate," while the Judicial Code of Conduct "constrain[s] [her] to silence" about certain "issues associated with her Democratic affiliation." Opp., Doc. 50 at PageID 855. In support, she cites her testimony that her party label will compel her to speak because there "could be any number of things . . . that people will assume I do believe, and . . . I won't be able to say yes or no." Brunner Dep., Doc. 48-1 at PageID 733. This is because she "think[s] the Code of Judicial Conduct limits [her] in terms of what [she] can say about how much of a Democrat [she is]." *Id.* But as explained in Section I.A *supra*, she offers no specifics as to what this means and "do[esn't] know what statements" she will make in her upcoming campaign. *Id.* at PageID 733, 766. This is the type of "generic testimony" that is "unadorned with supporting facts" and insufficient to overcome summary judgment. *See Viet*, 951 F.3d at 823.

Further, that Plaintiff *believes* certain speech might be punishable under the Code is not compulsion. Courts do not find coercion or compulsion unless there is "an actual requirement to speak, backed up by a real threat (or actual likelihood) of punishment for non-compliance." *Duren v. Byrd*, No. 1:18-cv-00084, 2021 U.S. Dist. LEXIS 162571, at *42 (M.D. Tenn. Aug. 26, 2021). In the standing context, for instance, a claim based on a plaintiff's "choice to chill his own speech based on his perception that he would be disciplined for speaking" cannot generate a justiciable injury. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 610 (6th Cir. 2008). Analogously, Plaintiff's choice to toe party lines based on her perception that doing otherwise is punishable under the Code of Judicial Conduct is not evidence of compelled speech.

6

**B. S.B. 80 and the Code of Judicial Conduct do not "combine" to have any "effect," let alone an effect violating the First Amendment.**

Quite apart from the lack of supporting facts, Plaintiff's First Amendment theory suffers from a fundamental flaw. It assumes that S.B. 80 and the Code's combined effect violate the First Amendment. But she has failed to develop this argument in her opposition. If this is a compelled-speech case, Plaintiff has not yet articulated the role the Code of Judicial Conduct plays in forcing her to speak. And if it is a suppressed-speech case, we are equally in the dark as to how a party label keeps her from speaking.

Plaintiff ultimately leaves us only with her nebulous theory hybridizing the Code and S.B. 80. But while she has repeatedly *concluded* that their "combined effect" works a constitutional injury, *e.g.*, Opp. to Motion to Dismiss, Doc. 18 at PageID 210, she again has not yet clearly explained or presented evidence as to *how.* Nor does she do so now. To the contrary, her opposition brings to light a central flaw in her "combined-effect" theory: she incorrectly believes the Code of Judicial Conduct ("namely the threat of disbarment under Canon 4") is "use[d]" as a "separate enforcement mechanism" of the requirement in S.B. 80 that "places a label on the ballot over the candidate's objection." Opp., Doc. 50 at PageID 858. More succinctly, she claims Ohio has a "state-compelled partisan identification [law] enforced by professional-discipline sanctions." *Id.*

But that is simply untrue. There is nothing in S.B. 80's party-designation requirements to "enforce" against candidates, because S.B. 80 does not require anything of candidates—it only imposes duties upon state officials who must ensure ballots are printed according to the form prescribed by law. *E.g.*, Ohio Rev. Code § 3505.01, 3505.03, 3505.04, 3505.08. There is nothing in S.B. 80 to be enforced by way of the Code of Judicial Conduct. This is also why Plaintiff is wrong that S.B. 80 somehow "conscript[s]" her "into partisan expression." *See* Opp., Doc. 50 at PageID 858–859.

This notion might have superficial appeal—the First Amendment might have something to say, perhaps, about the combined effect of a law requiring some expressive act by a judicial candidate and a judicial canon limiting the scope of that expression by threat of enforcement. But that is simply not the case here. Simply put, S.B. 80 and the Code of Judicial Conduct are separate laws with no real interaction. The Court should reject the compelled-speech amalgamation Plaintiff assembles from them.

**C. The amendments to the Code of Judicial Conduct make clear Plaintiff is not being compelled to speak.**

That Plaintiff is not being compelled to speak is especially clear now that the Code of Judicial Conduct has been amended to exclude activities protected by the First Amendment. *See* Section I.B *supra*. Plaintiff relies heavily on the Sixth Circuit's decision in *Fischer*, 2026 U.S. App. LEXIS 13652, to argue that her compelled speech claim survives the Code amendments. But *Fischer* does not help Plaintiff survive summary judgment.

