PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER BRUNNER, | ) | CASE NO. 4:23-cv-2180 |
| Plaintiff, | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| FRANK LAROSE, *et al.*, | ) | |
| Defendants. | ) | **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 48] |

Justices of the Ohio Supreme Court are elected. *See* Ohio Rev. Code § 2503.03. Until 2021, they ran in elections without party ballot designations. Ohio Senate Bill 80 ("S.B. 80") now requires all candidates seeking election for appellate judicial offices to list their party affiliation. Plaintiff Jennifer Brunner is an Associate Justice of the Supreme Court of Ohio running for reelection in 2026. She has sued Defendants Frank LaRose (Ohio Secretary of State), Joseph M. Caligiuri (Disciplinary Counsel), Elizabeth Smith (Director of the Board of Professional Conduct), and the Honorable Robert Hendrickson (Chief Justice of the Ohio Court of Appeals)[1] alleging that S.B. 80 and Canon 4.1 of the Ohio Code of Judicial Conduct—which prohibits judicial officers from certain kinds of speech—violate her First, Fifth, and Fourteenth Amendment rights. Defendants moved for summary judgment,[2] and the motion is fully briefed.

---

[1] Defendants Elizabeth Smith and Judge Hendrickson were automatically substituted as parties pursuant to Fed. R. Civ. P. 25(d).

[2] View docket for full procedural history, including the Court's denial of Defendants' motion for judgment on the pleadings. *See* ECF No. 40.

*See* ECF No. 48; Plf. Opp. Br., ECF No. 50; Defs. Reply Br., ECF No. 51. Defendants' motion (ECF No. 48) is granted for the reasons set forth herein.

## I. STIPULATED FACTS[3]

### A. The Parties

1. Plaintiff Jennifer Brunner was elected to the office of Justice of the Supreme Court of Ohio on November 3, 2020. Her current term as Justice began on January 2, 2021. Ohio Rev. Code § 2503.03. She has declared her candidacy for Justice for the general election on November 3, 2026.

2. Defendant Frank LaRose is Ohio's Secretary of State. He is the chief election officer of the State of Ohio. Ohio Rev. Code § 3501.04. Secretary LaRose certifies the form of the ballots and the names of candidates for statewide office. Ohio Rev. Code § 3501.05(I).

3. The Board of Professional Conduct is a 28-member body established by the Supreme Court of Ohio to adjudicate allegations of professional misconduct committed by lawyers, judges, and judicial candidates. Defendant Elizabeth Smith is the Director of the Board of Professional Conduct. Ms. Smith was appointed by the Chief Justice and Justices of the Supreme Court of Ohio. Gov. Bar R. V(1)(D).

4. Defendant Joseph Caligiuri is Disciplinary Counsel for the State of Ohio. Mr. Caligiuri was appointed by the Board of Professional Conduct with the approval of the Supreme Court of Ohio. Among other duties, Disciplinary Counsel investigates allegations of misconduct by judicial officers and attorneys and initiates and prosecutes complaints as a result of those investigations.

[3] *See* ECF No. 47.

5. Defendant Robert Hendrickson is the Chief Justice of the Ohio Courts of Appeals Judges Association. The Ohio Courts of Appeals Judges Association is comprised of all judges who serve on Ohio appeals courts and who have retired from serving on Ohio appeals courts. The Chief Justice of the Ohio Courts of Appeals Judges Association serves as the Chief Justice of the Ohio Court of Appeals which oversees the grievance process when the Chief Justice or Justice of the Oho Supreme Court is grieved.

**B. Judicial Elections**

6. Until 2021, Ohio elected all judicial officers in a two-step process. At step one, candidates could seek a political party's nomination at a primary election as a candidate for judicial office. Ohio Rev. Code § 3513.08. At step two, the winners of the primary election would face off in a nonpartisan race in the general election. Former Ohio Rev. Code § 3501.01(J); Former Ohio Rev. Code § 3505.04. The candidates' party affiliations were not listed on the general election ballot.

7. When Plaintiff ran for Justice of the Supreme Court of Ohio in 2020, she sought the Democratic Party's nomination in the primary election. *See* Directive 2020-01 (certifying the official ballots for the March 2020 primary election), attached . . . as Exhibit A [ECF No. 47-1]. In the general election, however, Plaintiff was listed on the ballot without a party affiliation. *See* Directive 2020-19 (certifying the official ballot for the November 2020 general election), attached . . . as Exhibit B [ECF No. 47-2].

8. Plaintiff won the 2020 general election for Justice of the Supreme Court of Ohio.

9. In July 2021, Governor DeWine signed S.B. 80, which amended the judicial election process. Specifically, the bill removed candidates for Chief Justice of the Supreme Court of Ohio, Justice of the Supreme Court of Ohio, and court of appeals judge from the

definition of "nonpartisan candidate." Ohio Rev. Code § 3501.01(J). As a result, candidates for those offices may continue to seek a political party's nomination at a primary election. Ohio Rev. Code § 3513.08. But in the general election, candidates who win their primary elections will be listed with their party affiliations on the general election ballot. Ohio Rev. Code § 3505.03. Candidates for Ohio's Courts of Common Pleas (the trial courts of general jurisdiction), Municipal Courts, and County Courts (courts of limited subject matter and territorial jurisdiction) continue to be elected *via* general election ballots that do not identify their party affiliation. S.B. 80 took effect on September 30, 2021.