At the outset, *Fischer*, which challenged judicial conduct rules restricting speech, has little to say about either a partisan-designation law or Plaintiff's "combined effect" theory. *See Fischer*, 2026 U.S. App. LEXIS 13652 at *4–5. If anything, *Fischer* hurts Plaintiff's case. Plaintiff argues that *Fischer* "has now confirmed that . . . communicating party membership, speaking on issues of the day, expressing ideological positions, endorsing other candidates, [and] making speeches on behalf of party platforms are constitutionally protected speech in judicial elections." Opp., Doc. 50 at PageID 860. If that is the case, the Code does not "close[] those channels" to Plaintiff, but actually *protects* them. *See id.* The Code's amendments exempt First Amendment protected activity. So, because the Sixth Circuit has held that these activities merit First Amendment protection, the Code cannot apply to them. Plaintiff cannot have it both ways—if the "speech [Plaintiff] specifically identified" as what she wants to say is "the precise speech *Fischer III*

8

protects," *id.*, then it is exempted as "speech or conduct protected by the United States Constitution," Jud.Cond.R. 1.4. *Fischer* thus undermines, rather than supports, Plaintiff's claim that her speech has been compelled by the combined effect of the Code and S.B. 80.

Ultimately, Plaintiff's choices matter here. Plaintiff chose to seek the Democratic Party's nomination for Justice of the Supreme Court of Ohio. While she refers to the combined effect of S.B. 80's party designation and the Code as a "double bind," Opp., Doc. 50 at PageID 854, Plaintiff's current position actually reflects a double *choice* on her part: first, her choice to seek judicial office, which subjects her to the Code, and second, her choice to seek the Democratic Party's nomination, which triggers the ballot designation. Courts have held that these types of choices cut against compulsion and "are contrary to compelled speech." *See Belgau v. Inslee*, 975 F.3d 940, 951 (9th Cir. 2020) ("Choosing to pay union dues cannot be decoupled from the decision to join a union. . . . This choice to voluntarily join a union and the choice to resign from it are contrary to compelled speech."); *see also  Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 557–58 (10th Cir. 1997) (holding "a choice whether or not to sing songs she believe infringed upon" her First Amendment right "negates" "coercion or compulsion"). At bottom, Plaintiff will have a D next to her name on the ballot because she chose to affiliate with that party rather than run as an independent. And she is subject to the Code because she chose to seek judicial office. Plaintiff's lawsuit is not based on anything she has been coerced into uttering. It is based on her own choices, and neither the First Amendment nor *Fischer* guarantees her the right to avoid the resulting effects.

### D. Any challenge to S.B. 80 is controlled by *Ohio Council 8*, which tells us it passes constitutional muster.

Plaintiff urges the Court to follow *Fischer*, a case that has nothing to do with party labels on ballots, in lieu of *Ohio Council 8 v. Husted*, 814 F.3d 329 (6th Cir. 2016), which *was* a challenge

to a ballot-information law. Plaintiff minimizes *Ohio Council 8* as a "compelled silence" case, while her case "addresses compelled speech." Opp., Doc. 50 at PageID 857. As set forth above, no facts support a compelled speech claim here. *See* Section II.A–C *supra.* This leaves a standard ballot-access challenge to S.B. 80 governed by *Ohio Council 8* and its application of *Anderson-Burdick*. Plaintiff fails to explain why *Ohio Council 8* does not apply and foreclose such a claim, other than to note that *Fischer* has constitutionalized the alternative channels of communication (aside from the ballot) through which Plaintiff may message her voters. Opp., Doc. 50 at PageID 860. But those channels remain available to Plaintiff notwithstanding her "combined-effect" theory, especially now that the Code of Judicial Conduct has been amended. *See* Sections I.B & II.C *supra*.

Thus, and for the reasons set forth in Defendants' motion for summary judgment, Mot. for Summ. J., Doc. 48, PageID 14–19, the ballot-access analysis in *Ohio Council 8* applies with equal force here. S.B. 80 is a "minimally burdensome and nondiscriminatory" regulation and is therefore subject to "a less-searching examination closer to rational basis[.]" *See Ohio Council 8*, 814 F.3d at 335 (citation omitted). And Ohio has "important regulatory interests" in S.B. 80 that are "'sufficient to justify [its] restrictions.'" *See id.* Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claims.