10. In 2022, Plaintiff successfully sought the Democratic Party's nomination for Chief Justice of the Supreme Court of Ohio. *See* Directive 2022-31 & Official Democratic Primary Sample Ballot (certifying the official ballots for the May 2022 primary election), attached . . . as Exhibits C–D [ECF No. 47-3 and ECF No. 47-4]. Due to S.B. 80, she was then listed with her party affiliation on the general election ballot. [ECF No. 47-5 and ECF No. 47-6]; *see* Directive 2022-44 & General Election Sample Ballot (certifying the official ballots for the November 2022 general election), attached . . . as Exhibits E–F [ECF No. 47-5 and ECF No. 47-6].

11. Plaintiff lost the 2022 general election for Chief Justice of the Supreme Court of Ohio but continues to serve her six-year term as Justice of the Supreme Court of Ohio.

12. Plaintiff's term as Justice of the Supreme Court of Ohio will expire on January 1, 2027. Ohio voters will elect on November 3, 2026 a justice for a term commencing on January 2, 2027, which Plaintiff presently holds.

13. Plaintiff timely filed a declaration of candidacy seeking the Democratic Party's nomination for the office of Justice of the Supreme Court of Ohio in the May 2026 primary

election. She was uncontested in the Democratic Party Primary. *See* Directive 2026-18 & Official Democratic Primary Sample Ballot (certifying official ballots for the May 2026 primary election), attached . . . as Exhibits G–H [ECF No. 47-7 and ECF No. 47-8].

14. Andrew King, Jill Lanzinger, Ron Lewis, and Colleen O'Donnell timely filed declarations of candidacy seeking the Republican Party's nomination for the office of Justice of the Supreme Court of Ohio in the May 2026 primary election. *See* Official Republican Primary Sample Ballot, attached . . . as Exhibit I [ECF No. 47-9].

15. The primary election was held on May 5, 2026. The winners of the Democratic and Republican Party nominations for Justice of the Supreme Court of Ohio will be listed on the general election ballot with their party affiliations. Ohio Rev. Code § 3505.03. Additionally, any independent candidates who timely filed, on the day before the primary election, a nominating petition for Justice of the Supreme Court of Ohio shall appear on the general election ballot. Ohio Rev. Code § 3513.257.

**C. Judicial Conduct**

16. The Code of Judicial Conduct establishes standards for the "ethical conduct of judges and judicial candidates." Jud. Cond. Rule Preamble. Judges in Ohio must comply with Ohio's Code of Judicial Conduct.

17. Candidates for judicial office must comply with Canon 4 of the Code. Canon 4 prohibits judges and judicial candidates from "engag[ing] in political or campaign activity that is inconsistent with the independence, integrity, or impartiality of the judiciary."

18. Judges and judicial candidates are subject to discipline for violations of the Code of Judicial Conduct. The Rules for the Government of the Judiciary set forth the relevant disciplinary procedures.

19. The Ohio Rules of Professional Conduct set forth rules governing a lawyer's ethical and professional responsibilities.

20. Lawyers are subject to discipline for violations of the Rules of Professional Conduct. The Rules for the Government of the Bar set forth the relevant disciplinary procedures.

21. During the pendency of this litigation, the Supreme Court of Ohio amended the Rules for the Government of the Judiciary and the Rules for the Government of the Bar. Under the new rules, which took effect on January 1, 2026, disciplinary authorities shall dismiss grievances or complaints against lawyers and judges that allege "misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions, including Article I, Section 11 or Article II, Section 12 of the Ohio Constitution." *See* Gov. Jud. R. II(3)(C);[4] Gov. Bar R. V(2)(A),[5] V(4)(A)(6),[6] V(9)(C)(2),[7] V(10)(B),[8] V(11)(A),[9] V(12)(G),[10] V(12)(J).[11]

22. During the pendency of this litigation, the Supreme Court of Ohio amended the Code of Judicial Conduct. Under the new code provisions, which took effect on February 12,

---

[4] "A grievance or complaint shall be dismissed without investigation if the grievance or complaint alleges misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

[5] "The Board shall not have jurisdiction to review complaints alleging misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

[6] Requiring the Disciplinary Counsel to "Dismiss any grievance alleging misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

[7] "A grievance shall be dismissed without investigation if the grievance alleges misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

[8] "No complaint shall be filed by disciplinary counsel or a certified grievance committee if the complaint alleges misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

[9] "The panel shall dismiss any complaint or investigation alleging misconduct based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

2026, judges and judicial candidates "maintain[] their constitutional protections and may express views in a non-adjudicative capacity regarding issues or beliefs. It is not professional misconduct for a judge or judicial candidate to engage in speech or conduct protected by the United States and Ohio Constitutions, including Article I, Section 6 of, or the First Amendment to, the United States Constitution, as well as Article I, Section 11 or Article II, Section 12 of the Ohio Constitution." Jud. Cond. R. 1.4.

23. The role of Disciplinary Counsel in judicial-misconduct investigations and prosecutions depends on the role of the judge or judicial candidate. In most cases, Disciplinary Counsel has authority to investigate grievances, file formal complaints with the Board of Professional Conduct, and prosecute formal complaints with the Board. Gov. Jud. R. II(2)(A).

24. Except in cases involving grievances alleging campaign conduct, when a grievance alleges misconduct by the Chief Justice or a justice of the Supreme Court of Ohio, Disciplinary Counsel receives the grievance, reviews it to determine whether an ethical violation is alleged, and if so, forwards the grievance to the Chief Justice of the Court of Appeals. Gov. Jud. R. II(2)(B). Grievances against Supreme Court justices involving non-campaign conduct then follow the procedures set forth in Rule II Section 4. A special disciplinary counsel may be appointed to investigate and prosecute the grievance, but the special disciplinary counsel may not be an employee or appointee of the Supreme Court. Gov. Jud. R. II(4)(B)(3)(a).