### III. S.B. 80 does not violate equal protection principles.

#### A. Plaintiff does not identify any similarly situated individual treated differently under S.B. 80.

Plaintiff offers no substantive arguments in support of her claim that S.B. 80 violates equal protection principles. Plaintiff bore the burden of establishing that she is treated differently from similarly situated individuals. *See, e.g., Reform Am. v. City of Detroit*, 37 F.4th 1138, 1153–54 (6th Cir. 2022). Yet, she did not attempt to do so. *See* Opp., Doc. 50 at PageID 862. "Issues

10

adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited." *Clemons v. Couch*, 3 F.4th 897, 902 n.2 (6th Cir. 2021) (citations omitted). For this reason alone, this Court should enter summary judgment in favor of Defendants.

Initially, Plaintiff seemingly abandons her claim that partisan judicial candidates and nonpartisan judicial candidates are similarly situated: her opposition only addresses differential treatment of partisan judicial candidates and partisan nonjudicial candidates. *See* Opp., Doc. 50 at PageID 862. As to her challenge to the differential treatment of partisan judicial candidates and partisan nonjudicial candidates, she offers no argument or facts showing that they are similarly situated. Instead, she simply concludes that if judicial candidates are indeed so different than nonjudicial candidates, it would be improper to hold partisan elections for judicial candidates. *Id*. This is a policy argument, and this Court does not possess the power to issue policy decisions. That right is reserved for the legislature. *See Derryberry v. TVA*, No. 98-5740, 1999 U.S. App. LEXIS 16183, at *7 (6th Cir. July 14, 1999) ("Because those decisions concern issues of policy, such as the wisdom, effectiveness, and need of a particular project, they are better left to the legislature, not the judiciary.") (citing *Oklahoma v. Atkinson*, 313 U.S. 508, 527 (1941)).

As to partisan judicial candidates and partisan nonjudicial candidates, Plaintiff's equal protection claim fails for still another reason. If two groups of individuals are not similarly situated, then a law may treat them differently without violating equal protection principles. *See, e.g., Charlevoix Productions, Inc. v. County of Charlevoix*, No. L89-50054 CA, 1990 U.S. Dist. LEXIS 11020, at *5–6 (E.D. Mich. Aug. 20, 1990) (holding that "the Constitution does not require things which are different in fact to be treated in law as though they were the same") (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *see also Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 177 (4th Cir. 2017) (holding a law was nondiscriminatory where it treated a candidate "like every

11

other candidate for that office"). So, even though the State *could* treat partisan judicial candidates differently than partisan nonjudicial candidates, S.B. 80[1] treats them the same. Both kinds of candidates bear party designations on the ballot. Thus, even if they were similarly situated, there is no equal protection violation.

### B. Even if the Court ignores the failure to put forth a comparator, Plaintiff also fails to show that any differential treatment lacks a rational basis.

Because Plaintiff has not carried her burden to establish disparate treatment from similarly situated individuals, the equal protection analysis should end there. But, should this Court subject S.B. 80 to review for its disparate treatment of partisan judicial candidates and nonpartisan judicial candidates, it easily passes muster.

Plaintiff concedes that rational basis review applies to her challenge. *See* Opp., Doc. 50 at PageID 862. Rational basis review "is extremely deferential." *Bowman v. United States*, 564 F.3d 765, 776 (6th Cir. 2008). Thus, Plaintiff must "negative every conceivable basis which might support" S.B. 80 to establish that it lacks a rational basis. *See Am. Exp. Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011) (cleaned up). This includes "any plausible justification offered by the state, or even hypothesized by the court." *See id.* at 690 (citation omitted); *see also Ziss Bros. Constr. Co. v. City of Independence,* 439 Fed. App'x 467, 476 (6th Cir. 2011) (holding that "under rational basis review . . . the burden falls entirely to Plaintiff to show there is no rational basis," and the government "need not offer any rational basis so long as this Court can conceive of one"). Accordingly, Plaintiff's attempt to show the alleged "motivation" behind S.B. 80 is nothing more than a red herring. So long as S.B. 80 is rationally related to even a single, conceivable legitimate interest, it survives. Plaintiff did not and cannot show otherwise.

---

[1] Of course, the Code does not apply to partisan nonjudicial candidates. But Plaintiff did not bring an equal protection challenge to the Code.

Each of the State's offered interests are legitimate and rationally related to S.B. 80. First, minimizing voter confusion is not only a legitimate state interest, but a compelling one that can withstand even higher levels of constitutional scrutiny. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193–95 (1986); *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality opinion). By providing voters with an appellate judicial candidate's party affiliation, S.B. 80 provides additional information to allow voters to make an informed decision, which is an important interest in its own right. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 458 (2008); Christopher S. Elmendorf, Informing Consent: Voter Ignorance, Political Parties, and Election Law, 2013 U. Ill. L. Rev. 363, 367 ("[L]earning a candidate's party affiliation enables voters to infer the candidate's position on most significant issues . . . .").