---

[10] "If, at the end of the evidence presented by the realtor or of all evidence, a unanimous hearing panel finds that the evidence is insufficient to support a charge or count of misconduct, or that it is based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

[11] "The Board shall dismiss the complaint if the allegation of misconduct is based solely on speech or conduct protected by the United States and Ohio Constitutions[.]"

(4:23-cv-2180)

25. When a grievance alleges a violation of Canon 4 of the Code of Judicial Conduct by a judicial candidate for the Supreme Court, the grievance follows the procedures set forth in Rule II Section 6. Disciplinary Counsel has no role in proceedings under Rule II Section 6.

26. The role of the Director of the Board of Professional Conduct in judicial misconduct investigations and prosecutions also depends on the role of the judge or judicial candidate. In most cases, the Board of Professional Conduct receives evidence, preserves the record, makes findings, and submits recommendations to the Supreme Court concerning complaints of judicial misconduct. Gov. Jud. R. II(1)(A).

27. When a grievance alleges misconduct by the Chief Justice or a justice of the Supreme Court of Ohio, Rules provide for review by, probable-cause determinations by, and hearing panels comprised of Ohio judges. *See generally* Gov. Jud. R. II(4). The Director of the Board of Professional Conduct serves as the clerk for the proceedings after a formal complaint is filed. Gov. Jud. R. II(4)(E)(1).

28. When a grievance alleges a violation of Canon 4 of the Code of Judicial Conduct by a judicial candidate for the Supreme Court, the grievance follows the procedures set forth in Rule II Section 6. The Rules provide for review, probable-cause, and hearing panels comprised of Ohio judges. *See generally* Gov. Jud. R. II(6). The Director of the Board of Professional Conduct serves as the clerk for the proceedings after a formal complaint is filed. Gov. Jud. R. II(6)(F)(1). Additionally, the Director "prepar[es] a formal complaint in accordance with the instructions of the probable cause panel and in the name of the grievant as relator." Gov. Jud. R. II(6)(A)(3).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Tp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992) (citation omitted).

To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The Court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the Court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Anderson*, 477 U.S. at 248. Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. DISCUSSION

Defendants claim that they are entitled to summary judgment because: (1) Plaintiff's challenge against the Ohio Code of Judicial Conduct ("Judicial Code") is moot following (post-

litigative) amendments made to the Judicial Code by the Ohio Supreme Court; (2) Plaintiff lacks standing to challenge the Judicial Code because she has not identified any protected speech she intends to engage in that would subject her to disciplinary action under the Judicial Code; and (3) the party designation for appellate and Supreme Court judicial candidates on Ohio ballots, as required by S.B. 80, does not harm Plaintiff's rights under the First or Fifth Amendments or the Fourteenth Amendment's Equal Protection Clause.

Plaintiff retorts that her claims against the Judicial Code are not moot, notwithstanding the amendments to the Judicial Code. She claims that S.B. 80 is unconstitutional because the party designation on the Ohio ballot compels partisan speech, while Canon 4 of the Judicial Code simultaneously limits her ability to engage in partisan speech regarding her party affiliation. She also contends that she has independent standing because of her past and future speech. Finally, Plaintiff argues that S.B. 80 violates the Equal Protection Clause when similarly situated partisan judicial candidates and partisan non-judicial candidates are compared.

**A. Plaintiff's First Amendment Claim**

States retain broad authority to regulate the conduct of elections. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). A court reviewing a challenge to a state election law "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and must then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule[.]" *Id*. at 789.

"[T]he rigorousness of [the] inquiry into the propriety of [a] state election law depends upon [the] extent to which [a] challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Severe burdens receive strict scrutiny, minimal

burdens receive rational basis review, and burdens in between are weighed against the State's asserted interests. *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016); *Mays v. LaRose*, 951 F.3d 775, 784 (6th Cir. 2020). The Sixth Circuit has applied this framework to Ohio's rules governing candidate designations on the ballot. *See, e.g.*, *Ohio Council 8 American Federation of State v. Husted*, 814 F.3d 329, 334–36 (6th Cir. 2016).

In the instant case, Plaintiff argues that S.B. 80 attaches a partisan label to her while Canon 4 forbids her from explaining what the label means, therefore S.B. 80 is facially and, as applied to her, unconstitutional. She seeks a declaratory judgment. ECF No. 30 at PageID ##: 381–82; ECF No. 50 at PageID ##: 854–55. As explained below, S.B. 80 passes constitutional muster and Plaintiff's arguments fail.

*1. S.B. 80 does not restrict ballot access*

S.B. 80 does not keep Plaintiff, or any other candidate, off the ballot. Since the enactment of S.B. 80, Plaintiff has appeared on the 2022 general election ballot, and declared her candidacy for the 2026 election. *See supra* Section I, ¶¶ 10, 13. Candidates who prefer not to seek a party's nomination may still reach the general election ballot through an independent nominating petition. *See supra* Section I, ¶ 15; Ohio Rev. Code § 3513.257. Overall, S.B. 80 reconfigured the form of the ballot, not access to it. *See* ECF No. 30 at PageID ##: 375–76, ¶ 20 (describing the provisions amended by S.B. 80); *See also supra* Section I, ¶ 2.

*2. S.B. 80 does not compel Plaintiff's speech*

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). As indicated earlier, the parties have stipulated that the Secretary of State certifies the form of the ballot. *See supra* Section I, ¶ 2; Ohio Rev. Code § 3501.05(I). The United States Supreme Court has explained that "[b]allots

serve primarily to elect candidates, not as forums for political expression." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997).