What does Plaintiff offer in response to these two interests? Nothing more than her own conclusory statements doubting the effectiveness of S.B. 80 in furthering these aims. Opp., Doc. 50 at PageID 863. But under rational basis, the State is not required "to draw the perfect line" or "even to draw a line superior to some other line it might have drawn." *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012). Plaintiff's policy complaints about S.B. 80's effectiveness in achieving the State's aims are therefore not relevant, let alone sufficient to establish that S.B. 80 fails rational basis review.

Plaintiff's argument countering the geographic-reach interest only underlines S.B. 80's rational basis. She claims that, if geographic reach were a true interest for S.B. 80, the law should only apply to multi-county districts. Opp., Doc. 50 at PageID 863. But if the State treated judicial candidates from multi-county districts differently than judicial candidates from single-county districts, it would give rise to a textbook equal-protection violation. S.B. 80 applies equally to all appellate districts in the State while advancing the State's geographic-reach interest.

13

Plaintiff's response to the State's interest in increasing voter participation is similarly lacking. Instead of providing any evidence to counter the State's interest in increasing voter turnout, or citing any caselaw to suggest that increased voter participation is not a legitimate state interest, she simply concludes that "this interest applies with equal or greater force to trial-court elections." *Id*. This is a red herring. Again, the State need not "draw the perfect line." *Armour*, 566 U.S. at 685. "A claimant does not prevail in a rational-basis case simply by severing the stated links between a law and its rationales with on-the-ground evidence that undermines the law—or showing that the lived experiences of the law have not delivered on its promises." *Id*. at 365. Instead, rational-basis review asks only whether a rational connection between a regulation and its aim is plausible. *Am. Exp. Travel Related Servs.,* 641 F.3d at 690. Here, the State sought to increase voter participation in appellate-level races where the winners would be endowed with the power to set binding precedent for the electorate. The State's interests and their relation to S.B. 80 are not only plausible—they were achieved. Voter participation in Supreme Court of Ohio races increased by approximately 600,000 votes in 2024 as compared to 2020. *See* Burnett Decl., Doc. 48-3 at PageID 818–19.

Because S.B. 80 easily satisfies rational basis review, Defendants are entitled to judgment as a matter of law as to Plaintiff's equal protection claim.

### IV.  *Purcell* **forecloses relief.**

Plaintiff's efforts to resist *Purcell* rest on a fundamental misunderstanding of the doctrine. *Purcell* prevents lower federal courts from *altering* state election rules on the eve of an election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.") (citations omitted). *Purcell* does not prevent federal courts exercising

14

appellate jurisdiction from *undoing* such alterations. *See, e.g.*, *Allen v. Caster*, ___ U.S. ___, 224 L.Ed.2d 704, 704 (2026) (vacating district court order enjoining Alabama from enforcing its enacted congressional districting plan); *Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 31–32 (2020) (Roberts, C.J., concurring) ("Correcting an erroneous lower court injunction of a state election rule cannot itself constitute a *Purcell* problem.").

Nor does *Louisiana v. Callais*, 146 S.Ct. 1131 (2026), which never mentions *Purcell*, do anything to alter the Supreme Court's clear instructions to lower courts: do not interfere with state election rules on the eve of an election. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."). Further, whether the result in *Callais* (or *Allen*) can be characterized as more or less "disruptive" than the relief Plaintiff seeks here is immaterial. Ohio's election rules demand that candidates' party affiliations be listed on the general election ballot, and *Purcell* says that federal courts should not disturb those rules once the candidates have already declared their affiliations.

## V. Conclusion

For these reasons and for the reasons set forth in Defendants' motion for summary judgment, the Court should grant Defendants' motion and enter judgment as a matter of law in favor of Defendants.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
*Counsel of Record*

15

MICHAEL A. WALTON (0092201)
STEPHEN TABATOWSKI (0099175)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Ann.Yackshaw@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov

*Counsel for Defendants*

### Certificate Of Service

I hereby certify that on June 22, 2026, the foregoing Reply in Support of Motion for Summary Judgement was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

### Certificate Of Compliance

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has been assigned to the Standard Track. This memorandum complies with the page limitations for Standard Track cases.

*s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
Assistant Attorney General

16