Plaintiff's party designation conveys accurate information. She sought the Democratic Party's nomination in 2020, 2022, and 2026. ECF No. 50 at PageID ##: 883; 852; 854. In her declaration of candidacy, she affirmed under penalty of election falsification that she sought office "as a member of the Democratic Party." ECF No. 30-1 at PageID #: 391. She alleges that she "has maintained her membership in the same political party, the Democratic Party, for all of her campaigns for election to public office." ECF No. 30 at PageID #: 377, ¶ 26.

Nevertheless, Plaintiff contends that the label forces her to campaign either to reinforce or to dispel public beliefs about what it means to be a Democrat. ECF No. 30 at PageID ##: 381–82, ¶ 44. The United States Supreme Court rejected a similar theory in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008). There, political parties argued that a ballot designation of each candidate's party preference would lead voters to misunderstand the parties' relationships with those candidates. *Id.* at 454. The Court found "no basis to presume that a well-informed electorate" would misread the designation, and it declined to invalidate the law based on speculation about voter perception. *Id.* at 454–55. Plaintiff's concern rests on the same type of speculation. What Plaintiff chooses to say in response to voter perceptions, if anything, is her own protected campaign speech. *See* Ohio Jud. Cond. R. 1.4; *Fischer v. Thomas (Fischer III)*, 176 F.4th 470, 478–80 (6th Cir. 2026).

*3. S.B. 80 is not a content-based regulation*

A regulation of speech is content based "if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). S.B. 80 does not regulate what Plaintiff says. It does, however, prescribe what

information the State prints on its ballot. Ohio Rev. Code § 3505.03. A candidate has no First Amendment right "to use the ballot itself to send a particularized message." *Timmons*, 520 U.S. at 362–63. It follows, therefore, that a candidate cannot invoke content-based scrutiny to control what the ballot says about her.

Plaintiff has not demonstrated that S.B. 80 violates the First or Fifth Amendments, either on their face or as applied to her.[12] The statute does not restrict Plaintiff's access to the ballot, and it does not restrict or compel her speech. The burden S.B. 80 imposes is minimal and applies equally to every appellate judicial candidate. Plaintiff's disagreement with the policy judgment reflected in S.B. 80, however sincere, does not establish a constitutional violation. *See United States v. O'Brien*, 391 U.S. 367, 382–83 (1968).

Accordingly, S.B. 80's minimal and non-discriminatory burden is justified by the State's legitimate interests[13] and does not violate Plaintiff's First or Fifth Amendment rights facially or as applied to Plaintiff, therefore, she is not entitled to a declaratory judgment.

**B. Plaintiff's First Amendment Claim Is Moot**

Even if S.B. 80 imposed a constitutionally cognizable burden on Plaintiff's First or Fifth Amendment rights, the injuries[14] on which Plaintiff bases her constitutional challenge no longer present a live controversy. The Ohio Supreme Court amended Canon 4 to preclude disciplinary

---

[12] Plaintiff specifically pleads violation of the First and Fifth Amendments. In her opposition, however, she references compelled speech without mentioning her Fifth Amendment right. *See* ECF No. 50. For the sake of completeness the Court includes both in its analysis.

[13] Defendants explain that those interests include: informing voters, reducing confusion, and increasing voter participation. ECF No. 48 at PageID #: 635.

[14] Plaintiff claims that S.B. 80 compels her "to carry a partisan label [that] she cannot freely explain, contextualize, or contest". *See* ECF No. 50 at PageID #: 852.

action based on constitutionally protected speech.[15] The Court, therefore, turns to whether the intervening amendments moot Plaintiff's asserted injuries.

The Court is a court of limited jurisdiction. *Stovall v. Jefferson Cty. Bd. of Educ.*, 164 F.4th 554, 559 (6th Cir. 2026) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The Court has jurisdiction only over live cases and controversies. *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 822 (6th Cir. 2012) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); U.S. Const. art. III, § 2. Mootness divests the Court of jurisdiction. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) (citing *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997)). A case is moot when an intervening event makes it impossible to grant "effectual relief," and the case must be dismissed. *Pavia v. Nat'l Collegiate Athletic Ass'n*, 154 F.4th 407, 411–12 (6th Cir. 2025); *see Fischer III*, 176 F.4th at 474 (explaining that "[a] case becomes moot when intervening events make it impossible for us to grant the complaining party any effectual relief.").[16]

---

[15] During the pendency of this case, the Ohio Supreme Court amended the Judicial Code to include a new provision: Rule 1.4 "Protected Statements by Judges and Judicial Candidates." ECF No. 47 at PageID ##: 559–60, ⁋ 22. That provision provides, in relevant part:

> It is not professional misconduct for a judge or *judicial candidate* to engage in speech or conduct protected by the United States and Ohio Constitutions, including Article I, Section 6 of, or the First Amendment to, the United States Constitution as well as Article I, Section 11 or Article II, Section 12 of the Ohio Constitution.

Ohio Jud. Cond. R. 1.4 (original emphasis).

[16] In an action challenging a statute or rule (as in this case), an amendment to the challenged provisions during the pendency of the case generally eliminates the requisite case-or-controversy, mooting the case. *Bench Billboard*, 675 F.3d at 981 (citing *Ky. Right to Life*, 108 F.3d at 644).

The amendments to Canon 4 moot Plaintiff's allegations that her First and Fifth Amendment rights have been violated because the changes provide that complaints or allegations of misconduct based solely on protected speech or conduct protected under the United States and Ohio constitutions shall be dismissed *without investigation*. ECF No. 47 at PageID #: 559, ⁋ 21 (emphasis added); *see supra* Section I, ⁋ 21 n. 4–11. Nevertheless, Plaintiff argues that voluntary cessation does not moot her claims. ECF No. 50 at PageID #: 856. Plaintiff is correct in asserting that voluntary cessation, as a defense, is not automatically successful. For the reasons below, however, Plaintiff's argument fails.

Voluntary cessation is an exception to the doctrine of mootness that lies when a defendant stops the allegedly unlawful conduct, after a lawsuit challenging it has been filed. Voluntary cessation of a challenged activity will not make moot a controversy, however, unless it is "absolutely clear" that the activity "could not reasonably be expected to recur." *Fischer III*, 176 F.4th at 474–75; *Pavia*, 154 F.4th at 414 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). That is a high bar to meet.

When a government actor or entity ceases the challenged activity, courts generally "'presume that the same allegedly wrongful conduct by the government is unlikely to recur.'" *Gun Owners of Am., Inc. v. U.S. Dep't of Just.*, 157 F.4th 834, 838 (6th Cir. 2025) (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)). Moreover, when the discretion to effect the change rests with a single individual or agency, there is less "solicitude" afforded the cessation. *Gun Owners of Am., Inc.*, 157 F.4th at 838. Nevertheless, "the mere 'theoretical possibility of reversion to an allegedly unconstitutional policy is simply not sufficient to warrant an exception to mootness.'" *Id*. (quoting *Thomas v. City of Memphis*, 996 F.3d 318, 328 (6th Cir. 2021)).

To succeed on her voluntary cessation argument, Plaintiff must provide evidence that she will be sanctioned for engaging in protected speech. She has failed to produce such evidence. At most, Plaintiff has raised a "theoretical possibility" that Defendants *might* subject her to disciplinary proceedings for engaging in constitutionally protected speech, notwithstanding the recent amendments. ECF No. 50 at PageID #: 856 (voicing concern over enforcement of Canon 4 against her future speech). This speculation is "not sufficient to warrant an exception to mootness." *Gun Owners of Am., Inc.*, 157 F.4th at 838 (citing *Thomas*, 996 F.3d at 328). As amended, Canon 4 provides that an appellate judicial candidate like Plaintiff is not likely to face disciplinary action for engaging in protected speech. *See also* Ohio Jud. Cond. R. 1.4.[17]

Accordingly, Plaintiff's First Amendment claims, whether facially or as applied, are moot.

**C. Plaintiff Lacks Independent Standing Based on Past and Future Speech**

Although Plaintiff's First and Fifth Amendment claims are moot, Plaintiff argues that Canon 4, as amended, does not end the controversy because she has independent standing based on her past and future speech. ECF No. 50 at PageID #: 856.

Standing is required under Article III of the Constitution before a federal court can exercise subject matter jurisdiction over a dispute. *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 842 (6th Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014)); U.S. Const. art. III, § 2. Standing requires that a plaintiff show: (1) an injury in fact that is both, (2) caused by the defendant's conduct, and (3) redressable by a favorable court decision. *Christian Healthcare*, 117 F.4th at 842 (citing *Dreihaus*, 573 U.S. at 157–58). Plaintiff "bears

---

[17] Rule 1.4 explicitly states that it is not professional misconduct for a judge or judicial candidate to engage in protected speech or conduct. Ohio Jud. Cond. R. 1.4. The Rule 1.4 commentary further clarifies that "[s]imply making a protected statement is not, by itself, a reason for discipline." Ohio Jud. Cond. R. 1.4, comment [3].

the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

When an alleged injury-in-fact is premised on some future harm, the plaintiff must show that the harm is "certainly impending" such that there is a "'substantial risk' that the harm will occur." *Driehaus*, 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 (2013)). A threat of enforcement may constitute an injury in fact if: (1) the plaintiff intends to engage in conduct protected or affected by the Constitution; (2) that conduct is proscribed by law; and (3) there is a credible threat of enforcement against the plaintiff. *Christian Healthcare*, 117 F.4th at 843 (citing *Driehaus*, 573 U.S. at 159); *see Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (same).

In the First Amendment context, "mere allegations of a 'subjective chill' on protected speech are insufficient to establish an injury-in-fact." *McKay v. Federspiel*, 823 F.3d 862, 868–69 (6th Cir. 2016) (quoting *Berry v. Schmitt*, 688 F.3d 290, 296 (6th Cir. 2012)). Rather, courts must consider whether: (1) there is a history of enforcement against the plaintiff or others; (2) plaintiff has received warnings about enforcement against her specific conduct; (3) the challenged statute or rule permits any member of the public to initiate enforcement action; and (4) the defendants' refusal to disavow enforcement of the challenged statute or rule. *Christian Healthcare*, 117 F.4th at 848.

1. *Plaintiff's alleged past and future injury*

Plaintiff argues she has independent standing,[18] as applied to her own conduct under the Judicial Code because: (1) prior to the amendments, the Code prevented her from engaging in

[18] Independent standing refers to a plaintiff's ability to challenge a law based on an alleged violation of her own constitutional rights, rather than those of third parties. *See*

partisan speech that would have enabled her to put her political affiliation into context for voters, ECF No. 50 at PageID ##: 854–55; and (2) Defendants' have failed to disavow future enforcement of Canon 4 against Plaintiff's future speech. ECF No. 50 at PageID #: 856. She relies on *Fischer III* and *Christian Healthcare* to support her position; but neither case hefts the weight she hopes it will. ECF No. 50 at PageID #: 856.

*Fischer III* involved the Kentucky Judicial Conduct Commission's threat of enforcement of the state's judicial conduct code against two judicial candidates for their conduct during their respective campaigns. *Fischer III*, 176 F.4th at 472. After receiving multiple complaints against the two candidates, the Commission issued warning letters notifying the candidates that their conduct could be grounds for further investigation. *Id*. *Fischer III* explained that while the plaintiffs' standing was based on the Commission's intentions to enforce the Kentucky Judicial Code at the time the case was filed, the matter was not moot because of the Commission's failures to dismiss the still pending complaints and to identify circumstances under it would *not* enforce the rules against the candidates. Those lingering threats required an injunction to prevent the Commission from sanctioning the candidates for past conduct.[19] *Id*. at 474. In this case, the amendments make clear that Plaintiff's fear of sanctions for past and future protected speech are unfounded.

---

Patricia Klein Smoots, *Members of the City Council v. Taxpayers for Vincent: The Constitutionality of Prohibiting Temporary Sign Posting on Public Property to Advance Local Aesthetic Concerns*, 34 DePaul L. Rev. 197, 228 (1984) (explaining independent standing).

[19] The Sixth Circuit also recognized that the issue of standing had been addressed at the commencement of the case in *Fischer v. Thomas (Fischer I)*, 52 F.4th 303 (6th Cir. 2022). Factual developments during the case were insufficient to disturb the standing determination and, instead, concerned mootness. *Id*. at 474.

Similarly, in *Christian Healthcare*, a Catholic healthcare center and two Catholic schools challenged two Michigan anti-discrimination laws concerning employment practices and public accommodation access. The plaintiffs alleged that certain statutory provisions prohibiting sex-based discrimination as it pertained to transgender individuals violated the plaintiffs' First and Fourteenth Amendment rights. *Christian Healthcare*, 117 F.4th at 837–42. The defendants conceded that the plaintiffs intended to "engage in conduct arguably affected with a constitutional interest," leaving open the question of whether that conduct was proscribed by law and whether there was a "substantial" or "credible threat of enforcement." *Id.* at 843. The court conducted individualized analyses of each plaintiff's intended conduct and the potential enforcement threats to determine whether there was an injury-in-fact based on some future harm. *Id.* at 851–56. Ultimately, the court concluded that there was no credible threat of enforcement concerning the public accommodation statute against any of the plaintiffs, and that only two plaintiffs successfully alleged a credible threat of enforcement concerning the employment statute. *Id.* at 857. At best, *Christian Healthcare* supports an argument that plaintiff has not explicitly made. Should she face enforcement for protected speech, she will have access to review.[20]

2. *Plaintiff has not established a sufficiently imminent injury*

Both *Fischer III* and *Christian Healthcare* are distinguishable from the present case because Plaintiff has not identified either specific statements, or a credible threat of enforcement based on

---

[20] Plaintiff has not alleged that her concerns are capable of repetition yet likely to evade review, another exception to mootness. Had she, on the record now before the Court, that exception to mootness would fare no better than voluntary cessation. The tortuous procedural history of this case is the best evidence that the Court has been responsive to Plaintiff's concerns alleged in the initial and amended complaint. Stated differently, the matter could be resolved before becoming moot.

a Canon 4 or other Judicial Code violation. Since this action commenced, Plaintiff has only identified, in a general context, that certain statements could lead to enforcement action against her. She does not identify any specific statements that she wanted to make but did not for fear of disciplinary action.[21] This is fatal to her standing argument. At most her claims relate to hypothetical statements or activities, which are insufficient to establish an injury-in-fact for purposes of standing. *See Clapper*, 568 U.S. at 416 (holding that a party "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

Unlike in *Fischer III*, there have been no complaints or allegations filed against Plaintiff for violating Canon 4 relating to past statements or conduct. Brunner dep. Tr., ECF No. 48-1 at PageID #: 757 [99:8–12]. Neither has she received a warning letter for past statements or conduct alleging she violated Rule 4.1(A)(6) (or any other Canon 4 provision) or that she is subject to further investigation, discipline, or sanction. ECF No. 48-1 at PageID #: 758 [100:4–14]. And unlike in *Christian Healthcare*, in which the plaintiffs identified specific future activities they intended and which could expose them to enforcement action, Plaintiff has not identified any specific speech that she previously or currently wants to make. *See, e.g.,* ECF No. 48-1 at PageID #: 760 [102:2–3] ("I don't even know what specific statements I plan to make for my judicial campaign upcoming.").

The vagueness of Plaintiff's intended conduct is further illustrated by her deposition testimony. On several occasions, she testified that she has never requested an independent

[21] Not unreasonably, Defendants have declined to assure Plaintiff that she will not be subject to enforcement if her future conduct independently violates the Judicial Code. ECF No. 48 at PageID #: 635.

analysis from the disciplinary board or any legal counsel concerning whether specific statements she intended to make would violate Canon 4. For instance, Plaintiff's deposition reveals the following:

> Q. . . . [H]ave you sought any opinions from any disciplinary authority on whether making comments on already decided Supreme Court cases would violate the Code of Judicial Conduct?
>
> A. [Plaintiff]. I'm not in the habit of doing that.
>
> Q. All right. And do you – have you sought legal counsel as to whether comments on already decided Supreme Court cases would violate the code?
>
> A. [Plaintiff]. No.

Brunner dep. Tr., ECF No. 48-1 at PageID #: 725 [67:9–17]. Elsewhere in her deposition, Plaintiff testified:

> Q. . . . [D]uring the 2022 campaign, did you ever seek any opinion from a disciplinary authority about whether it would violate the Code of Judicial Conduct to speak about any aspect of the Dobbs decision?
>
> A. [Plaintiff]. No.

ECF No. 48-1 at PageID #: 732 [74:14–18]. Concerning the 2026 election, Plaintiff testified:

> Q. And then there's no pending request for an opinion from a disciplinary authority on any specific statement that you want to make for the upcoming 2026 judicial campaigns?
>
> A. [Plaintiff]. I don't even know what specific statements I plan to make for my judicial campaign upcoming.

ECF No. 48-1 at PageID ##: 759–60 [101:23–102:3].

Even if Plaintiff had identified specific statements, she has failed to demonstrate a credible threat of enforcement, either before or after the amendments to the Judicial Code. And there is no evidence indicating that Plaintiff received any warnings that her protected speech or conduct is subject to investigation. Rather, the defense proffered, without dispute, that no judicial

candidate has been the subject of any complaint alleging Canon 4 violations before or after the amendments. E. Smith decl., ECF No. 48-2 at PageID ##: 816–17, ¶ 5–6.

Accordingly, Plaintiff lacks independent standing for her First Amendment claims because she has not demonstrated an imminent injury for past or future speech.

**D. Plaintiff's Equal Protection Claim Remains Justiciable but Fails on the Merits**

Although Plaintiff's First Amendment claims are no longer justiciable, that determination does not dispose of Plaintiff's Equal Protection claim, which rests on a distinct alleged injury—S.B. 80's continuing distinction between partisan judicial candidates and partisan non-judicial candidates.[22] Plaintiff seeks a declaratory judgment. In her opposition, Plaintiff argues that "S.B. 80 classified appellate *judicial candidates as partisan* and placed them on the same general-election ballot alongside *non-judicial partisan candidates*, appealing to the same voters in the same election cycle." ECF No. 50 at PageID #: 862 (emphasis added)

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated individuals be treated alike. *Plyer v. Doe*, 457 U.S. 202, 216 (1982); U.S. Const. amend. XIV. Nevertheless, not every statutory classification constitutes an Equal Protection violation. "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably

---

[22] Although Plaintiff initially challenged S.B. 80's differential treatment of partisan and nonpartisan judicial candidates, *see* ECF No. 30 at PageID #: 384 ¶ 53, she did not develop that argument in her opposition to summary judgment. Instead, Plaintiff focuses on the treatment of partisan judicial candidates relative to partisan non-judicial candidates. *See* ECF No. 50 at PageID #: 862; *Cf.* ECF No. 30 at PageID #: 384 ¶ 53. Accordingly, the Court confines its analysis to the latter comparison. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011)).

conceivable state of facts that could provide a rational basis for the classification." *See Bowman v. U.S.*, 564 F.3d 765, 776 (6th Cir. 2008) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Because the instant case regards a voting statute, the rights of voters are fundamental. *Anderson*, 460 U.S. at 788. However, not all State voting statutes impose constitutionally suspect burdens on voters' rights. *See id*. Rational-basis review is highly deferential, and the party challenging the classification bears the burden of negating every conceivable basis that might support it. *American Exp. Travel Related Services Co., Inc. v. Kentucky*, 641 F.3d 685, 690 (6th Cir. 2011).

Because the Parties agree that rational-basis review governs Plaintiff's Equal Protection claim, the question is whether S.B. 80 has a rationally related legitimate governmental interest. ECF No. 48 at PageID #: 649; ECF No. 50 at PageID #: 862.[23]

*1. Plaintiff has not established disparate treatment of similarly situated candidates*

In an equal protection claim "a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). It is well established in the Sixth Circuit that, "the threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id*.; *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

---

[23] The Court agrees that rational basis is the appropriate level of scrutiny because the record establishes "infringement on the fundamental right to vote." *Obama for America v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012) (quoting *Biener v. Calio*, 361 F.3d 206, 214–15 (3rd Cir. 2004)).

Plaintiff contends that S.B. 80 violates Equal Protection based on two comparators: (1) partisan judicial candidates and (2) partisan non-judicial candidates. ECF No. 50 at PageID #: 862; ECF No. 30 at PageID #: 384 ¶ 53. Defendants argue that neither category is similarly situated to partisan appellate judicial candidates and, alternatively, that S.B. 80's classification is supported by a rational basis. ECF No. 48 at PageID ##: 650–52; ECF No. 51 at PageID #: 880–83.

Plaintiff's argument fails to establish similarity or disparate treatment. The defense correctly intones that whether partisan candidates are similarly situated is a policy argument best resolved by the State's legislature. ECF No. 51 at PageID #: 880. Regarding the comparison between partisan judicial candidates and partisan non-judicial candidates, S.B. 80 requires party designations to appear on the general election ballot for both. Thus, with respect to the ballot designation requirement challenged here, the two categories are treated alike.

Plaintiff has, therefore, not sufficiently established disparate treatment of similarly situated partisan judicial candidates to sustain her Equal Protection claim. Accordingly, Plaintiff is not entitled to a declaratory judgment.

2. *S.B. 80 survives rational basis review*

Even assuming that the above-mentioned categories were similarly situated for purposes of Plaintiff's Equal Protection challenge, S.B. 80's survives rational-basis review. Rational-basis review does not require the legislature to draw a perfect classification. *See Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 685 (2012). The Court "will uphold a statutory classification so long as there is 'any conceivable state of facts that could provide a rational basis for the classification.'" *United States v. Skrmetti*, 605 U.S. 495, 522 (2025) (quoting *FCC*, 508 U.S. at

313)). When "plausible reasons" exist for the government action, the Court's inquiry ends. *Skrmetti*, 605 U.S. at 522 (quoting *FCC*, 508 U.S. at 313–14)).

The burden to overcome rational basis is Plaintiff's to meet. *See American Exp. Travel Related Services Co.*, 641 F.3d at 690. She must negate "every conceivable basis which might support" S.B. 80 to establish that it lacks a rational basis. *Id*. "If a statute can be upheld under any plausible justification offered by the [S]tate, or even hypothesized by the court, [the law] survives rational-basis scrutiny." *Id*. (citation omitted).

Plaintiff contends that S.B. 80 lacks a rational basis because it does not meaningfully advance the State's asserted interests. ECF No. 50 at PageID ##: 862–64. She argues that encouraging voter participation is equally important in elections of trial court judges and that S.B. 80 was motivated by partisan electoral advantage rather than a legitimate governmental purpose. ECF No. 50 at PageID #: 862. Although Defendants were not required to provide "any rational basis so long as [the] Court can conceive one," they provide several legitimate governmental interests supporting S.B. 80. *Ziss Bros. Const. Co., Inc. v. City of Independence, Ohio*, 439 Fed.Appx. 467, 476 (6th Cir. 2011); *see* ECF No. 48 at PageID #: 635. Defendants' interests include providing voters with additional information, reducing voter confusion, and increasing participation in judicial elections. ECF No. 48 at PageID #: 635. Plaintiff failed to carry her "heavy burden of [negating] every conceivable basis which might support" S.B. 80. *American Exp. Travel Related Services Co.*, 641 F.3d at 694. Because Defendants provide plausible reasons for the enactment of S.B. 80 there is no further inquiry for the Court. *See United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (showing that when there are "plausible reasons" for a statute "our inquiry is at an end."); *see also FCC*, 508 U.S. at

313 (explaining that equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices).

Accordingly, Plaintiff's Equal Protection claim fails on the merits, and she is not entitled to a declaratory judgment.

**E. Application of *Purcell* Principle**

Although the Court concludes that S.B. 80 does not violate the First or Fifth Amendments or the Equal Protection Clause, the Court also considers whether the proximity of the November 3, 2026 general election counsels against granting Plaintiff's requested injunctive relief. Under *Purcell v. Gonzalez*, 549 U.S. 1, 4–6 (2005) (per curiam), federal courts must exercise caution when granting relief that would change election rules shortly before an election. *Id*. The Supreme Court has specifically instructed that a federal court *should* not "disrupt State 'election rules' if the change occurs 'on the eve of an election.'" *Tennessee Conference of the NAACP v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (quoting *Republican Nat'l Comm. v. Democratic Nat'l Committee*, 589 U.S. 423, 424 (2020)). Although the Supreme Court has not provided guidance regarding what counts as *on the eve of an election*, *Purcell* provides an answer to this question within the facts of the case. In *Purcell*, the Supreme Court overturned the injunction that was issued a month before the election. *Purcell*, 549 U.S. at 4–6. The Sixth Circuit has recognized that the *Purcell* principle weighs against judicial intervention that disrupts election procedures during an ongoing election cycle. *Tennessee Conference of the NAACP*, 105 F.4th at 897–98.

Defendants argue that the *Purcell* principle "forecloses any relief for the 2026 general election" regarding enjoining S.B. 80. ECF No. 48 at PageID #: 654. Whereas Plaintiff argues that "the *Purcell* doctrine does not foreclose relief, and the Supreme Court's recent decisions in

the Louisiana and Alabama cases confirm that courts act on constitutional violations during election cycles." ECF No. 50 at PageID #: 865–67. Defendants have the better argument.

The November 3, 2026, general election is approximately three weeks away. When applying *Purcell* to the facts of this case, the Court should not issue an injunction because the general election is less than a month away and early voting has already begun.[24] *Purcell*, 549 U.S. at 4–6. Such intervention implicates the precise concerns underlying the *Purcell* principle---the disruption of election administration and potential voter confusion. *See id*.

Additionally, Plaintiff's reliance on the Supreme Court's recent decisions involving Louisiana and Alabama is misplaced and does not compel a different conclusion. *See Louisiana v. Callais*, 608 U.S. 85 (2026); *Allen v. Caster*, 146 S.Ct. 1196 (2026). Plaintiff contends that Defendants' argument is erroneous because Courts may change "the ground rules of elections during an ongoing election cycle." ECF No. at PageID #: 50. Her contention is misplaced because Defendants do not argue that federal courts may *never* change election rules, but rather federal courts "should not interfere with state election rules on the eve of an election." ECF No. 51 at PageID #: 884.

Granting injunctive relief at this time, would trigger the *Purcell* principle, and, as a result, discourages the Court from enjoining S.B. 80 for the November 3, 2026, general election.[25] *See Sherman v. Hargett*, 2026 WL 1471870, No. 3:26-cv-00616, at *7 (M.D. Tenn. May 26, 2026)

---

[24] *See 2026 Voting Schedule*, https://www.ohiosos.gov/elections/voting-schedule (last visited October 14, 2026). Showing that military & overseas absentee voting began on September 18, 2026; absentee voting by mail began October 6, 2026; and early in-person voting began October 6, 2026.

[25] To be clear, Plaintiff's arguments fail, as explained above, regardless of the timing of this ruling.

("The Court . . . give[s] strong weight to the likelihood of voter confusion in the face of ongoing litigation close to an election regardless of the outcome of that litigation.").

## IV. CONCLUSION

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and the movants are entitled to a judgment as a matter of law. For the foregoing reasons, including those that have been articulated in Defendants' briefs, Defendants' Motion for Summary Judgment (ECF No. 48) is granted. Defendants are entitled to summary judgment on all claims. Final judgment will be entered in favor of Defendants.

IT IS SO ORDERED.

October 14, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge